CHAD A. READLER
Acting Assistant Attorney General
MCGREGOR SCOTT
United States Attorney
AUGUST FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director
EREZ REUVENI
Assistant Director, Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel. (202) 307-4293
Erez.R.Reuveni@usdoj.gov
DAVID SHELLEDY
Civil Chief, Assistant United States Attorney
LAUREN C. BINGHAM
JOSEPH A. DARROW
JOSHUA S. PRESS
Trial Attorneys
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>  v.<br><br>THE STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., Governor of California, in his Official Capacity; and XAVIER BECERRA, Attorney General of California, in his Official Capacity,<br><br>  Defendants. | No. 18-264<br><br>**COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

Complaint of the United States                - 1 -

**PRELIMINARY STATEMENT**

1. In this action, the United States seeks a declaration invalidating and preliminarily and permanently enjoining the enforcement of certain provisions of California law. These provisions are preempted by federal law and impermissibly discriminate against the United States, and therefore violate the Supremacy Clause of the United States Constitution.

2. The United States has undoubted, preeminent authority to regulate immigration matters. This authority derives from the United States Constitution and numerous acts of Congress. California has no authority to enforce laws that obstruct or otherwise conflict with, or discriminate against, federal immigration enforcement efforts.

3. This lawsuit challenges three California statutes that reflect a deliberate effort by California to obstruct the United States' enforcement of federal immigration law, to regulate private entities that seek to cooperate with federal authorities consistent with their obligations under federal law, and to impede consultation and communication between federal and state law enforcement officials.

4. The first statute, the "Immigrant Worker Protection Act," Assembly Bill 450 ("AB 450"), prohibits private employers in California from voluntarily cooperating with federal officials who seek information relevant to immigration enforcement that occurs in places of employment.

5. The second statute, Assembly Bill 103 ("AB 103"), creates an inspection and review scheme that requires the Attorney General of California to investigate the immigration enforcement efforts of federal agents.

6. The third statute, Senate Bill 54 ("SB 54"), which includes the "California Values Act,"

limits the ability of state and local law enforcement officers to provide the United States with basic information about individuals who are in their custody and are subject to federal immigration custody, or to transfer such individuals to federal immigration custody.

7. The provisions of state law at issue have the purpose and effect of making it more difficult for federal immigration officers to carry out their responsibilities in California. The Supremacy Clause does not allow California to obstruct the United States' ability to enforce laws that Congress has enacted or to take actions entrusted to it by the Constitution. Accordingly, the provisions at issue here are invalid.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

9. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because Defendants reside within the Eastern District of California and because a substantial part of the acts or omissions giving rise to this Complaint arose from events occurring within this judicial district.

10. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

11. Plaintiff, the United States, regulates immigration under its constitutional and statutory authorities, and it enforces the immigration laws through its Executive agencies, including the Departments of Justice, State, and Labor, and the Department of Homeland Security (DHS) including its component agencies U.S. Immigration and Customs

Enforcement (ICE), and U.S. Customs and Border Protection (CBP).

12. Defendant State of California is a state of the United States.

13. Defendant Edmund Gerald Brown Jr. is the Governor of the State of California and is being sued in his official capacity.

14. Defendant Xavier Becerra is Attorney General for the State of California and is being sued in his official capacity.

## FEDERAL IMMIGRATION LAW

15. The Constitution affords Congress the power to "establish an uniform Rule of Naturalization," U.S. Const., art. I § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const., art. I § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed." U.S. Const., art. II § 3.

16. The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Thus, a state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or if it "discriminate[s] against the United States or those with whom it deals," *South Carolina v. Baker*, 485 U.S. 505, 523 (1988).

17. Based on its enumerated powers and its constitutional power as a sovereign to control and conduct relations with foreign nations, the United States has broad authority to establish immigration laws, the execution of which the States cannot obstruct or discriminate against. *See Arizona v. United States*, 567 U.S. 387, 394-95 (2012); *accord North*

*Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444-47 (Scalia, J., concurring).

