XAVIER BECERRA
Attorney General of California
THOMAS PATTERSON
Senior Assistant Attorney General
MICHAEL NEWMAN
SATOSHI YANAI
Supervising Deputy Attorneys General
CHRISTINE CHUANG
ANTHONY HAKL
CHEROKEE MELTON
LEE I. SHERMAN
Deputy Attorneys General
State Bar No. 272271
 300 S. Spring Street
 Los Angeles, CA  90013
 Telephone:  (213) 269-6404
 Fax:  (213) 897-7605
 E-mail:  Lee.Sherman@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., Governor of California, in his official capacity; and XAVIER BECERRA, Attorney General of California, in his official capacity,<br><br>Defendants. | Case No. 2:18-cv-00490-JAM-KJN<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**<br><br>Judge: Honorable John A. Mendez<br>Action Filed: March 6, 2018 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants the State of California, Edmund Gerald Brown Jr., Governor of California, in his official capacity, and Xavier Becerra, Attorney General of California, in his official capacity, move this Court to transfer Plaintiff the United States of America's action to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a) and the first-to-file rule. Pursuant to the Court's Minute Order (Dkt. No. 17), no hearing will be set on this matter.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice in Support of Defendants' Motion to Transfer Venue to the Northern District, the other papers and pleadings on file in this action, and upon such matters as may be presented to the Court.

Dated:  March 13, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California

/s/*Christine Chuang*
Christine Chuang
Deputy Attorney General
*Attorneys for Defendants*

XAVIER BECERRA
Attorney General of California
THOMAS PATTERSON
Senior Assistant Attorney General
MICHAEL NEWMAN
SATOSHI YANAI
Supervising Deputy Attorneys General
CHRISTINE CHUANG
ANTHONY HAKL
CHEROKEE MELTON
LEE I. SHERMAN
Deputy Attorneys General
State Bar No. 272271
  300 S. Spring Street
  Los Angeles, CA  90013
  Telephone:  (213) 269-6404
  Fax:  (213) 897-7605
  E-mail:  Lee.Sherman@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**THE STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., Governor of California, in his official capacity; and XAVIER BECERRA, Attorney General of California, in his official capacity,**<br><br>Defendants. | Case No. 2:18-cv-00490-JAM-KJN<br><br>**DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Honorable John A. Mendez<br>Action Filed:  March 6, 2018 |


# INTRODUCTION

The central issue in this case concerns the boundary line between the federal government's immigration powers and the State of California's powers under the Tenth Amendment to establish and enforce laws protecting the welfare, safety, and health of the public. This issue is already being litigated in a related case, filed by the State against the federal government, pending before the Honorable William H. Orrick in the Northern District of California. *See California v. Sessions, et al.*, No. 17-cv-4701 (N.D.Cal.). In light of the substantial overlap between the issues in these cases, and the identity of parties, the State respectfully moves to transfer this case to the Northern District under 28 U.S.C. § 1404(a) and the first-to-file rule.

In a recent order in the Northern District case, Judge Orrick observed: "At some later date, this case may help define the contours of the State's broad constitutional police powers under the Tenth Amendment and the federal government's 'broad, undoubted power over the subject of immigration and the status of aliens.' *U.S. v Arizona*, 567 U.S. 387, 394 (2012). The Trump administration's immigration enforcement policy is clearly at odds with the State's determination of the most effective methods to implement criminal law enforcement.'" *See* Request for Judicial Notice in Support of Defendants' Motion to Transfer Venue to the Northern District ("RJN"), Ex. E (Order Denying Am. Mot. Prelim. Inj.) ("PI Order") at 1. This Court could make the same observation in this case. And the federal government has even framed the issue here as whether "California is intentionally obstructing the enforcement of federal law in violation of the Supremacy Clause." Pl.'s Mot. Prelim. Inj. at 1.

Simply put, both this case and the prior-filed Northern District case turn on the interplay between the federal government's power over immigration and the states' police powers under the Tenth Amendment. To prevent the possibility of inconsistent judgments concerning the same parties on the same issues, and to preserve judicial economy, this case should be transferred to the Northern District of California.

