March 19, 2018

The Honorable Kendall J. Newman
United States District Court
Eastern District of California
501 "I" Street, Suite 4-200
Sacramento, CA 95814

RE:    United States of America v. State of California, et al.
        <u>U.S.D.C. E.D. Cal., Case No. 2:18-CV-00490-JAM-KJN</u>

Dear Judge Newman:

    The parties respectfully submit this joint letter brief in response to the Court's Order dated March 14, 2018.

**I.    INTRODUCTION**

    **A.    The State's Position**

    The interests of justice require that the State be granted targeted, expedited discovery to respond to the federal government's efforts to enjoin three duly enacted laws that California's legislature deemed necessary to protect the safety, health, and welfare of California's residents (SB 54, AB 450, and AB 103). As the Court well knows, these laws touch on weighty and important issues that are of great concern to California and her residents. These laws, particularly SB 54, were debated at length in the legislature and in the public eye and are the product of extensive negotiations between multiple stakeholders and competing interests. They reflect the Legislature's considered views on the appropriate use of state resources, including the proper priority for state law enforcement and the need for privacy and workplace protection for Californians, while respecting the role of the federal government over immigration.

    Given the federal government's months of preparation in filing its motion, and the four lengthy declarations submitted with its motion, totaling 75 pages, the State should be permitted to inquire into the factual assertions on which the preliminary-injunction motion is based. That is particularly true where a former federal immigration official has publicly asserted the inaccuracy of public claims made by one of the declarants, as detailed below. While the State intends to show in its opposition to the preliminary-injunction that the United States is unlikely to succeed on the merits of its challenge, discovery here is also necessary to show the United States has failed to meet its burden of showing irreparable injury.

    The expedited discovery requested here has been repeatedly narrowed through the parties' meet-and-confer process. Although the State will ultimately seek discovery on the merits, the discovery sought here solely focuses on the purported irreparable harm as described in the four declarations that support the preliminary-injunction motion, which is exclusively in the United States' possession. The United States' motion relies extensively, and almost exclusively, on factual assertions from the four declarations to assert that the challenged laws interfere with federal immigration enforcement. Pl.'s Mot. for Prelim Inj. ("PI Mot."), ECF No. 2-1 at 34-37. Depositions of two declarants will provide the State with information essential to responding to the motion. In addition, the interrogatories and production requests seek information primarily in

the possession of only two federal agencies responsible for immigration enforcement: Immigration and Customs Enforcement (ICE) and Customs and Border Patrol (CBP). These are narrow, targeted requests to which the federal government should be able to respond expeditiously. For these reasons, good cause exists to grant the State's request.

### B. The United States' Position

This case concerns the purely legal issues of whether three newly enacted California laws are preempted and therefore violate the Supremacy Clause. Discovery will shed no light on those purely legal issues.[1] Defendants have at no time advanced a legally sufficient rationale for why they believe their requests meet the relevant standard for expedited discovery. During the meet and confer process, Defendants alleged that they needed expedited discovery to test the "veracity" of the declarations, particularly that of Thomas Homan, regarding the harm caused by aliens who have been apprehended for criminal conduct, but then released by California law enforcement. However, Defendants' need for such factual information is reduced where, as here, California's actions have caused irreparable harm to the constitutional order. *Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 366-67 (1989) ("Irreparable injury may possibly be established . . . by a showing that the challenged state statute is flagrantly and patently violative of . . . the express constitutional prescription of the Supremacy Clause.") (citation omitted). What is more, California *already* has the information it seeks, as it is fully aware of the aliens it has released from custody—whereas the United States often is not—and California should be in possession of requests for information regarding release and transfer it has received from the United States, making a discovery request for this information particularly inappropriate. More importantly, the law at issue, SB-54, sets forth in detail when state law enforcement agencies must refuse to share release information with or transfer custody to the United States, making discovery of limited utility given that the parties can assess the law's impact based on its provisions.

