KEN PAXTON
  Attorney General of Texas
JEFFERY C. MATEER
  First Assistant Attorney General
BRANTLEY D. STARR
  Deputy First Assistant Attorney General
SCOTT A. KELLER
  Solicitor General
JAMES E. DAVIS
  Deputy Attorney General for Civil Litigation
DAVID J. HACKER (CA Bar No. 249272; TX Bar No. 24103323)*
  Special Counsel for Civil Litigation
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Telephone:   (512) 936-1700
Facsimile:   (512) 474-2697

*Counsel for Proposed Amici Curiae*
*Texas, Alabama, Arkansas, Florida, Georgia, Indiana,*
*Kansas, Louisiana, Michigan, Missouri, Nebraska,*
*Nevada, Ohio, Oklahoma, South Carolina, West Virginia,*
*Governor Phil Bryant of the State of Mississippi, and*
*Paul R. LePage, Governor of Maine*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THE UNITED STATES OF AMERICA**,<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF CALIFORNIA**, et al.,<br><br>Defendants. | Case No.: 2:18-cv-00490-JAM-KJN<br><br>**BRIEF OF AMICI CURIAE THE STATES OF TEXAS, ALABAMA, ARKANSAS, FLORIDA, GEORGIA, INDIANA, KANSAS, LOUISIANA, MICHIGAN, MISSOURI, NEBRASKA, NEVADA, OHIO, OKLAHOMA, SOUTH CAROLINA, WEST VIRGINIA, GOVERNOR PHIL BRYANT OF THE STATE OF MISSISSIPPI, AND PAUL R. LEPAGE, GOVERNOR OF MAINE, IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: No hearing per Min. Order, ECF No. 17<br>Judge: Hon. John A. Mendez |

*Designated Counsel for Service.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTEREST OF AMICI CURIAE ....................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.     California's AB450 is preempted, under *Arizona v. United States*,
       as an obstacle to the "careful balance struck by Congress with respect
       to the unauthorized employment of aliens." ........................................................ 2

II.    AB103 is obstacle-preempted under *Arizona v. United States*, because
       it seeks to give state officials the "unilateral" power to second guess
       federal determinations about which aliens warrant removal ................................ 3

III.   SB54's judicial-warrant requirement is also obstacle-preempted under
       *Arizona v. United States*, because it undermines Congress's criminal-alien
       detention scheme. ................................................................................................ 5

CONCLUSION ................................................................................................................... 8

PROOF OF SERVICE ...................................................................................................... 10

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Abel v. United States,*

5
        362 U.S. 217 (1960) ..................................................................................5, 6

6

*Arizona v. United States,*
        567 U.S. 387 (2012) ................................................................. *passim*

7

8

*Demore v. Kim,*
        538 U.S. 510 (2003) ...........................................................................7

9

*Jennings v. Rodriguez,*

10
        138 S. Ct. 830 (2018) .........................................................................7

11

*Johnson v. Maryland,*

12
        254 U.S. 51 (1920) .............................................................................4

13

*Roy v. Cty. of L.A.,*
        No. 2:12-cv-09012, 2017 WL 2559616 (C.D. Cal. June 12, 2017) ...............5

14

15

*Sherman v. U.S. Parole Comm'n,*
        502 F.3d 869 (9th Cir. 2007)...............................................................6

16

17

*United States v. Tejada,*
        255 F.3d 1 (1st Cir. 2001) ...................................................................6

18

*Zadvydas v. Davis,*

19
        533 U.S. 678 (2001) ...........................................................................7

20

**Federal Statutes**

21

8 U.S.C.:

22
        § 1182(a)(2) .......................................................................................7
        § 1182(a)(2)(B).................................................................................7

23
        § 1226(a)............................................................................................5
        § 1226(a)(1) .......................................................................................5

24
        § 1226(c)............................................................................................7
        § 1226(c)(1)(A) ..................................................................................7

25
        § 1227(a)(2) .......................................................................................7
        § 1231(a)............................................................................................5

