Lawrence J. Joseph (SBN 154908)
Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 200
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

Dale L. Wilcox*
Sarah R. Rehberg*
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: dwilcox@irli.org
Email: srehberg@irli.org

* Not admitted in this jurisdiction

Counsel for Prospective *Amici Curiae*: MUNICIPALITIES AND ELECTED OFFICIALS

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,
    *Plaintiff*,

    v.

STATE OF CALIFORNIA, *et al.*,

    *Defendants.*

)
)
)
)
)
)
)
)
)
)

**CASE No. 2:18-cv-00490-JAM-KJN**

**MUNICIPALITIES & ELECTED OFFICIALS' *AMICI CURIAE* BRIEF**

Complaint filed: March 6, 2018
Honorable John A. Mendez

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ....................................................................................................... ii

Identity and Interest of *Amici Curiae* ........................................................................ 1

Constitutional Background ........................................................................................... 1

Statutory Background .................................................................................................... 2

    Immigration and Naturalization Act ..................................................................... 2

    Immigrant Worker Protection Act ......................................................................... 3

    Inspection and Review of Facilities Housing Federal Detainees under
        GOV'T CODE §12532 ....................................................................................... 3

    California Values Act ............................................................................................... 4

Argument ........................................................................................................................ 5

I.   California's attempts to protect illegal aliens impermissibly conflict with federal
     immigration law. ...................................................................................................... 5

    A.   AB450 — the Immigrant Worker Protection Act — is conflict and field
        preempted. ...................................................................................................... 5

    B.   AB103 §12 — enacting GOV'T CODE §12532 for state inspection of federal
        detention of non-citizens — is conflict preempted. ................................. 7

    C.   SB54 — the California Values Act — is conflict preempted. ..................... 8

    D.   The United States — not California and not municipal government — has the
        exclusive authority to litigate as *parens patriae* for the people of California. ................. 8

II.  By restricting private employers' and municipal government's cooperation with
     federal immigration officials, AB450 and SB54 criminally conceal, harbor, or
     shield illegal aliens from detection. ....................................................................... 9

III. 8 U.S.C. §1373 is a valid exercise of congressional power. .............................. 11

    A.   8 U.S.C. §1373 does not commandeer the states. ................................... 12

    B.   8 U.S.C. §1373 is a "necessary and proper" exercise of federal power over
        immigration. ................................................................................................. 14

Conclusion .................................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**<u>CASES</u>**

3

*Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez*,
     458 U.S. 592 (1982) .................................................................... 8-9

4

*Arizona v. United States*,
     567 U.S. 387 (2012) ........................................................ 1-2, 5-6, 8

5

6

*Boeing Co. v. Movassaghi*,
     768 F.3d 832 (9th Cir. 2014) ................................................................ 8

7

*Cipollone v. Liggett Grp.*,
     505 U.S. 504 (1992) ........................................................................... 1

8

9

*DeCanas v. Bica*,
     424 U.S. 351 (1976) ................................................................... 1, 7-8

10

*Diamond v. Charles*,
     476 U.S. 54 (1986) ............................................................................ 9

11

*English v. Gen. Elec. Co.*,
     496 U.S. 72 (1990) ............................................................................ 1

12

13

*FERC v. Mississippi*,
     456 U.S. 742 (1982) ......................................................................... 12

14

*Garcetti v. Ceballos*,
     547 U.S. 410 (2006) ........................................................................... 6

15

16

*Gonzales v. City of Peoria*,
     722 F.2d 468 (9th Cir. 1983) ............................................................. 2

17

*Gonzales v. Raich*,
     545 U.S. 1 (2005) ....................................................................... 14-15

18

*Hutchinson v. Bear Valley Cmty. Servs. Dist.*,
     191 F. Supp. 3d 1117 (E.D. Cal. 2016) ............................................. 6

19

20

*Kenne v. Stennis*,
     230 Cal. App. 4th 953 (Cal Ct. App. 2014) ...................................... 6

21

*McCulloch v. Maryland*,
     17 U.S. (4 Wheat.) 316 (1819) .............................................11-12, 14-15

22

23

*Moran v. Washington*,
     147 F.3d 839 (9th Cir. 1998) ............................................................. 6

24

*Nat'l Fed'n of Indep. Businesses v. Sebelius*,
     567 U.S. 519 (2012) ......................................................................... 12

25

*New York v. FERC*,
     535 U.S. 1 (2002) .............................................................................. 7

26

*New York v. United States*,
    505 U.S. 144 (1992) ................................................................ 12-14

*Printz v. United States*,
    521 U.S. 898 (1997) ................................................................ 12-14

*Raich v. Gonzales*,
    500 F.3d 850 (9th Cir. 2007) ........................................................ 12

*Rendish v. City of Tacoma*,
    123 F.3d 1216 (9th Cir. 1997) ........................................................ 6

*Reno v. Condon*,
    528 U.S. 141 (2000) ................................................................ 12

*Rosemond v. United States*,
    134 S.Ct. 1240 (2014) ............................................................ 10-11

