LEON J. PAGE, COUNTY COUNSEL
JOHN (JACK) W. GOLDEN, Senior Assistant (SBN 092658)
STEVEN C. MILLER, Senior Deputy (SBN 112951)
PATRICK K. BRUSO, Deputy (SBN 272109)
BENJAMIN L. BERNARD, Deputy (SBN 314698)
OFFICE OF THE COUNTY COUNSEL
333 West Santa Ana Boulevard, Suite 407
Post Office Box 1379
Santa Ana, California 92702-1379
Telephone: (714) 834-3300
Facsimile: (714) 834-2359

*Attorneys for Proposed Intervenors*
COUNTY OF ORANGE *and* SANDRA HUTCHENS,
Sheriff-Coroner for the County of Orange

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., *Governor of California, in his Official Capacity*; and XAVIER BECERRA, *Attorney General of California, in his Official Capacity*,<br><br>Defendants. | Case No.: 2:18-cv-00490-JAM-KJN<br><br>**NOTICE OF MOTION AND MOTION BY COUNTY OF ORANGE AND SANDRA HUTCHENS, SHERIFF-CORONER FOR THE COUNTY OF ORANGE, FOR LEAVE TO INTERVENE** |
| COUNTY OF ORANGE, *a political sub-division of the State of California;* SANDRA HUTCHENS, Sheriff-Coroner for the County of Orange,<br><br>Proposed Plaintiffs In Intervention.<br><br>v.<br><br>STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., *Governor of California, in his Official Capacity*; and XAVIER BECERRA, *Attorney General of California, in his Official Capacity*,<br><br>Proposed Defendants. | Date:    June 5, 2018<br>Time:    1:30 p.m.<br>Ctrm.:   Courtroom 6, 14th floor<br>          United States District Court,<br>          Robert T. Matsui Courthouse,<br>          501 I Street,<br>          Sacramento, California  95814 |

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

**TO ALL PARTIES HEREIN AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 5, 2018 at 1:30 p.m., or as soon thereafter as the matter may be heard, at Courtroom 6, 14th floor of the United States District Court, Robert T. Matsui Courthouse, 501 I Street, Sacramento, California 95814, before the Honorable Judge John A. Mendez, Proposed Intervenors COUNTY OF ORANGE, a political sub-division of the State of California, and SANDRA HUTCHENS, Sheriff-Coroner for the County of Orange (collectively "Proposed Intervenors") will move this Court for an Order allowing intervention in this action as party plaintiffs under Federal Rule of Civil Procedure 24(b).

The Motion of Proposed Intervenors COUNTY OF ORANGE, a political sub-division of the State of California, and SANDRA HUTCHENS, Sheriff-Coroner for the County of Orange is based on this Notice of Motion; the Memorandum of Points and Authorities; the Declaration of John (Jack) Wisner Golden; the Declaration of Robert J. Peterson; all pleadings and other documents filed in this case; and any and all arguments of counsel at the hearing.

DATED:   April 20, 2018                      Respectfully submitted,

LEON J. PAGE, COUNTY COUNSEL
JOHN (JACK) W. GOLDEN, Senior Assistant
STEVEN C. MILLER, Senior Deputy
PATRICK K. BRUSO, Deputy
BENJAMIN L. BERNARD, Deputy

By:   /S/ John (Jack) W. Golden
John (Jack) W. Golden, Senior Assistant

*Attorneys for Proposed Intervenors*
COUNTY OF ORANGE *and* SANDRA
HUTCHENS, Sheriff-Coroner for the
County of Orange

NOTICE OF MOTION FOR LEAVE TO INTERVENE

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# INTRODUCTION

By this motion, Proposed Intervenors seek this Court's permission to intervene in the instant action originally filed by the UNITED STATES OF AMERICA ("U.S.").

