XAVIER BECERRA
Attorney General of California
THOMAS PATTERSON
Senior Assistant Attorney General
MICHAEL NEWMAN
SATOSHI YANAI
Supervising Deputy Attorneys General
CHRISTINE CHUANG
ANTHONY HAKL
CHEROKEE DM MELTON
LEE I. SHERMAN
Deputy Attorneys General
State Bar No. 272271
 300 S. Spring Street
 Los Angeles, CA 90013
 Telephone: (213) 269-6404
 Fax: (213) 897-7605
 E-mail: Lee.Sherman@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., Governor of California, in his official capacity; and XAVIER BECERRA, Attorney General of California, in his official capacity,<br><br>Defendants. | Case No. 2:18-cv-00490-JAM-KJN<br><br>**DECLARATION OF JOE DOMINIC IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Honorable John A. Mendez<br>Action Filed: March 6, 2018 |

I, Joe Dominic, declare as follows:

1. I am a resident of the State of California. I have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the California Department of Justice ("CalDOJ") as the Chief of the California Justice Information Services ("CJIS") Division, a position that I have held since October 5, 2015. I have served at CalDOJ, in CJIS for 25 years. Before assuming my current role, I was the Director of the Criminal Justice Information Technology Services Branch.

3. I am familiar with Senate Bill 54 ("SB 54"), California Government Code section 7282 *et seq.*, which I understand is being challenged in this case. Moreover, I have reviewed the Amended Declaration of Thomas Homan filed in this matter on April 2, 2018 (ECF No. 46-2).

4. CJIS is responsible for providing criminal justice intelligence, identification, information and technology services to law enforcement, regulatory agencies and the public. As part of those responsibilities, CJIS maintains databases into which state and local law enforcement agencies input criminal justice data. CJIS serves as the administrator of these databases, and allows law enforcement agencies—federal, state, and local—to have access to the information contained in those databases.

5. Law enforcement agencies may access California's databases through the California Law Enforcement Telecommunications System ("CLETS"), which is managed by CJIS. The purpose of CLETS is to provide an efficient law enforcement communications network that is accessible to all law enforcement agencies within the state. CLETS provides the network mechanism for law enforcement agencies to access and conduct queries into the 54 databases used by California law enforcement agencies.

**Information Accessible Via CLETS**

6. Several of the databases available through CLETS contain addresses for persons who have had interactions with the criminal justice system. For example, the Supervised Release File ("SRF") is a California criminal justice database accessible via CLETS with information about active parolees, probationers, sex and arson registrants, violent offenders, and career

1

criminals. The SRF allows law enforcement agencies to input messages into the database about encounters with subjects. The SRF contains data fields for the subject's address for officers to input into the database. The SRF also contains mandatory fields for "Start Date of Supervision," which means the date under which a person begins his or her probationary period. Under some circumstances, this would correlate with the date that a person is scheduled to be released from custody.

7. In addition, the California Sex Arson Registry ("CSAR") is California's repository for sex and arson registration information that is accessible via CLETS. Local law enforcement agencies are required to use CSAR to register, track, and monitor their sex and arson registrants after they are convicted of qualifying offenses. Upon registration, sex and arson registrants must provide their address, which is input into CSAR.

8. Users with access to CLETS may conduct queries across all the databases available, or conduct queries through specific databases. For instance, a law enforcement officer with access to CLETS may conduct a query for a person by his or her name and/or date of birth throughout all of the databases available via CLETS to identify the person who is the subject of the law enforcement officer's inquiry, and any information that is available about that person. If the person's address or start date of supervision was input into SRF or the CSAR database, then the inquiring law enforcement agency would be able to identify that information through CLETS.

**Immigration Authorities' Access to CLETS**

9. Any law enforcement officer who seeks access to CLETS must agree in writing to the terms and conditions of using CLETS prior to having access to the CLETS and the information contained therein. Officers with federal agencies may access CLETS in the same manner as state and local law enforcement officers. Specifically, officers with the Department of Homeland Security ("DHS"), including Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP"), are eligible to access CLETS. They may access CLETS through their own offices and equipment, and do not need to go through a California state or local law enforcement agency in order to obtain access.

