1  XAVIER BECERRA
   Attorney General of California
2  THOMAS S. PATTERSON
   Senior Assistant Attorney General
3  MICHAEL L. NEWMAN
   SATOSHI YANAI
4  Supervising Deputy Attorneys General
   CHRISTINE CHUANG
5  ANTHONY R. HAKL
   CHEROKEE DM MELTON
6  LEE I. SHERMAN
   Deputy Attorneys General
7  State Bar No. 272271
    300 S. Spring Street
8   Los Angeles, CA  90013
    Telephone:  (213) 269-6404
9   Fax:  (213) 897-7605
    E-mail:  Lee.Sherman@doj.ca.gov
10 *Attorneys for Defendants*

11                    IN THE UNITED STATES DISTRICT COURT

12                   FOR THE EASTERN DISTRICT OF CALIFORNIA

13                            SACRAMENTO DIVISION

14

15

16 **THE UNITED STATES OF AMERICA,**              2:18-cv-00490-JAM-KJN

17                                  Plaintiff,    **MEMORANDUM OF POINTS AND**
                                                  **AUTHORITIES IN SUPPORT OF**
18              v.                                **DEFENDANTS' MOTION TO DISMISS**

19                                                Date:         None set
   **THE STATE OF CALIFORNIA; EDMUND**            Time:         None set
20 **GERALD BROWN JR., Governor of**              Courtroom:    6
   **California, in his official capacity; and**  Judge:        The Honorable John A.
21 **XAVIER BECERRA, Attorney General of**                      Mendez
   **California, in his official capacity,**      Trial Date:   None set
22                                                Action Filed: March 6, 2018
                                   Defendants.
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

LEGAL AND FACTUAL BACKGROUND ........................................................................ 1

LEGAL STANDARDS APPLICABLE TO A MOTION TO DISMISS ...................................... 2

ARGUMENT ....................................................................................................................... 3

    I.     The United States Fails to State a Claim Regarding SB 54 ................................. 4

         A.     SB 54 Is Not Preempted ..................................................................... 4

         B.     SB 54 Does Not Discriminate Against the United States ........................... 7

    II.    The United States Fails to State a Claim Regarding AB 450 ................................ 8

         A.     AB 450 Is Not Obstacle Preempted by the Immigration Reform and Control Act ................................................................................................ 8

         B.     AB 450 Does Not Violate the Doctrine of Intergovernmental Immunity ...................................................................................... 10

    III.    The United States Fails to State a Claim Regarding AB 103 ............................. 11

         A.     AB 103 Is Not Preempted ................................................................ 11

         B.     AB 103 Does Not Violate the Doctrine of Intergovernmental Immunity ...................................................................................... 12

CONCLUSION .................................................................................................................. 12

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Arizona v. United States*
    567 U.S. 387 (2012) ...................................................................................................3, 4, 9

5

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990)........................................................................................2

6

7

*Boeing v. Movassaghi*
    768 F.3d 832 (9th Cir. 2014).......................................................................................11

8

9

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*
    489 U.S. 141 (1989).....................................................................................................6

10

*Chamber of Commerce of the U.S. v. Whiting*
    563 U.S. 582 (2011)...............................................................................................3, 5, 6

11

12

*City of Chicago v. Sessions*
    No. 17-2991, 2018 WL 1868327 (7th Cir. Apr. 19, 2018) ......................................5, 6

13

14

*Ctr. for Competitive Politics v. Harris*
    784 F.3d 1307 (9th Cir. 2015).....................................................................................4

15

16

*Daniels-Hall v. National Educ. Ass'n*
    629 F.3d 992 (9th Cir. 2010)...................................................................................3, 12

17

*DeCanas v. Bica*
    424 U.S. 351 (1976).....................................................................................................9

18

19

*English v. Gen. Elec. Co.*
    496 U.S. 72 (1990).....................................................................................................10

20

21

*Foti v. City of Menlo Park*
    146 F.3d 629 (9th Cir. 1998).......................................................................................4

22

*Gregory v. Ashcroft*
    501 U.S. 452 (1991).....................................................................................................5

23

24

*Hal Roach Studios, Inc.*,
    896 F.2d 1542 (9th Cir. 1990).....................................................................................3

25

*Hines v. Davidowitz*
    312 U.S. 52 (1941).......................................................................................................3

26

27

*Hishon v. King & Spalding*
    467 U.S. 69 (1984).......................................................................................................3

28

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3
*Hoffman Plastic Compounds, Inc. v. N.L.R.B.*
    535 U.S. 137 (2002) ..................................................................................8

4

*Huron Portland Cement Co. v. Detroit*
5
    362 U.S. 440 (1960) ................................................................................10

6
*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) .....................................................................3
7

