May 17, 2018

The Honorable Kendall J. Newman
United States District Court
Eastern District of California
501 "I" Street, Suite 4-200
Sacramento, CA 95814

RE:   *United States v. California*, Case No. 2:18-CV-00490-JAM-KJN (E.D. Cal.)

Dear Judge Newman:

The parties respectfully submit this joint letter brief in response to the Court's May 15 order.

## I.   INTRODUCTION

### A.   The United States' Position

The interests of justice require that Plaintiff be granted targeted, expedited discovery to respond to Defendants' factual assertions in their opposition that Plaintiff has not demonstrated a likelihood that it suffers irreparable harm because of Senate Bill 54 (SB 54). Although the parties have met and conferred extensively and agree in part as to certain discovery, without the discovery proposed, Plaintiff will be prejudiced in its ability to demonstrate irreparable harm. Defendants' claims with respect to harm are premised on factual declarations and their refusal to provide information within their control concerning whether SB 54 has caused California Law Enforcement Agencies (LEAs) to cease notifying DHS when they release criminal aliens. Good cause exists for targeted depositions of three declarants, Joe Dominic, Arif Alikhan, and Tom Wong, as well as limited written discovery concerning whether SB 54 allows LEAs to share release dates and times with DHS or causes LEAs to release criminal aliens without notification.

### B.   California's Position

Since the United States first made its discovery requests on May 12, the State *already* has produced information about its databases, agreed to two depositions of its declarants, agreed to answer up to ten interrogatories, and agreed to produce any documents relied on in those interrogatories. But the United States wants more, and with each subsequent meet-and-confer, has expanded the scope of its "non-exhaustive" requests, even seeking information in its own possession, custody, or control. Any discovery must be limited to factual assertions in the declarations, be targeted and proportional, and take into account its delay and the very expedited timeframe.

Moreover, the United States' requests regarding Senate Bill (SB) 54 lack "good cause" following the Supreme Court's decision on Monday in *Murphy v. National Collegiate Athletic Assn.*, No. 16-478, 584 U.S. __ (May 14, 2018). The Supreme Court held that a federal law prohibiting states from authorizing sports gambling violates the anti-commandeering doctrine rooted in the Tenth Amendment because it attempts to dictate "what a state legislature *may and may not do.*" Slip Op. at 18 (emphasis added). "A more direct affront to state sovereignty is not easy to imagine." *Id*. Here, the United States seeks the equivalent by attempting to use the INA to preempt SB 54, and prevent California's legislature from defining state and local law enforcement's proper role. This violates the Tenth Amendment, and because the United States cannot state a claim concerning SB 54, it cannot obtain discovery concerning it. *See, e.g.*, *Wood v. McEwen*, 644 F.2d 797, 801-02 (9th Cir. 1981) (affirming stay of discovery where "there was

a real question: whether claim presented a substantive basis for vacating a prior judgment); *Wenger v. Moore*, 282 F.3d 1068, 1077 (9th Cir. 2002).

## II. LEGAL STANDARD FOR SEEKING EXPEDITED DISCOVERY

### A. The United States' Position

Applying the "good cause" standard the Court applied to Defendants' discovery requests, *see* ECF 28 at 2, Plaintiff is entitled to expedited discovery, particularly as it "carries the burden of proof on its motion," and "the lack of discovery [] is more prejudicial to [it] than Defendants." *Friday's Inc. v. Stripes Rests., Inc.*, 2015 WL 2341991, *2 (E.D. Cal. May 13, 2015).

### B. California's Position

California agrees that the standard is "good cause," but that standard is not satisfied here. Nonetheless, in the spirit of compromise, it has offered to provide the United States with most of the discovery that it seeks.

