DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
*MOLLIE M. LEE, State Bar #251404
SARA J. EISENBERG, State Bar #269303
Deputy City Attorneys
1390 Market Street, Sixth Floor
San Francisco, California 94102
Telephone:    (415) 554-4290
Facsimile:    (415) 437-4644
E-Mail:       mollie.lee@sfcityatty.org

Attorneys for *Amicus Curiae*
CITY AND COUNTY OF SAN FRANCISCO

*Counsel for Service

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      vs.<br><br>THE STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., Governor of California, in his official capacity; and XAVIER BECERRA, Attorney General of California, in his official capacity,<br><br>      Defendants. | Case No. 2:18-cv-00490-JAM-KJN<br><br>**BRIEF OF *AMICUS CURIAE* CITY AND COUNTY OF SAN FRANCISCO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:  June 20, 2018<br>Time:         10:00 a.m.<br>Place:        6<br>Judge:       The Honorable John A. Mendez<br><br>Action Filed:  March 6, 2018<br>Trial Date:    None Set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTEREST OF *AMICUS CURIAE* ........................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 2

ARGUMENT ............................................................................................ 3

I.    Section 1373 Imposes Narrow Obligations About Citizenship And Immigration Status Information. .................................. 3

II.    The United States Has Advocated An Extraordinarily Broad Interpretation Of Section 1373 That Is Unmoored From Its Text. ........................ 4

    A.    This Interpretation Would Extend To Any Information That Could Help Federal Immigration Authorities. ............................. 4

    B.    This Interpretation Would Sweep In Vast Swaths Of Personal Information. ................................ 6

III.    The United States' Interpretation Ignores Established Principles Of Statutory Construction, Which Confirm That Section 1373 Must Be Read More Narrowly. ................................ 8

    A.    The Plain Text Of Section 1373 Refers Only To Citizenship And Immigration Status Information ................................ 8

    B.    "Regarding" Does Not Show A Clear Intent To Cover Other Categories Of Information, And Instead Reflects State And Local Governments' Limited Role In Immigration Enforcement. ................................ 9

    C.    General Statements Of Purpose In The Legislative History Cannot Override The Text Enacted By Congress. ................... 11

    D.    If Congress Had Intended Section 1373 To Apply More Broadly, It Would Have Used Broader Language. ................... 13

CONCLUSION ................................................................................. 14

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Arlington Central School District Board of Education v. Murphy*
   548 U.S. 291 (2006)..................................................................12

4

5

*Atascadero State Hosp. v. Scanlon*
   473 U.S. 234 (1985)..................................................................10

6

7

*Bond v. United States*
   134 S. Ct. 2077 (2014)..............................................................11

8

9

*Campbell v. Allied Van Lines Inc.*
   410 F.3d 618 (9th Cir. 2005) .......................................................8

10

*City of New York v. United States*
   179 F.3d 29 (2d Cir. 1999) .........................................................13

11

12

*Gregory v. Ashcroft*
   501 U.S. 452 (1991)..................................................................10

13

*Lawson v. FMR LLC*
   134 S. Ct. 1158 (2014)................................................................8

14

15

*Medtronic, Inc. v. Lohr*
   518 U.S. 470 (1996)..................................................................11

16

*Moskal v. United States*
   498 U.S. 103 (1990)....................................................................8

17

18

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*
   514 U.S. 645 (1995)..................................................................10

19

20

*Rice v. Santa Fe Elevator Corp.*
   331 U.S. 218 (1947)..................................................................10

21

22

*Roach v. Mail Handlers Benefits Plan*
   298 F.3d 847 (9th Cir. 2002) ..............................................9, 10, 11

23

*Steinle v. City and Cty. of San Francisco*
   230 F. Supp. 3d 994 (N.D. Cal. 2017) ...........................................8

24

25

*United States v. Bass*
   404 U.S. 336 (1971)..................................................................10

26

27

*United States v. Morrison*
   529 U.S. 598 (2000)..................................................................11

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Constitutional Provisions**

Cal. Const.
  art. I, § 1 ................................................................................................7

**Federal Statutes**

8 U.S.C.
  § 1182(a)(1)(A) .......................................................................................7
  § 1182(a)(4)(B) .......................................................................................7
  § 1184(k)(3)(A) ......................................................................................13
  § 1231(a)(3)(C) ......................................................................................13
  § 1360(c)(2) ...........................................................................................13
  § 1367(2) ...............................................................................................13
  § 1373 ............................................................................................ *passim*

20 U.S.C.
  § 1232g ...................................................................................................7

42 U.S.C.
  § 290dd-2 ...............................................................................................7

**Rules**

Federal Rule of Appellate Procedure
  Rule 29(a) ...............................................................................................1
  Rule 29(a)(2) ...........................................................................................1
  Rule 29(a)(4)(A) and (E) ........................................................................1

**Regulations**

34 C.F.R.
  § 99 .........................................................................................................7

42 C.F.R.
  § 2 ...........................................................................................................7

45 C.F.R.
  § 160 .......................................................................................................7
  § 164 .......................................................................................................7

Executive Order 13,768
  82 Fed. Reg. 8799 (Jan. 25, 2017) .........................................................2

**State Cases**

*Bologna v. City & Cty. of San Francisco*
  121 Cal. Rptr. 3d 406 (Cal. Ct. App. 2011) .........................................12

1

**State Statutes and Codes**

2

Cal. Civ. Code
   § 56.05 ..................................................................................................7

3

Cal. Ed. Code
   § 49075 ..................................................................................................7

4

5

Cal. Gov't Code
   § 7284.2 ...............................................................................................11

6

Cal. Welf. & Inst. Code
   § 5328 ....................................................................................................7
   § 10850 ..................................................................................................7

7

8

S.F. Admin. Code
   § 12.I.1 ................................................................................................11

9

10

**Legislative Materials**

11

Illegal Immigration Reform and Immigrant Responsibility Act of 1996
   Pub. L. 104-208, §§ 384, 642, 110 Stat. 3009-546, 3009-652, 3009-707 ................................13

12

13

Protecting American Citizens Together Act
   S. 1764, 114th Cong. (2015) ...............................................................14

14

State and Local Law Enforcement Act
   S. 1640, 114th Cong. § 114 (a)(3)(c) (2015) ........................................14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The City and County of San Francisco submits this *amicus curiae* brief in support of Defendants' opposition to Plaintiff's motion for a preliminary injunction. The parties have consented to the filing of this brief. Under Federal Rule of Appellate Procedure ("FRAP") 29(a)(2) and this court's order of March 27, 2018, adopting FRAP 29(a) for *amicus* briefs in this case, no motion for leave to file is required.[1]

## INTEREST OF *AMICUS CURIAE*

The United States' overbroad interpretation of 8 U.S.C. § 1373 ("Section 1373") threatens to preempt state and local laws that limit local involvement with federal immigration enforcement. In its brief, San Francisco argues that the plain meaning and intent of Section 1373 are much narrower than the United States contends. San Francisco agrees with California that the Tenth Amendment limits the reach of Section 1373, and also agrees with other local government *amici* that there are important public policy reasons to maintain a clear distinction between local law enforcement officers and federal immigration authorities, but it does not repeat those arguments here.

San Francisco's laws—like California's—limit communications with federal immigration officials in ways that are consistent with Section 1373, as that statute is properly construed, but could be deemed to conflict with an overbroad interpretation of Section 1373. In this case, for instance, the United States argues that Section 1373 covers not only citizenship and immigration status information, but also at least three additional categories of information—home address, work address, and release date. The United States' assertions in other cases make clear that this list is just the beginning, and that adopting its interpretation of Section 1373 would prevent local governments from maintaining the confidentiality of virtually any information federal immigration officials might request—including health records, personal family information, and financial information.

The proper interpretation of Section 1373 is an important, but relatively small, aspect of the present case. Yet this Court's decision could have implications far beyond this case. San Francisco has been litigating issues related to Section 1373 in *City & County of San Francisco v. Trump*, 275 F.

---

[1] Pursuant to FRAP 29(a)(4)(A) and (E), San Francisco certifies that it has no parent corporation or stockholders, that this brief was written entirely by counsel for *amicus* and not counsel for any party, and that no person or entity other than San Francisco contributed money to fund preparing or submitting this brief.

Supp. 3d 1196 (N.D. Cal. 2017), *appeal argued*, No. 17-17480 (9th Cir. Apr. 11, 2018), and *City & County of San Francisco v. Sessions*, No. 17-cv-4642 (N.D. Cal. filed Aug. 11, 2017), and has closely tracked the United States' shifting statements about Section 1373 in these and other actions.  San Francisco submits this *amicus* brief to provide the Court with relevant background about the United States' varied and overbroad interpretation of Section 1373, as well as case law bearing on the correct interpretation of Section 1373.

## INTRODUCTION AND SUMMARY OF ARGUMENT

To coerce state and local governments to assist with federal immigration enforcement, the United States has recently adopted an extraordinarily broad interpretation of Section 1373.  The plain text of Section 1373 provides that state and local governments may not restrict their employees from sharing citizenship and immigration status information with federal immigration authorities.  Yet the United States has broadly construed this provision to mean, for example, that local governments must allow their employees to share *any* information that supports federal immigration authorities in performing their duties under the Immigration and Nationality Act.  *See* Exh. A at 39.  According to the United States, this includes an individual's incarceration status, release date, and release time.  *See* Exh. B at 2-3.  It also includes age, date of birth, and address.  *See* Exh. C at 22:4-23.  And this list is not exhaustive.  Indeed, a judge in the Northern District of California recently observed that the United States' interpretation of Section 1373 could cover "everything in a person's life."  Exh. D at 23:1-2.

This broad interpretation has significant consequences.  The United States has threatened to withhold federal funding from jurisdictions that it deems out of compliance with Section 1373.  *See* Exec. Order 13,768, 82 Fed. Reg. 8799 (Jan. 25, 2017) ("Enhancing Public Safety in the Interior of the United States"); *City & Cty. of San Francisco v. Trump*, 275 F. Supp. 3d at 1203 (invalidating Section 9(a) of Executive Order 13,768).  It has imposed Section 1373 compliance conditions on an increasing number of federal grants, and it has stated that jurisdictions seeking funds must certify under penalty of perjury that they comply with the United States' interpretation of Section 1373.  *See* Exh. D at 29:16-19.  And in the present case, the United States seeks to invalidate laws of the State of California based, in part, on a purported conflict with Section 1373.

