Eric H. Holder, Jr.
David M. Zionts
Ivano M. Ventresca
COVINGTON & BURLING LLP
850 10th Street N.W.
Washington, D.C. 20001
dzionts@cov.com
(202) 662-6000

Daniel N. Shallman, SBN 180782
Mónica Ramírez Almadani, SBN 234893*
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
dshallman@cov.com
mralmadani@cov.com
(424) 332-4800

*Designated Counsel for Service

Attorneys for *Amicus Curiae*
*The California State Senate*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., Governor of California, in his Official Capacity; and XAVIER BECERRA, Attorney General of California, in his Official Capacity,<br><br>　　　　Defendants. | Civil Case No.: 2:18-cv-00490-JAM-KJN<br><br>**BRIEF OF *AMICUS CURIAE* THE CALIFORNIA STATE SENATE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>DATE:　　June 20, 2018<br>TIME:　　10:00 a.m.<br>COURT:　6<br>JUDGE:　Hon. John A. Mendez |

# **TABLE OF CONTENTS**

INTEREST OF *AMICUS CURIAE*...................................................................................... 1

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.     THE CALIFORNIA VALUES ACT IS A CONSTITUTIONAL EXERCISE OF
CALIFORNIA'S SOVEREIGN AUTHORITY ............................................................... 2

II.    THE CALIFORNIA VALUES ACT WAS DESIGNED TO BE CONSISTENT WITH
FEDERAL LAW AND TO ALLOW FOR APPROPRIATE COOPERATION WITH
FEDERAL AUTHORITIES ............................................................................................ 5

     A.    The Act is expressly consistent with—and goes beyond—the requirements of
federal law ........................................................................................................ 5

     B.    The California Values Act carefully balanced competing interests ...................... 7

III.   DOJ'S PREEMPTION ARGUMENTS LACK MERIT ................................................... 8

     A.    The California Values Act does not conflict with Section 1373. .......................... 9

     B.    The California Values Act does not obstruct the enforcement of federal law ...... 10

IV.   DOJ MAY NOT USE PREEMPTION TO ENGAGE IN UNCONSTITUTIONAL
COMMANDEERING .................................................................................................... 13

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine*,
527 U.S. 706 (1999).................................................................................................................4

*Altria Grp. v. Good*,
55 U.S. 70 (2008)..................................................................................................................12

*Arizona v. United States*,
567 U.S. 387 (2012)...................................................................................................... *passim*

*Az. State Legislature v. Az. Indep. Redistricting Comm'n*,
135 S. Ct. 2652 (2015).............................................................................................................4

*Chamber of Commerce of the U.S. v. Whiting*,
563 U.S. 582 (2011).................................................................................................................9

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992)...............................................................................................................12

*City of New York v. United States*,
179 F.3d 29 (2d Cir. 1999).....................................................................................................4

*De Canas v. Bica*,
424 U.S. 351 (1976).................................................................................................................9

*Galarza v. Szalczyk*,
745 F.3d 634 (3d Cir. 2014)..................................................................................................11

*Hodel v. Virginia Surface Mining & Reclamation Ass'n*,
452 U.S. 264 (1981)...............................................................................................................14

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996).................................................................................................................4

*Morales v. Chadbourne*,
793 F.3d 208 (1st Cir. 2015).................................................................................................11

*Murphy v. NCAA*,
Nos. 16-476, 16-477, 2018 WL 2186168 (U.S. May 14, 2018)............................12, 14, 15

*New York v. United States*,
505 U.S. 144 (1992).........................................................................................................13, 14

*Printz v. United States,*
521 U.S. 898 (1997).........................................................................................................13, 14, 15

*AMICUS* BRIEF ON BEHALF OF THE CALIFORNIA STATE SENATE IN SUPPORT OF DEFENDANTS

*Steinle v. City & Cty. of San Francisco,*
    230 F. Supp. 3d 994 (N.D. Cal. 2017) ...............................................................................10

*United States v. Lopez,*
    514 U.S. 549 (1995) .............................................................................................................4

*Wyeth v. Levine,*
    555 U.S. 555 (2009) .............................................................................................................8

**Statutes**

Cal. Gov't Code § 7284.2 .........................................................................................2, 3, 7

Cal. Gov't Code § 7284.6 ....................................................................................3, 5, 6, 9

Cal. Gov't Code § 7282.5 .............................................................................................4, 6

8 U.S.C. § 1373 ............................................................................................. *passim*

*AMICUS* BRIEF ON BEHALF OF THE CALIFORNIA STATE SENATE IN SUPPORT OF DEFENDANTS

**INTEREST OF *AMICUS CURIAE***

The California State Senate (the "Senate"), as the upper house of the California Legislature, is a leader in advancing laws that promote the health and safety of all the State's residents and local communities as a whole. The Senate furthered these efforts by passing Senate Bill 54, the California Values Act, to ensure that residents are able to cooperate with state and local law enforcement without concern of immigration consequences, including as witnesses, victims willing to come forward, and participants in community criminal justice efforts. The Senate's legislation also preserves state taxpayers' money for use in state and local law enforcement, rather than diverting it to federal civil immigration investigations and related enforcement.