18. Congress has exercised its authority to make laws governing the entry, presence, status, and removal of aliens within the United States by enacting various provisions of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, the Immigration Reform and Control Act of 1986 (IRCA), Pub. L. No. 99-603, 100 Stat 3359, codified at 8 U.S.C. § 1324a *et seq.*, and other laws regulating immigration.

19. These laws codify the Executive Branch's authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, unlawfully in the United States. *See* 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231, 1357.

20. Congress has also codified basic principles of cooperation and comity between state and local authorities and the United States. For example, federal law contemplates that removable aliens in state custody who have been convicted of state or local offenses will generally serve their state or local criminal sentences before being subject to removal, but that they will be taken into federal custody upon the expiration of their state prison terms. *See id.* §§ 1226(c), 1231(a)(1)(B)(iii), (a)(4).

21. "Consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. Congress has therefore directed that a federal, state, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status of an individual." 8 U.S.C. § 1373(a); *see* 8 U.S.C. § 1644 (same); *see also* 8 U.S.C. § 1357(g)(10)(A) (providing for state and local "communicat[ion] with [DHS] regarding the immigration status of any

individual, including reporting knowledge that a particular alien is not lawfully present in the United States"). Congress also authorized states and localities "to cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B).

22. Federal law also explicitly recognizes the United States' authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," including the lease or rental of state, local, and private facilities. *See* 8 U.S.C. § 1231(g); *accord* 8 U.S.C. § 1103(a)(11).

23. Federal regulation provides that "[n]o person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of [DHS] (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. Such information shall be under the control of [DHS] and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders." 8 C.F.R. § 236.6.

24. Congress, through IRCA, has also enacted a "comprehensive framework for combating the employment of illegal aliens." *Arizona*, 567 U.S. at 404. IRCA makes it illegal for employers to knowingly hire, recruit, refer, or continue to employ aliens without appropriate work authorization. *See* 8 U.S.C. § 1324a(a)(1)(A), (a)(2). It also requires every employer to verify the employment authorization status of prospective employees. *See id.* § 1324a(a)(1)(B), (b). DHS enforces these requirements through criminal

penalties and an escalating series of civil penalties tied to the number of times an employer has violated the provisions. *See* 8 U.S.C. §§ 1324a(e)(4), (f).

25. As a means of enforcing IRCA's criminal and civil penalties, Congress established a nationally uniform inspection process whereby employers are required to retain documentary evidence of authorized employment of aliens, and to permit federal investigative officers to inspect such documents. *See* 8 U.S.C. § 1324a(b), (e)(2)(A).

26. DHS, through ICE and CBP, performs a significant portion of its law enforcement activities in California. In Fiscal Year 2017, ICE's Enforcement and Removal Operations (ERO) apprehended 20,201 aliens in California alone, or roughly 14% of the aliens apprehended nationwide. Thus far in 2018, ICE ERO has apprehended 8,588 aliens in California, or roughly 14% of the aliens apprehended nationwide. Of those aliens apprehended nationwide in 2016, 2017, and thus far in 2018, 92%, 90%, and 87% respectively, were criminal aliens. In Fiscal Year 2017, ICE ERO booked a total of 323,591 aliens into custody, 41,880 of whom were detained in California. And CBP is responsible for enforcing the immigration laws at ports of entry and areas near the border in California, including apprehending recent entrants with criminal convictions or who are national security concerns, and patrolling the border for narcotics.

## CALIFORNIA PROVISIONS

### Restrictions on Cooperation with Workplace Immigration Enforcement (AB 450)

27. On October 5, 2017, Governor Brown signed into law the "Immigrant Worker Protection Act," Assembly Bill 450 (AB 450), effective January 1, 2018 (Exhibit 1). Through AB 450, California regulates how private employers in California must respond to federal efforts to ensure compliance with federal immigration laws through investigations in

places of employment.