# FACTUAL BACKGROUND

## I. THE FIRST FILED CASE IN THE NORTHERN DISTRICT

Since last year, the State and some of its political subdivisions have been in litigation with the federal government regarding the proper interpretation of 8 U.S.C. § 1373, in the context of the U.S. Department of Justice's ("US DOJ") threat to withhold federal funds from the State unless the State accedes to the federal government's immigration-enforcement demands. On January 25, 2017, President Trump signed an Executive Order directed at so-called "sanctuary jurisdictions." The Executive Order sought to withhold federal grants from those "jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary jurisdictions)," and authorized the Attorney General to initiate "enforcement action[s] against any entity that violates 8 U.S.C. 1373, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law." Exec. Order No. 13,768, 82 Fed. Reg. 8799 at 8801 (Jan. 25, 2017).

The City and County of San Francisco and the County of Santa Clara initially filed lawsuits challenging the Executive Order in the Northern District of California before the Honorable William H. Orrick. Judge Orrick granted both jurisdictions a preliminary, and later, a permanent, injunction enjoining the Executive Order as unconstitutional, including under the Tenth Amendment for seeking to conscript jurisdictions to assist in carrying out the immigration laws. *See Cty. of Santa Clara v. Trump*, 275 F. Supp. 3d 1196, 1215-16 (N.D. Cal. 2017), *appeal docketed*, Nos. 17-17478, 17-17480 (9th Cir. Dec. 14, 2017). Issues surrounding § 1373 were briefed extensively before Judge Orrick, as San Francisco sought declaratory relief alleging that it was in compliance with § 1373. *See* RJN, Ex. G (Pl. San Francisco's Second Am. Compl.) ¶¶ 144-48.[1]

The federal government specifically targeted the State regarding its compliance with § 1373, starting in April 2017. On August 14, 2017, the State filed a lawsuit challenging US DOJ's imposition of immigration-enforcement conditions on federal funding in the Northern District of California. Because of the related cases that existed on these issues, the State's case

---

[1] Judge Orrick ultimately decided that he would consider San Francisco's compliance with § 1373 in the related litigation with the State of California. *Cty. of Santa Clara*, 275 F. Supp. 3d at 1218-19.

2

Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

was assigned to Judge Orrick on August 28, 2017. *See* RJN, Ex. A (*California v. Sessions* Docket). On October 13, 2017, the State amended its complaint to challenge an additional federal-funding condition seeking compliance with § 1373, after it became apparent that California was in danger of being found non-compliant under US DOJ's broad interpretation of § 1373.

In its First Amended Complaint, the State sought a declaration that several California public-safety and confidentiality statutes, including Senate Bill (SB) 54, the California Values Act ("SB 54"), which is the subject of the federal government's third cause of action here, comply with § 1373 as "properly interpreted and construed," and that alternatively, the Tenth Amendment of the U.S. Constitution prevents § 1373 from being "constitutionally enforced" against these statutes. *See* RJN, Ex. A (*California v. Sessions* Docket), Ex. B (First Am. Compl.) ¶¶ 152-53. In fact, the same two provisions of SB 54 that are at issue in the Northern District litigation—the provisions regulating the exchange of release dates and personal information—are squarely presented in the federal government's Complaint in this case. *Compare* RJN, Ex. C at 14 (Pl.'s Am. Mot. Prelim. Inj.) *with* Compl. ¶ 65. The central dispute in *California v. Sessions* is whether the federal government may interpret § 1373 in such a manner as to impinge on the State's police power and commandeer the State's law-enforcement resources for federal immigration-enforcement purposes.

The State filed an amended motion for preliminary injunction on November 7, 2017, which was fully briefed and argued on December 13, 2017. *See* RJN, Ex. A (*California v. Sessions* Docket), Ex. C (Pl.'s Am. Mot. Prelim. Inj.). On January 16, 2018, the federal government moved to dismiss the State's Amended Complaint. *See* RJN, Ex. A (*California v. Sessions* Docket). The motion was fully briefed and argued on February 28, 2018. *See id.* In the context of these motions, the federal government has repeatedly represented to Judge Orrick that it had yet to reach a final determination on whether SB 54 complies with § 1373, including at a recent hearing on the federal government's motion to dismiss. *See* RJN, Ex. F (Hr'g Tr.) 6:7-15 ("[T]his case has really sort of gotten out in front of that administrative process, and . . . there is no final agency determination yet on 1373 compliance."); 41:8-12 ("[T]his dispute is actually not ripe.").

3

Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

As a result of the ongoing motion practice, Judge Orrick has become intimately familiar with § 1373, SB 54, and the constitutional arguments of both parties.