Counsel for Plaintiff and Defendants met and conferred multiple times via telephone and e-mail over the past week.[2] During those conversations, Defendants repeatedly represented that they needed two categories of information in order to respond to the pending motion for a preliminary injunction. First, Defendants all I-247A detainers issued to California law enforcement jurisdictions in 2018 until the filing of the complaint, and for purposes of comparison, all I-247As issued during a two month period in 2017. A detainer is issued by DHS to a law enforcement agency and seeks, among other things, notice of when an alien in state or local criminal custody is to be released. Second, Defendants requested depositions of the four declarants whose declarations the United States relies on in support of its motion for preliminary injunction. Although discovery at this stage is unwarranted, the United States offered, in a spirit of cooperation, to facilitate the State's prompt review by providing spreadsheets from ICE and

---

[1] The United States believes this issue can be decided on the papers without need for a hearing.
[2] Defendants rejected the United States' proposal for exchanging the parties' respective portions of this letter brief, which this Court previously characterized as "not [] unreasonable," ECF No. 21, n.1, and refused to provide their portion until 7:38 P.M. EDT on Saturday, March 17. Thus, the United States has had only one business day to prepare its portion of this brief.

CBP that would provide the information regarding detainers Defendants sought.[3] Specifically, the spreadsheets would contain fields for the name, date of birth, alien number, date the detainer was issued, and any available associated criminal history.[4] This information, coupled with the criminal records Defendants already possess, is more than sufficient for Defendants to address the harm set forth in the declarations regarding the release of criminal aliens by California without notice to DHS. It would further eliminate any potential basis to seek depositions from agency heads at this stage.

After rejecting the United States' offer to resolve this issue, on Friday afternoon at 4:30 P.M. EDT, Defendants for the first time made an entirely new and different proposal—this one for interrogatories and a vague and ill-defined document production request. This proposal is far broader than the request for detainer information, will be impossible to satisfy in the 14-day period, and is not targeted to address the issue California identified as critical, namely, whether law enforcement agencies in California were now releasing criminals that they previously transferred to DHS custody. Defendants also persist in their request for depositions.

## II.   LEGAL STANDARD FOR SEEKING EXPEDITED DISCOVERY

### A.   The State's Position

Federal Rule of Civil Procedure 26(d) permits early discovery. In the Ninth Circuit, courts apply a "good cause" standard when evaluating a request for expedited discovery. *Trulite Glass & Aluminum Sols., LLC v. Smith*, No. 16-cv-1798, 2016 WL 8738432, at *1 (E.D. Cal. Aug. 10, 2016) (Mendez, J.); *First Time Videos, LLC v. Doe*, No. 12-cv-621, 2012 WL 1355725, at *2 (E.D. Cal. Apr. 18, 2012). Good cause exists where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Trulite*, 2016 WL 8738432, at *1. "[C]ourts frequently find good cause for expedited discovery in . . . cases where a preliminary injunction is pending." *Id.* at *1 (citing *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-1846, 2011 WL 1938154, at *2 (N.D. Cal. May 18, 2011); *see also* Advisory Committee Notes to the 1993 amendments to Rule 26(d) (discovery before the Rule 26(f) conference "appropriate in some cases, such as . . . requests for a preliminary injunction").[5]

---

[3] A spreadsheet was offered to facilitate and expedite review. Defendants' request likely encompassed over 10,000 detainers. The spreadsheet could be electronically generated and provide the information the State sought, while gathering over 10,000 detainers would be time consuming and burdensome, and result in a production that would be far more time consuming to review.

[4] As discussed in further detail below, this is information Defendants already have.

[5] Plaintiff's assertion that the State must show that it would be "irreparably harmed" absent the discovery is incorrect. ECF No. 16 at 8. Courts in this circuit have expressly rejected that standard. *See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). Regardless, the State would suffer irreparable injury if a preliminary injunction were granted. *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined.").