26
        § 1231(g)(1) .......................................................................................5

27
        § 1357(a)(1) .......................................................................................3
        § 1357(e)............................................................................................3

28

---

**Federal Regulation**

8 C.F.R. § 236.6 .......................................................................................................5

**California Statutes**

Cal. Gov't Code:
    § 7282.5(a) ....................................................................................................5
    § 7282.5(a)(1)-(2) ........................................................................................7
    § 7282.5(a)(3) ..............................................................................................7
    § 7282.5(a)(3)(A)-(AE) ...............................................................................7
    § 7282.5(a)(4)-(5) ........................................................................................7
    § 7284.6(a)(4) ..............................................................................................5
    § 7285.1(a) ....................................................................................................2
    § 7285.2(a)(1) ..............................................................................................2
    § 12532(a) ....................................................................................................4
    § 12532(b)(1) ...............................................................................................4
    § 12532(c) ....................................................................................................4

Cal. Lab. Code:
    § 90.2(a)(1) ..................................................................................................3
    § 90.2(b)(1) ..................................................................................................3

**Other Authorities**

Assem. B. 103 ............................................................................................... *passim*

Assem. B. 450 ............................................................................................... *passim*

Cal. S.B. 54 .................................................................................................. *passim*

**INTEREST OF AMICI CURIAE**

Amici are the States of Texas, Alabama, Arkansas, Florida, Georgia, Indiana, Kansas, Louisiana, Michigan, Missouri, Nebraska, Nevada, Ohio, Oklahoma, South Carolina, West Virginia, Governor Phil Bryant of the State of Mississippi, and Paul R. LePage, Governor of Maine. The States "bear[] many of the consequences of unlawful immigration" but must rely on Congress and the INA to regulate which aliens may be present and work in their borders. *Arizona v. United States*, 567 U.S. 387, 397 (2012). Sanctuary laws and policies can cause harm to neighboring States by making it easier for people who are not lawfully in this country and have committed civil or criminal offenses to evade law enforcement and travel out-of-state. The States thus have an interest in the federal government's ability to enforce federal immigration law. California, however, has attempted to override that enforcement—by prohibiting private employers from voluntarily giving information to federal immigration officers (AB450), by overseeing through investigations the immigration enforcement activities of federal agents (AB103), and by limiting the scenarios in which State or local law-enforcement agencies may transfer a detained individual to the custody of federal immigration authorities (SB54).

California may disagree with federal immigration policy—just as Arizona disagreed with federal immigration policy in *Arizona v. United States*. But if various Arizona laws designed to *enforce* federal immigration law were preempted in *Arizona* (as the Supreme Court held), then California's laws designed to *interfere with or block* federal immigration enforcement are equally preempted.

**ARGUMENT**

California's AB450, AB103, and the detainee-transfer provisions of SB54 are preempted under *Arizona v. United States*. *Arizona* held that various Arizona laws designed to *enforce* federal immigration laws were preempted. Under the rationale of *Arizona*, this is an even easier case as California's laws designed to *interfere with or block* federal immigration enforcement must also preempted. *Arizona* cannot stand for the proposition that state laws are preempted when they seek *additional* enforcement of federal immigration laws, but state laws are somehow valid when they seek to *decrease* enforcement of federal immigration laws.

In fact, California recognized this when it joined an amicus brief in the *Arizona* case in the Supreme Court, representing:

> "Amici States have a strong interest in recognizing that the singular question of whether and how to remove undocumented immigrants is one that is committed to the federal government."

Br. for the States of New York, California, et al., *Arizona*, No. 11-182 (U.S.), 2012 WL 1054493, at *1.[1] The central point of that brief was that the federal government has control over whether *and how* to remove unlawfully-present aliens. As the amici including California explained:

> "Congress has carefully regulated not only *who* may be removed from the United States, but *how* such individuals should be identified, apprehended, and detained."

*Id.* at *3 (emphasis in original).