*South Carolina v. Baker*,
    485 U.S. 505 (1988) ................................................................ 12

*S. Cal. Edison Co. v. Lynch*,
    307 F.3d 794 (9th Cir. 2002) ........................................................ 12

*Tafflin v. Levitt*,
    493 U.S. 455 (1990) ................................................................. 2

*United States v. Acosta de Evans*,
    531 F.2d 428 (9th Cir. 1976) ......................................................... 9

*United States v. Aguilar*,
    883 F.2d 662 (9th Cir. 1989) ....................................................... 9-10

*United States v. Bunker*,
    532 F.2d 1262 (9th Cir. 1976) ....................................................... 10

*United States v. City of Arcata*,
    629 F.3d 986 (9th Cir. 2010) ......................................................... 8

*United States v. Comstock*,
    560 U.S. 126 (2010) ......................................................... 12, 14-15

*United States v. County of Fresno*,
    429 U.S. 452 (1977) ................................................................. 8

*United States v. Hernandez*,
    84 F.3d 931 (7th Cir. 1996) .......................................................... 6

*United States v. Ramos-Rascon*,
    8 F.3d 704 (9th Cir. 1993) .......................................................... 11

*United States v. Smith*,
    832 F.2d 1167 (9th Cir. 1987) ....................................................... 11

*United States v. Wrightwood Dairy Co.*,
    315 U.S. 110 (1942) ................................................................ 14

*United States v. You,*
  382 F.3d 958 (9th Cir. 2004) ............................................................10

*Valle del Sol Inc. v. Whiting,*
  732 F.3d 1006 (9th Cir. 2013) ..........................................................6-7

*Wheaton v. Peters,*
  33 U.S. (8 Pet.) 591 (1834) ..............................................................10

## **STATUTES**

U.S. Const. art. I, §8, cl. 3 .................................................................3

U.S. Const. art. I, §8, cl. 4 .................................................................1

U.S. Const, art. I, §8, cl. 18 ..........................................................13-15

U.S. Const. art. VI, cl. 2 ...........................................................1, 8, 14

U.S. Const. amend. I ............................................................6, 12, 15

Immigration and Naturalization Act,
  8 U.S.C. §§1101-1537 ............................................................ *passim*

8 U.S.C. §1103(a)(11) .......................................................................7

8 U.S.C. §1231(g)(1)-(2) ...................................................................7

8 U.S.C. §1324 ...................................................................2, 6-7, 9-

8 U.S.C. §1324(a)(1)(A) ...............................................................9, 15

8 U.S.C. §1324(a)(1)(A)(iii) ............................................................2, 9

8 U.S.C. §1324(a)(1)(A)(v) .............................................................2, 9

8 U.S.C. §1324(c) .........................................................................2, 5-6

8 U.S.C. §1357(g) ..........................................................................3, 5

8 U.S.C. §1357(g)(10) .......................................................................3

8 U.S.C. §1373(a) ..........................................................2-3, 5, 8, 12-15

18 U.S.C. §2(a) ..............................................................................10

Racketeer Influenced and Corrupt Organization Act,
  18 U.S.C. §§1961-1968 ..............................................................2, 10

18 U.S.C. §1961(1)(F) .................................................................2, 10

18 U.S.C. §1964(c) ...........................................................................2

Cal. Gov't Code §7284.6(a)(1)(A)-(E) ...............................................4

Cal. Gov't Code §7285.1 ...................................................................3

Cal. Gov't Code §7285.1(a) ...............................................................3

Cal. Gov't Code §7285.2 ...................................................................3

Cal. Gov't Code §7285.2(a) ...............................................................3

CAL. GOV'T CODE §7310-7311 ........................................................................4

CAL. GOV'T CODE §12532 ........................................................................ 3, 7-8

CAL. GOV'T CODE §12532(a) ......................................................................4

CAL. GOV'T CODE §12532(b)(1) ................................................................4

CAL. LABOR CODE §90.2(a)(1) ..................................................................3

PUB. L. NO. 104-132, Title IV, §433,
    110 Stat. 1214, 1274 (1996) ................................................................2

2017 Cal. Stat. c. 17 (Assembly Bill 103) ...................................3-4, 7-8, 15

2017 Cal. Stat. c. 17, §6 (Assembly Bill 103) ...........................................3

2017 Cal. Stat. c. 17, §12 (Assembly Bill 103) .........................................3

2017 Cal. Stat. c. 492 (Assembly Bill 450) ...........................3, 5-6, 9=12, 15

2017 Cal. Stat. c. 495 (Senate Bill 54) .........................................4, 8-11, 15

2017 Cal. Stat. c. 495, §3 (Senate Bill 54) ................................................4

## LEGISLATIVE HISTORY

Senate Floor Analysis, Assembly Bill 103,
    (Cal. June 14, 2017) ..............................................................................4

Assembly Floor Analysis, Assembly Bill 450,
    (Cal. Sept. 13, 2017) ............................................................................3