In this action, COUNTY OF ORANGE (hereafter "County") and SANDRA HUTCHENS, Sheriff-Coroner for the County of Orange (hereafter "Sheriff") (collectively, "Proposed Intervenors"), seek to join the United States as Plaintiffs In Intervention to obtain from this Court a declaration invalidating and preliminarily and permanently enjoining the enforcement of certain provisions of California law including Government Code § 12523 (AB 103) and Government Code § 7284.6 (SB 54 – California Values Act). These provisions are preempted by federal law and impermissibly discriminate against the United States, and therefore violate the Supremacy Clause of the United States Constitution. They also interfere with the ability of local entities and law enforcement to ensure public safety for their residents.

The United States has undoubted, preeminent authority to regulate immigration matters. This authority derives from the United States Constitution and numerous acts of Congress. California has no authority to enforce laws that obstruct or otherwise conflict with, or discriminate against, federal immigration enforcement efforts.

Proposed Intervenor COUNTY OF ORANGE, California, is a political subdivision of the State of California. The highest body to perform the legislative and executive functions on behalf of the County is the Board of Supervisors (Board). Upon assuming office each Board member is required to take an oath to support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; and to bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California. Further, in order to obtain federal grants and federal funds, the County has on many occasions pledged grant assurances that it will follow all federal laws.

Proposed Intervenor SANDRA HUTCHENS, Sheriff-Coroner for the County of Orange, is a State Constitutional Officer and a County Officer under California law and

MOTION FOR LEAVE TO INTERVENE

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

has authority to operate the County jails and to exercise law enforcement police powers on behalf of the State. In order to assume office the Sheriff is required to take an oath to support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; and to bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California. Further, in order to obtain federal grants and federal funds, the Sheriff has on many occasions pledged grant assurances that her department will follow all federal laws.

## STATEMENT OF FACTS

This lawsuit challenges two California statutes that reflect a deliberate effort by California to obstruct the United States' enforcement of federal immigration law, to impede consultation and communication between federal and state and local law enforcement officials, and to interfere with contracts between federal and local entities and law enforcement officials to house immigration detainees in local.

The first statute, Assembly Bill 103 ("AB 103"), creates an inspection and review scheme that requires the Attorney General of California to investigate the immigration enforcement efforts of federal agents and to inspect the local jail facilities being utilized for detention of immigration detainees. The second statute, Senate Bill 54 ("SB 54"), which includes the "California Values Act," limits the ability of state and local law enforcement officers to provide the United States with basic information about individuals who are in their custody and are subject to federal immigration custody, or to transfer such individuals to federal immigration custody. It also limits the ability of local jurisdictions to contract with federal authorities to detain illegal aliens pending immigration hearings. Further, it interferes with the extension and renewal of contracts between local entities and the federal immigration authorities to provide housing for immigration detainees and to provide exclusive space within those detention facilities to federal authorities.

The provisions of state law at issue have the purpose and effect of making it more

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1  difficult for federal immigration officers to carry out their responsibilities in California
2  and for local jurisdictions (to fulfill the role Congress set forth for them) to cooperate
3  with federal officers to meet those responsibilities. The Supremacy Clause does not
4  allow California to obstruct the United States' ability to enforce laws that Congress has
5  enacted or to take actions entrusted to it by the Constitution. Accordingly, the provisions
6  at issue here are invalid.

7  ## ARGUMENT

8  Proposed Intervenors are seeking to intervene based upon Federal Rule of Civil
9  Procedure, Rule 24 subsection (a) (intervention as a matter of right) and subsection (b)
10  (permissive intervention).