2

Decl. of Joe Dominic in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.
(18-cv-00490-JAM-KJN)

10.     SB 54 has not changed ICE or CBP's access to the databases available in CLETS. My understanding is that SB 54 provides some limitations on the use of "agency or department moneys or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes." The databases that are available via CLETS are maintained for criminal justice purposes only, and not for immigration enforcement purposes. My understanding is that SB 54 also explicitly authorizes criminal history information accessed through CLETS to be shared with immigration authorities to the extent otherwise permitted by state law.

11.     Data collected by CJIS shows that DHS agencies have continued to access CLETS since January 4, 2018. Each agency that accesses CLETS is assigned an originating agency identifier ("ORI") by the FBI. Each CLETS terminal within an ORI is assigned a Terminal Mnemonic ("MNE"). CJIS is able to track every time that a specific MNE conducts a query in CLETS.

12.     Between October 1, 2017 and December 31, 2017, DHS agencies collectively conducted 69,189 queries in CLETS.

13.     By comparison, between January 1, 2018 and March 31, 2018, DHS agencies collectively conducted 89,223 queries in CLETS.

**Immigration Authorities' Access to the CalGang Database**

14.     Thomas Homan makes allegations in paragraphs 33, 34, and 79 of his declaration about California purportedly denying ICE access to the CalGang database. My understanding is that the California provisions that govern CalGang are not at issue in this case. Nonetheless, my declaration provides a true and accurate account of the administration of the CalGang database, prior to the passage of AB 90 and presently.

15.     CalGang is a criminal intelligence database that contains information for persons who law enforcement agencies have designed as a gang member or associate. CalGang is not accessible via CLETS. As of October 2017, law enforcement users sought access to CalGang through nine node administrators, consisting of local law enforcement agencies throughout the State of California. Prior to January 1, 2018, those node administrators controlled access to

3

Decl. of Joe Dominic in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.
(18-cv-00490-JAM-KJN)

CalGang. Before January 1, 2018, no State of California agency, including CalDOJ, was responsible for providing oversight of the CalGang database.

16. On October 12, 2017, the Governor signed Assembly Bill 90 ("AB 90") into law, which changed the administration of CalGang in several respects. First, effective January 1, 2018, the authority to administer CalGang was transferred to CalDOJ, which assigned responsibility to CJIS for administering the database. Second, AB 90 imposed a moratorium on the use of CalGang for all users effective January 1, 2018 until the Attorney General certified that specified information from CalGang had been purged from the database. Third, AB 90 provides that CalDOJ shall temporarily suspend access to CalGang for any user who shares information for federal immigration law purposes, unless required by state or federal statute or regulation.

17. I have been informed by my team that after the passage of AB 90, in October 2017, two of the node administrators located within the Orange County District Attorney's office and the San Diego Police Department suspended ICE from having access to CalGang. These node administrators did not consult with CJIS before denying access to ICE.

18. On January 1, 2018, the CalGang database vendor disabled the system and prevented access for all users of the database to allow for the specified information to be purged from the database as required under AB 90. On March 28, 2018, the Attorney General certified that this information had been purged from the database. On April 4, 2018, CalGang was reactivated to all users who had access to the database prior to the moratorium, including ICE and CBP.

19. On April 25, 2018, CJIS communicated to each of the remaining eight node administrators, including the node administrators located in Orange and San Diego Counties, informing them that DHS agencies are not presumptively precluded from using CalGang so long as they, like all other users, use CalGang data in a manner consistent with state law.

20. There are thirty-three DHS users with active accounts for CalGang. They have all had access to CalGang since the passage of AB 90 except during the general moratorium described above. Eleven of those users have accessed CalGang collectively over forty times since

4

October 2017. Four of those occasions have occurred on April 6, 11, and 13, after CalGang was re-activated.

21. Currently, node administrators, not CJIS, are responsible for allowing access to any user of CalGang. CJIS has not, at any time, denied any DHS agency or user access to CalGang.

22. If a node administrator were to deny access to a DHS user, and the DHS user were to reach out to CJIS, my division would assist in obtaining access to the database through a different node administrator, subject to state law limits on access and use.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on __4/30/18__, 2018 in __Sacramento__, California.

_____
JOE DOMINIC

5

Decl. of Joe Dominic in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.
(18-cv-00490-JAM-KJN)