8
*Love v. United States*
    915 F.2d 1242 (9th Cir. 1989) ...................................................................3

9

*Metro. Life Ins. Co. v. Mass.*
10
    471 U.S. 724 (1985) ...................................................................................9

11
*Mir v. Little Co. of Mary Hospital*
    844 F.2d 646 (9th Cir. 1988) .....................................................................3
12

13
*North Dakota v. United States*
    495 U.S. 423 (1990) ..........................................................................4, 7, 11
14

15
*North Star Int'l v. Arizona Corp. Comm'n*
    720 F.2d 578 (9th Cir. 1983) .....................................................................2

16
*Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*
17
    361 U.S. 376 (1960) ...................................................................................8

18
*Printz v. United States*
    521 U.S. 898 (1997) ...................................................................................5
19

20
*Riegel v. Medtronic, Inc.*
    552 U.S. 312 (2008) ...................................................................................3

21
*Robertson v. Dean Witter Reynolds, Inc.*
22
    749 F.2d 530 (9th Cir. 1984) .....................................................................2

23
*Steinle v. City & Cty. of San Francisco*
    230 F. Supp. 3d 994 (N.D. Cal. 2017) ......................................................5
24

25
*United States v. City of Arcata*
    629 F.3d 986 (9th Cir. 2010) ...........................................................7, 8, 11

26
*United States v. Lopez*
27
    514 U.S. 549 (1995) ...................................................................................6

28

Memo. of P. & A. in Supp. of Defs.' Mot. to Dismiss                     (2:18-cv-00490-JAM-KJN)

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Morrison*
529 U.S. 598 (2000) ................................................................................3, 6, 7

*United States v. Salerno*
481 U.S. 739 (1987) .............................................................................................4

*Washington v. United States*
460 U.S. 536 (1983) ...........................................................................................12

*Western Mining Council v. Watt*
643 F.2d 618 (9th Cir. 1981) ...............................................................................3

*Wyeth v. Levine*
555 U.S. 555 (2009) .............................................................................................3

**STATUTES**

8 U.S.C. § 1373(a) ............................................................................................4, 5, 6, 8

United States Code
Title 8, § 236.6 ...................................................................................................11
Title 8, § 1101 *et seq.* ........................................................................................2
Title 8, § 1103(a)(10) ...........................................................................................6
Title 8, § 1252c(a) .................................................................................................6
Title 8, § 1324a ..................................................................................................8, 9
Title 8, § 1324a(e)(2)(A) ....................................................................................10
Title 8, § 1357(d) ...................................................................................................6
Title 8, § 1357(g)(1) ..............................................................................................6
Title 8, § 1373 ........................................................................................................4
Title 8, § 1373(a) ...................................................................................................2

California Government Code
§ 7284.2(f) ............................................................................................................8
§ 7284.4(c) ............................................................................................................7
§ 7284.6(a)(1)(C) ..............................................................................................2, 5
§ 7284.6(a)(1)(D) ..............................................................................................2, 5
§ 7284.6(a)(4) ........................................................................................................2
§ 7284.6(b)(3) ........................................................................................................7
§ 7284.6(e) .............................................................................................................4
§ 7285.1 ...............................................................................................................2, 9
§ 7285.1(a) .........................................................................................................9, 10
§ 7285.2 ...............................................................................................................2, 9
§ 7285.2(a) ...........................................................................................................10

## TABLE OF AUTHORITIES
### (continued)

Page

California Government Code (continued)
 § 7285.2(a)(1)................................................................................................................9
 § 7285.2(a)(2)..............................................................................................................10
 § 7294.6(a)(1)(C)-(D)....................................................................................................7
 § 12532..........................................................................................................................2
 § 12532(a)-(b)..............................................................................................................11
 § 12532(b)....................................................................................................................11
 § 12532(b)(1)(A)-(C)....................................................................................................11
 § 12532(c)....................................................................................................................11

California Labor Code
 § 90.1.............................................................................................................................9
 § 90.2.............................................................................................................................2
 § 90.2(a)(1)..............................................................................................................9, 10
 § 1019.2.....................................................................................................................2, 9
 § 1019.2(a)....................................................................................................................9
 § 1019.2(c)...................................................................................................................10
 § 6300 *et seq.*.............................................................................................................9

California Penal Code
 § 6030..........................................................................................................................12
 § 6031.1.......................................................................................................................12

Immigration and Nationality Act (INA) ...............................................................................2

Immigration Reform and Control Act of 1986 (IRCA) .......................................................8

**CONSTITUTIONAL PROVISIONS**

California Constitution
 Article V, § 13............................................................................................................11
 Article XIV....................................................................................................................9

**COURT RULES**

Federal Rules of Civil Procedure
 Rule 12(b)(6)................................................................................................................2

# INTRODUCTION

The California Legislature enacted the three laws at issue in this case after careful identification, consideration, and debate of the issues—a process that occurred in the public eye and took into account the appreciably diverse interests of all Californians.  The laws reflect the Legislature's best determinations on a number of critical issues, such as how the State provides for public safety, protects workers and the workplace, and safeguards all residents' rights.