## III. CLETS DATABASE INFORMATION AND DEPOSITION OF JOE DOMINIC

### A. The United States' Position

California asserts Plaintiff is not harmed by SB 54's prohibitions on information sharing because CLETS provides it access to "criminal-history," ECF 74 at 3-4, and "personally identifiable information," *id.* at 36, including "addresses," when "a person is scheduled to be released," "name," "date of birth," and other "information." ECF 75 ¶¶ 6-8; *see id.* ¶¶ 9-13. California also asserts that although an LEA may not directly provide such information to DHS, LEAs may provide the same information to CLETS, which DHS may then access. ECF 74 at 3-4; 75 ¶ 10. California relies exclusively on the declaration of Joe Dominic for these claims, which form the basis for its argument that SB 54 does not harm Plaintiff because it can access the information SB 54 prohibits LEAs from sharing through CLETS. While the parties agree that limited discovery as to CLETS is appropriate, they disagree on the best method. California suggests 5 interrogatories with accompanying document production, but the information Plaintiff seeks is factual, and interrogatories are a poor vehicle for such discovery when no time remains for clarifying answers or resolving disputes concerning their adequacy. Without basic information regarding CLETS, like who inputs information, what information is in CLETS and whether it is updated and how current it is, as well as who has access to what, Plaintiff has no fair opportunity to refute Dominic's claims. Critical information, which would allow Plaintiff to respond to California, includes: whether DHS can ascertain release date and time, home address, and criminal history, both for arrests and convictions with respect to individuals subject to a detainer. Plaintiff also seeks information necessary to assess the impact of CLETS on Plaintiff's harm, such as whether LEAs can input data covered by SB 54 into CLETS, how long it takes information input into CLETS to be live and accessible to other users, and how quickly data is entered. Thus, Plaintiff is entitled to depose Mr. Dominic for up to four hours regarding factual assertions at ¶¶ 6-13 of his declaration, and any documents supporting those paragraphs.

### B. California's Position

CLETS is a law-enforcement communications network accessible to law-enforcement agencies in California and also to federal agencies, including those within the Department of Homeland Security (DHS). CLETS provides access to 54 law-enforcement databases. The United States seeks, essentially, a Rule 30(b)(6) deposition concerning CLETS, despite the fact that Chief

Dominic, in his declaration, only discusses DHS's access to information in two databases. Given the short amount of time to prepare and the limited scope of Chief Dominic's proffered testimony, the United States has failed to demonstrate good cause for a 30(b)(6) deposition, which is neither appropriate nor proportional at this stage of the litigation. *See Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL 3523405, at *3 (N.D. Cal. June 4, 2015).

Specific detailed questions regarding CLETS are better suited for written discovery to allow time for the State to provide adequate answers, after the United States identifies its questions with reasonable particularity. In fact, since last Friday when the meet-and-confer process began, California voluntarily produced hundreds of pages of information regarding CLETS. California also offered to answer a limited number of interrogatories, and to produce documents relied upon in its interrogatory responses. Particularly in light of the written discovery California offered, no good cause exists to depose Chief Dominic. And if the Court were rule otherwise, then any deposition should be limited to the paragraphs in the Dominic Declaration that California relies on to rebut the United States' claims of irreparable harm, i.e. ¶¶ 6-13. Furthermore, any discovery, whether written or by deposition, should be limited to the two databases referenced in Chief Dominic's declaration—the Supervised Release File and the California Sex Arson Registry—and a third, the Automated Criminal History System, since the United States has expressed interest in the criminal history information accessible in CLETS. But requiring Chief Dominic to prepare to testify to the remaining 51 databases available in CLETS would be unduly burdensome and disproportionate.

## IV. DEPOSITION OF ARIF ALIKHAN

### A. The United States' Position

The parties agree that good cause exists for Plaintiff to depose Mr. Alikhan for up to four hours concerning the contents of his declaration, and for production of documents in support.

### B. California's Position

California does not agree with the United States' characterization, but does not object to a deposition, for up to four hours, of Mr. Alikhan. He is represented by the Los Angeles City Attorney's Office, which has agreed to make him available on May 24.

## V. DEPOSITION OF TOM WONG

### A. The United States' Position

While the parties agree that a four-hour deposition of Mr. Wong is appropriate, the parties disagree on scope. California exclusively relies on Mr. Wong to contest the veracity of two of Plaintiff's core harm claims, *i.e.* that (1) SB 54 has caused many LEAs to cease providing notification of a criminal alien's release, and (2) releasing such individuals rather than facilitating their transfer endangers the public and federal officers because they reoffend at a high rate. ECF 2-1 at 35-36. Mr. Wong disputes these premises, asserting that: (1) aliens arrested or convicted do not tend to "reoffend," and claims to the contrary are refuted by "statistical analysis," ECF 74 at 33-34; Wong. Decl ¶¶ 8-24, 36-37; (2) nearly all LEAs did not cooperate with federal notification requests prior to SB 54 and Plaintiff fails to present evidence supporting its claim "that SB 54 has led to a decline in cooperation," ECF 74 at 34; Wong Decl. ¶ 11; (3) Plaintiff presents no evidence that SB 54 contributes "materially to an increase in at-large arrests" or that the "possibility of violence inherent to at-large arrests is greater because of SB