*//*

Section 1373 cannot do the work the United States would have it do. By its plain language, Section 1373 is a narrow statute that concerns only how local jurisdictions may regulate communications with Immigration and Customs Enforcement ("ICE") "regarding [an individual's] citizenship or immigration status." 8 U.S.C. § 1373(a). The dispute in this case turns on how to interpret this phrase, and especially the word "regarding." The United States argues that "regarding" sweeps in any information that could conceivably relate to an individual's immigration status, including home address, work address, and release date. Pl.'s Mot. Prelim. Inj. & Mem. Law Supp. ("MPI") 28-29. In other cases, the United States has taken an even broader view. *See* Section II, *infra*. The United States' interpretation is wrong for the many reasons discussed in California's opposition brief. Defs.' Opp'n Pl.'s Mot. Prelim. Inj. ("Opp'n Br.") 10-19. It also contravenes ordinary principles of statutory interpretation, as discussed in Section III, *infra*.

The Court could resolve this case without interpreting Section 1373. As California notes, SB 54 has a savings clause that explicitly requires compliance with Section 1373, removing any possible conflict. Opp'n Br. at 11. If the Court gives effect to this savings clause—as it should—there is no need to further interpret Section 1373. Yet if the Court does construe Section 1373, it should reject the United States' overly broad interpretation and hold that Section 1373 means what it says, and addresses only citizenship and immigration status information.

## ARGUMENT

### I.   Section 1373 Imposes Narrow Obligations About Citizenship And Immigration Status Information.

The plain text of Section 1373 imposes specific and narrow obligations concerning communications about citizenship and immigration status. Section 1373 states in full:

> **Communication between government agencies and the Immigration and Naturalization Service**
>
> (a) In general
>
>> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service ***information regarding the citizenship or immigration status, lawful or unlawful, of any individual***.

//

(b) Additional authority of government entities

Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to *information regarding the immigration status, lawful or unlawful, of any individual*:

(1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.

(2) Maintaining such information.

(3) Exchanging such information with any other Federal, State, or local government entity.

(c) Obligation to respond to inquiries

The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain *the citizenship or immigration status of any individual* within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

8 U.S.C. § 1373 (emphasis added).

As most relevant here, Section 1373(a) provides that state and local governments cannot prohibit or restrict their employees from sharing with federal immigration officials "information regarding [an individual's] citizenship or immigration status."  On its face, this prohibition imposes a significant but narrow obligation:  State and local governments may not restrict employees from communicating with federal immigration officials about an individual's citizenship or immigration status, but they may regulate communications about other types of personal information.  The United States disagrees, and contorts Section 1373 to encompass vast swaths of information that are far removed from the ordinary meaning of "citizenship or immigration status."

## II.   The United States Has Advocated An Extraordinarily Broad Interpretation Of Section 1373 That Is Unmoored From Its Text.

### A.   This Interpretation Would Extend To Any Information That Could Help Federal Immigration Authorities.

In the past year, the United States has interpreted Section 1373 in a variety of cases, as well as in correspondence with individual jurisdictions about their compliance with Section 1373.  These interpretations show that the United States construes Section 1373 to extend far beyond its text—and far beyond the specific categories of information noted in the Motion for Preliminary Injunction filed

1  in this case.  In addition to release date, home address, and work address, *see* MPI at 28, the United

2  States has argued that Section 1373 encompasses a virtually unlimited set of information that might be

3  of interest to federal immigration officials.  The following examples are illustrative.

4       ● On October 11, 2017, the United States Department of Justice ("DOJ") sent "Determination

5  Letters" to several jurisdictions concerning their compliance (or alleged lack thereof) with Section

6  1373.  Those letters reflected DOJ's belief that Section 1373 covers incarceration status, release date,

7  and release time.  *See, e.g.,* Letter from U.S. Department of Justice to New York City 2-3 (Oct. 11,

8  2017) (attached hereto as Exhibit B).

9       ● On October 12, 2017, DOJ filed an opposition to the City of Philadelphia's Motion for a

10  Preliminary Injunction in *Philadelphia v. Sessions*.  In the opposition, DOJ stated that Section 1373(a)

11  should be read to include any information that "assists the federal government in carrying out its

12  statutory responsibilities under the [INA]."  *See* Mem. Opp'n Pl.'s Mot. Prelim. Inj. 39 (attached

13  hereto as Exhibit A).

14       ● On October 23, 2017, DOJ appeared at a hearing on San Francisco's Motion for Summary

15  Judgment in *San Francisco v. Trump*.  Acting Assistant Attorney General Chad Readler stated that

16  Section 1373 includes information about age, date of birth, and address because they are "informative

17  on" or "relevant to" immigration status.  *See* Transcript of Hearing at 21-22, *San Francisco v. Trump*,

18  No. 17-00485 (N.D. Cal. Oct. 23, 2017) (attached hereto as Exhibit C).

19       ● On December 13, 2017, DOJ appeared at a hearing on California's motion for a preliminary

20  injunction in *California v. Sessions*.  There, Mr. Readler stated that Section 1373 covers any

21  "information that allows [ICE] to do its job."  *See* Transcript of Hearing at 30:9-10,*California v.

22  Sessions*, No. 17-4701 (N.D. Cal. Dec. 23, 2017) (attached hereto as Exhibit D).

23       ● On February 14, 2018, DOJ filed a brief in *San Francisco v. Sessions* stating that

24  "'information regarding citizenship or immigration status' encompasses information that federal

25  authorities need to determine a person's status and to take the person into custody."  *See* Reply in

26  Support of Defendants' Motion to Dismiss at 7, No. 17-4642 (N.D. Cal. Feb. 14, 2018) (attached

27  hereto as Exhibit E); *see also id.* at 1, 13.

28  //

● On April 27, 2018, DOJ responded to Requests for Admission propounded in *San Francisco v. Sessions*.  DOJ admitted that it contends that a detained alien's release date, as well as any alien's residential address, location information, date of birth, familial status, and contact information are all "information regarding . . . immigration status" within the meaning of Section 1373.  *See* Defendants' Response to San Francisco's Requests for Admission at 5-7 (attached hereto as Exhibit F).

● Finally, on May 4, 2018, DOJ provided verified responses to interrogatories propounded in *San Francisco v. Sessions* and *California v. Sessions*.  San Francisco had asked DOJ to "[i]dentify all information that constitutes 'information regarding . . . immigration status' under 8 U.S.C. § 1373, including all types of information [the federal defendants] believe are included in this phrase, [and] types of information not included."  DOJ provided some examples of information it believes falls within the scope of Section 1373—including "an alien's date and time of release from custody" and "certain . . . personal and identifying information or contact information, such as home address and work address."  *See* Defendant's Responses and Objections to First Set of Interrogatories From City and County of San Francisco at 10 (attached hereto as Exhibit G); Defendant's Responses and Objections to First Set of Interrogatories From State of California at 11-12 (attached hereto as Exhibit H).  But DOJ left open that it could include much more.  *See* Exh. G at 10; Exh. H at 11-12 ("Depending on the situation, federal immigration authorities may need other categories of information that would also fall within Section 1373.").

Indeed, in discovery responses, DOJ set forth perhaps the broadest articulation yet of the meaning of "information regarding . . . immigration status," stating that it protects the exchange of information "that supports federal immigration authorities in performing their duties under the INA, including the responsibilities to determine and track the status of aliens in the United States and to take custody of such persons as required."  Exh. H at 18; *see also* Exh. G at 10 (Section 1373 "covers information that federal immigration authorities need to determine and track the status of aliens in the United States and to take custody of such persons as required.").

**B.**     **This Interpretation Would Sweep In Vast Swaths Of Personal Information.**

When the United States offered its broad interpretation of Section 1373 in proceedings in the Northern District of California, Judge Orrick astutely noted that if "information regarding immigration

status" is read as broadly as DOJ urges—*i.e.*, to extend beyond information about *what a person's immigration status is* to cover everything that helps ICE *determine* what it is—the phrase could cover "everything in a person's life." Exh. D at 23:1-2.

For example, under the Immigration and Nationality Act, individuals are inadmissible and removable from the country if they have a communicable disease or have not received vaccinations against mumps, measles, rubella, polio, tetanus and diphtheria toxoids, pertussis, influenza type B and hepatitis B, or other recommended vaccinations. 8 U.S.C. § 1182(a)(1)(A). Thus, under the United States' interpretation of Section 1373, state and local governments could not prohibit doctors and other staff at public hospitals from sending immigration officials health records of individuals who come in for treatment. Similarly, state and local governments may not be able to prohibit child protective services from sharing information about an individual's family status, or to prohibit the treasurer and tax collector from sharing information about an individual's financial status. Under the INA, the Attorney General is supposed to consider such information in determining whether people are likely to become a "public charge," rendering them inadmissible. *Id.* § 1182(a)(4)(B).

The United States' interpretation of Section 1373 conflicts with basic confidentiality provisions of federal and state law that limit disclosure and use of health, education, and welfare information. *See, e.g.*, the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 45 C.F.R. §§ 160, 164 (protecting confidentiality and limiting disclosure of health information); the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, 34 C.F.R. § 99 (education records); the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act (CAAPTR), 42 U.S.C. § 290dd-2; 42 C.F.R. § 2 (information about individuals in certain substance abuse treatment programs); Cal. Const. art. I, § 1 (establishing a state right of privacy); California's Confidentiality of Medical Information Act (CMIA), Cal. Civ. Code § 56.05 *et seq.* (health information); California Lanterman-Petris-Short Act (LPS), Cal. Welf. & Inst. Code § 5328 *et seq.* (information resulting from provision of certain mental health services); Cal. Ed. Code § 49075 (student records); Cal. Welf. & Inst. Code § 10850 (records relating to the administration of public social services). As discussed below, there is no evidence that Congress intended the phrase

"information regarding citizenship and immigration status" to cover such a wide swath of sensitive personal information.

**III.    The United States' Interpretation Ignores Established Principles Of Statutory Construction, Which Confirm That Section 1373 Must Be Read More Narrowly.**

**A.    The Plain Text Of Section 1373 Refers Only To Citizenship And Immigration Status Information**

To determine the meaning of a statute, a court must "look first to its language, giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1165 (2014) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  Here, the plain language of Section 1373 refers to information about an individual's "citizenship or immigration status," and the ordinary meaning of these words does not include home address, work address, or release date information.  Indeed, a recent case interpreting the scope of Section 1373(a) held that "no plausible reading of 'information regarding . . . citizenship or immigration status' encompasses the release date of an undocumented inmate." *Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1015 (N.D. Cal. 2017), *appeal docketed*, No. 17-16283 (9th Cir. June 21, 2017).  The *Steinle* court explained:

> Nothing in 8 U.S.C. § 1373(a) addresses information concerning an inmate's release date.  The statute, by its terms, governs only "information regarding the citizenship or immigration status, lawful or unlawful, of any individual."  8 U.S.C. § 1373(a).  If the Congress that enacted the Omnibus Consolidated Appropriations Act of 1997 (which included § 1373(a)) had intended to bar *all* restriction of communication between local law enforcement and federal immigration authorities, or specifically to bar restrictions of sharing inmates' release dates, it could have included such language in the statute.  It did not, and no plausible reading of "information regarding . . . citizenship or immigration status" encompasses the release date of an undocumented inmate.  Because the plain language of the statute is clear on this point, the Court has no occasion to consult legislative history.