The Senate has a particular interest in this litigation as the legislative body that originated the California Values Act, and as part of the California Legislature that passed it. Through this lawsuit, the Department of Justice seeks to commandeer California by enjoining provisions of the Act as purportedly preempted. This brief explains how the California Values Act is a constitutional exercise of core sovereign authority and was the product of a careful legislative process. The federal government's preemption arguments, by contrast, misread the relevant statutes and misapply the relevant precedents.

**INTRODUCTION**

Since the early days of this Administration, the President of the United States has launched an assault on immigrant populations in this country and the States and localities that disagree with his policies. From unconstitutionally wielding federal funds as a "weapon" against States,[1] to unlawfully slashing beneficial deferred action and similar programs, this Administration has sought to use every tool—lawful or not—to increase deportations and tear apart families. And it seeks to conscript States and localities as part of that cruel effort. Accompanying these harmful and unlawful actions is a rhetoric that vilifies and divides. Indeed, just this week, the President maligned California and its immigrant population—going so far as to call immigrants "animals" that "aren't people."[2]  Fear is this

---

[1] Harriet Taylor, Trump to Fox News: "I may defund California as 'a weapon' to fight illegal immigration," CNBC.com (Feb. 5, 2017), https://tinyurl.com/TaylorCNBC.

[2] *See* Remarks by President Trump at a California Sanctuary State Roundtable, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-california-sanctuary-state-roundtable/.

Administration's weapon.

Against this backdrop of polarizing politics and harmful policies, the California Legislature passed the California Values Act, a constitutional exercise of California's core sovereign authority to legislate for the health and safety of California residents, prioritize its limited law enforcement resources, and direct the operations of its law enforcement officials.  Recognizing that state entanglement in federal immigration enforcement weakens trust between local law enforcement and the communities they serve, thus undermining public safety, the Act focuses the use of California law enforcement resources on matters of state concern.  Through a careful, deliberative, and iterative legislative process, the California State Senate, in conjunction with the Assembly and Governor, considered an array of voices and interests in crafting the Act.  As part of that process, the Senate paid close attention to federal law.  The resulting legislation is not only consistent with the minimum requirements of federal law, but goes further to permit many forms of cooperation with federal law enforcement, reflecting the balanced judgment of the representatives of the people of California.

Indeed, as part of this careful legislative process, the Senate even sought the input of Attorney General Sessions.  These overtures were met with silence.  Rather than engage in respectful dialogue with the Legislature of a sovereign State, the federal government filed a lawsuit based on a meritless legal theory that disrespects our Federal system.

## ARGUMENT

## I.     THE CALIFORNIA VALUES ACT IS A CONSTITUTIONAL EXERCISE OF CALIFORNIA'S SOVEREIGN AUTHORITY

The California Values Act prioritizes California's limited law enforcement resources by ensuring those resources are devoted to California priorities rather than diverted to do the federal government's job.  The stated purpose of the Act is "to ensure effective policing, to protect the safety, well-being, and constitutional rights of the people of California, and to direct the state's limited resources to matters of greatest concern to state and local governments."  Cal. Gov't Code § 7284.2(f).  The Legislature found that "[a] relationship of trust between California's immigrant community and state and local agencies is central to the public safety of the people of California," and that relationship "is threatened when state and local agencies are entangled with federal immigration enforcement."  *Id.* § 7284.2(b), (c).  A

weakening of that trust causes immigrants to "fear approaching police when they are victims of, and witnesses to, crimes, seeking basic health services, or attending school, to the detriment of public safety and the well-being of all Californians." *Id.* § 7284.2(c). The Legislature further found that "[e]ntangling state and local agencies with federal immigration enforcement programs diverts already limited resources and blurs the lines of accountability between local, state, and federal governments" as well as raising constitutional concerns. *Id.* § 7284.2(d), (e).