28. AB 450 added Section 7285.1(a) of the California Government Code, which provides that an employer or its agent "shall not provide voluntary consent to an immigration enforcement agent to enter any nonpublic areas of a place of labor," unless "the immigration enforcement agent provides a judicial warrant" or consent is "otherwise required by federal law."

29. Section 7285.2(a)(1) similarly prohibits an employer or its agent from "provid[ing] voluntary consent to an immigration enforcement agent to access, review, or obtain the employer's employee records without a subpoena or judicial warrant."

30. Section 7285.2(a)(2) contains an exception for certain documents for which the United States has provided a "Notice of Inspection," Cal. Gov't Code § 7285.2(a)(2). AB 450 added provisions to the California Labor Code that establish new requirements employers must satisfy *before* allowing ICE to conduct the inspection process directed by federal law. AB 450 requires employers to notify employees and their authorized representatives of upcoming inspections of employment records "within 72 hours of receiving notice of the inspection." Cal. Lab. Code § 90.2(a)(1). It also requires employers to provide employees and their authorized representatives, within 72 hours, with copies of written immigration agency notices providing results of inspections. *Id.* § 90.2(b)(1).

31. All these provisions are subject to a schedule of civil penalties "of two thousand dollars ($2,000) up to five thousand dollars ($5,000) for a first violation and five thousand dollars ($5,000) up to ten thousand dollars ($10,000) for each subsequent violation." Cal. Gov't Code §§ 7285.1(b), 7285.2(b); Cal. Lab. Code § 90.2(c).

32. AB 450 added Section 1019.2(a) of the California Labor Code, which provides that an

employer or its agent "shall not reverify the employment eligibility of a current employee at a time or in a manner not required by Section 1324a(b) of Title 8 of the United States Code." Violators are subject to "a civil penalty of up to ten thousand dollars ($10,000)." Cal. Lab. Code § 1019.2(b).

33. Upon information and belief, California law does not prohibit employers from voluntarily complying with requests from any other federal or California entities for information or inspection, or compel employers to provide notice to their employees of other efforts to collect information.

34. In Fiscal Year 2017, ICE conducted approximately 1,300 worksite inspections authorized by IRCA across the country, including approximately 230 in California. If conditions are appropriate, any of those investigations could lead to an inspection with the consent of the employer, and often employers are very willing to provide consent in order to alleviate and address concerns that arise during the inspection process. In addition such inspections with the consent of the employer are critical to investigating cross border smuggling of people, narcotics, and terrorism.

35. These provisions, individually and collectively, have the purpose and effect of interfering with the enforcement of the INA and IRCA's prohibition on working without authorization. California has no lawful interest in protecting unauthorized workers from detection or in shielding employers who have violated federal immigration law from penalty. These provisions, as applied to private employers, violate the Supremacy Clause by, among other things, constituting an obstacle to the United States' enforcement of the immigration laws and discriminating against federal immigration enforcement.

**Inspection and Review of Immigration Detention Facilities (AB 103)**

36. Under longstanding California law, "local detention facilities" are subject to biennial inspections concerning health and safety, fire suppression preplanning, compliance with training and funding requirements, and the types and availability of visitation. Cal. Penal Code § 6031.1(a). The law defines "local detention facilities" as any city, county, or regional facility in which individuals are confined for more than 24 hours, and includes private facilities (though it excludes certain facilities for parolees, treatment and restitution facilities, community correctional centers, and work furlough programs). *Id.* § 6031.4.

37. On June 27, 2017, California enacted Assembly Bill 103 (AB 103) (Exhibit 2). Section 12 of AB 103 added Section 12532 to the California Government Code.

38. Rather than subject facilities housing civil immigration detainees to the inspection scheme deemed sufficient for other detention facilities, the statute imposes a new set of requirements specific to facilities housing immigration detainees. In particular, Section 12532(a) requires the California Attorney General or his designee "to engage in reviews of county, local, or private locked detention facilities in which noncitizens are being housed or detained for purposes of civil immigration proceedings in California."