On March 5, 2018, Judge Orrick denied the federal government's motion to dismiss and denied the State's amended motion for preliminary injunction.  RJN, Ex. D (Order Denying Mot. Dismiss), Ex. E (PI Order).  Judge Orrick found that the record was insufficient to assess the State's likelihood of success on the merits and that the issues in the case would benefit from further factual development.  RJN, Ex. E (PI Order) at 26, 28.  The court also found that the controversy was rooted in a constitutional analysis of federal and state powers and whether the federal government's interpretation of § 1373 violates the Tenth Amendment, a core issue in this case.  To move the case toward resolution, Judge Orrick ordered the parties to file a joint case management statement by March 20 regarding a schedule for discovery and cross-motions for summary judgment in the upcoming months, and set a Case Management Conference for March 27.  *See* RJN, Ex. D (Order Denying Mot. Dismiss) at 2.

## II. THE CURRENT LAWSUIT

On March 6, 2018, *one day after* Judge Orrick denied both motions in *California v. Sessions* following the federal government's argument that SB 54's compliance with § 1373 was unsettled and therefore unripe for judicial review, the federal government filed this lawsuit.  The complaint claimed that three recently-enacted California statutes, including SB 54, are invalid because they are "preempted by federal law and impermissibly discriminate against the United States, and therefore violate the Supremacy Clause of the United States Constitution."  Compl. ¶ 2.  In addition to claiming that SB 54 violates the Supremacy Clause and § 1373, the Complaint sets forth causes of action relating to the constitutionality of Assembly Bill (AB) 450 (Immigrant Worker Protection Act) ("AB 450") and section 12 of AB 103 (relating to review of detention facilities) ("AB 103").  *Id.* ¶¶ 60-65.  Like *California v. Sessions*, the dispute in this case focuses on fundamental constitutional questions surrounding the federal government's immigration enforcement power and the State's determination of how to best use its broad constitutional police powers to implement policies to protect the safety and welfare of all those residing in the State, regardless of immigration status.

4

Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

SB 54, the subject of *California v. Sessions*, was enacted in accordance with the State's powers to determine how to best expend limited law enforcement resources. The statute defines when California law enforcement agencies ("LEA") have discretion to respond to "notification requests," which are requests by an immigration authority asking an LEA to inform it "of the release date and time in advance of the public of an individual in its custody." *See* Cal. Gov't Code §§ 7283(f), 7284.6(a)(1)(C). LEAs are also generally prohibited from using LEA funds or personnel to "provid[e] personal information," about an individual "for immigration enforcement purposes," unless that information is "available to the public." *Id.* § 7284.6(a)(1)(D). Lastly, section 7284.6(a)(4) defines when LEAs may transfer persons in their custody to immigration authorities or when the LEA is authorized to do so by a judicial warrant or judicial probable cause determination. *Id.* § 7284.6(a)(4). Although SB 54 explicitly authorizes compliance with all aspects of § 1373, *id.* § 7284.6(e), the federal government in *California v. Sessions* argued that the State's claims were unripe because it had not yet determined if SB 54 was actually in conflict with § 1373. *See* RJN, Ex. F (Hr'g Tr.) 6:7-15, 41:8-12. However, in *this* suit, filed the day after Judge Orrick relied in part on that argument in denying the State's request for a preliminary injunction, the federal government is now claiming that the statutes do in fact conflict. Unless this case is transferred, this new assertion will be litigated in both this court and in the Northern District.

The federal government's two other claims allege that AB 450 and AB 103 are targeted against, and create an obstacle to, the federal government's immigration laws. AB 450 was signed into law on October 5, 2017, and became effective on January 1, 2018. AB 450 furthers the State's interest in ensuring that all protections, rights, and remedies available under state law are available to all workers regardless of immigration status. *See* Cal. Gov't Code § 7285. The law generally prohibits an employer, except as otherwise required by federal law, from "providing voluntary consent to an immigration enforcement agent to enter any nonpublic areas of a place of labor." This provision does not apply if the agent provides a judicial warrant. *Id.* § 7285.1. In addition, section 7285.2 of the Government Code generally prohibits an employer, except as otherwise required by federal law, from providing voluntary consent to an immigration-

5

enforcement agent to access or obtain the employer's employee records. This provision does not apply if the agent presents a subpoena or judicial warrant, and also does not apply to requests for certain documents for which a Notice of Inspection is provided to the employer. *Id.* § 7285.2. AB 450 also amends California's Labor Code to require that employers post notices to employees regarding "any inspections of I-9 Employment Eligibility Verification forms or other employment records conducted by an immigration agency" within 72 hours of receiving notice. Cal. Lab. Code, § 90.2(a). The amended Labor Code now also prohibits a public or private employer from "reverify[ing] the employment eligibility of a current employee at a time or in a manner not required by Section 1324a(b) of Title 8 of the United States Code." *Id.* § 1019.2.