### B. The United States' Position

No discovery is needed to resolve the preliminary injunction motion, which raises purely legal issues, and where the burden is on the United States as plaintiff to show an entitlement to relief. Indeed, each of the cases that Defendants cite in support of their request for expedited discovery involve a *plaintiff's* request for expedited discovery. *See Trulite*, 2016 WL 8738432, at *1 (permitting plaintiffs limited expedited discovery); *First Time Videos,* 2012 WL 1355725, at *4 (granting plaintiff discovery to determine the identity of a Doe defendant); *Apple Inc.*, 2011 WL 1938154, at *3 (denying plaintiffs' request for early Fed. R. Civ. P. 30(b)(6) depositions while permitting request regarding product packaging and design). That is because typically, "the lack of discovery . . . is more prejudicial to Plaintiff than Defendants, since Plaintiff carries the burden of proof on its motion." *TGI Friday's Inc. v. Stripes Rests., Inc.*, No. 1:15-CV-00592, 2015 WL 2341991, at *2 (E.D. Cal. May 13, 2015).

Although Defendants contend that the relevant standard is "good cause," a higher preliminary injunction standard is appropriate here. *See Patrick Collins, Inc. v. John Does 1 through 37*, No. 2:12-CV-1259, 2012 WL 2872832, at *2 n.1 (E.D. Cal. July 11, 2012) ("'Courts are split as to whether a party seeking expedited discovery must satisfy a 'good cause'" standard or a higher preliminary injunction standard); *see Special Situations Cayman Fund, L.P. v. Dot Com Entm't Grp., Inc.*, No. 03–CV–0811, 2003 WL 23350128, at *1 n. 7 (W.D.N.Y. Dec. 5, 2003) (detailing the split). At the very least, when applying the "good cause" standard, a higher threshold should be met given that it is Defendants seeking discovery and the concomitant delay that will cause. And even if a showing of good cause is made, California must demonstrate that it "will be irreparably harmed by delaying the broad-based discovery requested until after the initial conference between the parties pursuant to Rule 26." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066-67 (C.D. Cal. 2009) (internal quotation marks and citation omitted); *see id*. (collecting cases); *ForceX, Inc. v. Tech. Fusion*, LLC, No. 4:11-cv-88, 2011 WL 2560110, at *4-5 (E.D. Va. June 27, 2011) (courts assess "whether the requesting party has shown a likelihood of irreparable harm without access to expedited discovery"); *Lewis v. Alamance Cnty. Dep't of Soc. Servs.*, No. 1:15-cv-298, 2015 WL 2124211, at *1 (M.D.N.C. May 6, 2015). Indeed, "discovery is not necessary for Defendants to get fair notice of the evidence Plaintiff will be relying on in support of its motion. Plaintiff's evidence was submitted with the motion." *TGI Friday's*, 2015 WL 2341991, at *2. And even if Defendants can show irreparable harm, discovery requests must be "narrowly tailored to obtain information relevant to a preliminary injunction determination." *Am. LegalNet*, *Inc.*, 673 F. Supp. 2d at 1066 (collecting cases). Factors to be considered in making the determination of whether expedited discovery should be granted include "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (internal quotation marks and citation omitted).

### III. RELEVANCE OF TRANSFER AND NOTIFICATION REQUESTS

### A. The State's Position

One area of inquiry that extends throughout the State's requests for depositions, document requests, and interrogatories concerns requests made by federal immigration authorities to: (1)

transfer a person to DHS custody after completion of a proceeding or investigation for which a detainee was transferred to state or local custody ("transfer requests"); or (2) notify DHS as early as practicable (at least 48 hours, if possible) before a detainee is released from state or local custody ("notification requests"). These requests are relevant to the litigation because one of the three challenged laws, SB 54, allows California law-enforcement agencies to comply with notification or transfer requests if the subject of those requests has met the criteria of being convicted of one of hundreds of offenses identified in California Government Code section 7282.5. *See* Gov't Code § 7284.6(a)(1)(C), (a)(4). Plaintiff alleges that these SB 54 provisions cause irreparable harm by "severely imped[ing] the United States' ability to identify and apprehend removable aliens, especially criminal aliens." PI Mot. at 35; *see also id.* at 35-37.