With a new presidential administration, however, California has changed its tune. While California no longer agrees with the level of federal enforcement of immigration laws, the preemption principles California advanced in *Arizona* were adopted by the Supreme Court. California is free to argue that *Arizona*'s findings of preemption should be overruled. Unless they are overruled, however, *Arizona* binds the States of California and Arizona alike. And under the principles articulated in *Arizona*, California cannot now impede the federal government's enforcement of immigration laws.

## I.   CALIFORNIA'S AB450 IS PREEMPTED, UNDER *ARIZONA V. UNITED STATES*, AS AN OBSTACLE TO THE "CAREFUL BALANCE STRUCK BY CONGRESS WITH RESPECT TO THE UNAUTHORIZED EMPLOYMENT OF ALIENS."

California's Assembly Bill 450 ("AB450") obstructs federal enforcement of the "comprehensive framework for combating the employment of illegal aliens" that Congress enacted in the Immigration Reform and Control Act of 1986. *Arizona*, 567 U.S. at 404. In fact, the stated purpose of AB450 is to interfere with this comprehensive federal work-authorization framework. Assembly Bill No. 450, Legislative Counsel's Digest (stating law's purpose to regulate employers who might be subject to "immigration worksite enforcement actions" by the federal government).

AB450 commands that employers cannot give consent to federal immigration enforcement agents entering the employer's workplace, Cal. Gov't Code §§ 7285.1(a), 7285.2(a)(1), and that employers must

---

[1] *Available at* https://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs/11-182_respondentamcu11states.authcheckdam.pdf

give employees 72-hour notice of any federal immigration inspections that are permitted in the workplace without the employer's consent, Cal. Lab. Code § 90.2(a)(1), (b)(1).

This law is preempted for substantially the same reason that Arizona's work-authorization law was preempted in *Arizona*. *See* 567 U.S. at 403-07. There, Arizona enacted a state criminal prohibition on an alien working in violation of federal law, even though "no federal counterpart exists." *Id.* at 403. In finding Arizona's law preempted despite the absence of a federal criminal prohibition, the Court relied on the "careful balance struck by Congress with respect to unauthorized employment of aliens," in the Immigration Reform and Control Act of 1986 ("IRCA"). *Id.* at 406. *Arizona* recognized that Arizona could have enacted its criminal penalty before IRCA. *Id.* at 404. But Congress later enacted a comprehensive framework striking a careful balance about methods of enforcement, which the Supreme Court held create a "conflict in technique" with Arizona's state-law approach to enforcement. *Id.* at 406 (alteration marks omitted).

If Arizona's law tipped the "careful balance" struck by Congress too far in favor of *enforcing* federal immigration laws, then California's law tips that balance too far in the other direction of *impeding* enforcement of federal immigration laws. Congress chose not to require immigration officials to obtain a judicial warrant before entering workplaces to enforce federal immigration law. *See* 8 U.S.C. § 1357(a)(1), (e). But California law now requires just that. Cal. Gov't Code § 7285.1(a). Congress and California have therefore each selected a different "method of enforcement." *Arizona*, 567 U.S. at 406. Under the Supremacy Clause as interpreted in *Arizona*, Congress's commands control. Because California's law "is an obstacle to the regulatory system Congress chose," *id.*, it is preempted under *Arizona*.

## II.    AB103 IS OBSTACLE-PREEMPTED UNDER *ARIZONA V. UNITED STATES*, BECAUSE IT SEEKS TO GIVE STATE OFFICIALS THE "UNILATERAL" POWER TO SECOND GUESS FEDERAL DETERMINATIONS ABOUT WHICH ALIENS WARRANT REMOVAL.

*Arizona* holds that States cannot make "unilateral" determinations about the removability of aliens wholly separate from federal officials, and that any attempt to do so "creates an obstacle to the full purposes and objectives of Congress." *Id.* at 410. California's Assembly Bill 103 ("AB103") falls within that prohibition for the same reason that § 6 of Arizona's S.B. 1070 did.