Assembly Floor Analysis, Senate Bill 54,
    (Cal. Sept. 15, 2017) .........................................................................4-5

## REGULATIONS AND RULES

8 C.F.R. §236.6 ...........................................................................................7

## OTHER AUTHORITIES

Church Sanctuary for Illegal Aliens,
    7 Op. O.L.C. 168 (1983) ....................................................................10

VICTOR HUGO, THE HUNCHBACK OF NOTRE-DAME
    (Lowell Bair ed. & trans., Bantam Books 1956) ...............................10

*Mark* 12:17 (King James) ...........................................................................10

## IDENTITY AND INTEREST OF *AMICI CURIAE*

As set forth in more detail in the accompanying motion for leave to file, the *amici curiae* identified in the Addendum to this brief are the California municipalities and elected officials. In that capacity, *amici* are or represent political subdivisions of not only plaintiff United States but also defendant California. To ensure the liberties guaranteed to them and to their constituents by both the U.S. Constitution and the California Constitution, *amici* feel compelled to support the federal sovereign over the state sovereign in this dispute over the state's attempt not only to usurp the federal government's exclusive and plenary power over immigration, but also to restrict *amici* and their constituents from supporting the federal government in the exercise of that power. For these reasons, *amici* have direct and vital interests in the issues before this Court and thus submit this *amici curiae* brief in support of the federal government's motion for a preliminary injunction and the accompanying memorandum of law (Fed. Memo., ECF #2-1).

## CONSTITUTIONAL BACKGROUND

Under the Supremacy Clause, federal law preempts state law whenever they conflict. U.S. CONST. art. VI, cl. 2. Courts have identified three forms of federal preemption: express, field, and conflict preemption. *Cipollone v. Liggett Grp.*, 505 U.S. 504, 516 (1992). The latter two are species of implied preemption, where: "field pre-emption may be understood as a species of conflict pre-emption." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 n.5 (1990).

Under U.S. CONST. art. I, §8, cl. 4, Congress has plenary power over immigration: the "[p]ower to regulate immigration is unquestionably exclusively a federal power." *DeCanas v. Bica*, 424 U.S. 351, 354 (1976). Although not every "state enactment which in any way deals with aliens" constitutes "a regulation of immigration and thus [is] *per se* pre-empted by this constitutional power," *id.* at 355, state law is conflict-preempted when "it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v.*

*United States*, 567 U.S. 387, 406 (2012) (interior quotations omitted).

## STATUTORY BACKGROUND

This litigation involves the interplay between the constitutional roles of federal and state government generally and the interplay between federal immigration law and California's recent attempt to affect federal immigration enforcement under three California laws.

**Immigration and Naturalization Act**

Congress has set federal immigration policy in the Immigration and Naturalization Act, 8 U.S.C. §§1101-1537 ("INA"). As relevant here, two provisions bear special emphasis: the prohibition against concealing, harboring, and shielding from detection illegal aliens, 8 U.S.C. §1324(a)(1)(A), and the prohibition against restricting intergovernmental communication with federal immigration officials, 8 U.S.C. §1373(a).

First, INA's §274 prohibits knowingly or recklessly concealing, harboring, and shielding from detection illegal aliens in furtherance of their continued violation of immigration laws, which includes conspiracy and aiding-and-abetting liability. 8 U.S.C. §1324(a)(1)(A)(iii), (v). Under §274(c), not only federal immigration agents but also "all other officers whose duty it is to enforce criminal laws" may enforce §274. 8 U.S.C. §1324(c). The Senate version of §274(c) provided that "all other officers *of the United States* whose duty it is to enforce criminal laws" could enforce §274, but the Conference Committee struck "of the United States" to enable non-federal enforcement. *Gonzales v. City of Peoria*, 722 F.2d 468, 475 (9th Cir. 1983) (*citing* H.R. REP. NO. 82-1505 (Conf. Rep.), *as reprinted in* 1952 U.S.C.C.A.N. 1360, 1361) (emphasis added). In 1996, Congress amended the Racketeer Influenced and Corrupt Organization Act ("RICO") to add INA §274 as a predicate offense, PUB. L. NO. 104-132, Title IV, §433, 110 Stat. 1214, 1274 (1996) (enacting 18 U.S.C. §1961(1)(F)), thereby allowing enforcement not only by private parties but also in state court. 18 U.S.C. §1964(c); *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990).

Section 1373 prohibits governmental interference with voluntary governmental reporting to federal immigration officials regarding the citizenship or immigration status, lawful or unlawful, of any individual, notwithstanding any other provision of federal, state, or local law. 8 U.S.C. §1373(a). In addition to leaving a clear channel of intergovernmental communication open in §1373(a), INA provides state and local roles in immigration enforcement in a variety of ways. For example, under 8 U.S.C. §1357(g)(10)'s savings clause, the absence of state-federal enforcement agreements under §1357(g) does not preclude state and local government's involving themselves with immigration-related enforcement, including "otherwise to cooperate … in the identification, apprehension, detention or removal" of illegal aliens.