11  **1.   Proposed Intervenors Satisfy the Four Part Test for**
12  **Intervention as a Matter of Right**

13  To intervene as a matter of right under Federal Rule of Civil Procedure 24(a) the
14  applicant for intervention must claim an interest, the protection of which may, as a
15  practical matter, be impaired or impeded if the lawsuit proceeds in its absence.  FRCP
16  24(a).  Rule 24 "traditionally receives liberal construction in favor of applicants for
17  intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003 (citing
18  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)); *Southwest Ctr. For*
19  *Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).  In this regard, Courts
20  are guided primarily by practical and equitable considerations. *Id.*

21  The Ninth Circuit applies a four part test under this rule, which includes the
22  following:  (1) the motion must be timely; (2) the applicant must claim a significantly
23  protectable interest relating to the property or transaction which is the subject of the
24  action; (3) the applicant must be so situated that the disposition of the action may as a
25  practical matter impair or impede its ability to protect that interest; and (4) the
26  applicant's interest must be inadequately represented by the parties to the action. *Sierra*
27  *Club v. United States Envtl. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993); *Arakaki*,
28  324 F.3d at 1083; *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1 | (9th Cir. 1996).

2 |       **a.    The Instant Motion Is Timely**

3 |       Whether a motion to intervene is timely is determined by the following three

4 | factors: (1) the stage of the proceedings, (2) prejudice to other parties, and (3) the reason

5 | for and length of any delay. *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir.

6 | 2004); *U.S. v. State of Or.*, 745 F.2d 550, 552 (9th Cir. 1984); *Petrol Stops Northwest v.*

7 | *Continental Oil Co.*, 647 F.2d 1005, 1009 (9th Cir. 1981). "Timeliness is to be

8 | determined from all the circumstances. And it is to be determined by the court in the

9 | exercise of its sound discretion." *National Ass'n for Advancement of Colored People v.*

10 | *New York*, 413 U.S. 345, 365-66, 93 S. Ct. 2591, 2603 (1973)

11 |       First, the proceeding is in the early stages; the complaint was filed on March 6,

12 | 2018, less than two months ago; on the same day the U.S. filed a Motion for Preliminary

13 | Injunction. Only some basic preliminary matters have been raised with the Court: the

14 | State filed a motion to transfer venue to the Northern District on March 13, 2018. The

15 | U.S. filed an opposition to the motion to transfer venue on March 20, 2018. The motion

16 | to transfer venue was denied on March 29, 2018. The Court's scheduling order, filed on

17 | March 29, 2018, sets forth the following deadlines in relation to the Motion for

18 | Preliminary Injunction: (1) Defendants' Opposition Brief is due May 4, 2018; (2) Amici

19 | Curiae Briefs in Support of Defendants' Opposition due May 18, 2018; (3) Plaintiff's

20 | Reply Brief due June 8, 2018; (4) Hearing on Motion for Preliminary Injunction set for

21 | June 20, 2018, at 10:00 a.m.

22 |       Proposed Intervenors are seeking to intervene very early on in the litigation, and

23 | the Defendant has not yet filed its Opposition Brief to the Motion for Preliminary

24 | Injunction. Except for denying the Motion to Change Venue, the Court has made no

25 | substantive rulings relating to the case. The State has not filed an Answer to the

26 | Complaint. Per the Court's docket, the parties have only engaged in some limited,

27 | expedited discovery. Courts have granted motions to intervene filed at much later stages

28 | of the proceedings and well after the case progressed beyond preliminary discovery. *See*

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1  *U.S. v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (motion to intervene not

2  untimely where applicant filed its motion upon notice that settlement was contrary to

3  their interest even though application was made "eighteen months after the complaint

4  was filed, after six months of court-ordered mediation, and four days of settlement

5  negotiations in front of a magistrate").

6        Second, it is unclear what prejudice, if any, the State could claim from Proposed

7  Intervenors' attempt to intervene in the lawsuit. Courts have held that "prejudice"

8  generally refers only to the issue of timeliness; that is, the prejudice referred to is in

9  relation to the harm that results to the rights of other parties only by the purported delay.

10  *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970). Since the

11  proceeding is in the early stage, it is unlikely that any prejudice would come to the

12  parties by allowing Applicant to intervene in the matter.