As the State of California, the Governor, and the Attorney General explained at length in their concurrently filed opposition to the preliminary-injunction motion, the State laws are consistent with the federal constitutional and legislative framework governing immigration enforcement.  That framework coexists with the statutes established by California to ensure the public safety, health, and welfare of its residents.  This should come as no surprise because the regulation of those matters is traditionally reserved to the States under the Tenth Amendment.  Additionally, none of the State laws at issue treat federal immigration officials any differently than any other law-enforcement agents at the federal, state, or local levels.

Accordingly, and for the same reasons that the United States is unlikely to succeed on the merits of any of its claims in the context of a preliminary-injunction motion, this Court should dismiss the United States' complaint for failure to state a claim.

# LEGAL AND FACTUAL BACKGROUND

The three laws at issue in this case are: (1) the California Values Act, or Senate Bill 54 (SB 54), which defines the circumstances under which State and local law-enforcement agencies may participate in immigration enforcement activities; (2) the Immigrant Worker Protection Act, or Assembly Bill 450 (AB 450), which establishes certain rules for the workplace so that all California workers, irrespective of their immigration status, may work without fear of harassment, detention, or deportation; and (3) Assembly Bill 103, a bill which, in relevant part, is designed to collect information regarding the conditions of confinement at immigration detention facilities used to hold civil detainees in California.  As indicated in the more detailed discussion in the State's opposition to the preliminary-injunction motion, these laws reflect the Legislature's considered judgment about how best to achieve State objectives when it comes to securing public

1

1    safety, ensuring the safety of the workplace, and protecting the rights of its residents.  *See* Defs.'

2    Opp'n to Pl.'s Mot. for Prelim. Inj. (Defs.' Opp'n) at 2-7.  In contrast, the federal statutory

3    framework relevant to this case, the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et*

4    *seq.*, is an exercise of Congress' particular power over immigration enforcement.  *See id.* at 7-9.

5          The United States' complaint seeks a declaration invalidating and permanently enjoining

6    the enforcement of SB 54, AB 450, and AB 103.  Compl. at. 2, 17-18.  The theory is that the laws

7    "are preempted by federal law and impermissibly discriminate against the United States, and

8    therefore violate the Supremacy Clause of the United States Constitution."  *Id.* ¶ 1.  Count One of

9    the complaint concerns AB 450 and alleges that California Government Code sections 7285.1 and

10    7285.2 and California Labor Code sections 90.2 and 1019.2 "violate the Supremacy Clause as

11    applied to private employers, and are invalid."  *Id.* ¶ 61.[1]  Count Two concerns AB 103 and

12    alleges that California Government Code section 12532 "violates the Supremacy Clause, and is

13    invalid" on its face.  *Id.* ¶ 63.  Count Three, the SB 54 count, is also a facial challenge and asserts

14    that California Government Code sections 7284.6(a)(1)(C) & (D) and 7284.6(a)(4) "violate the

15    Supremacy Clause and 8 U.S.C. § 1373(a), and are invalid."  *Id.* ¶ 65.

16                    **LEGAL STANDARDS APPLICABLE TO A MOTION TO DISMISS**

17          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the complaint's

18    legal sufficiency.  *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

19    Dismissal of the complaint or of any claim within it "can be based on the lack of a cognizable

20    legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri*

21    *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter*

22    *Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

23          In considering a motion to dismiss for failure to state a claim, the court accepts as true all

24    material allegations in the complaint and the reasonable inferences that can be drawn from them.

25    _____

26    [1] The United States' complaint sets forth an "as-applied" challenge to AB 450, but its
      preliminary-injunction motion does not make such a distinction.  As noted in Defendants'
27    opposition to that motion, because AB 450 applies to all public and private employers, the federal
      government cannot succeed on a facial challenge to the law on the sole grounds that it cannot use
28    federal law to commandeer the State's governmental employees.  *See* Defs.' Opp'n at 10 n.10.