54," ECF 74 at 35; *see* Wong Decl. ¶¶ 8, 40, and (4) cooperation with federal immigration enforcement makes communities less safe. ECF 72 at 2, 40; Wong Decl. ¶¶ 11, 25-35, 37-41. California suggests Plaintiff should be allowed to depose Mr. Wong on the first of these issues, but Plaintiff has good cause to examine Mr. Wong on all of them. Only Mr. Wong can speak to his methods, data, and conclusions with respect to pre-SB 54 cooperation, recidivism, and public safety, on which California relies. And because Mr. Wong is the only declarant in this case who asserts that nearly all LEAs did not cooperate with notification requests prior to SB 54, deposing him is the only way to refute that claim. Accordingly, Plaintiff proposes the following topics: (1) methods and conclusions concerning whether a jurisdiction is a "sanctuary jurisdiction," Wong Decl. ¶¶ 6-7, (2) the dataset analyzed, *id.* ¶¶ 9-15 (3), the conclusion that 53 of 58 counties did not cooperate with DHS prior to SB 54, *id.* ¶ 11; (4) methods for assessing the effects of sanctuary policies on crime and the economy at the county or municipal level and his conclusions, *id.* ¶¶ 8-24, (5) methods for assessing whether criminal aliens may reoffend once released, such that jurisdictions that release them have higher or lower crimes rates compared to jurisdictions that do not, *id.* ¶¶ 8-24, 36-37; (6) methods and data relied on to assess the alleged chilling effects of immigration enforcement, and the conclusions drawn, *id.* ¶¶ 11, 25-35, 37-41; and (7) methods and data relied on for the "survey of undocumented Mexican nationals in San Diego County," *id.* ¶ 28, and how the survey supports the general conclusions concerning all "sanctuary" jurisdictions in California, *id.* ¶¶ 28-35, 38-41.

### B. California's Position

The United States initially sought, and California agreed to allow, the deposition of Dr. Tom Wong for up to four hours concerning ¶¶ 8-24 and 36-37 of his declaration. Although the United States seeks to question Dr. Wong regarding increases in at-large arrests, California does not rely on Dr. Wong to establish these facts, and he does not purport to have knowledge in this area. Rather, California relies on the United States' own documents regarding its broadened enforcement priorities. *See* ECF 74 at 35:23-27 (relying on DHS Memorandum and ICE report). Indeed, since its initial request, the United States has expanded the scope of its intended discovery to include additional paragraphs (¶¶ 25-35 and 38-41) after California already agreed to a deposition of Dr. Wong, even though California does not rely on information from these paragraphs to rebut claims of irreparable harm. California does not agree there is good cause to depose Dr. Wong on those paragraphs. If the Court is inclined to grant the United States' request relating to these paragraphs, the State asks that the Court prohibit the United States from seeking any information relating to the identities of survey respondents, who are not parties or declarants. *See, e.g.*, *Doe I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-69 (9th Cir. 2000); *Int'l Refugee Assistance Project v. Trump*, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017).

### VI. INTERROGATORIES REGARDING THE "AVAILABLE TO THE PUBLIC" PROVISION OF CAL. GOV'T CODE § 7284.6(A)(1)(C)

### A. The United States' Position

California asserts that SB 54 allows LEAs to "comply with notification requests if release dates are 'available to the public,'" ECF 74 at 4, so "an LEA may adopt a practice of making release dates public." *Id.* California thus suggests that Plaintiff is not harmed by SB 54 because "SB 54 does not prohibit compliance with notification requests," *id.* at 21, and that it is LEAs who decide not to make "that information [] publicly available." *Id.* at 35. California relies on "guidance" issued by the Defendant Becerra a month *after* Plaintiff filed suit, *see, e.g.*, *id.* at 4 (citing Part III.1.C of Information Bulletin 2018-DLE-01), that purports to define "available to the public" as used in § 7284.6(a)(1)(C) to mean "information where a law enforcement agency