*Id. Steinle*'s reasoning is correct, and this Court, too, can interpret Section 1373 without looking beyond the text of the statute.  *See Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 620-21 (9th Cir. 2005) (where the statutory language is clear, the law should be interpreted and applied according to its plain meaning).  But as discussed below, if the Court finds the text ambiguous, well-established tools of statutory construction confirm that Section 1373 is limited to citizenship and immigration status, not other types of information.

**B.    "Regarding" Does Not Show A Clear Intent To Cover Other Categories Of Information, And Instead Reflects State And Local Governments' Limited Role In Immigration Enforcement.**

Fighting against this plain meaning, the United States argues that Section 1373's use of the phrase "information regarding . . . immigration status" expands the scope of the statute beyond immigration status itself to include other categories of information that could relate to immigration status.  MPI at 28.  That is wrong.  Section 1373 uses "regarding" to distinguish between *unofficial* immigration status information that may be in the possession of state or local governments, and the *official* immigration status information maintained by federal immigration authorities.  This is evident in the contrast between Section 1373 subsections (a) and (b), which are addressed primarily to state and local governments and refer to "information regarding . . . immigration status," and subsection (c), which is addressed to federal immigration authorities and does not use "regarding" but instead speaks directly about "citizenship or immigration status."  The United States argues that this difference supports its broad reading of "regarding."  MPI at 28.  But to the contrary, it reflects the unique and paramount role of the federal government with respect to immigration status information.

State and local governments are not empowered to make immigration status determinations and cannot vouch for the accuracy of citizenship and immigration status information that may be in their possession.  This information might include, for example, an individual's self-report about immigration status, a third party's statement about an individual's immigration status, or copies of immigration or visa documents.  This type of information is not official immigration status, but is necessarily information "regarding" immigration status.  Put differently, immigration status information held by state and local governments will almost always be "regarding . . . immigration status," rather than a definitive statement of immigration status.  In contrast, subsection (c) applies to information maintained by federal immigration officials, who *do* know individuals' actual citizenship and immigration status.  The drafters of Section 1373 did not need to use "regarding" in subsection (c) because federal immigration officials possess actual immigration status information, not the unverified information that state and local governments are likely to have in their records.

Further, Ninth Circuit precedent squarely forecloses the United States' broad interpretation of the term "regarding."  In *Roach v. Mail Handlers Benefits Plan*, 298 F.3d 847 (9th Cir. 2002), the

1   Ninth Circuit addressed the meaning of the term "relate to," which DOJ has elsewhere argued is

2   "closely analogous" to "regarding."  *See* Defendants' Motion to Dismiss at 16, *San Francisco v.*

3   *Sessions*, No. 17-4642 (Dkt. No. 66) (N.D. Cal. Jan. 19, 2018).  *Roach* turned on the proper

4   interpretation of the preemption provision of the Federal Employees Health Benefits Act (FEHBA),

5   which states that the terms of a contract under that act "which relate to the nature, provision, or extent

6   of coverage or benefits" supersede and preempt any state or local law "which relates to health

7   insurance or plans."  298 F.3d at 849.  The Ninth Circuit stated: "[I]n the context of a similarly worded

8   preemption provision in the Employee Retirement Income Security Act (ERISA), the Supreme Court

9   has explained that the words 'relate to' cannot be taken too literally."  *Id.*  The court went on to

10  explain:

11          "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy,
            then for all practical purposes pre-emption would never run its course, for
12          'really, universally, relations stop nowhere.'"  *N.Y. State Conference of Blue*
            *Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)
13          (quoting H. James, Roderick Hudson xli (New York ed., World's Classics
            1980)).  Instead, "relates to" must be read in the context of the presumption that
14          in fields of traditional state regulation "the historic police powers of the States
            [are] not to be superseded by [a] Federal Act unless that was the clear and
15          manifest purpose of Congress."  *Id.* at 655 (quoting *Rice v. Santa Fe Elevator*
            *Corp.,* 331 U.S. 218, 230 (1947)).

16

17  *Id.* at 849-50.

18          In *Roach*, the Ninth Circuit followed the Supreme Court's directive that federal statutes should

19  not be interpreted to preempt matters of traditional state control unless that intent is "unmistakably

20  clear in the language of the statute."  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985).

21  "In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of

22  clear statement assures that the legislature has in fact faced, and intended to bring into issue, the

23  critical matters involved in the judicial decision."  *United States v. Bass*, 404 U.S. 336, 349 (1971).  In

24  *Gregory v. Ashcroft*, 501 U.S. 452 (1991), for example, the Supreme Court considered whether federal

25  law prohibiting age discrimination preempted a provision of the Missouri Constitution requiring state

26  judges to retire at age seventy.  Recognizing States' sovereign interest in determining judicial

27  qualifications, the Supreme Court invoked the clear statement rule to construe the Age Discrimination

28  //

1   in Employment Act narrowly.  *Id*. at 467 ("[W]e cannot conclude that the statute plainly covers

2   appointed state judges.  Therefore, it does not.").

3       More recently, in *Bond v. United States*, 134 S. Ct. 2077 (2014), the Supreme Court invoked

4   this clear statement rule to hold that a federal chemical weapons statute must be narrowly construed to

5   avoid conflicting with "the punishment of local criminal activity," which is "[p]erhaps the clearest

6   example of traditional state authority."  *Id*. at 2089.  The Court emphasized that "it is incumbent on the

7   federal courts to be certain of Congress' intent before finding that federal law overrides the usual

8   constitutional balance of federal and state powers."  *Id*. (internal quotation marks omitted).

9       Applying this precedent here requires limiting Section 1373 to information about citizenship

10  and immigration status, because those are the only categories of information that are "unmistakably

11  clear" in the statute.  Like the state concerns in the above cases, state and local sanctuary laws reflect

12  the exercise of core state powers.  More specifically, they reflect state and local governments'

13  considered judgment that limiting involvement in federal immigration enforcement promotes public

14  health, public safety, and the general welfare in their communities.  *See, e.g.*, Cal. Gov't Code §

15  7284.2; S.F. Admin. Code § 12.I.1; Brief of *Amici Curiae* 25 California Counties, Cities, and Local

16  Officials; Brief of *Amici Curiae* The City Of New York *et al*.  These traditional matters of local

17  concern lie at the heart of a State's police power.  *See, e.g.*, *United States v. Morrison*, 529 U.S. 598,

18  618 (2000); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).

19      A broad reading of Section 1373 would significantly intrude on state power by preventing

20  States from maintaining confidential information about residents' home addresses, work addresses,

21  and release dates, let alone private health and financial information.  *Roach* is directly on point:  The

22  use of "regarding" in Section 1373 cannot be understood to "extend to the furthest stretch of its

23  indeterminacy" without significantly reworking the ordinary balance of power between States and the

24  federal government.

25      **C.    General Statements Of Purpose In The Legislative History Cannot Override The
            Text Enacted By Congress.**

26

27      Finally, the United States argues that the legislative history of Section 1373 shows

28  Congressional intent "to prevent any State or local law . . . that prohibits or in any way restricts any

1   communication between State and local officials and the INS." MPI at 27 (quoting *Bologna v. City &*

2   *Cty. of San Francisco*, 121 Cal. Rptr. 3d 406, 414 (Cal. Ct. App. 2011)). This is wrong, and the

3   authority cited by the United States does not support using the legislative history of Section 1373 to

4   override the plain language of the statute.

5          First and foremost, the United States errs in suggesting that general statements of purpose in

6   the legislative history—or even specific statements of intent—can supplant the actual text ultimately

7   enacted by Congress. The Supreme Court rejected similar arguments in *Arlington Central School*

8   *District Board of Education v. Murphy*, 548 U.S. 291 (2006). There, parents argued that the

9   legislative history of the Individuals with Disabilities Education Act (IDEA) showed Congressional

10   intent to authorize recovery of expert fees in IDEA actions. The legislative history of the statute

11   included a Conference Committee Report stating an explicit intent that expert fees would be

12   recoverable as part of attorneys fees. The Court held that this was not sufficiently clear to tell States

13   what would be required to receive IDEA funds. *Id*. at 304. It also held that the IDEA's overarching

14   goals of providing free and appropriate public education to children with disabilities, and safeguarding

15   parents' rights to challenge educational decisions affecting their children, were too general to support

16   the parents' argument.

17              The IDEA obviously does not seek to promote these goals at the expense of all
               other considerations, including fiscal considerations. Because the IDEA is not
18              intended in all instances to further the broad goals identified by respondents at
               the expense of fiscal considerations, the goals cited by respondents do little to
19              bolster their argument on the narrow question presented here.

20   *Id*. at 303.

21          Second, the cases cited by the United States used the legislative history of Section 1373 to

22   analyze different questions than the one before this Court. In *Bologna v. City and County of San*

23   *Francisco*, the California Court of Appeal evaluated whether Section 1373 was intended to protect

24   individuals from violent crime, and concluded that it was not. 121 Cal. Rptr. 3d 406. *Bologna* found

25   that Section 1373 was instead directed at the exchange of information between local officials and

26   federal immigration authorities. *Id*. at 438-39. The court did not analyze the specific types of

27   information included in Section 1373's reference to immigration information.

28   //

*City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999), provides even less support for the United States.  In that case, the Second Circuit stated that the Tenth Amendment does not give cities an "untrammeled right" to refuse to participate in federal programs, in the absence of any countervailing state and local interests.  *Id*. at 35.  This language, cited by the United States (MPI at 28), does not interpret the text of Section 1373, but instead reflects the Second Circuit's Tenth Amendment analysis.  The court held that since the New York City sanctuary policy at issue was "on its face a mandatory non-cooperation directive," it "need not locate with precision the line between invalid federal measures that seek to impress state and local governments into the administration of federal programs and valid federal measures that prohibit states from compelling passive resistance to particular federal programs."  *Id*.  In contrast with the New York City Executive Order at issue in *City of New York*, California's SB 54 is designed to promote important state interests and is tailored to those interests.  And *City of New York* specifically reserved the question of whether Section 1373 "would survive a constitutional challenge in the context of generalized confidentiality policies that are necessary to the performance of legitimate municipal functions."  *Id*. at 37.