The Legislature based its findings on a thorough evaluation of evidence showing the benefits to public safety from limiting entanglement between state and local law enforcement and federal civil immigration enforcement. For example, the Senate relied on a federal task force report that concluded that "whenever possible, state and local law enforcement should not be involved in immigration enforcement." *See* S. Rules Comm. at 7, *available at* https://tinyurl.com/y7hvsmn3 (Mar. 30, 2017) (quoting Final Report of the President's Taskforce on 21st Century Policing (May 2016)). It also cited a study finding "that 44 percent of Latinos are less likely to contact police officers if they have been the victim of a crime because they fear that police officers" may inquire about immigration status. *Id.* (citing Nik Theodore, Insecure Communities, Latino Perceptions of Police Involvement in Immigration Enforcement, Univ. of Ill. at Chicago (May 2013)).

As such, the California Values Act provides that, in general, state and local law enforcement agencies may not use their resources "to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes." Cal. Gov't Code § 7284.6(a)(1). Contrary to misrepresentations from this Administration, the California Values Act does not require the "catch and release" of violent criminals. *See* Remarks by President Trump at a California Sanctuary State Roundtable, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-california-sanctuary-state-roundtable/. Nor does it provide "safe harbor to some of the most vicious and violent offenders on Earth." *Id.* Indeed, the Act does not interfere with or obstruct federal law in any way, and even allows for cooperation with federal immigration authorities in dealing with violent criminals. *See infra* pp. 5-13.

A careful review of the Act shows that it allows for cooperation with federal immigration enforcement where the Legislature determined that such cooperation would serve the public interest.

1   For example, the Act permits cooperation with federal immigration authorities acting pursuant to a

2   judicial warrant for a criminal immigration offense.  Cal. Gov't Code § 7284.6(a)(4).  Cooperation is

3   also permissible where an individual is convicted of any one of a number of serious or violent felonies

4   under California law, or various federal offenses.  *Id.* § 7282.5(a)(1), (5).  And state and local law

5   enforcement agencies may participate in joint federal task forces so long as the primary purpose of the

6   task force is not immigration enforcement.  *Id.* § 7284.6(b)(3).  These provisions reflect California's

7   interest in preserving its scarce law enforcement resources while prioritizing the health and safety of

8   California residents.

9       The Legislature thus exercised several core functions of state sovereign authority in enacting the

10   California Values Act.  *First*, States have "historic primacy" in matters of health and safety and have

11   "great latitude . . . to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all

12   persons."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475, 485 (1996) (citation omitted).  Here, the

13   California Values Act was enacted to protect the safety and well-being of California residents.  In

14   making decisions about how best to protect the well-being of its residents, California exercised core

15   state sovereign authority.  *See United States v. Lopez*, 514 U.S. 549, 564 (1995) (recognizing that

16   "criminal law enforcement" is an area "where States historically have been sovereign").

17       *Second*, the Act is an exercise of California's core historic sovereign power to control the

18   allocation of its own resources.  *See Alden v. Maine*, 527 U.S. 706, 751 (1999) ("Today, as at the time of

19   the founding, the allocation of scarce resources among competing needs and interests lies at the heart of

20   the political process.").

21       *Third*, the Act is an exercise of California's sovereign authority to direct the actions of its

22   officers.  "[W]hatever the outer limits of state sovereignty may be, it surely encompasses the right to set

23   the duties of office for state-created officials and to regulate the internal affairs of governmental bodies."

24   *City of New York v. United States*, 179 F.3d 29, 36 (2d Cir. 1999) (quoting *Koog v. United States*, 79

25   F.3d 452, 460 (5th Cir. 1996)).  The Supreme Court has emphasized that it is "[t]hrough the structure of

26   its government, and the character of those who exercise government authority, [that] a State defines

27   itself as a sovereign."  *Az. State Legislature v. Az. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2673

28   (2015) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)).

## II. THE CALIFORNIA VALUES ACT WAS DESIGNED TO BE CONSISTENT WITH FEDERAL LAW AND TO ALLOW FOR APPROPRIATE COOPERATION WITH FEDERAL AUTHORITIES

In exercising these core sovereign prerogatives, the Legislature carefully designed the California Values Act to be consistent with federal law and not to interfere with federal law enforcement.  The State Senate and Assembly held hearings, gathered evidence, and subjected the Act to thorough legal analysis.  The Act went through many iterations, all focused on achieving a balance to best protect the health, safety, and well-being of all Californians, without impermissible intrusion on federal authority.