39. The statute is not limited to an inspection of facilities. The law also requires the California Attorney General or his designee to examine the "due process provided" to civil immigration detainees, and "the circumstances around their apprehension and transfer to the facility." Cal. Gov't Code § 12532(b). Section 12532(c) instructs that the California Attorney General or his designee "shall be provided all necessary access for the observations necessary to effectuate reviews required pursuant to this section, including, but not limited to, access to detainees, officials, personnel, and records."

40. DHS, through ICE, has entered into contracts for detention services with private entities, intergovernmental services agreements (IGSAs) with county, city, or local government entities in California, and intergovernmental agreements (IGAs) with the U.S. Marshals service that provide ICE with guaranteed housing for ICE detainees as needed. ICE currently has twenty active contracts, IGSAs or IGAs, in California and regularly uses nine detention facilities in California to house civil immigration detainees in ICE custody.

41. Information obtained or developed as a result of an agreement with the detention facility are federal records under the control of ICE for purposes of disclosure and are subject to disclosure only pursuant to applicable federal information laws, regulations, and policies, including but not limited to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, and 8 C.F.R. § 236.6.

42. Three of these facilities, the Adelanto Correctional Facility, the Imperial Regional Detention Facility, and the Mesa Verde Detention Facility are dedicated facilities that exclusively house immigration detainees. In Fiscal Year 2018, these three facilities have had an average daily population of 1,685, 680, and 384 detainees pending the outcome of their administrative immigration cases, respectively.

43. The remaining facilities with IGSAs house both immigration detainees and local detainees and are used on an as-needed basis. In Fiscal Year 2018, average daily detainee populations at the as-needed facilities have ranged between a high of 956 at Otay Mesa Detention and a low of 171 at Rio Cosumnes Correctional Center.

44. DHS, through ICE, houses civil immigration detainees at the Otay Mesa Detention Center in California, a private detention facility that CoreCivic owns and operates. Otay

Mesa has an average daily population of around 1,000 detainees awaiting removal or a decision on removal.

45. Upon information and belief, on November 16, 2017, Defendant Becerra initiated via letter a request to inspect various ICE detention facilities, including Imperial, Adelanto, Mesa Verde, the Theo Lacy Facility, the James A. Musick Facility, Yuba County Jail, Rio Cosumnes Correctional Center, Contra Costa West County Detention Facility, and Otay Mesa, as well as a request to inspect DHS documents concerning aliens detained in these locations.

46. Upon information and belief, Yuba, Rio Cosumnes, Contra Costa, Theo Lacy, and James A. Musick, have been inspected since the law's passage

47. On January 24, 2018, Defendant Becerra via letter informed Imperial, Adelanto, Mesa Verde, and Otay Mesa that he intended to inspect those facilities on either February 26, 2018 or March 5, 2018, and required access to documents and other material subject to ICE control and deemed privileged under federal law and regulation. *See* 8 C.F.R. § 236.6.

48. Upon information and belief, California does not require any local detention facility to comply with section 12532's heightened inspections regime when it houses detainees for other federal or California entities. AB 103's requirements apply only when local detention facilities house federal civil immigration detainees.

49. AB 103 thus requires the California Attorney General to investigate the law enforcement efforts of federal agents engaged in apprehending and transferring aliens, to assess the "due process" provided to those aliens and the "circumstances around their apprehension and transfer to the facility," and to assess the law enforcement decisions of personnel

under contract to the United States, as well as records of unspecified scope. The statute thus commands an improper, significant intrusion into federal enforcement of the immigration laws. California has no lawful interest in investigating federal law enforcement efforts. These provisions violate the Supremacy Clause by, among other things, constituting an obstacle to the United States' enforcement of the immigration laws and discriminating against the United States.