AB 103, signed into law as part of an omnibus public-safety bill on June 27, 2017, requires the Attorney General to review the conditions at "county, local, or private locked detention facilities" housing non-citizens detained for purposes of civil immigration proceedings. Cal. Gov't Code § 12532(a), (b). Both AB 450 and AB 103 concern matters typically left to the states and do not purport to regulate federal officials or immigration. Like the challenge to SB 54, the challenge to these statutes turns on the extent of the federal government's regulation of immigration and the rights reserved to the states under the Tenth Amendment.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). The purpose of this provision is "to prevent the waste of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, 27 (1960)) (internal quotations omitted). A district court has broad discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

The district court must first determine whether the action is one that "might have been

6

Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

brought" in the transferee forum. *See* 28 U.S.C. § 1404(a); *Am. Canine Found. v. Ben Sun, D.M.V.*, 2006 U.S.Dist.LEXIS 55787, *8 (E.D.Cal. July 27, 2006). Once the court finds venue proper, the court "consider[s] public factors relating to the interest of justice and private factors relating to the convenience of the parties and witnesses." *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The "convenience" factors relevant here include: (1) plaintiff's choice of forum; (2) the contacts relating to the plaintiff's cause of action in the chosen forum; (3) the convenience of witnesses; and (4) ease of access to the evidence. *See Mussetter Distrib. v. DBI Bev. Inc.*, 2009 U.S. Dist.LEXIS 61013, *9-*10 (E.D.Cal. July 8, 2009); *Jones,* 211 F.3d at 498-99.

In addition, the first-to-file rule is a doctrine of federal comity that permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).

## LEGAL ARGUMENT

### I. THE NORTHERN DISTRICT OF CALIFORNIA IS A DISTRICT IN WHICH THE FEDERAL GOVERNMENT'S LAWSUIT "MIGHT HAVE BEEN BROUGHT"

Venue would be proper in the Northern District of California. A civil action may be brought in any district where "a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Venue can therefore lie in the Northern District, since the California statutes at issue apply statewide. *See Am. Canine Found.*, 2006 U.S.Dist.LEXIS 55787 at * 9 (granting transfer "[s]ince . . . [the California statute] applies throughout the state, it applies equally in the Northern District as it does in the Eastern District."). Furthermore, the declaration of Thomas Homan submitted by the federal government in support of its preliminary injunction motion specifically lists three ICE field offices (Los Angeles, San Diego, and San Francisco) that are impacted by the laws at issue, one of which is located in the Northern District. *See* Declaration of Thomas D. Homan, Dkt. No. 2-2 ("Homan Decl.") ¶ 21. Thus, the Court should find that this action "might have been brought" in the Northern District. *See* 28 U.S.C. § 1404(a).

7

Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

**II.   THE FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFERRING THIS CASE TO THE NORTHERN DISTRICT**

**A.   This Case Should Be Transferred in the Interests of Justice Because of the Pendency of a Related Case and Because Consolidation Would Promote Judicial Economy**

This matter should be transferred to the Northern District in the interests of justice, to allow the State to seek to consolidate it with *California v. Sessions*, because it involves the same parties and overlapping issues. The "interest of justice" is a decisive factor, even if the other "convenience" factors weigh against transfer. *Am. Canine Found.*, 2006 U.S.Dist.LEXIS. 55787 at * 9; *Gatdula v. CRST Int'l, Inc.*, 2011 U.S.Dist.LEXIS 13706, *8 (E.D.Cal. Feb. 8, 2011).