### B.    The United States' Position

The discovery sought is irrelevant to the legal issue of whether the California laws violate the Supremacy Clause. The United States does not dispute that California's response to DHS transfer and notification requests are relevant to harm here—particularly when California law enforcement agencies disregard those requests based on SB 54 with respect to aliens who are arrested for criminal conduct in California and then released, as those aliens then require at large apprehension by DHS or may commit further crimes in the United States given high recidivism rates for those involved in criminal activity. However, relevance is not the legal standard for expedited discovery. Defendants fail to meet their burden under this standard, and cannot show that they will be harmed without this discovery. And importantly, as discussed below, the information that Defendants claim to seek relating to these requests is already in their "possession, custody, or control" under Fed. R. Civ. P. 34.

## IV.   DEPOSITION OF THOMAS HOMAN

### A.    The State's Position

The State seeks to depose Thomas D. Homan, ICE Deputy Director and Sr. Official Performing the Duties of the Director, for a full-day deposition on fifteen specific topics that solely relate to the purported irreparable harm caused by the challenged state laws.[6] Homan's

---

[6] The State has proposed the following topics specific to California for Homan's deposition: (1) ICE's enforcement operations in California, *see, e.g.,* Homan Decl. (ECF No. 2-2, Ex. A) ¶¶ 9,18-19, 20, 22, 27, 30, 36-46; (2) policies and procedures regarding ICE's use of notification and transfer requests, *see, e.g., id.* ¶¶ 18, 22, 36-37, 39; (3) ICE's issuing of notification and transfer requests to state and local law enforcement, including their compliance with those requests, *see, e.g., id.* ¶¶ 22, 24, 27, 39-42, 44-45; (4) the effect of SB 54 on ICE's communications and relationships with state and local law enforcement, *see, e.g., id.* ¶¶ 20, 22, 23-24, 29-30, 74; (5) ICE's policies and processes for identifying persons potentially removable from the country, *see, e.g., id.* ¶¶ 20, 22, 23, 35-36; (6) law enforcement databases that are accessible to ICE, *see, e.g.*, *id.* ¶ 23; (7) purported harm caused by AB 103 inspections of civil immigration detention facilities, *see, e.g., id.* ¶¶ 47, 60-67, 68; (8) ICE's contracts with civil immigration detention facilities, *see, e.g.*, *id.* ¶¶ 51-53; (9) the federal government's physical capacity to hold detainees in civil immigration detention facilities, *see, e.g., id.* ¶¶ 19, 51-52; (10)

declaration represents the crux of the United States' claims of irreparable harm. The preliminary-injunction motion refers extensively to Homan's 44-page declaration, citing it *22* times throughout the seven pages devoted to irreparable harm. *See* PI Mot. at 33-37. The United States' motion relies on a number of conclusory, yet seemingly fact-intensive assertions, that warrant examination such as how (i): AB 450 "impedes ICE's ability to conduct [its] operations," Homan Decl. ¶ 86, *see* PI Mot. at 34; (ii) AB 103's "inspection[s] present[] a burdensome intrusion into facility operations and pulls scarce resources away from other sensitive law enforcement tasks," Homan Decl. ¶ 60, *see* PI Mot. at 35; and (iii) SB 54 "shield[s] from detection removable aliens detained in California prisons and jails and obstruct[s] ICE's efforts to take these aliens into custody for removal purposes." PI Mot. at 35 (quoting Homan Decl. ¶ 22). The State has good cause to cross-examine Homan's assertions.