Section 6 of Arizona's law "attempt[ed] to provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers." *Id.* at 408. Specifically, state police who witnessed what they believed was a public offense that made an alien removable could arrest the alien. *Id.* Hence, "the unilateral decision of state officers" about which aliens were unlawfully present under federal immigration law would, under Arizona's law, allow detention. The Supreme Court held this law preempted because Congress created a system for state officers to unilaterally make immigration arrests, but that system did not allow state officers the unilateral power conferred by Arizona's law. *Id.* at 409-10 (describing the federal program that ensures training and ensures that removability decisions are "made with one voice").

California's AB103 likewise purports to allow state officers to unilaterally review what federal law makes the exclusive work of federal officials. Specifically, AB103 establishes a heightened inspection scheme for facilities where "noncitizens are being housed or detained for purposes of civil immigration proceedings," Cal. Gov't Code § 12532(a), and directs the California Attorney General to examine and report on the "due process provided" to detainees and "the circumstances around their apprehension and transfer to the facility." *Id.* § 12532(b)(1).[2] This directly parallels section 6 of Arizona's law, which purported to allow state officials to unilaterally decide that an alien *should* be held for removal and thus arrest the alien. Likewise, California's AB103 authorizes state officials to declare that an alien *should not* be held for removal in a certain facility because of a purported violation of due process or the underlying circumstances of the apprehension and transfer to the detention facility—all determined unilaterally by those state officials. The valence of the respective state laws may be different, but their prohibited mechanism of operation is the same. Just as Arizona's law was held obstacle-preempted under *Arizona*, so must California's SB103 be held preempted. Federal law gives state detention facilities no unilateral role in overriding the federal government's detention of aliens for civil immigration violations. *See, e.g.*, 8 U.S.C. § 1231(g)(1); 8 C.F.R. § 236.6.

---

[2] To effectuate that immigration-specific scheme, AB103 authorizes the California Attorney General to interrogate federal immigration officials and inspect federal immigration records. *Id.* § 12532(c). This likely violates the doctrine of intergovernmental immunity, under which a State cannot regulate federal officers in the performance of their duties. *See Johnson v. Maryland*, 254 U.S. 51, 56-57 (1920).

**III.   SB54'S JUDICIAL-WARRANT REQUIREMENT IS ALSO OBSTACLE-PREEMPTED UNDER *ARIZONA V. UNITED STATES*, BECAUSE IT UNDERMINES CONGRESS'S CRIMINAL-ALIEN-DETENTION SCHEME.**

Under part of California's Senate Bill 54 ("SB54"), state and local law enforcement agencies may "[t]ransfer an individual to immigration authorities" only if the United States presents a "judicial warrant or judicial probable cause determination," or the individual in question has been convicted of one of a limited set of enumerated felonies or other serious crimes. Cal. Gov't Code §§ 7284.6(a)(4), 7282.5(a). These provisions are preempted because they stand as an obstacle to Congress's immigration-enforcement scheme.

First, SB54's provision requiring a judicial warrant or judicial finding of probable cause cannot be squared with Congress's immigration-enforcement scheme. Congress, through the INA, established a system of civil administrative warrants as the basis for immigration arrest and removal, and Congress does not require or contemplate use of a judicial warrant for civil immigration enforcement. *See* 8 U.S.C. §§ 1226(a), 1231(a). Thus, immigration enforcement arrests based on federal officials' determinations of removability need not be supported by *judicial* warrants. *See, e.g.*, *Roy v. Cty. of L.A.*, No. 2:12-cv-09012, 2017 WL 2559616, at *6-10 (C.D. Cal. June 12, 2017) ("No court has held to the contrary."). Rather, "the executive and the Legislature have the authority to permit executive—rather than judicial—officers to make probable cause determinations regarding an individual's deportability." *Id.* at *8. Federal immigration authorities are indeed vested with that power: The INA provides that civil immigration enforcement is premised on administrative "warrant[s] issued by" DHS and that "an alien may be arrested and detained" based on such a warrant "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a)(1).