**Immigrant Worker Protection Act**

The Immigrant Worker Protection Act ("AB450") prohibits employers from voluntarily cooperating with federal immigration officials. 2017 Cal. Stat. c. 492. Among other things, AB450 added §§7285.1 to .2 to Government Code to prohibit employers' "voluntary consent to an immigration enforcement agent … enter[ing] any nonpublic areas of a place of labor" without a warrant, CAL. GOV'T CODE §7285.1(a), and "voluntary consent to an immigration enforcement agent to access, review, or obtain the employer's employee records without a subpoena or judicial warrant" or notice of inspection. CAL. GOV'T CODE §7285.2(a). AB450 also added §90.2 to the Labor Code to require posting notice of any immigration-related inspections of I-9 forms or other employment records within 72 hours of receiving a notice of the inspection. CAL. LABOR CODE §90.2(a)(1). AB450's legislative history confirms that the bill was intended to reduce the risk of deportation. Assembly Floor Analysis, Assembly Bill 450, at 3 (Cal. Sept. 13, 2017).

**Inspection and Review of Facilities Housing Federal Detainees under GOV'T CODE §12532**

Sections 6 and 12 of Assembly Bill 103 ("AB103") added Chapter 17.8 and §12532 to the Government Code, respectively. 2017 Cal. Stat. c. 17, §§6, 12. Under §12532, state governmental

officials must review "detention facilities in which noncitizens are being housed or detained for purposes of civil immigration proceedings in California," CAL. GOV'T CODE §12532(a), and report on the conditions of confinement, the standard of care and due process provided to detainees, and the circumstances of the detainees' apprehension and transfer to the facility. *Id.* §12532(b)(1). Under Chapter 17.8, municipal government or law-enforcement agencies with no contract to house adult or minor noncitizen detainees for civil-immigration purposes may not enter such contracts, and municipal government or law-enforcement agencies with such contracts may not renew or modify those contracts to expand the number of contract beds used in locked detention facilities. CAL. GOV'T CODE §§7310-7311. AB103's legislative history acknowledges its dual purposes to provide state "oversight of locked facilities throughout the state that detain immigrants who may be in the country without the proper documentation" and to "[establish] a moratorium on counties entering into new contracts or expanding existing contracts to detain adult and child immigrants in locked county facilities." Senate Floor Analysis, Assembly Bill 103, at 1 (Cal. June 14, 2017).

**California Values Act**

Section 3 of Senate Bill 54 ("SB54") added the "California Values Act" as Chapter 17.25 of the Government Code. 2017 Cal. Stat. c. 495, §3. This new law purports to restrict state and local law enforcement from voluntarily cooperating with federal immigration efforts, such as providing release dates or transferring detained individuals to immigration officials, detaining individuals based on federal hold requests, providing individuals' home or work addresses to immigration officials, and making or intentionally participating in arrests based on civil immigration warrants. CAL. GOV'T CODE §7284.6(a)(1)(A)-(E). SB54's legislative history acknowledges that the federal government relies on state and local police as "force multipliers" in enforcing federal immigration law and that "the California Values Act … will prevent state and local law enforcement agencies from acting as agents of Immigration and Customs Enforcement."

Assembly Floor Analysis, Senate Bill 54, at 8 (Cal. Sept. 15, 2017).

**ARGUMENT**

**I.   CALIFORNIA'S ATTEMPTS TO PROTECT ILLEGAL ALIENS IMPERMISSIBLY CONFLICT WITH FEDERAL IMMIGRATION LAW.**

As indicated, INA creates an elaborate scheme of state-federal cooperation for enforcing immigration laws. *See*, *e.g.*, 8 U.S.C. §§1324(c), 1357(g), 1373(a). According to the *Arizona* court — which was citing examples from the Department of Homeland Security in the prior administration — state-federal cooperation under immigration law includes "situations where States participate in a joint task force with federal officers, provide operational support in executing a warrant, or *allow federal immigration officials to gain access to detainees held in state facilities*," as well as "by *responding to [federal] requests for information about when an alien will be released from [state or local] custody*." *Arizona*, 567 U.S. at 410 (emphasis added). When a state deviates from the carefully calibrated state-federal enforcement scheme, the state poses "an obstacle to the full purposes and objectives of Congress," *id.*, triggering conflict preemption.

On the other hand, if the federal statutory scheme is elaborate enough, that scheme can evidence a congressional intent to displace states from the entire field:

> The intent to displace state law altogether can be inferred from a framework of regulation so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.

*Id.* at 399. As indicated, in *Arizona* and this Court's precedents, INA is both conflict- and field-preemptive of inconsistent state laws in the immigration area.

**A.   AB450 — the Immigrant Worker Protection Act — is conflict and field preempted.**

In purporting to prevent California employers from voluntarily working with federal immigration officials (*e.g.*, without a warrant), AB450 runs afoul of not only INA but also the First

Amendment. Thus, AB450 is both preempted and unconstitutional.