13        Prejudice is generally construed to mean serious delays or case resolutions before

14  intervention is sought. *American Civil Liberties Union of Minnesota v. Tarek ibn Ziyad*

15  *Academy*, 643 F.3d 1088 (8th Cir. 2011)(prejudice found when motion to intervene made

16  14 months after complaint and after parties had already engaged in extensive motion

17  practice, commenced written discovery, and begun taking depositions); *Amador County,*

18  *Cal. V. U.S. Dept. of the Interior*, 772 F.3d 901 (D.C. Cir. 2014) (prejudice found when

19  Indian tribe did not move to intervene for 8 years, and the case was ready for a decision

20  on the merits). Since Proposed Intervenors' intervention at this point will not delay

21  resolution of the case, and since the case is still in the early stages of litigation, it is

22  unlikely that intervention would result in prejudice to the existing parties.

23        Third, because the Complaint has only recently been filed, Proposed Intervenors

24  did not delay in bringing forth this intervention. Proposed Intervenors moved in a timely

25  manner to authorize the intervention and have filed their Motion before the State has

26  even responded with its Opposition Brief to the Motion for Preliminary Injunction and

27  prior to the State's Responsive pleading being due. Because Proposed Intervenors have

28  moved quickly to assert their rights, and because no party will be prejudiced by the

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

delay, Proposed Intervenors have satisfied the timeliness requirement under Rule 24(a).

### b.   The County and the Sheriff Have Significant Protectable Interests in the Subject of This Action

For intervention, the Ninth Circuit requires that the movant have a significantly protectable interest. *Arakaki*, 324 F.3d at 1084 (citing *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Such interest is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citations omitted). To demonstrate this interest, "[n]o specific legal or equitable interest need be established." *Northwest Forest Resource Council*, 82 F.3d at 837 (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)). Instead, a prospective intervenor need only establish that (1) the interest asserted is protectable under some law, and (2) there is a relationship between the legally protected interest and the claims at issue. *Arakaki*, 324 F.3d at 1084. "[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)

Here, Proposed Intervenors have significant protectable interest in the court finding SB 54 and AB 103 unconstitutional.

First, Congress has prohibited any laws at the federal, state or local level that would restrict the ability of government officials to share information and cooperate with immigration authorities when it enacted section 1373(a) of Title 8 of the U.S. Code. "Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a).  This statute clearly places an expectation upon the Sheriff to disclose information to federal immigration authorities;

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

the State may not alter the Sheriff's obligations under federal law by the California Values Act. The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof...shall be the supreme Law of the Land...any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Cons., art. VI, cl. 2. pursuant to the Supremacy Clause of the United States. The California Values Act attempts to restrict the Sheriff's obligations under federal law as expressed by Congress in Title 8, section 1373 of the U.S. Code, by mandating that "a law enforcement official has the discretion to cooperate with immigration authorities...only... under" specified and limited circumstances that deviate from the requirements of federal law. Cal. Gov't Code § 7282.5.

Second, the Proposed Intervenors have the significant protectable interest in protecting the citizens of Orange County. Under the California Values Act, law enforcement is unable to cooperate or communicate with federal immigration authorities in many instances where the public would be placed at risk. (Peterson Declaration paragraphs 4, 5, and 6.) The California Values Act generally requires as a precursor to any cooperation or communication with federal immigration authorities that the alien be convicted. (Peterson Declaration paragraphs 10 and 11.) This requirement puts the citizens of Orange County at great risk as evidenced by offenses that have been deemed so severe that Congress has directed the Attorney General to detain the alien based upon reasonable suspicion of committing that offense irrespective of a conviction. Terrorist activities, member of terrorist organization, association with terrorist organizations, and human trafficking are all offenses in which the U.S. Attorney General is directed to detain the alien if either the Attorney General, the Secretary of Homeland Security, or the Secretary of State knows or has reason to believe the alien is committing or has committed these offenses. 8 U.S.C. §§ 1226; 1182(a)(3)(B); 1182(a)(2)(h); *see also* 8 U.S.C. § 1182(a)(2)(c) (controlled substance traffickers); 8 U.S.C. § 1182(a)(2)(i) (money laundering). Because the California Values Act generally requires a conviction,

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   law enforcement may not cooperate or communicate with federal immigration

2   authorities when they know or have reason to know the alien is involved in these

3   offenses, thus jeopardizing the citizens of Orange County. (Peterson Declaration

4   paragraphs 3, 4, 10, and 11.)