1   *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245

2   (9th Cir. 1989).  But the court need not accept as true unreasonable inferences, unwarranted

3   deductions of fact, or conclusory legal allegations cast in the form of factual allegations.  *Western*

4   *Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  A court generally cannot consider

5   materials outside of the complaint (e.g., affidavits or discovery materials), except for materials

6   submitted with the complaint or the contents of which are alleged in the complaint.  *Hal Roach*

7   *Studios, Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  A court may consider documents not

8   physically attached to the complaint if the complaint "necessarily relies" on them and no party

9   questions the authenticity of the documents.  *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992,

10  998 (9th Cir. 2010); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  The court

11  may also consider matters subject to judicial notice.  *Mir v. Little Co. of Mary Hospital*, 844 F.2d

12  646, 649 (9th Cir. 1988).

13                                    **ARGUMENT**

14          The United States claims that SB 54, AB 103, and AB 450 are invalid under the doctrines

15  of federal obstacle preemption and intergovernmental immunity.  The United States has failed to

16  state a claim under either of these theories.  Obstacle preemption is a type of conflict preemption

17  under which a State law is preempted to the extent it "stands as an obstacle to the accomplishment

18  and execution of the full purposes and objectives of Congress."  *Hines v. Davidowitz*, 312 U.S.

19  52, 67 (1941).  The "[i]mplied preemption analysis does not justify a freewheeling judicial

20  inquiry into whether a state statute is in tension with federal objectives; such an endeavor would

21  undercut the principle that it is Congress rather than the courts that preempt state law."  *Chamber*

22  *of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011).  When analyzing preemption,

23  courts assume that "the historic police powers of the States are not superseded unless that was the

24  clear and manifest purpose of Congress."  *Arizona v. United States*, 567 U.S. 387, 400 (2012); *see*

25  *also Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  Those police powers include the "suppression of

26  violent crime."  *United States v. Morrison*, 529 U.S. 598, 618 (2000).  The "presumption against

27  preemption is heightened where federal law is said to bar state action in fields of traditional state

28  regulation."  *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 334 (2008).  Under a facial challenge, such

                                          3

1  as the ones at issue in this motion, the Court should not interpret state laws in a manner that

2  would "create[] a conflict with federal law." *Arizona*, 567 U.S. at 415.

3      Under the doctrine of intergovernmental immunity, which limits the extent to which one

4  sovereign may impose upon another, state laws can be invalidated to the extent they "regulate[ ]

5  the United States directly or discriminate[ ] against the Federal Government or those with whom

6  it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990).  An indirect burden on the

7  federal government resulting from overlapping state and federal jurisdiction is insufficient to

8  invalidate a state law.  *North Dakota*, 495 U.S. at 434-35.  Instead, the Supreme Court has

9  "adopted a functional approach to claims of governmental immunity, accommodating of the full

10 range of each sovereign's legislative authority and respectful of the primary role of Congress in

11 resolving conflicts between National and State Government."  *Id.* at 436.

12      In its complaint, the United States advances facial and as-applied claims.  A law may be

13 facially unconstitutional if "no set of circumstances exists under which the [challenged law]

14 would be valid."  *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1314-15 (9th Cir. 2015)

15 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also Foti v. City of Menlo Park*,

16 146 F.3d 629, 635 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998).  An as-applied

17 challenge, in contrast, contends that the law is unconstitutional as to a particular application of the

18 law, such as to a particular person or activity or in a particular manner.  *See id*.

19 **I.   THE UNITED STATES FAILS TO STATE A CLAIM REGARDING SB 54**

20      **A.   SB 54 Is Not Preempted**

21      One of the central aspects of the United States' challenge to SB 54 is the contention that it

22 conflicts with 8 U.S.C. § 1373(a), which generally prohibits state and local governments from

23 restricting the sharing of information about the immigration status of aliens with the Immigration

24 and Naturalization Service (INS).  However, that contention has no merit because the Legislature

25 expressly indicated that nothing in the relevant provisions of SB 54 "prohibit[s] or restrict[s] any

26 government entity or official from sending to, or receiving from, federal immigration authorities,

27 information regarding the citizenship or immigration status, lawful or unlawful of an individual

28 . . . pursuant to Section[] 1373 . . . of Title 8 of the United States Code."  Cal. Gov't Code

4

Memo. of P. & A. in Supp. of Defs.' Mot. to Dismiss                    (2:18-cv-00490-JAM-KJN)

1  § 7284.6(e).  This provision alone merits dismissal of the United States' facial challenge of SB

2  54.  *Whiting*, 563 U.S. at 592 (The "authoritative statement" of a statute is its "plain text,"

3  including its "savings clause.").