has a practice or policy of making such information public," including "disclosing the information on its website or if it has a practice or policy of providing the information to individuals in response to specific requests." *See* Information Bulletin 2018-DLE-01, III.1.C. Whether that is true is central to irreparable harm, but California submits no evidence concerning its guidance and whether it reads § 7284.6(a)(1)(C)) to permit LEAs to adopt a policy of sharing release dates with DHS in response to specific requests for such information as they assert. ECF 74 at 21, 35. Because the meaning of this phrase and the "guidance" construing that phrase is highly relevant to whether California's assertion that "SB 54 does not prohibit compliance with notification requests" is true, Plaintiff would be unduly prejudiced without an opportunity to query California concerning its claims. Thus, because California has injected this issue into the case by issuing the relevant guidance, and making assertions based on that guidance, Plaintiff requests that California be directed to respond to up to ten interrogatories concerning what LEA cooperation is or is not permitted by § 7284.6(a)(1)(C) and Information Bulletin 2018-DLE-01.

### B. California's Position

The United States first presented this request as one question on May 12. After California agreed in principle that day, the United States identified five questions. Then, after California agreed to answer up to five interrogatories, the United States sought *ten* interrogatories, which the United States has yet to identify with any degree of reasonable particularly. Considering that the Attorney General's SB 54 bulletin speaks for itself, ten interrogatories is not reasonable and proportionate, especially when California was not granted any interrogatories in response to its expedited discovery motion. If the Court grants ten interrogatories, California believes it is only fair that they count towards the limit of 25 interrogatories, including all discrete subparts, permitted under Federal Rule of Civil Procedure 33(a). California also reserves its right to object as it would during the course of ordinary discovery including raising any objections regarding attorney-client privilege and work-product.

## VII. DOCUMENT REQUESTS ON RESPONSES TO NOTIFICATION/TRANSFER REQUESTS

### A. The United States' Position

Defendants' opposition is largely centered on their claim that Plaintiff has not satisfied its burden of showing irreparable harm tied to the decline in information-sharing after SB 54. ECF 74, at 34, 36. California alleges Plaintiff "concedes that it is unable to provide evidence supporting even its core allegation that SB 54 has led to a decline in cooperation by local jurisdictions" because it "does not know when [LEAs] are releasing criminal aliens." *Id.* at 35. The second part of this is true: Plaintiff does not know if an LEA released a criminal alien without notification unless: (1) the LEA tells DHS it has, (2) DHS encounters the alien at large, confirming their release, or (3) a third-party informs DHS that the alien is at large. *See* Homan Depo.,101:4-7. In those circumstances, DHS may note that in its databases. *See id.*, 101:10-19. But Plaintiff cannot on its own determine how many criminal aliens subject to detainers have been released without notification, other than in the limited circumstances just described. California LEAs, and not the United States, know whether criminal aliens were released without notification in all other circumstances and, therefore, whether SB 54 has caused a decline in cooperation. Thus, we have proposed, and propose again, providing information concerning *every* detainer issued to LEAs in January-March, 2018, including each individual's name, date of birth, date of issuance of the detainer, criminal history, and jurisdiction the detainer issued to, in exchange for California providing information concerning whether the subjects of these detainers were released to the public without notification. ECF 22. California has refused this request, leaving Plaintiff without the core information its preliminary injunction arguments turn on—

whether LEAs are releasing criminal aliens because of SB 54. Plaintiff is entitled to demonstrate that this is the case, and the only fair means of doing so involves limited discovery into whether LEAs are releasing criminal aliens subject to detainers since SB 54 went into effect.