### D.    If Congress Had Intended Section 1373 To Apply More Broadly, It Would Have Used Broader Language.

When Congress wants to draft legislation that applies to broad swaths of information, it knows how to do so.  For example, the same bill that enacted Section 1373 also enacted a statute prohibiting the disclosure of "*any information which relates to an alien* who is the beneficiary of an application for relief under [specific provisions] of the Immigration and Nationality Act."  8 U.S.C. § 1367(a)(2); *see also* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, §§ 384, 642, 110 Stat. 3009-546, 3009-652, 3009-707 (emphasis added).  Other provisions of the INA refer to "information regarding the name and address of the alien," 8 U.S.C. § 1360(c)(2), "information concerning the alien's whereabouts and activities," 8 U.S.C. § 1184(k)(3)(A), and information "about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate," 8 U.S.C. § 1231(a)(3)(C).  If Congress wanted Section 1373 to include these types of information, it easily could have used similar language.  The absence of this language in Section 1373, when it appears elsewhere throughout the INA,

confirms that Congress did not intend Section 1373 to cover "address," "whereabouts," or "any information which relates to an alien."

Indeed, Congress has failed to act on proposals to expand Section 1373 to cover these broader categories of information. Most notably, then-Senator Jeff Sessions proposed an amendment to Section 1373 that would have included "(1) Notifying the Federal Government regarding the presence of inadmissible and deportable aliens who are encountered by law enforcement personnel of a State or political subdivision of a State," and "(2) Complying with requests for information from Federal law enforcement." *See* Michael Davis, Jr. and Danny Oliver in Honor of State and Local Law Enforcement Act, S. 1640, 114th Cong. § 114 (a)(3)(c) (2015). Mr. Sessions's bill died in the Senate Judiciary Committee. *See also* Protecting American Citizens Together Act, S. 1764, 114th Cong. (2015) (failed proposal to amend Section 1373 to require that jurisdictions notify the federal government when they have custody of an undocumented immigrant, or forfeit eligibility for specific federal grants). In short, the United States invites the Court to expand Section 1373 where Congress has chosen not to do so. The Court should decline this invitation.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

Dated: May 18, 2018

DENNIS J. HERRERA
City Attorney
RONALD FLYNN
Chief Deputy City Attorney
MOLLIE M. LEE
SARA J. EISENBERG
Deputy City Attorneys


By: */s/ Mollie M. Lee*
MOLLIE M. LEE
Deputy City Attorney

Attorneys for *Amicus Curiae*
CITY AND COUNTY OF SAN FRANCISCO

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on May 18, 2018, I electronically transmitted the foregoing *amicus*

3   *curiae* brief of the City and County of San Francisco, using the United States District Court for the

4   Eastern District of California's Electronic Filing System (ECF) and that service on all counsel of

5   record will be accomplished via the ECF system.

6

7                                      Respectfully submitted,

8

9                                       /s/ Mollie M. Lee
                                        MOLLIE M. LEE
10                                      Deputy City Attorney
                                        SAN FRANCISCO CITY ATTORNEY'S OFFICE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CITY OF PHILADELPHIA,

                              *Plaintiff*,

       v.

JEFF SESSIONS, in his official capacity as
Attorney General of the United States,

                         *Defendant*.

                        Case No. 2:17-cv-03894-MMB

## MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

DATED:  October 12, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

LOUIS D. LAPPEN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

ARJUN GARG
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*

a.      Looking only to the face of the City's policies, the City does not comply with Section 1373.  The statute provides, in part, that a "local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration officials] information regarding the citizenship or immigration status, lawful or unlawful, of any individual."  8 U.S.C. § 1373(a).  At least two City policies do not comply with Section 1373, and at least three additional policies may also be non-compliant depending on how the City interprets and applies them.

First, the City's Executive Order No. 5-16, which the City's brief refers to as "Detainer Order II," Pl.'s Mem. at 9, states in Section 1 that notice of a person's "pending release" from City custody shall not be provided, "unless such person is being released after conviction for a first or second degree felony involving violence and the detainer is supported by a judicial warrant."  Dkt. No. 1-6.  This section restricts the sharing of "information regarding . . . immigration status" in violation of 8 U.S.C. § 1373(a).[11]  Nothing in the statute allows the City to impose a prohibition that limits information-sharing only to certain circumstances.

---

[11]     The INA states that the "immigration status of any individual" specifically "includ[es] . . . that a particular alien *is not lawfully present* in the United States."  8 U.S.C. § 1357(g)(10)(a) (emphasis added).  "Present" means "being in a certain place and not elsewhere," *Webster's New International Dictionary* (2d ed. 1958), so the fact that an alien is in custody for a specific duration (in a certain place and not elsewhere) fits within the INA's contemplation of immigration status. Moreover, "information regarding . . . immigration status" is a broader category than "immigration status" itself.   Comparison of different subsections within Section 1373 demonstrates that Congress used the broader "information regarding" formulation deliberately.  *Compare* 8 U.S.C. § 1373(a) (concerning "information regarding . . . immigration status") *with* 8 U.S.C. § 1373(c) (discussing "immigration status" but omitting the broader "information regarding" formulation). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."   *Dean v. United States*, 556 U.S. 568, 573 (2009) (citation omitted).  Indeed, the House Report accompanying the legislation stated that Section 1373 was intended "to give State and local officials the authority to communicate with the INS [Immigration and Naturalization Service] regarding the *presence, whereabouts, and activities* of illegal aliens." H.R. Rep. No. 104-469, pt. 1, at 277 (1996) (emphasis added).  Custody release (. . . *cont'd*)

Second, Police Commissioner Memorandum No. 01-06 states at Section III.C that "immigrants who are victims of crimes will not have their status as an immigrant transmitted in any manner." Dkt. No. 1-3. This Memorandum restricts the sharing of information regarding immigration status in violation of 8 U.S.C. § 1373(a). To be sure, it is not the Department of Justice's or the Department of Homeland Security's policy or practice to request information from state and local jurisdictions regarding the immigration status of victims. There are, however, instances where requesting this information could be appropriate, such as where a person is both a perpetrator and a victim. The key point is that, notwithstanding limits that the federal government may prudentially self-impose, nothing in 8 U.S.C. § 1373 allows the City to impose a prohibition that limits information-sharing under these circumstances.

Additionally, three other City policies may violate Section 1373 depending on how the City interprets and applies them. In its preliminary assessment recently transmitted to the City, the Department has invited the City to provide clarification regarding each of these policies. *See* Hanson Decl. Ex. A at 3.

The City's Executive Order No. 8-09, which the City's brief refers to as the "Confidentiality Order," Pl.'s Mem. at 8, states at Section 2(b) that police officers "shall not . . . inquire about a person's immigration status," unless certain limited exceptions apply. Dkt No. 1-

---

information falls within the sweep of "information regarding . . . immigration status" that Congress intended under Section 1373(a). Indeed, it is relevant to the federal government's statutory duties, enacted at the same time as Section 1373, to "take into custody any alien who" has committed certain offenses, 8 U.S.C. § 1226(c)(1)(A), and to "take into custody any alien who . . . is inadmissible . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation," 8 U.S.C. § 1226(c)(1)(D). It is sensible to read section 1373(a) to include information that assists the federal government in carrying out its statutory responsibilities under the same Act. *See United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

# EXHIBIT B



**U.S. Department of Justice**

Office of Justice Programs

_Washington, D.C.  20531_

October 11, 2017

Elizabeth Glazer
Director
New York City Mayor's Office of Criminal Justice
1 Centre Street, Room 1012N
New York, NY  10007-1602

Dear Ms. Glazer,

Your FY 2016 Byrne JAG grant award required you to comply with 8 U.S.C. § 1373; to undertake a review to validate your jurisdiction's compliance with 8 U.S.C. § 1373; and to submit documentation, including an official legal opinion from counsel, adequately supporting the validation.  Thank you for your recent submission. The Department of Justice has reviewed your submission, all attached documentation, and your jurisdiction's laws, policies, and practices relating to compliance with section 1373, to the extent they were provided or are readily available.

This letter is to inform you that, based on a preliminary review, the Department has determined that your jurisdiction appears to have laws, policies, or practices that violate 8 U.S.C. § 1373.  These laws, policies, or practices include, but may not be limited to:

- Executive Order No. 41. Section 4 of the Executive Order states that police officers "shall not inquire about a person's immigration status unless investigating illegal activity other than mere status as an undocumented alien."  Under 8 U.S.C. § 1373(b)(1), however, New York may not "in any way restrict" the "requesting" of "information regarding . . . immigration status" from federal immigration officers.  On its face, the Department has determined that the Executive Order appears to bar New York officers from requesting information regarding immigration status from federal immigration officers.  In order to comply with 8 U.S.C. § 1373, the Department has determined that New York would need to certify that it interprets and applies this section to not restrict New York officers and employees from requesting information regarding immigration status from federal immigration officers.  The Department has also determined that New York would need to certify that it has communicated this interpretation to its officers and employees.  If New York cannot provide this certification, the Department has determined that this provision violates section 1373(b).

- Executive Order No. 41. Section 2 of the Executive Order states that New York officers and employees "shall [not] disclose confidential information," which is defined to include "immigration status."  Section 2(b) and (e) contain a few exceptions, including when "disclosure is required by law."  In order to comply with 8 U.S.C. § 1373, the Department has determined that New York would need to certify that it interprets and applies this Order to not restrict New York officers and employees from sharing information regarding immigration status with federal immigration officers.  The Department has also determined that New York would need to certify that it has communicated this interpretation to its officers and employees.  If New York cannot provide this certification, the Department has determined that this provision violates section 1373(a).

- New York Administrative Code § 9-131.  Section 9-131(b) states that New York City Department of Corrections may not "honor a civil immigration detainer . . . by notifying federal immigration authorities of [a] person's release," except in certain limited circumstances.[1]  Section 9-131(d) states that this law shall not be construed to "prohibit any city agency from cooperating with federal immigration authorities when required under federal law."  It also states that this law shall not be construed to "create any . . . duty or obligation in conflict with any federal . . . law."  In order to comply with 8 U.S.C. § 1373, the Department has determined that New York would need to certify that it interprets and applies Section 9-131(b) and (d) to not restrict New York officers from sharing information regarding immigration status with federal immigration officers, including information regarding the date and time of an alien's release from custody. The Department has also determined that New York would need to certify that it has communicated this interpretation to its officers and employees.  If New York cannot provide this certification, the Department has determined that this provision violates section 1373(a).

- New York Administrative Code § 9-131.  Section 9-131(h)(1) states that New York City Department of Corrections personnel shall not "expend time while on duty or department resources . . . in response to federal immigration inquiries or in communicating with federal immigration authorities regarding any person's incarceration status, release dates, court appearance dates, or any other information related to persons in the department's custody, other than information related to a person's citizenship or immigration status," except where certain exceptions apply.  As discussed above, section 9-131(d) states that this law shall not be construed to "prohibit any city agency from cooperating with federal immigration authorities when required under federal law."  It also states that this law

---

[1] An ICE detainer form ordinarily requests that a jurisdiction (1) provide advance notice of the alien's release; and (2) maintain custody of the alien for up to 48 hours beyond the scheduled time of release.  The Department is not relying on New York's restriction of the latter form of cooperation in this preliminary assessment.