### A. The Act is expressly consistent with—and goes beyond—the requirements of federal law.

The only federal law that DOJ claims conflicts with the California Values Act is 8 U.S.C. § 1373.  In proposing the California Values Act, the Senate made a deliberate decision not to challenge or contradict this federal statute.  Section 1373(b) provides that "no person or agency may prohibit, or in any way restrict . . . with respect to information regarding the immigration status, lawful or unlawful, of any individual" the "[s]ending [to] . . . or requesting or receiving such information from" federal immigration authorities, "[m]aintaining such information," or "[e]xchanging such information with any other Federal, State, or local government entity."  *See also* 8 U.S.C. § 1373(a).  Correspondingly, and specifically invoking Section 1373, the California Values Act provides:

> This section does not prohibit or restrict any government entity or official from sending to, or receiving from, federal immigration authorities, information regarding the citizenship or immigration status, lawful or unlawful, of an individual, or from requesting from federal immigration authorities immigration status information, lawful or unlawful, of any individual, or maintaining or exchanging that information with any other federal, state, or local government entity, pursuant to Sections 1373 and 1644 of Title 8 of the United States Code.

Cal. Gov't Code § 7284.6(e).

Not only did the Legislature make clear that the California Values Act adheres to Section 1373, but it went further.  Consistent with its balanced approach throughout the Act, the Legislature permitted multiple other forms of information-sharing and participation with federal immigration enforcement, consistent with California's legitimate interests in public safety and allocation of limited law enforcement resources.

For example, the Act allows state and local law enforcement agencies to respond to requests from federal immigration authorities for information about a specific person's criminal history accessed through the state law enforcement telecommunications system, where otherwise permitted by state law. Cal. Gov't Code § 7284.6(b)(2).  The Act also permits state and local officials to provide the federal government release dates and other personal information if such information is public.  *Id.* § 7284.6(a)(1)(C).

Further consistent with the Legislature's focus on public safety, the Act allows state and local officials to respond to notification requests from the federal government where an individual has been convicted of any serious or violent felony under California law, one of many federal offenses, or a wide range of other felony offenses in the last fifteen years, including over 30 specific state offenses ranging from bribery to stalking.  *See id.* § 7282.5(a).  Responses to notification requests are also allowed for individuals listed on the California Sex and Arson Registry (CSAR) and those identified by ICE as subject to outstanding felony arrest warrants.  *Id.* § 7282.5(a)(4), (5).

In addition, the Act allows state and local officers discretion to respond to notification requests even in certain situations where an individual is not convicted of a crime.  If an individual "is arrested and taken before a magistrate on a charge involving a serious or violent felony . . . or a felony that is punishable by imprisonment in state prison, and the magistrate makes a finding of probable cause as to that charge," then local law enforcement may respond to notification requests from the federal government.  *Id.* § 7282.5(b).

Similarly, state and local officials may transfer individuals to federal immigration authorities in a range of circumstances, including where the individual has been convicted of one of the many offenses for which a response to a notification request is permitted, is registered on CSAR, or has been identified by ICE as subject to outstanding felony arrest warrants.  Transfer is also allowed if the United States obtains a judicial warrant or judicial probable cause determination for a federal criminal immigration offense.  *Id.* §§ 7284.4(h)-(i), 7284.6(a)(4).

Finally, the Legislature exempted the California Department of Corrections and Rehabilitation from provisions of the Act challenged by DOJ.  *See id.* § 7284.4(a).  Thus, none of the provisions of which DOJ complains concerns individuals held in state institutions.

These balanced provisions reflect the California Legislature's conclusion that the State's law enforcement resources are best focused on criminal law enforcement—including through partnerships with the federal government—and not on federal civil immigration enforcement, while recognizing circumstances in which coordination with the federal government is in the best interests of the people of California.  *See id.* § 7284.2(f).

**B.    The California Values Act carefully balanced competing interests.**

The careful balance struck in the California Values Act is the product of a year-long deliberative process in which a diverse array of stakeholders voiced their interests and concerns—an example of federalism in action, working to tailor state laws to state priorities.  This thorough and detailed legislative process ensured that the Act reflected the values of Californians, best protected their health and safety, wisely allocated state resources, and ensured consistency with federal law.

Multiple committees of the Senate and Assembly reviewed and revised the bill, taking into consideration input from a range of interested parties.  For example, based on suggestions raised by law enforcement, the Act was amended to clarify that local law enforcement could participate in a joint task force so long as immigration enforcement was not the primary purpose of the task force.  *See* S. Rules Comm. at 1 (Mar. 30, 2017), *available at* https://tinyurl.com/y7hvsmn3.  The Assembly Committee on the Judiciary found that the Act complied with Section 1373 and was not preempted, because "[n]othing in federal law requires state and local law enforcement officials to assist federal immigration enforcement efforts, or prohibits state and local officials from refusing to do so."  Assembly Comm. on Judiciary at 11 (July 5, 2017), *available at* https://tinyurl.com/y7hvsmn3.