**Restrictions on State and Local Cooperation with Federal Officials (SB 54)**

50. On October 5, 2017, the Governor signed into law the Senate Bill 54 (SB 54), which includes the "California Values Act," effective January 1, 2018 (Exhibit 3).

51. SB 54 limits state and local cooperation with federal immigration enforcement in a number of ways. New Section 7284.6 prohibits state and local law enforcement officials, other than employees of the California Department of Corrections, from, among other things: "[p]roviding information regarding a person's release date or responding to requests for notification by providing release dates or other information," Cal Gov't Code § 7284.6(a)(1)(C); providing "personal information," including (but not limited to) an individual's home address or work address, *id.* § 7284.6(a)(1)(D); and "[t]ransfer[ring] an individual to immigration authorities," *id.* § 7284.6(a)(4).

52. These provisions contain limited exceptions. State and local law enforcement may share with the United States "information regarding a person's release date" or respond "to requests for notification by providing release dates or other information," but only where an individual subject to such information sharing has been convicted of a limited subset crimes, or where the information is available to the public. Cal. Gov't Code §§ 7282.5(a), 7284.6(a)(1)(C). Personal information also may be shared only if it is available to the

public. *Id.* § 7284.6(a)(1)(D). State and local law enforcement agencies may "[t]ransfer an individual to immigration authorities" only if the United States presents a "judicial warrant or judicial probable cause determination," or the individual in question has been convicted of one of a limited set of enumerated felonies or other serious crimes. Cal. Gov't Code §§ 7284.6(a)(4), 7282.5(a).

53. The limited subset of criminal violations does not match federal law governing what may serve as the predicate for inadmissibility or removability, including listing a set of crimes more narrow than those that render an alien removable. *See* 8 U.S.C. §§ 1182(a)(2), 1227(a)(2). And it does not match the set of criminal offenses that require the federal government to detain such aliens upon their release from state or local custody. *Id.* § 1226(c).

54. Upon information and belief, California law does not impose these restrictions on other forms of information sharing on other topics, nor does it restrict transfers of individuals to other law enforcement agencies in this way.

55. These provisions impermissibly prohibit even the most basic cooperation with federal officials. As noted above, federal law contemplates that criminal aliens in state custody who may be subject to removal will complete their state or local sentences first before being detained by the United States, but that federal immigration detention for immigration proceedings or for removal will begin upon the alien's release from state custody. 8 U.S.C. § 1226(c); § 1231(a)(4). Additionally, federal law contemplates that DHS will be able to inspect all applicants for admission, and take all appropriate action against those found to be inadmissible to the United States, even those that may have been transferred to the custody of state and local law enforcement pending such a state

and local prosecution. *See* 8 U.S.C. §§ 1182, 1225(b)(2); 8 C.F.R. § 235.2. And, to facilitate coordination between state and local officials and the United States, Congress expressly prohibited any federal, state, or local government entity or official from prohibiting, or in any way restricting, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status of an individual." 8 U.S.C. § 1373(a); *see also* 8 U.S.C. § 1644. Although SB 54 purports to be consistent with section 1373, *see* Cal. Gov't Code § 7284.6(e), sections 7284.6(a)(1)(C) and (D) explicitly forbid the sharing of information covered by 8 U.S.C. § 1373.

56. The transfer restriction additionally requires that the United States present a "judicial warrant or judicial probable cause determination" before the state or locality may transfer an alien to DHS for appropriate immigration enforcement action. This provision also conflicts with federal law, which establishes a system of civil administrative warrants as the basis for immigration arrest and removal, and does not require or contemplate use of a judicial warrant for civil immigration enforcement. *See* 8 U.S.C. § 1226(a), 1231(a).

57. Upon information and belief, since January 1, 2018, law enforcement agencies in California, as defined by SB 54, will not communicate to DHS the release date or home address of aliens DHS has reason to believe are removable from the United States, or transfer such aliens to DHS custody, even where DHS presents a Congressionally-authorized civil administrative warrant of arrest or removal, *see* 8 U.S.C. § 1226(a); 1231(a), or has transferred those aliens to local law enforcement in the first instance to permit California or its subdivisions to criminally prosecute them for a state crime.