"The feasibility of consolidation is a significant factor, although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Industries, Inc. v. U.S. Dist. Court for Cent. Dist.*, 503 F.2d 384, 389 (9th Cir. 1974) (internal citations omitted); *see also Am. Canine Found.*, 2006 U.S.Dist.LEXIS 55787 at *9-*10 (the pendency of a related case in the transferee forum is an important consideration when determining the interests of justice). Indeed, the Supreme Court has recognized that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [the federal transfer statute] was designed to prevent." *Continental Grain Co.*, 364 U.S. at 26. Thus, centralizing the adjudication of two cases with common issues allows the parties to conserve their resources and avoids inconsistent judgments, especially where the claims can be consolidated. *See Mussetter Distrib.*, 2009 U.S.Dist.LEXIS 61013 at *13; *Kurtz v. Interlius, Inc.*, 2011 U.S.Dist.LEXIS 101922, *5 (E.D.Cal. Sept. 9, 2011) ( stating that "judicial resources are conserved when an action adjudicated by a court that has already 'committed judicial resources to the contested issues and is familiar with the facts of the case.'").

Differences in causes of action, named parties, or isolated facts do not preclude transfer. *See Am. Canine Found.*, 2006 U.S.Dist.LEXIS 55787 at * 10; *Mussetter Distrib.*, 2009 U.S.Dist.LEXIS 61013 at *13. In *American Canine Foundation*, the district court transferred a

8

Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

case challenging the constitutionality of a California statute from the Eastern District to the Northern District, because a pending case in the Northern District challenged the same statute, despite some differences in the causes of action pleaded and the named defendants. *Am. Canine Found.*, 2006 U.S.Dist.LEXIS 55787 at *10 (finding that "[i]t would save judicial resources, time and money to have these similar cases tried in the same district").

Here, the pendency of a related, earlier-filed action weighs heavily in favor of transfer and should be decisive. Indeed, if this case is transferred, the State intends to seek consolidation of the matters given the overlapping claims regarding SB 54 and § 1373. That this case also involves a challenge to AB 450 and AB 103 should not preclude transfer because this matter, at its core, involves the same fundamental legal issue as *California v. Sessions*: "the contours of the State's broad constitutional police powers under the Tenth Amendment and the federal government's 'broad, undoubted power over the subject of immigration and the status of aliens.'" RJN, Ex. E (PI Order) at 1 (quoting *United States v. Arizona*, 567 U.S. 387, 394 (2012)).[2]

Transfer would therefore promote judicial economy. The parties and Judge Orrick in *California v. Sessions* have already expended a substantial amount of time and resources litigating the contested issues through a motion to dismiss and a motion for preliminary injunction. After vigorous motion practice, the parties are ready to begin discovery and proceed to the merits of the State's claims—which can now be assessed in light of the federal government's plain contention that SB 54 violates § 1373. The court has already held two hearings and devoted significant judicial resources to evaluating the very issues raised by the federal government in this case.[3] In fact, Judge Orrick has presided over issues surrounding

---

[2] The federal government implicitly concedes that the mere fact that one of the three laws at issue in *Brosnan v. Becerra* was sufficient to at least raise the possibility of relatedness to the Court. *See* Dkt. Nos. 9 (Pl.'s Notice Concerning Possibly Related Case), 12 (Related Case Order [declining to relate or reassign case]). However, unlike *Brosnan v. Becerra,* which involves only the potential enforcement of AB 450 against a sole business owner, this case and *California v. Sessions* both involve the same parties, the same overarching constitutional questions, the exact same legal issues regarding SB 54 and § 1373, and an extensive litigation that has already transpired.

[3] Furthermore, "docket congestion" is a relevant factor. *Stay-Dri Continence Mgmt. Sys., LLC v. Haire*, 2008 WL 4304604, *4 (E.D.Cal. Sept. 10, 2008) ("The interest of ensuring that this matter proceeds speedily to trial weighs in favor of transfer."). The average pending actions per judgeship in the Northern District as of December 31, 2017 is 657, compared to the Eastern

Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

§ 1373 and the limits to the federal government's ability to conscript state and local jurisdictions in furtherance of the government's federal immigration-enforcement demands since January 2017 in the *County of Santa Clara v. Trump* litigation, as discussed above. Transferring this case to the Northern District would allow the court to adjudicate common legal issues at the same time, avoiding the possibility of inconsistent judgments. Thus, "[t]he interests of justice 'weigh particularly heavily' in favor of transfer." *See Am. Canine Found.*, 2006 U.S.Dist.LEXIS 55787 at \*10.