The federal government is best positioned to know how it allegedly has been irreparably harmed by California's laws. *See, e.g.*, Topic Nos. 4, 7, 11, 14; *see also* Fed. R. Civ. P. 26(b) (including "relative access" as a factor informing the scope of discovery). Only ICE can authoritatively speak to its immigration-enforcement operations or its policies and procedures for issuing notification and transfer requests, identifying persons potentially removable from the United States, and granting parole entry requests. *See,* Topic Nos. 1, 2, 5, 6, 12, 15. And where other entities may have some of the information on the topics subject to the deposition, ICE is far better positioned to provide the information than anyone else. *See* Topic Nos. 3, 8, 9, 10, 13.

Good cause for deposing Homan is further supported by the fact that James Schwab, who served as an ICE spokesman in its San Francisco office, recently resigned after Homan and the U.S. Attorney General reportedly made false claims that 800 undocumented immigrants escaped arrest as a result of statements made by the Oakland mayor.[7] As Schwab said: "I quit because I didn't want to perpetuate misleading facts. … I asked them to change the information. I told them the information was wrong, they asked me to deflect, and I didn't agree with that." *Id.*

### B. The United States' Position

Defendants assert that they need to depose Deputy Director Homan because his declaration is the "crux" of the United States' harm argument. However, the information that the United States is relying upon to support its motion for a preliminary injunction is contained within the declaration attached to its motion and, therefore, no deposition is necessary. And contrary to

---

ICE's communications with civil immigration detention facilities, *see, e.g., id.* ¶ 58; (11) SB 54's impact on ICE and national security and investigative operations, *see, e.g., id.* ¶¶ 70-78; (12) policies for granting parole entry for extradition requests, *see, e.g., id.* ¶¶ 75-78; (13) ICE's task forces with state and local law enforcement agencies, *see, e.g., id.* ¶¶ 20, 71; (14) impact of AB 450 on ICE's operational and enforcement activities, *see, e.g., id.* ¶¶ 84-89; and (15) ICE's Form I-9 inspections in California, *see, e.g., id.* ¶¶ 83-85. The State proposed these topic areas to the United States at 12:02 am Friday morning, and offered to meet and confer, but the United States has not offered counter topic areas.

[7] Hamed Aleazia, *San Francisco's ICE spokesman quits, disputes agency's claim that 800 eluded arrest*, SAN FRANCISCO CHRONICLE (Mar. 12, 2018), https://www.sfchronicle.com/bayarea/article/ICE-spokesman-said-to-quit-over-officials-12748022.php.

California's assertion, a key injury to the United States is that it *does not know* when California law enforcement agencies are releasing criminal alien given that the entire point of SB 54 is to preclude information-sharing. California, on the other hand, knows when it is releasing aliens, and by the terms of the statute itself, is not sharing it.

Defendants already have the information necessary to respond to Plaintiff's motion for a preliminary injunction, further rendering a deposition unnecessary. Defendants assert that an expedited deposition is necessary because the United States is in the best position to know how it has been harmed by Defendants' actions. But Defendants know their own actions. They, and not the United States, know about contemplated enforcement under AB 450, they know about the scope of their completed and threatened inspections under AB 103, and they know which individuals its law enforcement agencies have declined to notify or transfer to DHS under SB 54. Release information is within Defendants' possession, custody and control. "The Attorney General shall have *direct supervision over every district attorney and sheriff* and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, *and may require any of said officers to make reports* concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to the Attorney General may seem advisable." Cal. Const. art. V, § 13 (emphasis added); *see* Cal. Penal Code § 13020 (California Attorney General may obtain "statistical data" from state law enforcement entities). California district courts have affirmed that, if authority to access exists in state law, as it does here, the Attorney General has control under Fed. R. Civ. P. 34. *See Bovarie v. Schwarzenegger*, No. 08CV1661, 2011 WL 719206, at *4 (S.D. Cal. Feb. 22, 2011) (requiring production when the Code of Regulations allows the Attorney General to obtain records); *Woodall v. California*, No. 1:08-CV-01948, 2010 WL 4316953, at *5 (E.D. Cal. Oct. 22, 2010); *Carter v. Dawson*, No. 1:07-CV-01325, 2010 WL 1796798, at *2 (E.D. Cal. May 4, 2010); *Soto v. City of Concord*, 162 F.R.D. 603, 619–20 (N.D. Cal. 1995).