That authority was clearly delegated to the Executive by Congress in the INA. *See Abel v. United States*, 362 U.S. 217, 232 (1960) (noting that the INA gave "authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment."). And even before Congress passed the INA, there was "impressive historical evidence of acceptance of the validity of statutes providing for *administrative* deportation arrest from almost the beginning of the Nation." *Id.* at 234. Unsurprisingly, multiple courts of appeals have rejected claims that judicial warrants or judicial probable-cause determinations are

required for civil immigration detention. *See Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 876–80 (9th Cir. 2007) (stating that an executive officer can constitutionally make the necessary probable-cause determination to warrant arrest of an alien "outside the scope of the Fourth Amendment's Warrant Clause," without presentment to a judicial officer); *United States v. Tejada*, 255 F.3d 1, 3 (1st Cir. 2001) ("[T]o comply with the applicable [detention] statute, the arresting authorities needed to bring appellant to an [ICE] examining officer, not a magistrate, 'without unnecessary delay.'").

To be sure, California may retain prerogatives about when to voluntarily comply with requests to itself *detain* aliens at the requests of federal officials, as the federal government is subject to limits on commandeering state resources for federal programs. But when federal officials show up at a state detention facility seeking merely to *transfer* an alien already in state custody into the custody of federal officials, they are not asking the State of California or its political subdivisions to detain the alien. Instead, federal officials are asserting their federal primacy in enforcing immigration law by demanding *federal* custody of a person already in state detention. This does not commandeer California to take any additional action, as it has already detained the individual before the federal government requested a transfer to federal custody. And Congress has determined that taking federal custody for civil immigration detention requires no more than an administrative warrant. Accordingly, California's law requiring DHS to go further and procure a judicial warrant upsets the scheme that Congress carefully established and is obstacle-preempted under *Arizona*. *E.g.*, *Arizona*, 567 U.S. at 402, 406, 408.

SB54's exception for aliens convicted of certain offenses does not save the statute from preemption, because the statute remains in its other applications an obstacle to Congress's criminal-alien-detention scheme. Moreover, SB54's specific exemptions themselves effectively create priorities for *federal detention* that conflict with Congress's choices.

Section 7284.6 references a narrow list of exceptions on prohibiting the transfer of an individual to immigration authorities. That list reflects instances in which the State of California considers federal detention and removal of an alien to be a priority. These scenarios include where an individual has been convicted of certain "serious or violent" felonies or felonies punishable by imprisonment in California state prison, Cal. Gov't Code § 7282.5(a)(1)-(2), as well as where an individual has been convicted of one of thirty-one types of offenses within the past five years if a misdemeanor or within the past fifteen

years if a felony, *id.* § 7282.5(a)(3)(A)-(AE). Inclusion on California's Sex and Arson Registry and conviction of a federal crime that is an aggravated felony under the INA, as well as being the subject of an outstanding felony arrest warrant by ICE, also trigger the exception. *Id.* § 7282.5(a)(4)-(5).

This limited subset of criminal violations, however, is narrower than those provided by Congress that render an alien inadmissible or removable. *See* 8 U.S.C. §§ 1182(a)(2), 1227(a)(2). Nor does SB54's list match the set of criminal offenses that *require* the federal government to detain such aliens upon their release from state or local custody. *Id.* § 1226(c). For example, entirely absent from California's list of exceptions is any provision for aliens who are inadmissible on the grounds that they were convicted of multiple criminal convictions for which the aggregate sentences were five years or more. *See id.* § 1182(a)(2)(B). Such an alien could be subject to detention under 8 U.S.C. § 1226(c)(1)(A), regardless of whether the convictions were in the past five or fifteen years, *see* Cal. Gov't Code § 7282.5(a)(3).