Contacting and working with governmental enforcement authorities is protected First-Amendment activity, *Hutchinson v. Bear Valley Cmty. Servs. Dist.*, 191 F. Supp. 3d 1117, 1125-26 (E.D. Cal. 2016); *Kenne v. Stennis*, 230 Cal. App. 4th 953, 967 (Cal Ct. App. 2014) (collecting cases), although *public* employees must meet the additional threshold that their petition or speech activity implicates a "matter of public concern." *Rendish v. City of Tacoma*, 123 F.3d 1216, 1221 (9th Cir. 1997); *Garcetti v. Ceballos*, 547 U.S. 410, 415-16 (2006). Here, the public-concern test is readily met as to any public entities covered by AB450: "government employers have no legitimate interest in covering up wrongdoing." *Moran v. Washington*, 147 F.3d 839, 849 n.6 (9th Cir. 1998) (*citing Johnson v. Multnomah Cty.*, 48 F.3d 420, 424-25 (9th Cir. 1995)). Quite simply, California cannot constitutionally prohibit employers — whether public or private — from cooperating with federal immigration officials about illegal aliens.

With respect to statutory conflict preemption, AB450 constitutes criminal concealing, harboring, and shielding of illegal aliens, *see* Section II, *infra*, which makes the conflict-preemption argument what golfers and the Seventh Circuit call a "gimme." *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996). Clearly, a state law that violates federal criminal law is civilly preempted as "an obstacle to the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 410; *see also* Fed. Memo. at 11-12 (ECF #2-1) (1986 INA amendments intended to remove unlawful employment as a magnet attracting illegal aliens to the United States). But that is not all.

On field preemption, this Circuit has gone further than the *Arizona* court in the particular field of concealing, harboring, and shielding under §274: "in developing the scheme for prohibiting and penalizing the harboring of aliens, Congress specifically considered the appropriate level of involvement for the states," and thus "[§274(c)] allows state and local law enforcement officials

to make arrests for violations." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1025 (9th Cir. 2013). Based on the carefully calibrated evolutionary path of §274 over time and the detailed federal-state enforcement relationship that §274 contemplates, this Circuit concluded that §274 preempts the entire field of illegal-alien concealment, harboring, and shielding from detection. *Id.* at 1023-26. Accordingly, INA leaves no room for California to withhold the INA-contemplated voluntary participation of state and local law-enforcement officers with federal immigration authorities.

**B.    AB103 §12 — enacting GOV'T CODE §12532 for state inspection of federal detention of non-citizens — is conflict preempted.**

GOV'T CODE §12532 requires intrusive state oversight of federal immigration enforcement and restricts the federal government's access to detention facilities in California. A state lacks authority for either action, given the exclusively federal nature of immigration enforcement under the Constitution. *DeCanas*, 424 U.S.at 354. Thus, GOV'T CODE §12532 is conflict preempted.

As the United States explains (Fed. Memo. at 18-19, 22-23 (ECF #2-1)), INA contemplates renting or leasing detention space, 8 U.S.C. §§1103(a)(11), 1231(g)(1)-(2), and federal regulations prohibit the disclosure of information about federal detainees to California's investigators:

> No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of the Service (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee.

8 C.F.R. §236.6. Insofar as the "[p]ower to regulate immigration is unquestionably exclusively a federal power," *DeCanas*, 424 U.S.at 354, these regulations were within the Attorney General's delegated authority and, as such, are just as preemptive as an act of Congress *vis-à-vis* an inconsistent state law. *New York v. FERC*, 535 U.S. 1, 17-18 (2002). Because the regulation bars disclosing information required by GOV'T CODE §12532, GOV'T CODE §12532 is preempted.

Similarly, AB103's interference with the federal government's access to detention facilities in California not only constitutes "an obstacle to the full purposes and objectives of Congress," *Arizona*, 567 U.S. at 410, but also impermissibly discriminates against federal interests. *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) ("state … law is invalid … if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals) (internal quotations omitted); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842-43 (9th Cir. 2014) ("state … law discriminates against the federal government if it treats someone else better than it treats the government") (internal quotations omitted); *United States v. County of Fresno*, 429 U.S. 452, 462-64 (1977) (burdens imposed on federal interests must be imposed equally on similarly situated constituents). GOV'T CODE §12532 fails these preemption tests.

## C.    SB54 — the California Values Act — is conflict preempted.

In seeking to restrict state and local law-enforcement officers from voluntarily contacting federal immigration authorities, SB54 directly conflicts with — and is superseded by — §1373, which allows such contact "[n]otwithstanding any other provision of Federal, State, or local law." 8 U.S.C. §1373(a). Given the express congressional override of inconsistent state laws, this Court need not inquire into the degree or extent of SB54's obstruction of federal law. The only question — answered in Section III, *infra* — is whether Congress had the authority to enact §1373 in the first place. If §1373 is valid, SB54 falls under direct application of the Supremacy Clause.

## D.    The United States — not California and not municipal government — has the exclusive authority to litigate as *parens patriae* for the people of California.