5       In addition, Congress has provided a list of crimes that are deemed so severe that

6   the Attorney General is directed to take the convicted alien into custody after the alien

7   serves their state or local criminal offenses. 8 U.S.C. § 1226(c). An example of instances

8   in which convicted aliens may not be reported under the California Values Act but

9   would fall under 8 U.S.C. § 1226(c) would be non-felony drug offenses, non-felony

10  human trafficking offenses, drug abusers and addicts, espionage, sabotage, treason and

11  sedition, crimes of moral turpitude, foreign government officials who have committed

12  particularly severe violations of religious freedom, aliens involved in serious criminal

13  activity who have asserted immunity from prosecution, and engaging in prostitution.

14  Furthermore, even under the exceptions listed under the California Values Act Cal.

15  Gov't Code § 7282.5 (a)(3)(A)-(Z), if the individual is convicted of a misdemeanor for

16  any of these crimes listed in (A)-(Z) and five years have passed, then local law

17  enforcement shall not disclose or cooperate with immigration authorities. (Peterson

18  Declaration paragraphs 10 and 11.)  Similarly, if the individual is convicted of a felony

19  for any of these crimes and 15 years have passed, then local law enforcement shall not

20  disclose or cooperate with immigration authorities. The federal statute does not have a

21  time cut off for any of these types of convictions, making the exceptions provided in

22  California Values Act much narrower in its application.  The California statute does not

23  take into account that a person who is still a danger to society may have served a prison

24  term that coincides with the five year or fifteen year period, and may have recently been

25  released with no track record of rehabilitation.  It is the federal government who has the

26  constitutional authority to determine whether a crime committed by a person present in

27  the U.S. illegally should lead to deportation, not the State of California.  But due to the

28  California Values Act, the state has interfered with the federal government's exercise of

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1  its authority on this issue and placed the Sheriff in an untenable position.

2      Third, the County and the Sheriff are under competing dual obligations in that

3  they have to comply with both state and federal law despite the fact that those laws are

4  currently in conflict. (Peterson Declaration paragraph 4.)  For example, to facilitate

5  coordination between state local officials and the United States, Congress expressly

6  prohibited any federal, state, or local government entity or official from prohibiting, or

7  in any way restricting, any government entity or official from sending to, or receiving

8  from, DHS "information regarding the citizenship or immigration status of an

9  individual." 8 U.S.C. § 1373(a); *see also* 8 U.S.C. § 1644. Although SB 54 purports to

10  be consistent with 8 U.S.C. § 1373, *see* Cal. Gov't Code § 7284.6(e), sections

11  7284.6(a)(1)(C) and (D) explicitly forbid the sharing of information covered by 8 U.S.C.

12  § 1373.

13      On March 28, 2018, a Criminal Targeting Specialist assigned to the U.S.

14  Immigration and Customs Enforcement (ICE) National Criminal Analysis and Targeting

15  Center requested that a representative of the Orange County Sheriff's Department

16  provide a booking photo from an arrest of an individual suspected of immigration

17  violations in January 2017 for bringing controlled substances into a prison and being

18  under the influence thereof.  Providing the photo to ICE would have placed the Sheriff in

19  the position of violating Cal. Gov't Code § 7284.6 (a)(1)(D), which prohibits law

20  enforcement from providing to ICE an individual's personal information, which is

21  defined as including "any information that is maintained by an agency that identifies or

22  describes an individual" (Cal. Civ. Code § 1798.3(a)), that is not available to the general

23  public. (Peterson Declaration paragraph 5.) Because the Sheriff does not make booking

24  photos available to the general public and because a photo would certainly identify the

25  individual, the Sheriff declined the request for the photo.