4         In addition to this "savings clause," which should be determinative, SB 54 concerns the

5  sharing of a type of information different than that encompassed by § 1373(a).  For example,

6  SB 54 covers information regarding a person's release date and personal information like a home

7  or work address.  Cal. Gov't Code § 7284.6(a)(1)(C), (D).  The plain text of § 1373(a) does not

8  concern that kind of information and only covers "information regarding the citizenship or

9  immigration status" of an individual.  *See Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991) ("If

10  Congress intends to alter the usual constitutional balance between the States and the Federal

11  Government, it must make its intention to do so unmistakably clear in the language of the

12  statute.") (internal quotations omitted).  In short, because § 1373(a) and SB 54 concern different

13  categories of information, there is no conflict between the two.  *See* Defs.' Opp'n at 10-14;

14  *Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1015 (N.D. Cal. 2017), *appeal*

15  *docketed*, No. 17-16283 (9th Cir. June 21, 2017) ("[N]o plausible reading of 'information

16  regarding . . . citizenship or immigration status' encompasses the release date of an

17  undocumented inmate.").

18         The United States' broad interpretation of § 1373(a) to include addresses and release dates,

19  *see, e.g.*, Compl. ¶ 57, runs afoul of the Tenth Amendment's assertion that "[t]he powers not

20  delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved

21  to the States respectively, or to the people."  Such an interpretation would effectively

22  commandeer California's financial, physical, human, and information resources for federal

23  immigration enforcement purposes.  The United States cannot directly instruct California how to

24  use those resources.  *See, e.g.*, *City of Chicago v. Sessions*, No. 17-2991, 2018 WL 1868327, at *6

25  (7th Cir. Apr. 19, 2018).  Thus, the Court should not allow the United States to indirectly mandate

26  the allocation of State resources by misconstruing § 1373(a).  *See Printz v. United States*, 521

27  U.S. 898, 925 (1997) ("opinions of ours have made clear that the Federal Government may not

28  compel the States to implement, by legislation or executive action, federal regulatory programs");

5

1   *see also* Defs.' Opp'n at 14-17.  How California expends its law-enforcement and other resources

2   are decisions for California to make, and the federal government cannot use an indirect

3   application of its immigration powers to intrude into an area so integral to the State's police

4   power.  *See Morrison*, 529 U.S. at 618 ("[W]e can think of no better example of the police power,

5   which the Founders denied the National Government and reposed in the States than the

6   suppression of violent crime and vindication of its victims."); *United States v. Lopez*, 514 U.S.

7   549, 565-68 (1995) (rejecting federal statute that criminalized possession of a firearm in a "school

8   zone" because the law would erase the distinction of "what is truly national and what is truly

9   local"); *see also* Defs.' Opp'n at 17-19.

10        Finally, federal law leaves ample room for States to enact laws like SB 54.  SB 54 operates

11   in an area of regulation that exists between the limits established by the INA when it comes to

12   state and local law-enforcement officials' affirmative activities in connection with immigration

13   enforcement, on one hand, and the limits of § 1373(a) when it comes to state rules limiting state

14   and local law-enforcement entanglement with immigration authorities, on the other.  This zone of

15   state discretion includes, for example, regulations concerning state and local compliance with

16   requests on detainer forms, *see* 8 U.S.C. § 1357(d), and state and local assistance in effectuating

17   immigration arrests, which the INA directs must be done consistent with state law.  *See* 8 U.S.C.

18   §§ 1103(a)(10), 1252c(a), 1357(g)(1).  "The case for federal preemption is particularly weak

19   where Congress has indicated its awareness of the operation of state law in a field of federal

20   interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension

21   there [is] between them."  *Bonito Boats, Inc. v. Thunder Craft Boats, Inc*., 489 U.S. 141, 166-67

22   (1989); *Whiting*, 563 U.S. at 584 ("Given that Congress specifically preserved such authority for

23   the States, it stands to reason that Congress did not intend to prevent the States from using

24   appropriate tools to exercise that authority.").  Indeed, the Seventh Circuit recently determined

25   that jurisdictions that limit entanglement with immigration enforcement "do[] not interfere with

26   the federal government's lawful pursuit of its civil immigration activities."  *Chicago*, 2018 WL

27   1868327 at *5; *see also* Defs.' Opp'n at 19-22.

28

**B.   SB 54 Does Not Discriminate Against the United States**

The Court should also reject the United States' intergovernmental immunity argument.  As an initial matter, that doctrine does not even apply here.  As mentioned, all powers not delegated to the United States in the Constitution are reserved to the states.  U.S. Const. Am. X.  While rooted in the Supremacy Clause, the prohibition on "discrimination" of governmental entities is not expressly found in the Constitution.  *North Dakota*, 495 U.S. at 437-38; *see also United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (explaining that the doctrine arose from *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819)).  Therefore, the intergovernmental immunity doctrine does not apply where, as here, California is regulating law-enforcement matters under the general police power, which the Tenth Amendment reserves to the states.[2]  *See Morrison*, 529 U.S. at 618; *North Dakota*, 495 U.S. at 436 (factoring in "full range of each sovereign's legislative authority" in intergovernmental immunity analysis).