California has "possession, custody, or control" for purposes of Rule 34 of an LEA's information concerning whether it releases criminal aliens without notifying DHS. "Control" includes a "legal right" to obtain documents on demand, *Soto v. Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995), is broadly construed, *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012), and is not limited to documents a party has "an absolute, exclusive and unconditional right" to. *In re Legato Sys., Inc. Sec. Litig.*, 204 F.R.D. 167, 169 (N.D. Cal. 2001). Defendant Becerra has the legal right to request the information sought: "[t]he Attorney General shall have *direct supervision over every district attorney and sheriff* and over such other law enforcement officers [] designated by law, in all matters pertaining to the duties of their respective offices, *and may require any of said officers to make reports* concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions" " the Attorney General *may* deem advisable." Cal. Const. art. V, § 13 (emphasis added); *see* Cal. Penal Code § 13020 (Attorney General may obtain "statistical data" from LEAs); Cal. Gov't Code § 12560 (similar); *see Brewster v. Shasta Cty.*, 275 F.3d 803, 809 (9th Cir. 2001) ("Article V, section 13, applies to all law enforcement officers in California."). And courts in California routinely hold if the legal right to access exists in state law, the Attorney General has control under Rule 34. *See, e.g.*, *Bovarie v. Schwarzenegger*, No. 08CV1661, 2011 WL 719206, *4 (S.D. Cal. Feb. 22, 2011); *Woodall v. California*, No. 1:08-CV-01948, 2010 WL 4316953, *5 (E.D. Cal. Oct. 22, 2010).

Moreover, Plaintiff will be denied a fair opportunity to rebut California's arguments regarding harm without this information, so its request is "reasonable[] . . . in light of all the surrounding circumstances." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009). Where California "has the evidence necessary for resolution of the matter" but claims it "should not be produced," it "cannot refuse to provide discovery . . . and then claim that the opposing party's claims fail for lack of factual support." *See Landrigan v. Brewer*, 2010 WL 4269559, *9, *10 n.6 (D. Ariz. Oct. 25, 2010), *aff'd,* 625 F.3d 1144 (9th Cir. 2010), *vacated on other grounds*, 562 U.S. 996 (2010). To the extent California asserts that exercising its authority to request that LEAs provide this information is burdensome or disproportional, Plaintiff proposed that the parties select 5-10 jurisdictions, that Plaintiff compile the spreadsheet it initially offered for those jurisdictions, and that California provide information concerning the release of criminal aliens that Plaintiff cannot provide (or, as we believe, access through CLETS). Without such limited discovery, Plaintiff is prejudiced in its ability to show harm, and the Court lacks an accurate understanding of how SB 54 causes LEAs to release criminal aliens.

### B. California's Position

California does not possess the information sought by the United States, and the United States cannot show that California has a "legal right to obtain" "detainer" forms (DHS Forms I-247A) and related information that is in the possession of non-party local LEAs. *See United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("The party seeking production of the documents … bears the burden of proving that the opposing party has such control."). On its face, article V, section 13 has no bearing on civil litigation and discovery matters in general, much less Rule 34. In fact, the relevant language is limited to "reports concerning the investigation, detection, prosecution, and punishment *of crime*…." Cal. Const. art. V, § 13 (emphasis added). This action hardly concerns a criminal investigation. In addition, courts construing article V, section 13 have taken a much more

measured approach than the one advanced by the United States here. *See People v. Brophy*, 49 Cal.App.2d 15, 28 (1942) ("Manifestly, 'direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law' does not contemplate absolute control and direction of such officials."); *see also Brewster v. Shasta Cty.*, 275 F.3d 803, 805 (9th Cir. 2001) (concluding sheriff's department, when investigating crime, acts for county, not state, and therefore county is subject to §1983 liability); *Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013) (California district attorneys acted as local, not state, policymakers). Article V, section 13 simply does not support the idea that the Attorney General has a legal right to demand any and all documents from any law-enforcement agency statewide, at any time, to respond to a civil discovery request.

The United States has exclusively pointed to a few prisoner cases where courts have required the Office of the Attorney General, because it generally serves as counsel for the California Department of Corrections (CDCR), to produce CDCR records to pro se prisoners. These cases are easily distinguishable, since the Attorney General does *not* regularly serve as counsel for counties and cities. County counsels and city attorneys fill those roles. Furthermore, it is well-established that the Attorney General, when acting on behalf of the People, does not have possession, custody, or control of documents in the possession of non-party *State* agencies. *See People ex rel. Lockyer v. Superior Court*, 122 Cal. App. 4th 1060, 1079 (2004) ("Because of their separate organization, duties and powers, we conclude that [California Code of Civil Procedure] section 2031 did not envision the People as being in possession, custody or control of documents created or possessed by nonparty state agencies."); *see also Texas v. Holder*, No. 12-cv-128 (DST, RMC, RLW), 2012 WL 13070110, at *2-*3 (D.D.C. June 8, 2012) (plaintiff failed to meet burden of establishing that the Attorney General had control over documents of nonparty federal agencies). This rule further supports the conclusion that the State does not have control of information in the possession of *local* law enforcement agencies. The proper method for the United States to seek discovery from non-party LEAs needed to prove its claims is by a Rule 45 subpoena.