2

shall not be construed to "create any . . . duty or obligation in conflict with any federal . . . law." In order to comply with 8 U.S.C. § 1373, the Department has determined that New York would need to certify that it interprets and applies Section 9-131(h) and (d) to not restrict New York officers from sharing information regarding immigration status with federal immigration officers, including information regarding an alien's incarceration status and release date and time. The Department has also determined that New York would need to certify that it has communicated this interpretation to its officers and employees. If New York cannot provide this certification, the Department has determined that this provision violates section 1373(a).

Your jurisdiction may submit a response to this preliminary assessment, as well as any additional evidence you would like the Department to consider, before it reaches its final determination. Please submit all additional documentation by October 27, 2017. Once the Department has had an opportunity to review your submission, the Department will notify you of its final determination.

This letter reflects the Department's preliminary assessment of your jurisdiction's compliance with 8 U.S.C. § 1373. This letter does not constitute final agency action and nothing in this letter creates any right or benefit enforceable at law against the United States. Additionally, as the United States continues to collect information about your jurisdiction, it reserves the right to identify additional bases of potential violations of 8 U.S.C. § 1373.

Sincerely,

Alan Hanson
Acting Assistant Attorney General

3

# EXHIBIT C

**Pages 1 - 37**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

| | | |
|---|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, | ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | **NO. CV 17-00485-WHO** |
| DONALD J. TRUMP, ET AL., | ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| COUNTY OF SANTA CLARA, | ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | **NO. CV 17-00574-WHO** |
| DONALD J. TRUMP, ET AL., | ) ) | |
| Defendants. | ) ) | |

San Francisco, California
Monday, October 23, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff City and County of San Francisco in
CV 17-00485-WHO:

                        OFFICE OF THE CITY ATTORNEY
                        City Hall, Room 234
                        1 Dr., Carlton B, Goodlett Place
                        San Francisco, CA  94102
                   BY:  **DENNIS J. HERRERA, CITY ATTORNEY**

            (Appearances continued on the next page)

Reported By:        Pamela A. Batalo, CSR No. 3593, RMR, FCRR
                    Official Reporter

```
APPEARANCES CONTINUED:

For Plaintiff City and County of San Francisco in
CV 17-00485-WHO:
                        OFFICE OF THE CITY ATTORNEY
                        1390 Market Street - 7th Floor
                        San Francisco, CA  94102
                BY:     MOLLIE LEE, DEPUTY CITY ATTORNEY
                        YVONNE MERE, DEPUTY CITY ATTORNEY
                        AILEEN MCGRATH, DEPUTY CITY ATTORNEY


For Plaintiff County of Santa Clara in CV 17-00574-WHO:
                        KEKER, VAN NEST & PETERS
                        633 Battery Street
                        San Francisco, CA  94111
                BY:     CODY S. HARRIS, ESQUIRE

                        OFFICE OF THE COUNTY COUNSEL
                        County of Santa Clara
                        70 West Hedding Street
                        9th Floor, East Wing
                        San Jose, CA  95110
                BY:     DANIELLE L. GOLDSTEIN,
                        DEPUTY COUNTY COUNSEL
                        GRETA S. HANSEN,
                        CHIEF ASSISTANT COUNTY COUNSEL
                        JAVIER SERRANO,
                        DEPUTY COUNTY COUNSEL

For Defendants:
                        U.S. DEPARTMENT OF JUSTICE
                        United States Attorney's Office
                        450 Golden Gate Avenue
                        Box 36055
                        San Francisco, CA  94102
                BY:     CHAD READLER,
                        ACTING ASSISTANT ATTORNEY GENERAL
                        KIMBERLY FRIDAY,
                        DEPUTY CHIEF, CIVIL DIVISION
```

1    employees about this federal requirement because if they're not

2    that in many ways would be viewed as a restriction in any way

3    on the City employees ability to honor 1373.  If they don't

4    know about it, it's awfully hard to think they could be

5    complying with 1373.

6         **THE COURT:**  Are you arguing that the City's ordinance

7    would have to include reference to 1373?

8         **MR. READLER:**  It could.  I'm not saying it has to.  It

9    certainly could.

10        Also there could be sort of an affirmative sharing of that

11   information.  I think the City pointed to one memo that they

12   hand out to individuals that states the face of the statute but

13   does nothing more to explain it or explain why compliance is

14   important.

15        In the *Steinle* case we know that the City had a policy

16   issued by the sheriff.  That was a little different than the

17   policy articulated in the ordinance and so we don't know

18   exactly what the City is doing to enforce these sections, so I

19   think those are important questions that we would want to

20   answer.

21        And then I'm going to close with Section 12I which is a

22   long section.  And at 12I.3, Section C -- so 12I.3, Section

23   C -- there is a prohibition on providing the personal

24   information of any inmate to immigration officers.  "Law

25   enforcement officials shall not provide any individual's

1    personal information to a federal immigration officer."  And we

2    believe that personal information in many ways can also be

3    included under 1373, and I will give you a couple of examples.

4        An individual's identity or age may well be relevant to

5    their immigration status.  For example, if an individual has an

6    A-number, an Alien Registration Number, that would indicate

7    that they are an alien and may well be deportable.

8        Their date of birth is informative on immigration status

9    because it relates to derivative immigration status so, for

10   example, derivative immigration status is for children of

11   non-immigrants.  You need the birth date to understand that.

12       An individual's residence, another piece of personal

13   information.  It's relevant to the 1373 consideration.  For

14   example, if you are here on a B2 non-immigrant visitor status,

15   you have to maintain a permanent residence outside the

16   United States, and if you disclose you had a permanent

17   residence inside the United States, that would be a violation

18   of your status in the country.

19       And of course, the address is also helpful to the

20   United States because if they can't take someone into custody

21   immediately when they're released from prison, they would want

22   to find their address to do it then, given the change in their

23   immigration status.