The Senate also paid particular attention to the requirements of federal law.  Indeed, the Senate worked with former U.S. Attorney General Eric Holder to evaluate the legal issues in an earlier version of the Act.[3]  A published white paper concluded that the earlier version was a constitutional exercise of California's sovereign authority and not preempted by federal law.  And, through former Attorney General Holder, the Senate attempted to engage with Attorney General Sessions regarding any potential

---

[3] The analysis was titled "The California Values Act: A Constitutional Exercise of California's Sovereign Authority," and is available at http://sd24.senate.ca.gov/sites/sd24.senate.ca.gov/files/holder_letter_re_sb_54_06.15.2017_final.pdf.  The white paper analyzed the version of the Act passed by the Senate on April 3, 2017.

1    concerns DOJ might have about the Act.  On June 19, 2017, former Attorney General Holder sent a

2    letter to Attorney General Sessions, including a copy of the white paper and the proposed legislation.

3    The letter informed the Attorney General of the Senate's analysis showing that the proposed legislation

4    was constitutional and not preempted by federal law.  Mr. Holder also asked Attorney General Sessions

5    to "confirm our assessment that [the bill] is both constitutional and complies with federal law."  Neither

6    the Attorney General nor anyone else at DOJ responded to the letter.  Rather than engage in any

7    dialogue with the Senate—through which the federal government could have been a part of the careful

8    and deliberative process that the Senate, Assembly, and Governor of California undertook—DOJ

9    eschewed dialogue.  The Attorney General provided his only response to the overtures of the Legislature

10   of a sovereign State in the form of this lawsuit.

11   ## III.    DOJ'S PREEMPTION ARGUMENTS LACK MERIT

12           For many of the same reasons outlined in the white paper that was shared with the Attorney

13   General pre-enactment, no part of the California Values Act is preempted.

14           As an initial matter, the federal government ignores the starting point of any preemption

15   analysis: the presumption against preemption.  Courts reviewing the preemptive effect of a federal law

16   begin with the presumption that Congress did not intend to prevent the States from legislating pursuant

17   to their historic police powers.  *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 400 (2012) ("In

18   preemption analysis, courts should assume that the historic police powers of the States are not

19   superseded unless that was the clear and manifest purpose of Congress." (quotation marks omitted)).

20   This presumption is particularly strong where, as here, the State has exercised its authority in an area

21   that States have traditionally occupied.  *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  In passing the

22   California Values Act, the California Legislature regulated in three fields at the heart of state police

23   power: health and safety, prevention of violent crime, and direction of law enforcement.  *See supra* pp.

24   2-4.

25           The California Values Act does not regulate immigration, an area of "broad, undoubted [federal]

26   power."  *Arizona*, 567 U.S. at 394.  The Act does not determine who should lawfully be in the United

27   States, does not take any action against individuals thought to not lawfully be in the United States, and

28   does not purport to grant any individual the right to remain in the United States.  *See De Canas v. Bica*,

424 U.S. 351, 355 (1976) (Immigration is "essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain.").  Instead the Act simply governs California's deployment of its limited law enforcement resources.  Because the California Values Act regulates areas of core state sovereignty and leaves federal civil immigration enforcement to the federal government, the presumption against preemption applies with full force.

Subject to that presumption, a state law is preempted if "compliance with both federal and state regulations is a physical impossibility" or "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Arizona*, 567 U.S. at 399-400 (quotation marks omitted).  As the Supreme Court explained in a case rejecting preemption of a State's immigration-related legislation, "a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act."  *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (plurality op.) (quotation marks omitted).  DOJ does not clear that high threshold.

## A.     The California Values Act does not conflict with Section 1373.

Despite DOJ's lengthy recitation of unrelated provisions of immigration law, *see* Pl.'s Br. at 23-27, the only provision of the Immigration and Nationality Act (INA) with which DOJ actually alleges that the California Values Act conflicts is 8 U.S.C. § 1373(a).  Section 1373(a) prevents states and localities from prohibiting government entities and officials from sending to, or receiving from, federal immigration authorities "information regarding the citizenship or immigration status, lawful or unlawful, of any individual."  The California Values Act is plainly consistent with Section 1373(a).  *See also* 8 U.S.C. § 1373(b).  In language mirroring the federal provision, the Act provides that "[t]his section does not prohibit or restrict any government entity or official from sending to, or receiving from, federal immigration authorities, information regarding the citizenship or immigration status, lawful or unlawful, of an individual . . . pursuant to Section[] 1373 . . . ."  Cal. Gov't Code § 7284.6(e).