58. By restricting basic information sharing and by barring the transfer to DHS of aliens in

state or local custody upon their release through the means provided for by federal law, SB 54 requires federal immigration officers to either engage in difficult and dangerous efforts to re-arrest aliens who were previously in state custody, endangering immigration officers, the alien at issue, and others who may be nearby, or to determine that it is not appropriate to transfer an alien to state or local custody in the first place, in order to comply with their mission to enforce the immigration laws. California has no lawful interest in assisting removable aliens to evade federal law enforcement.

59. These provisions violate the Supremacy Clause by, among other things, constituting an obstacle to the United States' enforcement of the immigration laws and discriminating against federal immigration enforcement, as well as (with respect to the information-sharing restrictions) expressly violating 8 U.S.C. § 1373(a).

## CLAIM FOR RELIEF

### COUNT ONE – Restrictions on Cooperation with Workplace Immigration Enforcement

60. Plaintiff hereby incorporates paragraphs 1 through 26, and 27 through 35 of the Complaint as if fully stated herein.

61. Sections 7285.1, and 7285.2 of the California Government Code and Sections 90.2 and 1019.2 of the California Labor Code, violate the Supremacy Clause as applied to private employers, and are invalid.

### COUNT TWO – Inspection and Review of Detention Facilities

62. Plaintiff hereby incorporates paragraphs 1 through 26, and 36 through 49 of the Complaint as if fully stated herein.

63. Section 12532 of the California Government Code violates the Supremacy Clause, and is invalid.

### COUNT THREE – Restrictions on State and Local Cooperation

64. Plaintiff hereby incorporates paragraphs 1 through 26, and 50 through 59 of the Complaint as if fully stated herein.

65. Sections 7284.6(a)(1)(C) & (D) and 7284.6(a)(4) of the California Government Code violate the Supremacy Clause and 8 U.S.C. § 1373(a), and are invalid.

### PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enter a judgment declaring that Sections 7285.1 and 7285.2 of the California Government Code, and Sections 90.2 and 1019.2 of the California Labor Code violate the Supremacy Clause as applied to private employers and are therefore invalid;

2. That this Court enter a judgment declaring that Section 12532 of the California Government Code violates the Supremacy Clause and is therefore invalid;

3. That this Court enter a judgment declaring that Sections 7284.6(a)(1)(C) & (D) and 7284.6(a)(4) of the California Government Code violate the Supremacy Clause and are therefore invalid;

4. That this Court issue preliminary and permanent injunctions that prohibit Defendants as well as their successors, agents, and employees, from enforcing against private employers sections 7285.1 and 7285.2 of the California Government Code, and Sections 90.2 and 1019.2 of the California Labor Code;

5. That this Court issue preliminary and permanent injunctions that prohibit Defendants, as well as their successors, agents, and employees, from enforcing Section 12532 of the California Government Code;

6. That this Court issue preliminary and permanent injunctions that prohibit Defendants as

well as their successors, agents, and employees, from enforcing Sections 7284.6(a)(1)(C) & (D) and 7284.6(a)(4) of the California Government Code;

7. That this Court award the United States its costs in this action; and

8. That this Court award any other relief it deems just and proper.

DATED: March 6, 2018

CHAD A. READLER
Acting Assistant Attorney General

MCGREGOR SCOTT
United States Attorney

AUGUST FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

/s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-4293
Fax: (202) 616-8202
E-mail: Erez.R.Reuveni@usdoj.gov

DAVID SHELLEDY
Civil Chief, Assistant United States Attorney

LAUREN C. BINGHAM
JOSEPH A. DARROW
JOSHUA S. PRESS
Trial Attorneys

*Attorneys for Plaintiff*