### B. The Federal Government's Choice of Forum Is Not Controlling Here

The federal government's choice of forum should be afforded little deference. While a plaintiff's choice of forum may ordinarily weigh against transfer, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter, the plaintiff's choice is only entitled to minimal consideration." *Stay-Dri Continence Mgmt. Sys.*, 2008 WL 4304604 at \*2 (quoting *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)) (internal quotations omitted). The Complaint contains no allegations indicating a particularized interest of either the parties or subject matter in the Eastern District. Indeed, one of the main field offices allegedly impacted by the California laws at issue is in San Francisco, which is located in the Northern District. Homan Decl. ¶ 21. Moreover, California statutes apply statewide and, as discussed *infra*, the parties and witnesses are located throughout California and out-of-state. *See* Dkt. Nos. 2-2, 2-3, 2-4, 2-5. The federal government's choice of forum is therefore not controlling here.

### C. The Convenience of the Parties and Witnesses and the Ease of Access to Evidence Further Weigh in Favor of Transfer

The convenience of the parties and witnesses also weigh in favor of transfer. The federal government is located in the District of Columbia and has alleged no significant contacts with the Eastern District in this case. In fact, the federal government's witnesses and counsel are located

---

District's average of 1,246 pending actions per judgeship. *See* RJN, Exs. H and I (U.S. District Courts, National Judicial Caseload Profiles); *Stay-Dri Continence Mgmt. Sys., LLC*, 2008 WL 4304604 at \*4 (finding relevant that the Eastern District has a "significantly larger caseload" than transferee forum). This factor therefore also weighs in favor of transfer to the Northern District.

Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

in the District of Columbia and San Diego.  *See generally* Homan Decl., Dkt. No. 2-2; Declaration of Todd Hoffman, Dkt. No. 2-3; Declaration of Chief Rodney S. Scott, Dkt. No. 2-4; Declaration of Carl C. Risch, Dkt. No. 2-5.  Thus, they will be required to travel a nearly identical distance regardless of whether the case proceeds in the Eastern or Northern District.  *See Am. Canine Found.*, 2006 U.S.Dist.LEXIS 55787 at *11-*12.  Furthermore, the documentary evidence in both cases will likely be located in the District of Columbia and in various locations throughout California.

### III. THE FIRST-TO-FILE RULE ADDITIONALLY SUPPORTS TRANSFERRING THIS CASE TO THE NORTHERN DISTRICT

The "first-to-file" rule further supports transferring this case to the Northern District.  A district court may decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.  *Pacesetter Systems, Inc.*, 678 F.2d at 94-95 ("Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action.").  The rule is meant to promote efficiency and sound judicial administration and "should not be disregarded lightly." *Id.* at 95 (quoting *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)).  The court considers three factors when evaluating whether to apply the first-to-file rule: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of all the issues." *Taylor v. AlliedBarton Sec. Serv. LP*, 2014 WL 1329415, *7 (E.D.Cal. Apr. 1, 2014) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991)).  Strict identity of the parties and identical issues in the cases are not required; rather, they must be "substantially similar." *Id.* at *7-*8.

All three factors are met here.

*First*, the chronology of the actions supports transfer of this action because *California v. Sessions* was filed on August 14, 2017.  *See* RJN, Ex. A (*California v. Sessions* Docket).  The State filed its amended complaint seeking a declaration that the State's laws comply with § 1373 as properly interpreted and construed by its plain text and under the Tenth Amendment on

11
Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

October 13, 2017.  This action was filed nearly five months later on March 6, 2018.  Thus, the first factor weighs in favor of applying the first-to-file rule.

*Second*, the parties in both cases are the same: the State and the federal government.

*Third*, the issues are substantially similar and in the case of the federal government's third cause of action relating to SB 54, they are *identical*.

As discussed *supra*, the central issue in both cases concerns the limits of the federal government's immigration powers as they relate to the State's constitutional police powers to enact laws to protect public safety and the welfare of its residents.  Transfer of this case will avoid duplication of litigation and allow one court to adjudicate common legal issues.  Thus, the Court should apply the first-to-file rule, decline to exercise its jurisdiction over this action, and transfer this case to the Northern District.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion to transfer this case to the Northern District of California.

Dated:  March 13, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California

/s/*Christine Chuang*
Christine Chuang
Deputy Attorney General
*Attorneys for Defendants*

12

Defs.' Mot. Transfer Venue to N.D. Cal.; Mem. P.& A.  (18-cv-00490-JAM-KJN)

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the foregoing document using the U.S. District Court for the Eastern District of California's Electronic Document Filing System (ECF) on March 13, 2018 and that service on all counsel of record will be accomplished by the ECF system.

/s/*Christine Chuang*
Christine Chuang
Deputy Attorney General