The proposed scope of the deposition is almost limitless, and appears indistinguishable from discovery Defendants could seek during the merits stage of this case. *Harbor Freight Tools USA Inc. v. Lumber Liquidators Holdings Inc.*, No. CV1210789, 2013 WL 12142995, at *3 (C.D. Cal. Jan. 10, 2013) (collecting cases denying expedited discovery when overbroad); *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1071; *Chubb INA Holdings, Inc. v. Chang*, No. 16-2354, 2016 U.S. Dist. LEXIS 82225, at *16-17 (D.N.J. June 24, 2016). Additionally, Deputy Director Homan is an agency head, and ordering him to prepare and appear for a deposition in short order is highly burdensome. *See In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) ("High ranking government officials have greater duties and time constraints than other witnesses.") (internal quotation marks and citation omitted); *K.C.R. v. Cty. of Los Angeles*, No. CV 13-3806, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014); *Cmty. Fed. Sav. & Loan Ass'n. v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983).

Although Defendants assert that "good cause" is supported by unconfirmed media reports that an ICE spokesperson resigned because of certain claims in the media—which are not claims in Mr. Homan's declaration—this is an extraordinary basis to believe that a high-ranking United States government official, who has signed a declaration under penalty of perjury, is not providing accurate information. *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 658 n.3 (N.D. Cal. 1994) (stating that statements certifying that they are "true and correct" "under penalty of perjury under the laws of the United States" make assurances that the document is true

7

and that the person understands the "seriousness of the obligation to tell the truth"). And case law supports the notion that there must be concrete support when a party seeks to impose expedited discovery simply because it believes a party is untrustworthy. *Hopscotch Adoptions, Inc. v. Kachadurian*, No. CV F-09-2101, 2009 WL 4782160, at *2 (E.D. Cal. Dec. 7, 2009) (finding early discovery unwarranted based upon "mere supposition" that a party was "capable of evidence destruction"). Defendants have not met this burden.

Furthermore, courts in this circuit have repeatedly recognized the requests for expedited depositions are highly burdensome and generally unwarranted, especially when documents—such as the proposed spreadsheets—are sufficient. *See, e.g., Hansen Beverage Co. v. Innovation Ventures, LLC*, No. CIV. 08CV1166, 2008 WL 3992353, at *2 (S.D. Cal. Aug. 28, 2008) (denying defendant's request to depose preliminary injunction declarations' declarants because party failed to demonstrate need beyond using documents); *Sambreel Holdings LLC et al. v. Facebook, Inc.*, Case No. 12-cv-668, ECF No. 36, at 9-10 (S.D. Cal. June 18, 2012) (denying defendant's request for expedited depositions in response to a preliminary injunction motion when it had its own evidence). Here, the spreadsheets the United States offered would allow Defendants to determine who they released and who they transferred to DHS custody, making a deposition an unjustified fishing expedition at this stage of proceedings that is *unlikely* to lead to this information Defendants identify as justifying early discovery.

## V. DEPOSITION OF TODD HOFFMAN

### A. The State's Position

The State seeks to depose Todd Hoffman, Executive Director, Admissibility and Passenger Program (APP), Office of Field Operations (OFO) within CBP for a half-day on six specific topics that solely relate to the purported irreparable harm caused by the challenged state laws.[8] Plaintiff relies on Hoffman's testimony to support its claims that the challenged laws impose "a significant burden" on OFO's "ability to execute its mission," Hoffman Decl. ¶ 14, *see* PI Mot. at 14, and that CBP "faces a deterrent to transferring aliens it encounters to state or local law enforcement" because of SB 54. *Id.* at 36-37 (citing Hoffman Decl. ¶¶ 14-18). The State has good cause to cross-examine these accusations, and all of the information that the State seeks in Hoffman's deposition concern issues that the federal government is in the best position to know: (1) the federal government's allegations of harm, *see, e.g.*, Topic Nos. 3, 5, 6; (2) the federal government's policies, procedures, and practices, *see* Topic Nos. 1, 2; and (3) information that the State would otherwise have to get from numerous sources, *see* Topic No. 4.