Ultimately, immigration enforcement necessarily contemplates removal, and civil removal proceedings contemplate the necessity of detention. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 523 (2003) (stating, regarding no-bail detention: "this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process"); *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) (distinguishing "detention pending a determination of removability" from the question of authority to detain indefinitely). Similarly, the INA contemplates that DHS will be able to take custody of removable criminal aliens; that detention "must continue pending a decision on whether the alien is to be removed from the United States" and "may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings v. Rodriguez*, 138 S. Ct. 830, 846–47 (2018) (some quotation marks and citations omitted). California's law frustrates that scheme because it readily affords an alien released from state or local custody the opportunity to abscond, not only increasing burdens on officials tasked with tracking down those aliens but also potentially endangering law-enforcement officers or members of the public. *Cf. Demore*, 538 U.S. at 528 ("[R]elease of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully"). SB54 impermissibly allows California to "achieve its own immigration policy" by deciding to transfer certain aliens to federal-immigration custody on the theory that some immigration-enforcement cooperation with federal officials should be

ignored in favor of the State's other policy goals. But that approach reflects the sorts of "unilateral decisions" regarding immigration enforcement that the Supreme Court rejected in *Arizona*. 567 U.S. at 408, 410.

*          *          *

If California prefers different immigration policies, it is free to voice those concerns to Congress. But, as California itself said in *Arizona*, "Amici States may have differing views about precisely what removal priorities and enforcement practices would be optimal, but they agree that, where removal is concerned, Congress and the Executive Branch are the appropriate bodies for determining these national policies." Br. for the States of New York, California, et al., *Arizona*, at \*2. Under that rationale advanced by California and adopted by the Supreme Court in *Arizona*, California's AB450, AB103, and the detainee-transfer provisions of SB54 are preempted.

## <u>CONCLUSION</u>

The Court should grant the Plaintiffs' motion for a preliminary injunction.

Dated: March 26, 2018.                    Respectfully submitted,

                                          /s/David J. Hacker
                                          David J. Hacker
                                          Special Counsel for Civil Litigation
                                          CA Bar No. 249273
                                          TX Bar No. 24103323
                                          Attorney for Proposed *Amici*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STEVEN T. MARSHALL
  Attorney General of Alabama

LESLIE RUTLEDGE
  Attorney General of Arkansas

PAMELA JO BONDI
  Attorney General of Florida

CHRISTOPHER M. CARR
  Attorney General of Georgia

CURTIS T. HILL, JR.
  Attorney General of Indiana

DEREK SCHMIDT
  Attorney General of Kansas

JEFF LANDRY
  Attorney General of Louisiana

BILL SCHUETTE
  Attorney General of Michigan

JOSH HAWLEY
  Attorney General of Missouri

DOUG PETERSON
  Attorney General of Nebraska

ADAM PAUL LAXALT
  Attorney General of Nevada

MICHAEL DEWINE
  Attorney General of Ohio

MIKE HUNTER
  Attorney General of Oklahoma

ALAN WILSON
  Attorney General of South Carolina

PATRICK MORRISEY
  Attorney General of West Virginia

PAUL R. LEPAGE
  Governor of Maine

PHIL BRYANT
  Governor of Mississippi

KEN PAXTON
  Attorney General of Texas

JEFFERY C. MATEER
  First Assistant Attorney General

BRANTLEY D. STARR
  Deputy First Assistant Attorney General

SCOTT A. KELLER
  Solicitor General

JAMES E. DAVIS
  Deputy Attorney General for Civil Litigation

DAVID J. HACKER (CA Bar No. 249272;
TX Bar No. 24103323)*
  Special Counsel for Civil Litigation

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 009)
Austin, Texas 78711-2548
Telephone:   (512) 936-1700
Facsimile:    (512) 474-2697

**PROOF OF SERVICE**

I hereby certify that on March 26, 2018, I filed the foregoing document with the Clerk of the Court via CM/ECF, which automatically sends notice of the filing to all counsel of record. I declare under 28 U.S.C. § 1746 that the above is true and correct.

Executed on March 26, 2018 at Austin, Texas.

/s/David J. Hacker
David J. Hacker
Special Counsel for Civil Litigation
CA Bar No. 249273
TX Bar No. 24103323
Attorney for Proposed *Amici*