As California municipalities and elected officials, *amici* are caught in the middle of this state-federal battle over immigration policy. In this battle, the federal government has not only plenary authority to set immigration policy, *DeCanas*, 424 U.S. at 354, but also exclusive authority to litigate as *parens patriae* for *amici* and their constituents. *Alfred L. Snapp & Son v. Puerto Rico*

*ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982). The California Legislature and elected state officials are free to name their bills the "California Values Act" and the like, but the national government and federal Constitution speak for Californians on matters of immigration. *Amici* do not question defendants' standing to defend state law, *Diamond v. Charles*, 476 U.S. 54, 62-63 (1986), but defendants do not speak for the People of California in this litigation.

II.   **BY RESTRICTING PRIVATE EMPLOYERS' AND MUNICIPAL GOVERNMENT'S COOPERATION WITH FEDERAL IMMIGRATION OFFICIALS, AB450 AND SB54 CRIMINALLY CONCEAL, HARBOR, OR SHIELD ILLEGAL ALIENS FROM DETECTION.**

Beyond conflict preemption, the avowed purpose of AB450 and SB54 to make it more difficult for the federal government to deport illegal aliens, which constitutes criminal concealing, harboring, or shielding from detection under INA §274(a)(1)(A).[4] As this Circuit has made clear, "[t]he purpose of [§274] is to keep unauthorized aliens from entering *or remaining* in the country." *United States v. Acosta de Evans*, 531 F.2d 428, 430 (9th Cir. 1976) (emphasis in original). AB450 and SB54 put municipalities in an untenable position between the demands of state law and federal law. The requested injunction is needed to protect Californians from their own state government.

As the Ninth Circuit explained in *Acosta de Evans*, 531 F.2d at 430 & n.3, Congress added the "shield from detection" prong as "an independent addition" in 1952, whereas "harbor" simply means "afford shelter to" (*i.e.*, without the evasion inherent in §274's other two prongs). In *United States v. Aguilar*, 883 F.2d 662, 689 (9th Cir. 1989) (interior quotations omitted), *abrogated in part on other grounds*, *United States v. Gonzalez-Torres*, 309 F.3d 594 (9th Cir. 2002), this Circuit upheld a jury instruction classifying concealing or shielding as "conduct tending to directly or substantially facilitate an alien's remaining in the United States unlawfully with the intent to

---

4      As indicated, the crime includes not only concealing, harboring, and shielding from detection, but also attempts, conspiracy, and aiding and abetting. 8 U.S.C. §1324(a)(1)(A)(iii), (v).

prevent detection by the Immigration and Naturalization Service." Because the Legislature was acting to shield over 2 million illegal aliens at once, the Legislature had the required knowledge of the illegal aliens' immigration status. *United States v. Bunker*, 532 F.2d 1262, 1264 (9th Cir. 1976). The laws' stated "*purpose of* avoiding the aliens' detection by immigration authorities … is synonymous with having acted with necessary *intent*." *United States v. You*, 382 F.3d 958, 966 (9th Cir. 2004) (interior quotations and alterations omitted, emphasis in original). In sum, AB450 and SB54 criminally shield illegal aliens from detection in violation of §274.

Even if one supports the Legislature's charitable goals toward illegal aliens, the laws still are illegal because charitable ends do not excuse unlawful means: "The government's interest in controlling immigration outweighs [the] purported religious interest" of religiously motivated sanctuary workers.[5] *Aguilar*, 883 F.2d at 696. Just as the *Aguilar* sanctuary workers' Bible counseled to "Render to Caesar the things that are Caesar's," Mark 12:17 (King James), our secular bible — the Constitution — counsels the Legislature to render to the federal Government the things — such as immigration policy — that are the federal Government's.[6]

Under §274's plain terms, aiding and abetting is punished as the principal crime. 8 U.S.C. §1324(a)(1)(A)(v); *accord* 18 U.S.C. §2(a). To meet that standard, "a defendant must not just in

[5] The word "sanctuary" is historically inaccurate, based more on fiction and other countries' traditions, *see*, *e.g.*, VICTOR HUGO, THE HUNCHBACK OF NOTRE-DAME 189 (Lowell Bair ed. & trans., Bantam Books 1956), than on legal doctrine. In a country, such as ours, that derives its common law from English common law, *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 654 (1834), sanctuary would not suffice for what California seeks to accomplish, and — in any event — England ended sanctuary for criminal and civil process in 1623 and 1723, respectively, before English common law feed into our common law. Church Sanctuary for Illegal Aliens, 7 Op. O.L.C. 168, 168-69 & n.8 (1983). Significantly, even prior to its revocation, English common law allowed seeking sanctuary in a church, but only to choose between submitting to trial or confessing and leaving the country. *Id.* at 169 (*citing* 4 WILLIAM BLACKSTONE, COMMENTARIES *332-33).