26      Prior to January 1, 2018, the Orange County Sheriff's Department was the only

27  Sheriff's Department in the State that continued to operate a 287g program in the jails.

28  (Peterson Declaration paragraph 6.)   The 287g program is a federally authorized

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-9-
MOTION FOR LEAVE TO INTERVENE

1   program relating to immigration (8 U.S.C. § 1357(g)), under which jail deputies, who

2   had been trained by ICE, reviewed inmates for civil immigration violations and placed

3   "detainers" on those inmates who qualified under California law to be transferred to ICE

4   once the inmates were eligible to be released from Sheriff's custody.   The program

5   enabled the federal government to be the arbiter of whether an inmate might or should

6   be subject to removal or deportation.   SB 54 prohibits law enforcement from

7   participating in the 287g program and thus the Sheriff was compelled to discontinue her

8   cooperation with ICE in this regard at the end of December 2017. (Peterson Declaration

9   paragraph 6.)

10      Also, in January 2018, the state Attorney General's office demanded a tour of the

11   Theo Lacy Branch Jail and James A. Musick Branch Jail wherein ICE detainees are held

12   within the County of Orange jail system.   The demand included review of documents

13   that ICE contends are its property and that, pursuant to the contract between the County,

14   Sheriff, and ICE, are to be kept confidential.   The Sheriff, being under the direct

15   authority of the State A.G. gave the A.G. access as requested (an arguable breach of the

16   Sheriff's contract with ICE) but only after providing ICE the opportunity to oppose the

17   A.G. having access to its records.   While an ICE representative indicated their objection

18   to the A.G. having access to records and detainees, the A.G. completely disregarded the

19   contractual rights of ICE vis a vis records relating to detainees, and conducted a review

20   of these records. (Peterson Declaration paragraphs 3 and 4.)

21      A second example is that the Cal. Attorney General guidelines for implementing

22   the California Values Act state that the Sheriff may not divulge to ICE information about

23   the release of detainees unless that release falls within the specific crime exceptions

24   stated in Cal. Gov't Code § 7282.5. Additionally, the Sheriff cannot provide personal

25   information about the detainees unless that information is otherwise available to the

26   general public. Cal. Gov't Code § 7284.6(d). (Peterson Declaration paragraphs 10 and

27   11.) Left with these restrictions, the Sheriff decided to release information for all

28   persons kept in the custody of her jail system available to the public.  Upon hearing that

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-10-
MOTION FOR LEAVE TO INTERVENE

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   this was her intent, the defendant Attorney General at a press conference was recorded
2   as saying, "State law is state law.  And it is my job to enforce state law.  I will do so.
3   And we want to make sure that every jurisdiction, including Orange County, understands
4   what state law requires of the people and the subdivisions of the State of California."  In
5   response to this statement, a reporter asked:  "Does that mean a lawsuit against the
6   sheriff's department or the arrest of the sheriff?"  The Attorney General replied, "I think
7   I just answered that." (Peterson Declaration paragraph 7.) The idea that a sitting Sheriff,
8   elected by the local citizenry, might face civil or criminal liability for finding a way to
9   comply with state and federal mandates, demonstrates the draconian nature of the state
10  laws that Proposed Intervenors wish to challenge as unconstitutional in this case.  It
11  further indicates the Proposed Intervenors' protectable interests which are not protected
12  by the U.S. as the interests are different.

   c.    **The Court's Ruling Might Impair the County and the Sheriff's**
         **Significant Protectable Interests**

15      Where the district court's decision will result in "practical impairment,"
16  intervention is appropriate. Rule 24 only requires that the proposed intervenors show
17  that the disposition *may* harm their ability to protect their interest and need not show any
18  actual or substantial impairment. Fed. R. Civ. P. 24 (a); *Yniquez v. Arizona*, 939 F.2d
19  727, 735 (9th Cir. 1991).