In addition, the allegations in the complaint that SB 54 applies only to information requests by federal entities and effectively treats federal immigration officials worse than other entities that might seek similar information cannot withstand a close reading of SB 54.  For example, its provisions uniformly allow the sharing of information about release dates and personal information with immigration officials so long as the information is available to the public.  *See* Cal. Gov't Code §7294.6(a)(1)(C)-(D).  Other provisions apply neutrally to "immigration authorities," which include federal, state, and local law enforcement officials who might be involved in immigration enforcement.  *See, e.g.*, Cal. Gov't Code §7284.4(c).  SB 54 also allows the continued exchange of information with federal immigration authorities regarding criminal matters.  *See, e.g.*, Cal. Gov't Code §7284.6(b)(3).

Provisions like these demonstrate that SB 54 is nothing like the laws at issue in *City of Arcata*.  In striking down two local ordinances that prohibited agents or employees of the federal government from engaging in military recruitment activities targeting minors, the Ninth Circuit explained that "the ordinances seek to directly regulate the conduct of agents of the federal

---

[2] The same can be said with respect to AB 450, which fundamentally is a workplace regulation, and AB 103, which focuses on the conditions of confinement faced by the State's residents.

1    government . . . [T]he ordinances—by their express terms—prohibit military recruiters from

2    recruiting or attempting to recruit individuals under the age of eighteen." *City of Arcata*, 629

3    F.3d at 991.  SB 54 does not directly regulate federal immigration authorities.  *Cf. id.* at 988 (The

4    ordinances purport to bar the federal government from 'recruit[ing], initiat[ing] contact with for

5    the purpose of recruiting, or promot[ing] the future enlistment of any person under the age of

6    eighteen into any branch of the United States Armed Forces.'"); *see also* Defs.' Opp'n at 22-25.

7    And as the State is allowed to do, SB 54 reflects its rational determinations about the use of its

8    law enforcement personnel in response to increased immigration enforcement demands by the

9    federal government.  *See* Cal. Gov't Code § 7284.2(f); Req. for Jud. Notice (RJN), Ex. E at 9; *see*

10   *also Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 385 (1960).  Any incidental

11   impact on the federal government is "the result of a broad, neutrally applicable rule."  *See City of*

12   *Arcata*, 629 F.3d at 991.

13        For these reasons, the Court should dismiss the United States' claim seeking to invalidate

14   SB 54.  The Values Act is a valid enactment by the Legislature that does not conflict with 8

15   U.S.C. § 1373(a), is not otherwise obstacle preempted, and survives scrutiny under the doctrine of

16   intergovernmental immunity.

17   **II.    THE UNITED STATES FAILS TO STATE A CLAIM REGARDING AB 450**

18       **A.    AB 450 Is Not Obstacle Preempted by the Immigration Reform and**
19           **Control Act**

20        The United States' challenge to AB 450 is based on the laws' purported conflict with

21   section 274A of the INA, as amended by the Immigration Reform and Control Act of 1986

22   (IRCA), 8 U.S.C. § 1324a.  But there is no conflict.  IRCA's purpose is to regulate employers by

23   focusing on the unlawful employment of workers in the United States.  *See Hoffman Plastic*

24   *Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147 (2002) (IRCA is a "comprehensive scheme

25   prohibiting the employment of illegal aliens in the United States").  To that end, IRCA sets forth a

26   framework aimed at reducing unauthorized employment that imposes specific requirements on

27   employers relating to the hiring of prospective employees, creates a uniform inspection process,

28   and proscribes criminal and civil penalties in the event of employer noncompliance.  *See*

8

Memo. of P. & A. in Supp. of Defs.' Mot. to Dismiss                    (2:18-cv-00490-JAM-KJN)

1   *generally* 8 U.S.C. § 1324a.  AB 450, on the other hand, does not regulate the employment of

2   undocumented individuals at all.  *Cf. Arizona*, 567 U.S. at 403 (state law regulating the

3   employment of undocumented individuals created "a state criminal prohibition where no federal

4   counterpart exists").

5        AB 450 was enacted under California's well-established police powers to regulate the

6   workplace and the employer-employee relationship.  *See Metro. Life Ins. Co. v. Mass.*, 471 U.S.

7   724, 756 (1985) (quoting *DeCanas v. Bica*, 424 U.S. 351, 356 (1976) ("States possess broad

8   authority under their police powers to regulate the employment relationship within the State.