The United States' reliance on California Penal Code § 13020 does not fare any better. That provision is limited to the California Department of Justice's general role in the collection and reporting of statewide crime statistics. *See, e.g., Kilgore v. Younger*, 30 Cal.3d 770, 785 (1982). The same can be said of Government Code section 12560, which concerns information from sheriffs regarding "the investigation, detection and punishment of crime[.]" That the Department happens to be the repository for certain criminal data in California does not mean it has the information sought by the United States here. Nothing in the Penal Code mandates that the Department collect civil immigration detainer statistics, and it does not do so. Even if the Attorney General had a legal right to demand the relevant documents in the context of this civil discovery dispute (which he does not), ordering him to do so would be unreasonably burdensome, particularly considering the shortened time frame. There are fifty-eight counties, each with a sheriff's department. There are hundreds of municipal police departments (which are *not* expressly mentioned in article V, section 13). Also, if the State were ordered to request documents from hundreds of non-party localities, it is unclear what the State would do when some would inevitably refuse to comply. It is equally unclear what next steps this Court would have available.

Additionally, the United States, which tracks compliance with detainer requests, already possesses the relevant information — or at the very least a sample of it. ICE policy states: "When ICE becomes aware that [a law-enforcement agency] failed to honor an immigration detainer issued by ICE, the ICE immigration officer shall document the declined detainer in the

7

ENFORCE Alien Removal Module (EARM) through the use of the detainer lift code of 'A - Declined by LEA.'" *See* https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf. ICE's fiscal year 2017 statistics show that ICE was able to identify 8,170 declined detainers for that year. *See* https://www.ice.gov/sites/default/files/documents/Report/2017/iceEndOfYearFY2017.pdf. Additionally, the Director of ICE has testified that ICE tracks when a jurisdiction complies with a detainer, notification, or transfer request. Dep. of Thomas Homan at 104:15-105:24.

The United States' request is even more troubling considering the position that it took during the last dispute resolved by this Court. At the last hearing, this Court warned the United States that if it did not produce the I-247A data, it was not going to be able to then locate the data weeks later and attempt to rely on it, when the State was not allowed to obtain it through discovery. Mar. 21, 2018 Hr'g Tr. at 13:20-14:1. Despite representing to this Court that it "*does not know*" when LEAs comply with the requests made on the I-247-As (ECF No. 22 at 7), the United States now admits that it has information regarding compliance with detainer requests for at least a subset of jurisdictions. To the extent the United States now intends to rely on that data, the State is entitled to do the same. Mar. 21, 2018 Hr'g Tr. at 13:20-14:1. Thus, in addition to denying the United States' last-minute request, the Court should order the United States to produce the data in its possession regarding the I-247As, and all associated criminal-history information that it intends to rely upon.

XAVIER BECERRA
Attorney General of California
THOMAS PATTERSON
Senior Assistant Attorney General
MICHAEL NEWMAN
SATOSHI YANAI
Supervising Deputy Attorneys General
CHRISTINE CHUANG
ANTHONY HAKL
CHEROKEE MELTON
LEE I. SHERMAN
Deputy Attorneys General
State Bar No. 272271
300 S. Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6404
Respectfully Submitted,
XAVIER BECERRA
Attorney General of California
*/s/Lee I. Sherman*
LEE I. SHERMAN
Deputy Attorney General
*Attorneys for Defendants*

CHAD A. READLER
Acting Assistant Attorney General

MCGREGOR SCOTT
United States Attorney

AUGUST FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

Erez Reuveni
Assistant Director

DAVID SHELLEDY
Civil Chief, Assistant United States Attorney

LAUREN C. BINGHAM
JOSEPH A. DARROW
JOSHUA S. PRESS
Trial Attorneys

*/s/ Francesca Genova*
FRANCESCA GENOVA
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-1062
Fax: (202) 616-8202
E-mail: Francesca.M.Genova@usdoj.gov

*Attorneys for Plaintiff*