24       And I will point out that -- in my reading, there is no

25   savings clause here in Section 12I, so I'm not aware of one of

**EXHIBIT D**

Pages 1 - 49

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK, JUDGE

```
STATE OF CALIFORNIA, ex rel,    )
XAVIER BECERRA, in his official )
capacity as Attorney General    )
of the State of California,     )
                                )
            Plaintiff,          )
                                )
  vs.                           )   NO. C 17-4701 WHO
                                )
JEFFERSON B. SESSIONS, in his   )
official capacity as Attorney   )
General of the United States;   )
ALAN R. HANSON, in his official )
capacity as Principal Deputy    )
Acting Assistant Attorney       )
General; UNITED STATES          )
DEPARTMENT OF JUSTICE; and      )
DOES 1-100,                     )
                                )
            Defendants.         )
_____)   San Francisco, California
                                     Wednesday, December 13, 2017
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For the Plaintiff:      State of California
                        Department of Justice
                        Office of the Attorney General
                        Civil Rights Enforcement Section
                        300 South Spring Street
                        Los Angeles, California 90013
                   **By:  Lee I. Sherman**
                        **Deputy Attorney General**

(Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, RPR, CRR
               Official Reporter - U.S. District Court

**APPEARANCES (CONTINUED)**:

For the Plaintiff:      State of California
                        Department of Justice
                        Office of the Attorney General
                        1515 Clay Street, 21st Floor
                        Okaland, California 94612-1492
                 **By:  Lisa Ehrlich
                        Sarah E. Belton
                        Deputy Attorneys General**


For Defendants:         United States Department of Justice
                        Civil Division
                        950 Pennsylvania Avenue, N.W.
                        Washington, D.C. 20530
                 **By:  Chad A. Readler
                        Acting Assistant Attorney General**

                        United States Department of Justice
                        Federal Programs Branch
                        901 E Street, N.W., Room 986
                        Washington, D.C. 20530
                 **By:  W. Scott Simpson
                        Senior Counsel**

                        United States Department of Justice
                        United States Attorney's Office
                        450 Golden Gate Avenue, 9th Floor
                        San Francisco, California  94102
                 **By:  Steven J. Saltiel
                        Assistant United States Attorney**

1          **THE COURT:**  But immigration -- "regarding immigration

2     status" could mean everything in a person's life.

3          **MR. SHERMAN:**  Right.

4          **THE COURT:**  Which seems quite broad to me.  But it

5     might be that there's a different definition that I'm going to

6     hear.  So why --

7          **MR. SHERMAN:**  Sure.  Sure.

8        To that point, Your Honor, because the statute is not

9     unmistakably clear, as the Supreme Court said in *Gregory* and in

10    *Bond*, then that -- that 1373 should be narrowly read to

11    encompass the information that this Congress said, and which is

12    immigration and citizenship status information.

13         **THE COURT:**  All right.  All right.  I think I'm about

14    ready to hear Mr. Readler.

15         **MR. SHERMAN:**  Sure.  Thank you.

16         **THE COURT:**  Thank you, Mr. Sherman.

17         **MR. READLER:**  Hi. Good afternoon, Your Honor.

18         **THE COURT:**  Good afternoon.

19         **MR. READLER:**  If it please the Court.

20         **THE COURT:**  It's a pleasure to see you.

21       Now, I want to ask you a few questions before you launch

22    into the things that you want to make sure that I know.

23       And so start with Judge Baylson's observation that

24    criminal law is integral to immigration law; but immigration

25    law has nothing to do with local criminal laws.

1    won't be because the clock runs out.

2         **THE COURT:**  Does the State have a legitimate concern

3    that this Justice Department is going to go after them because

4    they signed, in good faith, a certification that they're in

5    compliance with 1373?

6         **MR. READLER:**  Well, I'm not aware of any perjury, you

7    know, prosecutions or some of the criminal aspects that the

8    Court referred to earlier.  But, certainly, we're being very

9    upfront about our reading of 1373.

10        Of course, last year the Department put the 1373

11   requirement into these grants.  And at that point it said that

12   for this year we won't be imposing any penalties; but we're

13   giving you a year, essentially, to get your house in order.

14   And then there have been a number of follow-up communications

15   up until this point.

16        So this year the Government is expecting that the State,

17   if they certify compliance, will be agreeing to the

18   Government's interpretation on the issues that we've raised to

19   them.

20        There's the two issues, the release date and the address.

21   Those are the two specific issues that we have -- we have

22   raised to the State.  And we have been going back and forth on

23   our interpretation of those issues.

24        **THE COURT:**  So what is the Government's interpretation

25   of "information regarding status"?  Because it seems totally

1   amorphous to me.

2          **MR. READLER:**  Sure.  Well, obviously, Congress chose a

3   broad phrase.  It could have said "just immigration status."

4          **THE COURT:**  Or maybe an ambiguous phrase.

5          **MR. READLER:**  Well, it certainly includes more than

6   just immigration status, because they said that in part C, I

7   think of 1373.  And part A says "information regarding."

8       What I think that means, at bottom, is that the Congress

9   expected that ICE would have the information that allows it to

10  do its job.

11      And one of the key aspects of ICE is that when an

12  individual is being held by a state or local government, that

13  person is only removable once their sentence ends and they're

14  released.

15      So, surely, Congress had in mind that a release date would

16  be the kind of information that a state or city could not

17  exclusively bar -- not to require, but to exclusively bar from

18  sharing with the federal government.  Because, otherwise, that

19  completely frustrates the removable system in ICE's job, which

20  is a significant preference to take someone into custody when

21  they're leaving their state or local penitentiary as opposed to

22  then going out on the streets and finding them later.

23      And I think the history lesson here is important because

24  this law, of course, was passed in 1996.  And it's clear to me

25  that at that time there was no doubt that Congress thought that

# EXHIBIT E

1    CHAD A. READLER
2    Acting Assistant Attorney General
     ALEX G. TSE
3    Acting United States Attorney
     JOHN R. TYLER
4    Assistant Director
     W. SCOTT SIMPSON (Va. Bar #27487)
5    Senior Trial Counsel
     Department of Justice, Room 7210
6    Civil Division, Federal Programs Branch
7    20 Massachusetts Avenue, NW
     Washington, D.C. 20530
8    Telephone:    (202) 514-3495
     Facsimile:    (202) 616-8470
9    E-mail:       scott.simpson@usdoj.gov

10   COUNSEL FOR DEFENDANTS
11   JEFFERSON B. SESSIONS III, Attorney
     General of the United States; ALAN R.
12   HANSON, Principal Deputy Assistant Attorney
     General; and U.S. DEPARTMENT OF JUSTICE
13

14                    IN THE UNITED STATES DISTRICT COURT

15                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

16                           SAN FRANCISCO DIVISION

17

18   CITY AND COUNTY OF SAN
     FRANCISCO,                               No. 3:17-cv-04642-WHO
19
                        Plaintiff,            **REPLY IN SUPPORT OF DEFENDANTS'**
20            v.                              **MOTION TO DISMISS**

21   JEFFERSON B. SESSIONS III, Attorney
     General of the United States, *et al.*,
22                                            Date:  February 28, 2018
                        Defendants.           Time: 2:00 p.m.
23

24

25

26

27

28

     Reply in Supp. Motion to Dismiss
     No. 3:17-cv-04642-WHO

**INTRODUCTION**

San Francisco seeks federal funds to support its local law enforcement prerogatives, yet refuses any reciprocal obligation that its law enforcement officials recognize federal law enforce-ment prerogatives by sharing information regarding individuals under local detention.  The City also seeks an order that its ordinances prohibiting the provision of that information do not violate federal law.

Although the Department of Justice ("DOJ" or "Department") has expressed concern that Chapters 12H and 12I of the San Francisco Administrative Code may violate 8 U.S.C. § 1373, the parties have not yet completed their discussions on that subject and DOJ's Office of Justice Programs ("OJP") has recently requested certain documents from the City to facilitate making that decision administratively.  Thus, plaintiff's claim for a ruling on whether Chapters 12H and 12I violate Section 1373 is constitutionally unripe.  In any event, assuming this claim were justiciable, the Court should dismiss the claim on its merits.  Section 1373 protects the exchange of "informa-tion regarding the citizenship or immigration status" of individuals with federal immigration authorities – information needed by federal authorities to determine the immigration status of aliens and to take them into custody upon their release from criminal detention – and San Francisco's ordinances "prohibit" and "restrict" the transmission of that information.  8 U.S.C. § 1373(a).

Nor, in any event, is there any legal basis for plaintiff's objection to complying with grant conditions, a traditional aspect of participation in the Edward Byrne Memorial Justice Assistance Grant Program.  To further information-sharing, the Byrne JAG Program requires participants to comply with Section 1373, to give federal immigration authorities access to the City's detention facilities to meet with aliens, and to give those authorities "as much advance notice as practicable" before releasing an alien.  These conditions are consistent not only with the statutes governing the Byrne JAG Program, but also with the Program's legislative history, which confirms that those statutes empower DOJ and OJP to "place special conditions on all grants and to determine priority purposes for formula grants," H.R. Rep. No. 109-233, at 101 (2005); *see* 34 U.S.C. § 10102(a)(6).  And these conditions satisfy the Spending Clause:  they articulate the required conduct and further the Program's goals of advancing criminal justice and public safety, easily surpassing the "some

Reply in Supp. Motion to Dismiss
No. 3:17-cv-04642-WHO

1  (Dkt. No. 67 at 12).  Consistent with the INA, "information regarding citizenship or immigration

2  status" encompasses information that federal authorities need to determine a person's status and

3  to take the person into custody.  It does not encompass, for example, whether the individual

4  receives City health services or unemployment services, whether the individual pays his or her tax

5  bills or utility bills, whether the individual's vehicle is properly registered, or a great many other

6  categories of unrelated information that San Francisco may have.

7          In attempting to limit the scope of Section 1373, plaintiff also argues that understanding

8  the statute as encompassing more than "citizenship or immigration status" alone would invade the

9  "heart of the state's police power" and "supersede San Francisco's exercise of its core police

10  powers" (Dkt. No. 67 at 13).  But the admission, presence, and potential removal of aliens in the

11  United States are quintessentially the responsibility of the *Federal Government*, and the information

12  protected by Section 1373 is needed to carry out those responsibilities.  *See Arizona v. United*

13  *States*, 567 U.S. 387, 394 (2012).  Protecting the transmission of information regarding the

14  immigration status of such persons to federal immigration authorities, far from invading the

15  "heart of the state's police power," merely ensures that federal officers can perform their duties.

16              **2.      The Court Should Deny Plaintiff's Request for a Ruling**
17                      **that Chapter 12I Complies with Section 1373**

18          In light of that correct understanding of Section 1373, the Court should dismiss plaintiff's

19  claim for a ruling that its ordinances are consistent with the federal statute.  Chapter 12I provides

20  that "[l]aw enforcement officials shall not . . . provide any individual's personal information to a

21  federal immigration officer, on the basis of an administrative warrant, prior deportation order, or

22  other civil immigration document based solely on alleged violations of the civil provisions of

23  immigration laws."  S.F., CAL., ADMIN. CODE ch. 12I, § 12I.3(e).  Personal information is defined

24  broadly as including "any confidential, identifying information . . . including, but not limited to

25  . . . contact information . . . ."  *Id.* § 12I.2.  Aside from seeking to limit "information regarding

26  citizenship or immigration status" to nothing but mere immigration status, plaintiff largely

27  ignores defendants' explanation as to why this provision violates Section 1373.  Most notably, the

28  City ignores the fact that "contact information," including a person's address, relates to several

Reply in Supp. Motion to Dismiss            7
No. 3:17-cv-04642-WHO

1  of any limitations on the spending power.

2              **1.      The Challenged Conditions are Unambiguous**