In the face of this clear text, DOJ resorts to an argument that Section 1373 does not mean what it says.  DOJ claims that "information regarding" immigration status stretches to include whether an alien has been released from state or local custody, and even the alien's "home and work address."  Pl.'s Br. at 28-29.  The notion that "information regarding" an individual's citizenship or immigration status extends to her home and work address has no support in the statutory text, precedent, or common sense.

Likewise, and contrary to DOJ's position, an individual's release date does not determine whether "a particular alien is not lawfully present in the United States," Pl.'s Br. at 28.  An unlawfully present alien in state custody is still unlawfully present.  Notably, DOJ does not argue that an alien in state custody is lawfully present or that her release transforms her status from lawful to unlawful.  In fact, as another district court has held, the "plain language" of Section 1373 is clear that "no plausible reading of information regarding . . . citizenship or immigration status" encompasses an alien's release date. *Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1015 (N.D. Cal. 2017).[4]

Particularly in light of the need to "assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress," this Court should reject DOJ's expansive and unbounded interpretation of Section 1373.  *See Arizona*, 567 U.S. at 400.

**B.     The California Values Act does not obstruct the enforcement of federal law.**

DOJ also claims that the California Values Act obstructs the enforcement of federal law for two reasons: (1) California's decision not to transfer individuals in certain situations without a judicial warrant increases the administrative burden on ICE, Pl.'s Br. at 29-31; and (2) California's refusal to share non-public release date information makes it more difficult for ICE to take individuals into "mandatory detention" during removal proceedings "when the alien is released" from state criminal custody, Pl.'s Br. at 24.  These arguments are foreclosed by the INA and judicial precedent.

As the Supreme Court has made clear, immigration is an area of primary federal concern, with a limited, *optional* role for States.  *See Arizona*, 567 U.S. at 394-95.  The United States itself has recognized that civil immigration enforcement was designed to be "carried out without depending on state officials."  Br. of United States, *Arizona v. United States*, 2012 WL 939048, at *43-44 (2012). Therefore, "[l]aws adopted by Congress, such as the INA, are to be enforced by the President and by officers of the United States answerable to him" and "Congress cannot give responsibilities to state officers 'without the consent of the States.'"  *Id.* (quoting *Printz v. United States*, 521 U.S. 898, 910-11 (1997)).

---

[4] Because the California Values Act is consistent with Section 1373, the California State Senate takes no position here on the constitutionality of Section 1373.

Consistent with Supreme Court precedent and DOJ's previous views, Congress did not conscript the States into immigration enforcement.  For that reason, as courts around the country have held, state and local compliance with immigration detainer requests, which may include requests to transfer individuals, is voluntary.  Moreover, without a judicial finding of probable cause, compliance with detainer requests could lead to state and local liability for violating the Fourth Amendment.  *See, e.g.*, *Galarza v. Szalczyk*, 745 F.3d 634, 636 (3d Cir. 2014) ("[I]mmigration detainers do not and cannot compel a state or local law enforcement agency to detain suspected aliens subject to removal."); *Morales v. Chadbourne*, 793 F.3d 208, 215-19 (1st Cir. 2015) (holding that detaining an individual pursuant to an immigration detainer without additional probable cause is a clearly established violation of the Fourth Amendment).  Just one year ago, the present Administration represented in court that "[d]etainers [a]re [v]oluntary," and that the role of States in immigration enforcement is one of voluntary cooperation.  Br. of United States as *Amicus Curiae*, *Commonwealth of Mass. v. Lunn*, No. SJC-12276, 2017 WL 1240651, at *22-23 (Mar. 27, 2017); *id.* at *31 (explaining that State officers "may help the Federal Government" in immigration enforcement in certain circumstances "unless [the] State government has affirmatively cabined its own police power").  It is thus common ground that Congress did not, and could not, require States to detain or transfer people on behalf of federal immigration authorities.  The federal government cannot circumvent that reality by claiming that a State's decision to *exercise its acknowledged constitutional authority* is implicitly preempted.