---

[8] The State has proposed the following topics specific to California for Hoffman's deposition: (1) CBP/OFO's policies and procedures for use of transfer and notification requests, *see, e.g.,* Hoffman Decl. (ECF No. 2-2, Ex. B) ¶¶ 14-17; (2) CBP/OFO's ability and willingness to transfer persons in its custody to state and local law enforcement, *see, e.g., id.* ¶ 17; (3) SB 54's impact on CBP/OFO's communications and relationships with state and local law enforcement, universities, schools, and employers, *see, e.g.*, *id.* ¶¶ 8-12, 14-16, 18-19; (4) CBP/OFO's task forces with state and local law enforcement agencies, *see, e.g., id.* ¶¶ 11, 19; (5) SB 54's impact on public safety, *see, e.g.*, *id.* ¶¶ 16, 21; and (6) SB 54's impact on CBP/OFO's non-immigration functions, *see id.* ¶ 20. The State proposed these topic areas to Plaintiff at 12:02 am morning, and offered to meet and confer, but Plaintiff has not offered counter topic areas.

8

### B. The United States' Position

The United States contends that a deposition of Executive Director Hoffman is similarly unwarranted and unnecessary, and highly burdensome, for the reasons described above.

Should the Court permit expedited depositions, the United States believes that the depositions should be limited to four hours each, and that time should count against the 7-hour limit in Fed. R. Civ. P 30(d)(1). *See Quia Corp. v. Mattel, Inc.*, No. C10-01902, 2010 WL 2179149, at *2 (N.D. Cal. May 27, 2010) (limiting expedited depositions to the declarations and exhibits in support of the preliminary injunction motion and to 3.5 hours apiece). The Court should also allow reciprocal depositions of the same number of California declarants if sought by the United States.

## VI. DOCUMENT REQUESTS AND INTERROGATORIES ON TRANSFER AND NOTIFICATION REQUESTS

### A. The State's Position

During the meet-and-confer process, the State significantly narrowed its requests about compliance with transfer and notification requests. The State initially intended to seek all transfer or notification requests—*i.e.* I-247-A forms—and data associated with those forms from two two-month periods before and after SB 54, and associated criminal history information. With information showing whether jurisdictions comply with notification and transfer requests, the State could have analyzed whether there was a difference in cooperation with transfer or notification requests after SB 54 went into effect. With the criminal history information, the State could have analyzed whether SB 54 had the effect of causing a change in compliance, since law enforcement may comply with transfer and notification requests for persons who have previously been convicted of hundreds of any one of criminal offenses. *See supra* § III(A).

After several days of meeting and conferring, the United States explained that logistic considerations would prevent it from providing the requested documents on an expedited schedule. It offered instead to compile and produce a spreadsheet with some data from the I-247As. But upon further discussion, the United States revealed that there is no real way for ICE or CBP to ascertain the number of transfer or notification requests that were complied with. This meant that the State would be limited, during this expedited discovery period, in the analysis that it would be able to conduct with the information that the United States proposed providing.[9]

Within hours of learning this new information, the State withdrew its request for the I-247A data, and narrowed its request to address a more fundamental threshold question: can the federal government show that SB 54 caused a change in compliance with transfer and notification requests to warrant the extraordinary relief of a preliminary injunction of that law? After

---

[9] The State still believes that a comparison between two periods when matched with criminal history information is relevant, and reserves its right to seek discovery on this. The State withdrew its request for this information in response to the United States' representation of the potential burden associated with it, and in an attempt to narrow the issues.

conferring with Plaintiff that afternoon, the State requested the following: (i) two interrogatories seeking a description of ICE's processes for assessing state and local law-enforcement compliance with notification and transfer requests; and (ii) two document requests seeking production of all documents and communications that support the allegations in paragraphs 42, 44, and 45 of the Homan declaration and paragraph 15 of the Hoffman declaration. In these paragraphs, Homan and Hoffman made definitive statements about situations where California jurisdictions did not respond to a notification or transfer request before a detainee was released.