[6] By adding §274 to RICO's list of predicate offenses, 18 U.S.C. §1961(1)(F), Congress signaled that it does not consider California's actions here benign.

some sort associate himself with the venture … but also participate in it as in something that he wishes to bring about and seek by his action to make it succeed." *Rosemond v. United States*, 134 S.Ct. 1240, 1251 n.10 (2014) (internal quotations omitted). By purporting to compel otherwise-willing law-enforcement officers and employers to desist from aiding federal enforcement efforts, both AB450 and SB54 seek to make illegal aliens' evasion of federal authorities succeed. Aiding-and-abetting liability requires neither "that the defendant was aware of every detail of the impending crime … nor that [the defendant] be present at, or personally participate in, committing the substantive crime." *United States v. Smith*, 832 F.2d 1167, 1170 (9th Cir. 1987). While "[m]ere participation … is not enough," the Legislature that enacted AB450 and SB54 affirmatively intended to thwart federal immigration efforts by shielding illegal aliens from the federal government. *United States v. Ramos-Rascon*, 8 F.3d 704, 711 (9th Cir. 1993) (aiding-and-abetting liability requires "that the defendant intentionally assisted in the venture's illegal purpose") (internal quotations omitted). The Legislature here fully acknowledged its purpose to thwart immigration enforcement and to reduce deportations. *See* Assembly Floor Analysis, SB54, at 8 (Cal. Sept. 15, 2017); Assembly Floor Analysis, AB450, at 3 (Cal. Sept. 13, 2017). That is more than enough for aiding-and-abetting liability.

## III.    8 U.S.C. §1373 IS A VALID EXERCISE OF CONGRESSIONAL POWER.

As indicated in Sections I.A and I.C, *supra*, AB450 and SB54 conflict with federal immigration policy, including 8 U.S.C. §1373. For that section to preempt AB450 and SB54, however, it must be a valid exercise of federal power. The Supreme Court has recognized two distinct types of unconstitutionality: "laws for the accomplishment of objects not entrusted to the government" and those "which are prohibited by the constitution." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 423 (1819). Put another way, "a federal statute, in addition to *being authorized* by Art. I, § 8, must also *'not [be] prohibited'* by the Constitution." *United States v.*

*Comstock*, 560 U.S. 126, 135 (2010) (*quoting McCulloch*, 17 U.S. (4 Wheat.) at 421) (alterations in *Comstock*, emphasis added). Anticipating the state's argument that §1373 exceeds federal power, *amici* now endeavor to show that it does not.

**A.    8 U.S.C. §1373 does not commandeer the states.**

California might attempt to challenge 8 U.S.C. §1373(a) as "commandeering" under precedents that "involve attempts by Congress to direct states to perform certain functions, command state officers to administer federal regulatory programs, or to compel states to adopt specific legislation." *Raich v. Gonzales*, 500 F.3d 850, 867 n.17 (9th Cir. 2007) (*citing Printz v. United States*, 521 U.S. 898, 935 (1997); *New York v. United States*, 505 U.S. 144, 166 (1992)).[7] As explained in this section, federal immigration law's allowance for a joint state and local role in immigration enforcement does not commandeer anyone.

At the outset, commandeering analysis "begin[s] with the time-honored presumption that the [statute] is a constitutional exercise of legislative power." *Reno v. Condon*, 528 U.S. 141, 148 (2000) (internal quotations omitted). Further, commandeering analysis does not extend to federal regulation of private parties, such as private employers subject to AB450. *FERC v. Mississippi*, 456 U.S. 742, 764 (1982); *South Carolina v. Baker*, 485 U.S. 505, 514-15 (1988).[8] Finally, as its name suggests, commandeering analysis does not apply to *consensual* actions. *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 808-09 (9th Cir. 2002). Thus, if *amici* or their law-enforcement agencies wish to cooperate with federal immigration efforts, federal immigration law does not "commandeer" that cooperation. Instead, it simply allows and protects that cooperation.

---

[7]    Commandeering can occur under the Spending Clause, *Nat'l Fed'n of Indep. Businesses v. Sebelius*, 567 U.S. 519, 577-78 (2012), but this litigation does not concern funding conditions.

[8]    As discussed in Section III.B, *infra*, purporting to restrict private parties' ability to work with federal immigration violates the First Amendment right of petition.

With private and consensual cooperation with federal immigration authorities thus outside the state's potential "commandeering" claim, all that remains as potentially impermissible federal commandeering is the allowance for *state* officers — *i.e.*, actual *state* employees — to work voluntarily with federal immigration authorities, notwithstanding state law to the contrary. *See* 8 U.S.C. §1373(a) (applying "[n]otwithstanding any other provision of Federal, State, or local law"). While *amici* respectfully submit that that question properly lies under the Necessary and Proper Clause, see Section III.B, *infra*, it is clear that nothing in 8 U.S.C. §1373(a) violates the anti-commandeering principles laid down in the *Printz-New York* line of cases.

In *New York*, the Supreme Court invalidated a federal law that required states to choose either to regulate the disposal of radioactive waste by private parties according to federal guidelines or to take title to the waste. *See New York*, 505 U.S. at 174-75. The Supreme Court rejected the ability of Congress to direct the workings of state legislatures:

> While Congress has substantial powers to govern … directly, including in areas of intimate concern to the States, the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions.