20      If Proposed Intervenors are not allowed to intervene, the Court's ruling in this
21  matter may, as a practical matter, impair or impede Proposed Intervenors' ability to
22  protect their County residents and citizens or subject the Sheriff to prosecution by the
23  California State Attorney General Xavier Becerra as he impliedly threatened in the
24  recent news conference referenced above.  Further, the County and the Sheriff have
25  significant monetary interest in their contracts with ICE which generate between
26  $22,000,000 and $27,000,000 annually that supports the maintenance and operation of
27  the County jail system.  (Peterson Declaration paragraph 2.)
28      Furthermore, Proposed Intervenors' powers, as delegated and conferred by

-11-
MOTION FOR LEAVE TO INTERVENE

1   Congress, are at stake in the present action.  8 U.S.C. § 1373(a).

2         **d.    The Existing Parties Will Not Adequately Represent All Of The**

3                   **Interests Of The County Or The Sheriff**

4         Proposed Intervenors have the minimal burden of showing that their interest

5   would not be adequately represented by any of the parties to this action. *Arakaki*, 324

6   F.3d at 1986.  The Ninth Circuit looks to the following factors in determining adequacy

7   of representation: (1) whether the interest of a present party is such that it will

8   undoubtedly make all the intervenor's arguments; (2) whether the present party is

9   capable and willing to make such arguments; and (3) whether the intervenor would offer

10   any necessary elements to the proceedings that other parties would neglect. *People of*

11   *State of California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986);

12   *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983); *County of Fresno v.*

13   *Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980).

14         Proposed Intervenors' interests are not adequately represented in this case.  First,

15   Proposed Intervenors' interests in the case are in regard to its status as a local

16   government entity and county law enforcement officer, and Proposed Intervenors are

17   specifically joining the case to address the constitutional and public safety rights of their

18   citizens.  Second, Proposed Intervenors are dealing with the actual application of the

19   state laws on the local level, and as such have separate interests from the federal

20   government in that the State and its Attorney General are currently making demands

21   upon Proposed Intervenors with respect to Applicant's jail facilities and records.  The

22   Orange County Sheriff has been threatened by the Attorney General for complying with

23   federal law.  Therefore, each Applicant "offers a perspective which differs materially

24   from that of the present parties to this litigation." *Sagebrush Rebellion, Inc.*, 713 F.2d at

25   528.  Whereas the federal government is looking at overarching claims of preemption to

26   establish a uniform national immigration law, Proposed Intervenors are looking at their

27   claims from the nexus of protecting the rights of their local citizens and dealing with

28   their obligations in relation to the conflicting state and federal laws.  In this regard,

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

MOTION FOR LEAVE TO INTERVENE

1  Proposed Intervenors can offer facts directly related to the effect of SB 54 and AB 103
2  on local law enforcement in the County as related to federal immigration law.

3      Proposed Intervenors have made more than the required "minimal showing that
4  representation of its interest may be inadequate." *People of State of California v. Tahoe*
5  *Reg'l Planning Agency*, 792 F.2d at 778 (9th Cir. 1986); *U.S. v. Stringfellow*, 783 F.2d
6  821, 827 (9th Cir. 1986).  Because Proposed Intervenors have met the four factors for
7  intervention as a matter of right under FRCP 24(a), the prerequisites have been met for
8  the court to allow them to intervene in this case.

9      **2.  Proposed Intervenors Meet the Requirements for Permissive**
10         **Intervention Under Federal Rules of Civil Procedure, Rule 24(b)**

11      In the alternative, Proposed Intervenors seek permissive intervention under Rule
12  24(b).  Rule 24(b)(2) gives courts discretion to allow intervention when the applicants'
13  claim has a common question of law or fact within the main action, so long as there is no
14  undue prejudice to the parties.  Specifically, the Court may grant permissive intervention
15  only if three conditions are met: (1) movant must show an independent ground for
16  jurisdiction; (2) motion must be timely; and (3) movant's claim or defense and the main
17  action must have a question of law and fact in common.  *U.S. v. City of Los Angeles*, 288
18  F.3d 391, 403 (9th Cir. 2002); *Venegas v. Skaggs*, 867 F.3d 527 (9th Cir. 1989).