9   Child labor laws, minimum and other wage laws, laws affecting occupational health and

10  safety . . . are only a few examples.")); *see, e.g.*, Cal. Const. art. XIV; Cal. Lab. Code § 6300 *et*

11  *seq*.  AB 450 places conditions on the workplace environment—which is well within California's

12  powers to do so—and as such, contains limited provisions regulating "nonpublic areas of a place

13  of labor," Cal. Gov't Code § 7285.1; access to "employee records," *id.* § 7285.2; notice to

14  workers of employment-record inspections, Cal. Labor Code § 90.1; and when it is appropriate

15  for an employer to re-verify an employee's eligibility for employment, *id.* § 1019.2.  These

16  limited provisions are expressly operative "[e]xcept as otherwise required by federal law."  Cal.

17  Gov't Code §§ 7285.1(a), 7285.2(a)(1); Cal. Lab. Code §§ 90.2(a)(1), 1019.2(a).

18       Unlike the state law at issue in *Arizona*, which interfered with the balance struck by

19  Congress in combatting unauthorized employment by creating criminal penalties on the employee

20  side, AB 450 does no such thing.  *See Arizona*, 567 U.S. at 404-06.  Rather, AB 450 is meant to

21  make the workplace a safer environment, protect employee privacy, and inform workers of their

22  rights.  For example, requiring a judicial warrant to enter nonpublic areas of the workplace helps

23  minimize disruptions and reduces the likelihood of indiscriminate harassment and detention of all

24  workers.  Imposing conditions on the access to and review of confidential employee records

25  guards against unnecessary privacy intrusions at work.  Providing notice to employees of Form

26  I-9 inspections maintains the balance between workplace rights and the enforcement of labor and

27  employment laws.  *See* RJN, Exs. I at 2, J at 7.

28

9

1    AB 450 does not, as the United States' complaint suggests, foreclose immigration

2    enforcement agents' access to the workplace altogether, and is consistent with the "reasonable

3    access" contemplated by IRCA.  *See* 8 U.S.C. § 1324a(e)(2)(A) ("[I]mmigration officers and

4    administrative law judges shall have reasonable access to examine evidence of any person or

5    entity being investigated.").  Importantly, AB 450 does not restrict anyone authorized by a

6    judicial warrant from accessing nonpublic areas of the workplace, or preclude any immigration

7    authorities from having access to other private, secluded areas of the workplace to conduct their

8    investigations.  *See* Cal. Gov't Code § 7285.1(a) ("This section does not apply if the immigration

9    enforcement agent provides a judicial warrant.").  Nor does it prevent agents from obtaining and

10   reviewing employee records, which remain accessible pursuant to either a subpoena or a judicial

11   warrant.  *See id.* § 7285.2(a).  AB 450 also authorizes compliance with I-9 inspections and does

12   not restrict employers from complying with a memorandum of understanding governing the use

13   of the voluntary federal E-Verify system.  *Id.* §§ 7285.2(a)(2), 7285.3; Cal. Lab. Code

14   § 1019.2(c).  Thus, AB 450's provisions are reasonable mandates that protect workers and the

15   workplace, and at the same time provide the necessary officials important access consistent with

16   normal judicial processes.

17        In light of its distinct purpose and provisions, AB 450 poses no obstacle to the

18   accomplishment of IRCA's objectives and federal scheme.  *See* Defs.' Opp'n at 25-28.  And the

19   United States may not manufacture a conflict where there is none.  *See English v. Gen. Elec. Co.*,

20   496 U.S. 72, 90 (1990) (quoting *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 446 (1960)

21   ("The 'teaching of this Court's decisions . . . enjoin[s] seeking out conflicts between state and

22   federal regulation where none clearly exists.'")).

23        **B.    AB 450 Does Not Violate the Doctrine of Intergovernmental Immunity**

24        Nor does AB 450 pose any problems under the doctrine of intergovernmental immunity.

25   AB 450 is a workplace regulation applicable only to "an employer" or "a person acting on behalf

26   of the employer," not federal immigration-enforcement officials.  Cal. Gov't Code. §§ 7285.1(a),

27   7285.2(a)(1); Cal. Lab. Code §§ 90.2(a)(1), 1019.2(a).  AB 450's neutral terms apply generally to

28   any federal, state, or local person or entity seeking to enforce the civil immigration laws, and only

10

1    impact federal immigration officials as a result of its direct application to California employers.

2    *Cf. Boeing v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014).  Thus, it is analogous to the liquor-

3    supply regulation upheld by the Supreme Court in *North Dakota*, even though the regulation

4    impacted military bases in the state and increased the federal government's costs in provisioning

5    those bases.  495 U.S. at 434-35.  And AB 450 is distinguishable from the local ordinance in *City*

6    *of Arcata*, which "specifically target[ed] and restrict[ed] the conduct of military recruiters."  *City*

7    *of Arcata*, 629 F.3d at 991; *see also* Defs.' Opp'n at 28-29.