3           Plaintiff's argument on the clarity of the access and notice conditions is based primarily

4  on the language in the FY 2017 grant solicitations (Dkt. No. 67 at 25; Dkt. No. 61, Ex. B at 30).

5  The purpose of that language, however, was only to inform potential applicants that conditions

6  along those lines would be included in the grant documents.  The language of the actual

7  conditions, as contained in the awards that OJP issued before the conditions were enjoined in

8  *Chicago v. Sessions*, 264 F. Supp. 3d 933, 945 (N.D. Ill. 2017), was thoroughly detailed.  *See*

9  Request for Judicial Notice ("RJN"), Ex. E ¶¶ 53, 55, 56; Ex. F ¶¶ 53, 55, 56 (Dkt. No. 66-1).

10  For example, plaintiff complains that the grant solicitations did not make clear "whether notice

11  must be given only when the scheduled release date and time is known 48 hours in advance . . . or

12  whether jurisdictions must hold inmates in custody for additional time to provide a full period of

13  notice" (Dkt. No. 67 at 25).  The actual conditions answer both of those questions, specifying that

14  the notice condition requires "only as much advance notice as practicable" and that nothing in the

15  condition "shall be understood to authorize or require any recipient . . . to maintain (or detain) any

16  individual in custody beyond the date and time the individual would have been released in the

17  absence of this condition."  RJN, Ex. E ¶ 55; Ex. F ¶ 55.

18          As for the condition requiring compliance with Section 1373, defendants' discussion

19  regarding Chapters 12H and 12I of the San Francisco Administrative Code should obviate any

20  uncertainty about the meaning of this condition.  The Department of Justice clearly understands

21  "information regarding . . . citizenship or immigration status" as encompassing information

22  needed by federal immigration authorities to determine as individual's immigration status and to

23  take custody of the individual upon release criminal detention.  And defendants clearly under-

24  stand the Section 1373 condition as barring a grantee from prohibiting its employees from

25  providing an alien's identifying information or release date to federal authorities.

26          Plaintiff raises other factual questions that may arise in implementing these conditions and

27  argues that the conditions are ambiguous because they fail to address those scenarios (Dkt. No. 67

28  at 26).  The Court of Appeals has made clear, however, that the Spending Clause does not require

Reply in Supp. Motion to Dismiss             13
No. 3:17-cv-04642-WHO

# EXHIBIT F

1   CHAD A. READLER
2   Acting Assistant Attorney General
    ALEX G. TSE
3   Acting United States Attorney
    JOHN R. TYLER
4   Assistant Director
    W. SCOTT SIMPSON (Va. Bar #27487)
5   Senior Trial Counsel
    LAURA A. HUNT
6   DANIEL D. MAULER
7   Trial Attorneys
    Department of Justice, Room 7210
8   Civil Division, Federal Programs Branch
    20 Massachusetts Avenue, NW
9   Washington, D.C. 20530
    Telephone:    (202) 514-3495
10  Facsimile:    (202) 616-8470
11  E-mail:        scott.simpson@usdoj.gov

12  COUNSEL FOR DEFENDANTS
    JEFFERSON B. SESSIONS III, Attorney
13  General of the United States; ALAN R.
    HANSON, Principal Deputy Assistant Attorney
14  General; and U.S. DEPARTMENT OF JUSTICE

15

16                  IN THE UNITED STATES DISTRICT COURT

17            FOR THE NORTHERN DISTRICT OF CALIFORNIA

18                        SAN FRANCISCO DIVISION

19
    CITY AND COUNTY OF SAN
20  FRANCISCO,                              No. 3:17-cv-04642-WHO

21                  Plaintiff,              **DEFENDANTS' RESPONSE TO**
                                            **SAN FRANCISCO'S REQUESTS FOR**
22          v.                              **ADMISSION**

23  JEFFERSON B. SESSIONS III, Attorney
    General of the United States, *et al.*,
24
25                  Defendants.

26          Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedures, the defendants

27  respond as follows to Plaintiff City and County of San Francisco's First Set of Requests for

28  Admissions to Defendants, served on March 28, 2018.

    Defs' Response San Francisco RFAs
    No. 3:17-cv-04642-WHO

REQUEST NO. 7.:

Admit that Defendants take the position that "information regarding . . . immigration status" under Section 1373 includes all "information that allows ICE to do its job." *State of California ex rel. Becerra v. Sessions*, Case No. 3:17-CV-4701-WHO, Hr'g. Tr. at 30:5-10 (Dec. 13, 2017).

**Defendants' Response:        Denied.**

REQUEST NO. 8.:

Admit that Section 1373 does not require jurisdictions to comply with detainer requests instructing jurisdictions to hold an individual for up to 48 business hours beyond the time the individual would otherwise have been released.

**Defendants' Response:        Objection.  Defendants object that this request calls for a pure conclusion of law and hereby incorporate by reference the same objection lodged as to Request No. 2 above.  Subject to the forgoing objection, the defendants' position is that Section 1373 does not require jurisdictions to detain an individual beyond the time the individual would otherwise have been released.**

REQUEST NO. 9.:

Admit that Defendants take the position that a person's residential address constitutes "information regarding . . . immigration status" under Section 1373.

**Defendants' Response:        Defendants DENY this request to the extent that "person" refers to a non-alien.  To the extent that "person" refers only to an alien, then Defendants ADMIT this Request to that limited extent.**

REQUEST NO. 10.:

Admit that Defendants take the position that information regarding a person's location information constitutes "information regarding . . . immigration status" under Section 1373.

Defs' Response San Francisco RFAs
No. 3:17-cv-04642-WHO

1    **Defendants' Response:      Defendants DENY this request to the extent that**

2    **"person" refers to a non-alien.  To the extent that "person" refers only to an alien, then**

3    **Defendants ADMIT this Request to that limited extent.**

4

5    REQUEST NO. 11.:

6    Admit that Defendants take the position that the release date of a detained person constitutes

7    "information regarding . . . immigration status" under Section 1373.

8    **Defendants' Response:      Defendants DENY this request to the extent that a**

9    **"detained person" refers to a non-alien.  To the extent that "detained person" refers only to**

10   **an alien, then Defendants ADMIT this Request to that limited extent.**

11

12   REQUEST NO. 12.:

13   Admit that Defendants take the position that a person's date of birth is "information regarding . . .

14   immigration status" under Section 1373.

15   **Defendants' Response:      Defendants DENY this request to the extent that**

16   **"person" refers to a non-alien.  To the extent that "person" refers only to an alien, then**

17   **Defendants ADMIT this Request to that limited extent.**

18

19   REQUEST NO. 13.:

20   Admit that Defendants take the position that information about a person's familial status—*i.e.*,

21   information about whether a person is related by blood or marriage to other persons—is

22   "information regarding . . . immigration status" under Section 1373.

23   **Defendants' Response:      Defendants DENY this request to the extent that**

24   **"person" refers to a non-alien.  To the extent that "person" refers only to an alien, then**

25   **Defendants ADMIT this Request to that limited extent.**

26

27

28

Defs' Response San Francisco RFAs
No. 3:17-cv-04642-WHO

1  REQUEST NO. 14.:

2  Admit that Defendants take the position that a person's contact information is "information

3  regarding . . . immigration status" under Section 1373.

4       **Defendants' Response:**     **Defendants DENY this request to the extent that**

5  **"person" refers to a non-alien.  To the extent that "person" refers only to an alien, then**

6  **Defendants ADMIT this Request to that limited extent.**

7

8  REQUEST NO. 15.:

9  Admit that Defendants take the position that a person's identity, *see* Dkt. No. 66 at 15, is

10  "information regarding . . . immigration status" under Section 1373.

11       **Defendants' Response:**     **Defendants DENY this request to the extent that**

12  **"person" refers to a non-alien.  To the extent that "person" refers only to an alien, then**

13  **Defendants ADMIT this Request to that limited extent.**

14

15  REQUEST NO. 16.:

16  Admit that Defendants take the position that the Section 1373 Certification requires jurisdictions

17  to adopt the federal government's interpretation of what information is "information regarding . . .

18  immigration status" under Section 1373.

19       **Defendants' Response:**     **Admitted.**

20

21  REQUEST NO. 17.:

22  Admit that a jurisdiction cannot lawfully execute the Section 1373 Certification if it prohibits

23  employees from sharing information about a person's release date from custody with the federal

24  government.

25       **Defendants' Response:**     **Objection.  Defendants object that this request calls for a**

26  **pure conclusion of law and hereby incorporate by reference the same objection lodged as to**

27  **Request No. 2 above**.

28

7

Defs' Response San Francisco RFAs
No. 3:17-cv-04642-WHO

1   San Francisco's compliance with Section 1373, *see, e.g.,* Dkt. No. 66 at 12-13 & n. 6; Dkt. No. 72

2   at 2-4, provides no way for San Francisco to dispute the federal government's interpretation of

3   Section 1373.

4       **Defendants' Response:        Denied.**

5

6   Dated:  April 27, 2018

7                                                CHAD A. READLER
8                                                Acting Assistant Attorney General

9                                                ALEX G. TSE
                                                 Acting United States Attorney
10
                                                 JOHN R. TYLER
11                                               Assistant Director

12                                               /s/ W. Scott Simpson
13                                               _____
                                                 W. SCOTT SIMPSON (Va. Bar #27487)
14                                               Senior Trial Counsel

15                                               LAURA A. HUNT
                                                 DANIEL D. MAULER
16                                               Trial Attorneys

17
                                                 Attorneys, Department of Justice
18                                               Civil Division, Room 7210
                                                 Federal Programs Branch
19                                               20 Massachusetts Avenue, NW
                                                 Washington, D.C. 20530
20                                               Telephone:  (202) 514-3495
                                                 Facsimile:   (202) 616-8470
21                                               E-mail:      scott.simpson@usdoj.gov
22
                                                 COUNSEL FOR DEFENDANTS
23
                                                 JEFFERSON B. SESSIONS III, Attorney
24                                               General of the United States; ALAN R.
                                                 HANSON, Principal Deputy Assistant Attorney
25                                               General; and U.S. DEPARTMENT OF
                                                 JUSTICE
26

27

28
                                                 14
    Defs' Response San Francisco RFAs
    No. 3:17-cv-04642-WHO

# EXHIBIT G

CHAD A. READLER
Acting Assistant Attorney General
ALEX G. TSE
Acting United States Attorney
JOHN R. TYLER
Assistant Director
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
LAURA A. HUNT
DANIEL D. MAULER
Trial Attorneys
Department of Justice, Room 7210
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone:      (202) 514-3495
Facsimile:      (202) 616-8470
E-mail:          scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS
JEFFERSON B. SESSIONS III, Attorney
General of the United States; ALAN R.
HANSON, Principal Deputy Assistant Attorney
General; and U.S. DEPARTMENT OF JUSTICE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, | No. 3:17-cv-04642-WHO |
| Plaintiff, | **DEFENDANTS' RESPONSES AND** |
| v. | **OBJECTIONS TO FIRST SET OF** |
| | **INTERROGATORIES FROM CITY AND** |
| JEFFERSON B. SESSIONS III, Attorney General of the United States, *et al.*, | **COUNTY OF SAN FRANCISCO** |
| Defendants. | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedures, the defendants

respond as follows to Plaintiff City and County of San Francisco's Interrogatories to Defendants,

Set One, served on March 28, 2018.

Defs' Response SF Interrogs.
No. 3:17-cv-04642-WHO

1  sent a letter to Mayor Mark Farrell, requesting documents to assist in the Department of Justice's

2  review of San Francisco's compliance with the conditions of its FY 2016 JAG grant, including

3  compliance with Section 1373.  City Attorney Dennis J. Herrera responded to that letter on

4  February 23, 2018.

5  　　　　The foregoing informal fact-gathering is the first step in reaching a final decision on San

6  Francisco's compliance.  Since the Department of Justice is still in the fact-gathering stage, it

7  cannot anticipate exactly when it will make a final determination.  This depends, in part, on how

8  transparent and cooperative San Francisco is during this process.

9  　　　　The following documents were part of or arose out this process:

10  　　•　Documents in the Administrative Record filed on March 23, 2018 (Dkt. No. 84)

11  　　•　Email from Karol V. Mason, (former) Assistant Attorney General, Office of Justice

12  　　　　Programs, to Michael E. Horowitz, Inspector General, Re: Referral to OIG Re: 18 U.S.C.

13  　　　　Section 1373, Apr. 8, 2016 (with attachments)

14  　　•　San Francisco Grant Award Document, Byrne JAG Local, FY 2016, Award Number

15  　　　　2016-DJ-BX-0898, Signed by Mayor Edwin Lee, Oct. 7, 2016