As with so-called "detainer" requests, nothing in the INA mandates that States share nonpublic release dates with federal immigration authorities—nor is there even a requirement, in the style of Section 1373, that state officials be permitted the discretion to share such information.  The only provision DOJ can point to is Section 1373 itself.  As discussed above, DOJ's expansive reading of Section 1373 is at war with the plain statutory text.  Congress left a State's sharing of release date information entirely voluntary, and could have invited constitutional problems had it done otherwise.  Given Congress's decision to carefully limit the information-sharing requirements of Section 1373, the federal government cannot credibly claim that a State's failure to engage in *other* types of information-sharing is preempted.  Moreover, even though California need not share such information, it has struck a

balance by agreeing to provide the federal government with nonpublic release date information in many situations.  *See supra* pp. 5-7.

DOJ's argument also ignores well-established conflict preemption principles.  In assessing conflict preemption, "[t]he purpose of Congress is the ultimate touchstone."  *Altria Grp. v. Good*, 55 U.S. 70, 76 (2008) (internal quotation marks omitted).  "When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation."  *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992).  Section 1373 is not a preemption clause, but it does "provides a reliable indicium of congressional intent with respect to state authority," *id.*— *i.e.*, that Congress squarely considered the issue of immigration-related information-sharing, and required only that States not limit their officers' discretionary sharing of information about citizenship or immigration status.  Because Congress narrowly crafted the prohibitions on state restrictions on information sharing, "matters beyond th[e] reach" of Section 1373 "are not pre-empted."  *See id.*

The Supreme Court's recent decision in *Murphy v. NCAA*, Nos. 16-476, 16-477, 2018 WL 2186168 (U.S. May 14, 2018), further undermines DOJ's attempted use of Section 1373(a) to preempt California law.  The Court held that "every form of preemption is based on a federal law that regulates the conduct of private actors, not the States."  *Id.* at *16.  Because the law at issue in *Murphy* regulated only States, it was "not a preemption provision because there is no way in which th[e] provision can be understood as a regulation of private actors."  *Id.*  The same is true of Section 1373(a)—that provision applies *only* to "a Federal, State, or local government entity or official."  It does not apply to private actors.  "Thus, there is simply no way to understand [Section 1373(a)] . . . as anything other than a direct command to the States," and therefore it is not a preemption provision.  *Id.*

Finally, DOJ's reliance on the Supreme Court's decision in *Arizona v. United States* is misplaced.  *Arizona* concerned the limitations on States' ability to *regulate* immigration.  There, the Supreme Court held preempted various provisions of Arizona laws establishing an Arizona immigration-enforcement scheme.  567 U.S. at 399-410.  One preempted provision authorized state officers to

"decide whether an alien should be detained for being removable," *id.* at 409, while another criminalized seeking or engaging in work in Arizona based on a person's federal immigration status, even though such conduct does not constitute a crime under federal law, *id.* at 403-07.  Unlike Arizona's immigration laws, the California Values Act does not establish an immigration-enforcement scheme—it does not regulate immigration at all.  *See supra* pp. 8-9.  The Act is a constitutional exercise of state authority in core areas of state sovereignty such as the health and safety of California residents, allocation of California resources, and supervision of state and local employees.  *Cf.* Br. for United States, *Arizona*, 2012 WL 939048, at *30 (2012) (noting that Arizona statute punishing failure to comply with "federal alien-registration and documentation requirements does not lie within any traditional police power of the state").  California is not making any "unilateral decision[s]" to enforce federal immigration law, or attempting to do so indirectly by regulating individuals on the basis of their federal immigration status.  *See Arizona*, 567 U.S. at 410.  The California Values Act implements California's decision to prioritize its scarce resources in areas other than enforcement of *federal* immigration law—a choice guaranteed to California by the Constitution and embodied in the INA.

Accordingly, this Court should reject DOJ's position that States *must* assist in the enforcement of federal civil immigration law, as it disregards well-established principles of federalism and the expressed intent of Congress in the INA.

## IV.   DOJ MAY NOT USE PREEMPTION TO ENGAGE IN UNCONSTITUTIONAL COMMANDEERING

DOJ's preemption arguments suffer from another, overarching defect: this lawsuit is an effort to impermissibly commandeer the California Legislature and law enforcement officers in violation of the Tenth Amendment.  The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  To preserve this system of dual sovereignty, "the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions."  *New York v. United States*, 505 U.S. 144, 162 (1992).  Since the Founding, States have constitutionally declined to use their resources to assist federal officials with federal law enforcement.  *See, e.g.*, *Printz*, 521 U.S. at 909-10 (approvingly describing Georgia's refusal to comply

with federal request to hold federal prisoners in state jails at federal expense (citing Act of Sept. 23, 1789, 1 Stat. 96)).  DOJ's unfounded preemption claims are nothing more than an attempt to require California to participate in federal law enforcement operations.