The State has good cause for these requests because it should have the opportunity to test the foundations of the declaration testimony, to demonstrate that the United States cannot satisfy the burden of irreparable harm. The State would be highly prejudiced if it were denied this relevant discovery to oppose Plaintiff's motion for preliminary injunction. The State has not received a response to this proposal it made to Plaintiff on Friday afternoon.

### B. The United States' Position

As discussed above, the United States offered to provide Defendants information regarding the I-247As—compiled into spreadsheets from ICE and CBP. The United States explained that it was willing to provide the spreadsheets to further expeditious resolution of the pending preliminary injunction motion because it could do so in approximately a two week timeframe, whereas production of thousands of detainers from the requested two month period in 2017 and from January 4, 2018, until the filing of the complaint would take *months,* as there is no way to batch these documents, and a complete production would involve paper forms stored in individual files. However, instead of accepting this offer, which provides the information Defendants sought, particularly when combined with Defendants' own records, Defendants late on Friday, and with no advance notice, have suggested entirely new discovery.

Defendants' new requests are not only unwarranted and unnecessary, but are also much more burdensome than producing the proposed spreadsheets, because the requests for production seek a variety of documents, instead of simply one category of documents (I-247As). Defendants' request for information regarding ICE and CBP's "processes" is also vague – and underscores the reality that it is California, not the United States, that knows when aliens are released from state and local custody, and that the purpose of the law being challenged is to hide that release information from the United States. Indeed, the declarations do not provide that there is necessarily one particular process for assessing compliance. Instead, the declarations described *specific* instances of non-compliance. Furthermore, to the extent these requests seek internal ICE and CBP processes and procedures, potentially encompass a significant amount of law-enforcement-sensitive information as well as information potentially protected by the deliberative process privilege or other privilege.

Most importantly, information relating to DHS "processes" is irrelevant to the resolution of the pending preliminary injunction motion. It is hard to see why Defendants need this information—at this expedited stage—when Defendants are already able to determine the information they seek from their own records. I-247As are sent to Defendants' own law enforcement agencies, and Defendants can assess whether or not they were complied with by examining their law enforcement agencies' records to determine if the individual was released without notice to DHS.

XAVIER BECERRA
Attorney General of California
THOMAS PATTERSON
Senior Assistant Attorney General
MICHAEL NEWMAN
SATOSHI YANAI
Supervising Deputy Attorneys General
CHRISTINE CHUANG
ANTHONY HAKL
CHEROKEE MELTON
LEE I. SHERMAN
Deputy Attorneys General
State Bar No. 272271
300 S. Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6404

Respectfully Submitted,
XAVIER BECERRA
Attorney General of California

*/s/Lee I. Sherman*
LEE I. SHERMAN
Deputy Attorney General

*Attorneys for Defendants*

CHAD A. READLER
Acting Assistant Attorney General

MCGREGOR SCOTT
United States Attorney

AUGUST FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

Erez Reuveni
Assistant Director

DAVID SHELLEDY
Civil Chief, Assistant United States Attorney

JOSEPH A. DARROW
JOSHUA S. PRESS
Trial Attorneys

*/s/Lauren C. Bingham*
LAUREN C. BINGHAM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-4293
Fax: (202) 616-8202
E-mail: Lauren.C.Bingham@usdoj.gov

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **The United States of America v. The State of California, et al.** | No. | **2:18-cv-00490-JAM-KJN** |

I hereby certify that on <u>March 19, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**JOINT LETTER BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>March 19, 2018</u>, at Sacramento, California.

|  Tursun Bier  |  */s/ Tursun Bier*  |
|:---:|:---:|
| Declarant | Signature |

LA2018500720
13001726.docx