*Id.* at 162. Nothing in §1373(a) directs California's Legislature to enact anything.

Coming closer to this case — but not close enough to aid the state — *Printz* invalidated a provision of federal law that *required* state and local law enforcement officers to conduct background searches of prospective gun purchasers, something the court considered a backdoor attempt to compel states to enact or enforce a federal regulatory program. *See Printz*, 521 U.S. at 904. In essence, *Printz* applied *New York* to a federal statute that directed state officers, in lieu of directing the state legislature, which the Supreme Court found equally impermissible:

> Congress cannot circumvent [*New York*] by conscripting the States' officers directly. The Federal Government may neither issue directives requiring the States to address particular problems, nor

command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program.

*Id.* at 935. Again, nothing in §1373(a) directs state or local officers to do anything affirmatively.

In both *New York* and *Printz*, the challenged federal law impermissibly compelled state action, on pain of a dire-enough consequence to constitute the commandeering of states or state officers. With 8 U.S.C. §1373(a), INA does not *compel* California to do anything. Instead, INA merely prohibits California from preventing state and local law-enforcement officers and public and private employers from voluntarily cooperating with federal immigration authorities. To the extent that that federal prohibition is inconsistent with state law, the Supremacy Clause makes clear that the federal law prevails, U.S. CONST., art. VI, cl. 2, unless the federal law falls outside the power of Congress to enact. *See* Section III.B, *infra*.

**B.     8 U.S.C. §1373 is a "necessary and proper" exercise of federal power over immigration.**

In addition to its enumerated powers, Congress also has "broad authority," *Comstock*, 560 U.S. at 136, under the Necessary and Proper Clause to "make all Laws which shall be necessary and proper for carrying into Execution" Congress's enumerated powers. U.S. CONST, art. I, §8, cl. 18. In addition to its enumerated powers, Congress "must also be entrusted with ample means for their execution." *McCulloch*, 17 U.S. (4 Wheat.) at 408. Under the Necessary and Proper Clause, the question is "whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Comstock*, 560 U.S. at 134. Section 1373 falls comfortably within Congress's necessary-and-proper authority, even assuming *arguendo* that it is not within Congress's plenary Article I power over immigration.

When Congress regulates pursuant to its enumerated powers, Congress — through the Necessary and Proper Clause — "possesses every power needed to make that regulation effective." *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 118-19 (1942). The Clause "empowers

MUNICIPALITIES & ELECTED OFFICIALS' *AMICI CURIAE* BRIEF                                    14

Congress to enact laws in effectuation of its enumerated powers that are not within its authority to enact in isolation." *Gonzales v. Raich*, 545 U.S. 1, 39 (2005) (Scalia, J., concurring in the judgment). Thus, although the Constitution speaks of only a few crimes, and "nowhere speaks explicitly about the creation of federal crimes beyond those" few, "Congress [has] broad authority to create … crimes" in support of its enumerated powers. *Comstock*, 560 U.S. at 135-36. California cannot seriously dispute the federal authority to create the crime of concealing, harboring, and shielding from detection illegal aliens as necessary and proper to federal control of immigration, 8 U.S.C. §1324(a)(1)(A), but the question of §1373's necessity and propriety might arise.

As indicated, §1373 preempts state and local law that either prohibits or restricts inter-governmental communication on any individual's immigration status. 8 U.S.C. §1373(a). As signaled in Section I.A, *supra*, §1373 protects the First Amendment right of petition with respect to immigration issues; as signaled in Section II, *supra*, §1373 guards against criminal concealing, harboring, and shielding from detection illegal aliens in violation of INA §274(a)(1)(A). Under the circumstances, §1373 is rationally related to the enumerated powers of Congress over immigration.

Courts are deferential to Congress under the Necessary and Proper Clause on issues such as necessity, efficacy, and the fit between the means chosen and the constitutional end. *Comstock*, 560 U.S. at 135 (Court's alterations and interior quotations omitted). It suffices for a statute to be "convenient … or useful" or "conducive" to the exercise of an enumerated power. *McCulloch*, 17 U.S. (4 Wheat.) at 418; *accord Raich*, 545 U.S. at 33 (Scalia, J., concurring in the judgment). For that reason, the United States is likely to prevail if California argues that Congress lacked authority to enact §1373 under the Necessary and Proper Clause.

## CONCLUSION

For the foregoing reasons, *amici* respectfully submit that this Court urgently should enjoin the challenged provisions of AB450, AB103, and SB54.

MUNICIPALITIES & ELECTED OFFICIALS' *AMICI CURIAE* BRIEF                    15

Dated: April 6, 2018

Respectfully submitted,

/s/ Lawrence J. Joseph

Dale L. Wilcox
Sarah R. Rehberg
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: dwilcox@irli.org
Email: srehberg@irli.org

Lawrence J. Joseph (SBN 154908)

Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 200
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amici Curiae*