19      Rule 24 reflects a broad and flexible policy of adding a party or allowing
20  intervention whenever necessitated by the interest of justice and/or judicial efficiency.
21  Hence, the Supreme Court has regularly granted motions to intervene.  *See e.g., Hunt v.*
22  *Cromartie*, 525 U.S. 946 (1998).  Additionally, "the existence of a common question is
23  liberally construed."  *Bureerong v. Uvawas*, 167 F.R.D. 83, 85 (C.D. Cal. 1996).  Once
24  the conditions for permissive intervention are met, it is up to the court to decide whether
25  or not intervention is appropriate.  "A district court's discretion in this regard is broad."
26  *Spangler v. Pasadena City Board of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).  The
27  District court is vested with discretion to determine the fairest and most efficient method
28  of handling the case. *Venegas*, 867 F.3d 527.

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-13-
MOTION FOR LEAVE TO INTERVENE

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   Proposed Intervenors meet the initial three conditions for permissive intervention.
2   First, Proposed Intervenors' grounds for subject matter jurisdiction are based on federal
3   question jurisdiction.   Second, Proposed Intervenors' motion is timely.   *Supra* § 1(a).
4   Allowing Proposed Intervenors to intervene would neither delay nor prejudice the
5   existing parties since the case is still in its infancy.

6   Third, permissive intervention is allowed, with the court's discretion, when the
7   intervenor has a claim or defense that shares with the main action a common question of
8   law or fact.  The rule itself does not specify any particular interest that will suffice for
9   permissive intervention and, as the Supreme Court has said, it "plainly dispenses with
10  any requirement that the intervenor shall have a direct personal or pecuniary interest in
11  the subject of the litigation." *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459
12  (1940).   In this case, Proposed Intervenors' claims do share with the main action a
13  common question of law or fact.

14  Specifically, Proposed Intervenors are seeking to intervene due to their conflicting
15  requirements to comply with both state law and federal law and to live up to the
16  obligations set forth by Congress and by their contractual commitments to the federal
17  government.    As evident from Proposed Intervenors' proposed Complaint in
18  Intervention, Proposed Intervenors share an interest with the federal government in
19  determining whether or not state law is preempted by federal law under the Supremacy
20  Clause.  Additionally, Proposed Intervenors share common questions of fact with the
21  main action, such as the impact that state "sanctuary city" laws have on the County and
22  Sheriff and their interaction to cooperation with federal immigration law and
23  enforcement, and by being compelled to enforce a constitutionally infirm law. As stated
24  above, the Court would have wide discretion in determining if this requirement is met.

25  Additionally, "judicial economy is a relevant consideration in deciding a motion
26  for permissive intervention." *Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989). The
27  issues relevant to both Proposed Intervenors and to the federal government share
28  common questions of law and fact, and this Court would be in the best position to rule

1  on these issues.   It would also prevent Proposed Intervenors from having to waste

2  judicial resources by filing their own separate complaint against the state.   Therefore,

3  Proposed Intervenors' Motion to Intervene should be granted.

**CONCLUSION**

5      For the foregoing reasons, Proposed Intervenors respectfully request that the

6  instant Motion be granted.

7  DATED:   April 20, 2018                    Respectfully submitted,

8                              LEON J. PAGE, COUNTY COUNSEL
                             JOHN (JACK) W. GOLDEN, Senior Assistant
9                              STEVEN C. MILLER, Senior Deputy
                             PATRICK K. BRUSO, Deputy
10                             BENJAMIN L. BERNARD, Deputy

12                             By:      /S/ John (Jack) W. Golden
                             John (Jack) W. Golden, Senior Assistant

14                             *Attorneys for Proposed Intervenors*
                             COUNTY OF ORANGE *and* SANDRA
15                             HUTCHENS, Sheriff-Coroner for the
                             County of Orange

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-15-