8            For these reasons, the Court should grant the State's motion and dismiss the United States'

9    AB 450 claim.

10   **III.    THE UNITED STATES FAILS TO STATE A CLAIM REGARDING AB 103**

11           **A.    AB 103 Is Not Preempted**

12           Turning to AB 103, that law does not create a regulatory framework at all, and therefore

13   does not pose an obstacle to federal immigration enforcement.  Rather, consistent with the State's

14   interest in protecting the health and welfare of all its residents, irrespective of immigration status,

15   AB 103 authorizes funding for a limited State review of "county, local, or private locked

16   detention facilities in which noncitizens are being housed or detained for purposes of civil

17   immigration proceedings in California."  Cal. Gov't Code § 12532(a)-(b).  The review is focused

18   on the conditions of confinement; the standard of care and due process provided to detainees; and

19   the circumstances of the apprehension and transfer of those detainees to the facilities.  *Id*. § 12532

20   (b)(1)(A)-(C).  To ensure completion of the review, the law grants the Attorney General "all

21   necessary access"—not unfettered access—to the relevant persons, including detainees and

22   officials, and records.  *Id*. § 12532(c).  Additionally, the end result of AB 103 will be a written

23   report, disclosed to the public, detailing the Attorney General's findings for the Legislature and

24   Governor.  *Id*. § 12532(b).  In other words, AB 103 establishes a review and reporting framework

25   for the Attorney General, in his capacity as chief law officer of the State.  *See* Cal. Const. art. V,

26   § 13.

27           It does not impose regulations or standards on the federal government or otherwise stand as

28   an obstacle to the accomplishment of any objective of Congress.  AB 103 does not conflict with 8

                                                      11

1   U.S.C. § 236.6, Compl. ¶¶ 41, 47, which restricts the *public* disclosure of detainee information;

2   AB 103, on its face, does not contemplate disclosure of detainee information in its public report.

3   Moreover, detention facilities are expressly subject to state law evidenced, in part, by the very

4   contracts they execute with the federal government to hold immigration detainees. *See* Decl. of

5   Cherokee Melton, ¶¶ 17-23 & Exs. M-S (citing to contracts that are relied on by the United States

6   in paragraphs 40, 41, and 49 of its complaint); *see also Daniels-Hall*, 629 F.3d at 998 (taking into

7   consideration documents relied on in the complaint on a motion to dismiss). Therefore, the United

8   States' claim seeking to preempt AB 103 under obstacle preemption grounds fails. *See* Defs.'

9   Opp'n at 29-31.

10   **B.   AB 103 Does Not Violate the Doctrine of Intergovernmental Immunity**

11   Because AB 103 involves only a review and reporting process to be carried out by the

12   State, it also falls well short of directly regulating the federal government.  Nor does it

13   discriminate against the federal government.  The AB 103 review process applies uniformly to

14   any covered county, local, or private detention facility; it does not single out any facility. *See*

15   *Washington v. United States*, 460 U.S. 536, 544-45 n.10 (1983) ("The State does not discriminate

16   against the Federal Government and those with whom it deals unless it treats someone else better

17   than it treats them.").  Also, detention facilities within the State are subject to the stringent

18   inspection processes and standards set forth in California Penal Code §§ 6030, 6031.1.  Thus,

19   because reviews under AB 103 are less onerous than reviews for other detention facilities, it

20   cannot be said that AB 103 discriminates against the federal government.  The Court should

21   therefore dismiss the claim that AB 103 is invalid under the doctrine of intergovernmental

22   immunity. *See* Defs.' Opp'n at 31-33.

23   **CONCLUSION**

24   For the foregoing reasons, and for all of the reasons set forth by the State in opposing

25   preliminary injunctive relief, the United States' complaint fails to state a claim upon which relief

26   can be granted.  The Court therefore should grant the State's motion to dismiss.

27

28

12

Dated:  May 4, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MICHAEL L. NEWMAN
SATOSHI YANAI
Supervising Deputy Attorneys General

*/s/ Christine Chuang*
*/s/ Anthony R. Hakl*
*/s/ Cherokee DM Melton*
*/s/ Lee I. Sherman*

CHRISTINE CHUANG
ANTHONY R. HAKL
CHEROKEE DM MELTON
LEE I. SHERMAN
Deputy Attorney General
*Attorneys for Defendants*

13

# CERTIFICATE OF SERVICE

Case Name:   The United States of America v.            No.     **2:18-cv-00490-JAM-KJN**
             The State of California, et al.

I hereby certify that on <u>May 4, 2018,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>May 4, 2018,</u> at Sacramento, California.


_____            _____
            Tursun Bier                                */s/ Tursun Bier*
             Declarant                                    Signature

LA2018500720
13073763.docx