16  　　•　 Letter from Alan Hanson to Edwin Lee, Mayor, City and County of San Francisco, Nov.

17  　　　　15, 2017

18  　　•　Letter from Dennis J. Herrera, City Attorney, to Alan R. Hanson, Acting Assistant

19  　　　　Attorney General, Dec. 7, 2017

20  　　•　Letter from Jon Adler, Director, Bureau of Justice Assistance, to Mark Farrell, Mayor,

21  　　　　City and County of San Francisco, Jan. 24, 2018

22  　　•　Letter from Dennis J. Herrera, City Attorney, to Jon Adler, Director, Bureau of Justice

23  　　　　Assistance, Feb. 23, 2018

24  　　　　6.  Identify all information that constitutes "information regarding . . . immigration status"

25  under 8 U.S.C. § 1373, including all types of information Defendants believe are included in this

26  phrase, types of information not included, and state all facts and identify all documents forming

27  the basis of that position.

28

9

Defs' Response SF Interrogs.
No. 3:17-cv-04642-WHO

1    <u>Response</u>:  Subject to the Objections to All Interrogatories set forth above, defendants

2    state the following:

3        Section 1373 protects, among other things, the sharing of "information regarding"

4    citizenship and immigration status.  Congress's use of "information regarding" in Section 1373(a)

5    was intended to broaden the scope of the information covered beyond an individual's mere

6    technical status, as demonstrated by comparing Section 1373(a) to Section 1373(c), which uses

7    the different phrase "[immigration] status information."  8 U.S.C. § 1373.  Although Section 1373

8    does not cover all information regarding an individual, it covers information that federal immigra-

9    tion authorities need to determine and track the status of aliens in the United States and to take

10   custody of such persons as required.

11       The most common category of information covered by Section 1373 and sought be federal

12   immigration authorities is an alien's date and time of release from custody.  This is "information

13   regarding" immigration status because, among other reasons, it implicates the federal authority to

14   take custody pursuant to the removal statute, 8 U.S.C. § 1231.  In other words, release informa-

15   tion bears directly on whether the alien will be able to remain in the United States.  Moreover,

16   another provision of the INA, 8 U.S.C. § 1357(g)(10)(A), defines the phrase "immigration status"

17   to include whether "a particular alien is not lawfully present in the United States."  Whether an

18   alien has been released from state or local custody is highly relevant to the alien's "lawful

19   presence" given that Congress has explicitly provided that unlawfully present aliens are not

20   subject to final orders of removal only when they are serving a criminal sentence in state or local

21   custody.  *See* 8 U.S.C. § 1231(a)(4).

22       Certain of an alien's personal and identifying information or contact information, such as

23   home address and work address, are also relevant to many immigration status issues, including

24   whether an alien admitted in a particular nonimmigrant status has remained in the United States

25   beyond their authorized period of admission, evidenced an intent not to abandon his or her

26   foreign residence, or otherwise violated the terms and conditions of such admission (*e.g.*, engaged

27   in unauthorized employment), *see* 8 U.S.C. § 1227(a)(1)(C), 8 C.F.R. § 214.1; whether the alien

28

Defs' Response SF Interrogs.
No. 3:17-cv-04642-WHO

# EXHIBIT H

1  CHAD A. READLER
   Acting Assistant Attorney General
2  ALEX G. TSE
   Acting United States Attorney
3  JOHN R. TYLER
   Assistant Director
4  W. SCOTT SIMPSON (Va. Bar #27487)
   Senior Trial Counsel
5  LAURA A. HUNT
   DANIEL D. MAULER
6  Trial Attorneys
7  Department of Justice, Room 7210
   Civil Division, Federal Programs Branch
8  20 Massachusetts Avenue, NW
   Washington, D.C. 20530
9  Telephone:     (202) 514-3495
   Facsimile:     (202) 616-8470
10 E-mail:        scott.simpson@usdoj.gov
11
   COUNSEL FOR DEFENDANTS
12 JEFFERSON B. SESSIONS III, Attorney
   General of the United States; ALAN R.
13 HANSON, Principal Deputy Assistant Attorney
   General; and U.S. DEPARTMENT OF JUSTICE
14
15
16            IN THE UNITED STATES DISTRICT COURT
17          FOR THE NORTHERN DISTRICT OF CALIFORNIA
18                 SAN FRANCISCO DIVISION
19

| | |
|---|---|
| STATE OF CALIFORNIA, ex rel. XAVIER BECERRA, Attorney General of the State of California, | No. 3:17-cv-04701-WHO |
| Plaintiff, | **DEFENDANTS' RESPONSES AND OBJECTIONS TO FIRST SET OF INTERROGATORIES FROM STATE OF CALIFORNIA** |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General of the United States, et al., | |
| Defendants. | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedures, the defendants

respond as follows to Plaintiff State of California's First Set of Interrogatories to Defendants,

served on March 28, 2018.

Defs' Response CA Interrogs.
No. 3:17-cv-04701-WHO

1    The foregoing informal fact-gathering is the first step in reaching a final decision on

2   California's compliance.  Since the Department of Justice is still in the fact-gathering stage, it

3   cannot anticipate exactly when it will make a final determination.  This depends, in part, on how

4   transparent and cooperative California is during this process.

5    The following documents were part of or arose out this process:

6   • Documents in the Administrative Record filed on March 23, 2018 (Dkt. No. 96)

7   • Email from Karol V. Mason, (former) Assistant Attorney General, Office of Justice

8     Programs, to Michael E. Horowitz, Inspector General, Re: Referral to OIG Re: 18 U.S.C.

9     Section 1373, Apr. 8, 2016 (with attachments)

10  • California Grant Award Document, Byrne JAG State, FY 2016, Award Number 2016-DJ-

11    BX-0446, Signed by Kathleen T. Howard, Oct. 27, 2016

12  • Letter from Alan R. Hanson, Acting Assistant Attorney General, to Kathleen Howard,

13    Executive Director, California Board of State and Community Corrections, Apr. 21, 2017

14  • Letter from Aaron R. Maguire, General Counsel, Board of State and Community

15    Corrections, to Tracey Trautman, Acting Director, Bureau of Justice Assistance, June 29,

16    2017

17  • California Senate Bill 54, Oct. 5, 2017

18  • Letter from Alan Hanson, Acting Assistant Attorney General, to Kathleen Howard,

19    Executive Director, California Board of State and Community Corrections, Nov. 1, 2017

20  • Letter from Jon Adler, Director, Bureau of Justice Assistance, to Kathleen Howard,

21    Executive Director, California Board of State and Community Corrections, Jan. 24, 2018

22  • Letter from Aaron R. Maguire, General Counsel, Board of State and Community

23    Corrections, to Chris Casto, Program Specialist, Bureau of Justice Assistance, Feb. 23,

24    2018

25    6.  Identify all information that constitutes "information regarding . . . immigration status"

26  under 8 U.S.C. § 1373, including all types of information Defendants believe are included in this

27

28
                                           10

phrase, types of information not included, and state all facts and identify all documents forming the basis of that position.

Response:  Subject to the Objections to All Interrogatories set forth above, defendants state the following:

Section 1373 protects, among other things, the sharing of "information regarding" citizenship and immigration status.  Congress's use of "information regarding" in Section 1373(a) was intended to broaden the scope of the information covered beyond an individual's mere technical status, as demonstrated by comparing Section 1373(a) to Section 1373(c), which uses the different phrase "[immigration] status information."  8 U.S.C. § 1373.  Although Section 1373 does not cover all information regarding an individual, it covers information that federal immigration authorities need to determine and track the status of aliens in the United States and to take custody of such persons as required.

The most common category of information covered by Section 1373 and sought by federal immigration authorities is an alien's date and time of release from custody.  This is "information regarding" immigration status because, among other reasons, it implicates the federal authority to take custody pursuant to the removal statute, 8 U.S.C. § 1231.  In other words, release information bears directly on whether the alien will be able to remain in the United States.  Moreover, another provision of the INA, 8 U.S.C. § 1357(g)(10)(A), defines the phrase "immigration status" to include whether "a particular alien is not lawfully present in the United States."  Whether an alien has been released from state or local custody is highly relevant to the alien's "lawful presence" given that Congress has explicitly provided that unlawfully present aliens are not subject to final orders of removal only when they are serving a criminal sentence in state or local custody.  *See* 8 U.S.C. § 1231(a)(4).

Certain of an alien's personal and identifying information or contact information, such as home address and work address, are also relevant to many immigration status issues, including whether an alien admitted in a particular nonimmigrant status has remained in the United States beyond their authorized period of admission, evidenced an intent not to abandon his or her

Defs' Response CA Interrogs.
No. 3:17-cv-04701-WHO

1   foreign residence, or otherwise violated the terms and conditions of such admission (*e.g.*, engaged

2   in unauthorized employment), *see* 8 U.S.C. § 1227(a)(1)(C), 8 C.F.R. § 214.1; whether the alien

3   has been granted work authorization as a benefit attached to a particular status or form of relief,

4   *see* 8 C.F.R. § 274a.12; whether the alien has kept federal immigration authorities informed of

5   any change of address as required under 8 U.S.C. § 1305; and whether an alien has accrued the

6   necessary continuous presence to be eligible for relief from removal, *id.* § 1229b(a)(1), (a)(2),

7   (b)(1)(A).

8          The above categories of information are those that defendants believe are operationally

9   important, clearly fall within the language of Section 1373, and are at issue in this action.

10  Depending on the situation, federal immigration authorities may need other categories of

11  information that would also fall within Section 1373.

12         7.  Describe with specificity all steps that jurisdictions must take to comply with Section

13  1373.

14         <u>Response</u>:  Subject to the Objections to All Interrogatories set forth above, defendants

15  state the following:

16         To comply with Section 1373, an award recipient must not prohibit, or in any way restrict,

17  any government entity or official from maintaining or from sending to, or receiving from, federal

18  immigration authorities information regarding the citizenship or immigration status, lawful or

19  unlawful, of any individual.  If an award recipient has any law, policy, or practice that constitutes

20  such a prohibition or restriction, the jurisdiction must repeal or eliminate the law, policy, or

21  practice.  An award recipient also must not prohibit, or in any way restrict, any government entity

22  from sending or receiving such information from federal immigration authorities, maintaining

23  such information, or exchanging such information with government entities.  See also response to

24  Interrogatory 6 above.

25         8.  State all facts and identify all Documents that support Defendants' contention that each

26  of the Immigration Enforcement Requirements "were entirely rational," ECF No. 77 at 18.

27         <u>Objection</u>:  This interrogatory quotes defendants' argument, in their motion to dismiss,

28

12

Defs' Response CA Interrogs.
No. 3:17-cv-04701-WHO

1   personal information, and if so, state all facts and identify all Documents forming the basis for

2   that position.

3       Response:  Subject to the Objections to All Interrogatories set forth above, defendants

4   state the following:

5       Defendants' position is that Section 1373 requires California to allow state and local law

6   enforcement to respond to all inquiries from federal immigration authorities regarding certain of

7   an alien's personal information.  Section 1373 requires California to allow its employees to

8   exchange "information regarding the citizenship or immigration status, lawful or unlawful, of any

9   individual."  This statute, as part of the INA, protects the exchange of information – especially

10  with state and local law enforcement – that supports federal immigration authorities in performing

11  their duties under the INA, including the responsibilities to determine and track the status of

12  aliens in the United States and to take custody of such persons as required.  Certain personal

13  information assists federal immigration authorities in safely taking custody of an individual if

14  appropriate under the INA.  Certain personal information regarding aliens can be relevant to a

15  number of considerations under the INA, including whether the individual is "lawfully present in

16  the United States."  8 U.S.C. § 1357(g)(10)(a).  See also the response to Interrogatory 6 above.

17      19.  Describe with specificity all actions that California must take to monitor compliance

18  with the JAG Section 1373 Requirement.

19      Response:  Subject to the Objections to All Interrogatories set forth above, defendants

20  state the following:

21      OJP does not require specific actions with respect to monitoring of compliance with

22  Section 1373.  Award recipients are expected to monitor their laws, policies, and procedures to

23  ensure that they are in compliance with all award terms and conditions.  To the extent that an

24  award recipient has subrecipients, the award recipient is generally required to monitor its

25  subrecipients for compliance with the terms of the award.  The requirements for subrecipient

26  monitoring can be found in 31 U.S.C. § 7502 and in Title 2 C.F.R. Part 200 (including, but not

27

28

18

Defs' Response CA Interrogs.
No. 3:17-cv-04701-WHO