The Supreme Court has consistently emphasized that the Tenth Amendment prohibits the federal government from compelling state officials or state legislatures "to enact or enforce a federal regulatory program."  *Printz*, 521 U.S. at 935; *see also New York*, 505 U.S. at 188.  Only when state participation in a federal regulatory program is voluntary has the Court upheld such programs against Tenth Amendment challenges.  For example, in *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 288 (1981), the Court rejected a Tenth Amendment challenge to the Surface Mining Control and Reclamation Act of 1977 because the States were "not compelled to enforce the [mining] standards, to expend any state funds, or to participate in the federal regulatory program in any manner whatsoever."  Likewise, in *New York*, the Supreme Court upheld a provision against a similar challenge because States had the option to either regulate the disposal of radioactive waste according to federal standards *or* permit the federal government to enforce its laws itself.  505 U.S. at 174; *id.* at 168 ("state residents [who] prefer their government to devote its attention and resources to problems other than those deemed important by Congress . . . may choose to have the Federal Government rather than the State bear the expense of a federally mandated regulatory program").

Just this month, the Supreme Court reaffirmed the anticommandeering principles in *Printz*, *New York*, and *Hodel*.  In *Murphy*, the Court explained that the anticommandeering doctrine is "simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.*, the decision to withhold from Congress the power to issue orders directly to the States."  2018 WL 2186168, at *10. The Court reiterated that "[w]here a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents."  *Id.* at *11 (quoting *New York*, 505 U.S. at 178).  This anticommandeering rule applies "not only to state officers with policymaking responsibility but also to those assigned more mundane tasks."  *Id.* (citing *Printz*, 521 U.S. at 929-30).

The Court provided three reasons "why adherence to the anticommandeering principle is important."  *Id.* at *12.  First, the anticommandeering rule "serves as 'one of the Constitution's structural

*AMICUS* BRIEF ON BEHALF OF THE CALIFORNIA STATE SENATE IN SUPPORT OF DEFENDANTS

protections of liberty.'" *Id.* (quoting *Printz*, 521 U.S. at 921).  Second, it "promotes political accountability," which is weakened "if a State imposes regulations only because it has been commanded to do so by Congress." *Id.*  Finally, "the anticommandeering principle prevents Congress from shifting the costs of regulation to the States." *Id.*

All three of those principles apply with full force here.  The California Legislature has made a choice pursuant to its historic police powers that it is in the best interest of California residents for state resources to be allocated to state priorities.  The California Values Act effectuates that purpose by leaving federal immigration enforcement to the federal government—a decision left to California by the Constitution and protected by the anticommandeering doctrine.

DOJ's position, which would hold that California law enforcement officers have no choice but to assist the federal government in civil immigration enforcement, blurs the lines of political accountability.  If California law enforcement officials were conscripted into enforcing immigration priorities that Californians disagree with, voters would not "know who to credit or blame." *Id.*

Finally, DOJ's lawsuit seeks to "shift[ ] the costs of regulation to the States." *Id.*  DOJ would like state and local officials to bear the burden of federal immigration enforcement, from providing information to DHS to transferring individuals to DHS custody.

For all those reasons, DOJ's lawsuit is an effort to impermissibly commandeer California.  This Court should reject the attempt by DOJ to wield preemption as a sword to intrude on areas of core state sovereignty and divest the California Legislature of its authority and responsibility to legislate for the well-being of the people of the State.

## **CONCLUSION**

This Court should deny DOJ's motion for a preliminary injunction.

---

Dated:  May 18, 2018

COVINGTON & BURLING LLP

By:  /s/ Mónica Ramírez Almadani

Eric H. Holder, Jr.
David M. Zionts
Ivano M. Ventresca
COVINGTON & BURLING LLP
850 10th Street N.W.
Washington, D.C. 20001
dzionts@cov.com
(202) 662-6000

Daniel N. Shallman, SBN 180782
Mónica Ramírez Almadani, SBN 234893
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
mralmadani@cov.com
(424) 332-4800

*Attorneys for Amicus Curiae The California State Senate*

## CERTIFICATE OF SERVICE

    I hereby certify that on May 18, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the U.S. District Court for the Eastern District of California's Electronic Document Filing System (ECF), which will serve a copy of this document upon all counsel of record.

By: /s/ Mónica Ramírez Almadani

Mónica Ramírez Almadani
