1  ANTONIO RUIZ, Bar No. 155659
   MONICA T. GUIZAR, Bar No. 202480
2  ERIC J. WIESNER, Bar No. 259672
   WEINBERG, ROGER & ROSENFELD
3  A Professional Corporation
   800 Wilshire Boulevard, Suite 1320
4  Los Angeles, California 90017
   Telephone  (213) 380-2344
5  Fax  (213) 443-5098
   E-Mail:  aruiz@unioncounsel.net
6           mguizar@unioncounsel.net
            ewiesner@unioncounsel.net
7
   Attorneys for Amici Curiae California Labor Federation, AFL-CIO,
8  California State Council of Service Employees, et al.

9

10                     UNITED STATES DISTRICT COURT

11                     EASTERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  THE UNITED STATES OF AMERICA, | Case No. 2:18-cv-00490-JAM-KJN |
| 14                     Plaintiff, | **BRIEF OF AMICI CURIAE CALIFORNIA LABOR FEDERATION, CALIFORNIA STATE COUNCIL OF SERVICE EMPLOYEES, ET AL. IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| 15       v. | |
| 16  THE STATE OF CALIFORNIA; EDMUND | |
| 17  GERALD BROWN JR., Governor of California, in his Official Capacity; and | |
| 18  XAVIER BECERRA, Attorney General of California, in his official Capacity, | |
| 19 | |
| 20                     Defendants. | Date:          June 20, 2018 |
| 21 | Time:          10:00 a.m. |
| | Courtroom:   6 |
| | Judge:          Hon. John A. Mendez |
| | Action Filed:  March 6, 2018 |
| 22 | |

23

24

25

26

27

28

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

1
2

# TABLE OF CONTENTS

Page(s)

I.    AB 450 PROPERLY REGULATES EMPLOYER CONDUCT TO
      PREVENT HARM  TO WORKERS.................................................................................2

      A.    AB 450'S NOTICE PROVISIONS PROTECT WORKERS
            AGAINST ADVERSE EMPLOYMENT CONSEQUENCES
            ARISING FROM I-9 AUDITS BY PROVIDING SUFFICIENT
            NOTICE AND AN OPPORTUNITY TO CORRECT
            DEFICIENCIES......................................................................................3

      B.    AB 450 PROTECTS WORKERS AGAINST ADVERSE
            EMPLOYMENT CONSEQUENCES AND THE HEALTH
            IMPACTS OF STRESS FROM UNNECESSARY OR
            DISCRIMINATORY REVERIFICATION......................................................6

      C.    AB 450 PREVENTS UNWARRANTED INTRUSION,
            REDUCES WORKPLACE STRESS, AND PROTECTS
            WORKERS FROM EMPLOYER USE OF IMMIGRATION
            ENFORCEMENT TO RETALIATE AGAINST WORKERS.............................8

II.   AB 450 IS NOT AN OBSTACLE TO IMMIGRATION
      ENFORCEMENT ...............................................................................................10

      A.    AB 450 CANNOT INTERFERE WITH AN EMPLOYER'S
            RIGHT TO CONSENT BECAUSE SUCH A RIGHT DOES
            NOT EXIST .........................................................................................10

      B.    AB 450'S NOTICE PROVISIONS DO NOT INTERFERE
            WITH THE I-9 INSPECTION PROCESS .........................................................11

            1.    There Is No Evidence That AB 450 Has Interfered with
                  Audits........................................................................................13

            2.    Protections for Employees Similar to Those in AB 450
                  Have Been Enforced in the Collective Bargaining
                  Context with no Negative Impacts on Employers'
                  Ability to Comply with Federal Labor Law and
                  Immigration Law Obligations...................................................14

      C.    AB 450'S REVERIFICATION PROVISION DOES NOT
            INTERFERE WITH IMMIGRATION ENFORCEMENT ......................15

III.  CONCLUSION................................................................................................15

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Agri Processor Co. v. NLRB*,
514 F.3d 1 (2008).................................................................................................................14

*Aramark Facility Srvs. v. SEIU, Local 1877*,
530 F.3d 817 (9th Cir. 2008) .............................................................................................15

*Chamber of Commerce of the United States v. Whiting*,
563 U.S. 582 (2011)............................................................................................................12

*Davis v. United States*,
328 U.S. 582 (1946)............................................................................................................10

*Day-Brite Lighting, Inc. v. Missouri*,
342 U.S. 421 (1952)..............................................................................................................2

*De Buono v. Nysa-Ila Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997)..............................................................................................................2

*Golden Gate Rest. Ass'n v. City of San Francisco*,
512 F.3d 1112 (9th Cir. 2008) .............................................................................................2

*Hillsborough County v. Automated Med. Labs., Inc.*,
471 U.S. 707 (1985)..............................................................................................................2

*Illinois v. Rodriguez*,
497 U.S. 177 (1990)............................................................................................................10

*Katz v. United States*,
389 U.S. 347 .......................................................................................................................10

*Metro. Life Ins. Co. v. Mass.*,
471 U.S. 724 (1985)..............................................................................................................2

*Paige v. Henry J. Kaiser Co.*,
826 F.2d 857 (9th Cir. 1987) ...............................................................................................3

*Santillan v. USA Waste of Cal.*,
853 F.3d 1044 (9th Cir. 2017) ...........................................................................................15

*Schneckloth v. Bustamonte*,
412 U.S. 218 (1973)............................................................................................................10

*Slaughter-House Cases*,
83 U.S. 36 (1873)..................................................................................................................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Sure-Tan, Inc. v. NLRB,*
    467 U.S. 883, 104 S. Ct. 2803 (1984)......................................................................14

*Walnut Hill Estate Enters., LLC v. City of Oroville,*
    2010 U.S. Dist. LEXIS 74084 (E.D. Cal. July 21, 2010) ........................................11

*Zap v. United States,*
    328 U.S. 624 (1947)...................................................................................................10

**State Cases**

*Feminist Women's Health Ctr. v. Sup. Ct.,*
    52 Cal. App. 4th 1234 (Cal. 3d 1997)..........................................................................9

*Hernandez v. Hillsides, Inc.,*
    47 Cal.4th 272 (Cal. 2009)...........................................................................................9

*People v. Shields,*
    205 Cal.App.3d 1065 (1998) ......................................................................................10

*In re Rudolph and Sletten, Inc., Employer,*
    2004 CA ......................................................................................................................10

*Salwasser Mfg. Co. v. OSHA Appeals Bd.,*
    214 Cal.App.3d 625 (1989) ........................................................................................11

*Thorpe v. Rutland & Burlington R. Co.,*
    27 Vt. 140 (1855)..........................................................................................................2

**NLRB Cases**

*Aramark Educ. Servs.,*
    355 NLRB No. 11 (2010), *abrogated on other grounds by New Process Steel,*
    *L.P. v. NLRB*, 130 S. Ct. 2635 (2010).......................................................................14

*Operating Engineers Local 3 (Nortech Waste),*
    336 NLRB 554 (2001) ................................................................................................14

*Washington Beef, Inc.,*
    328 NLRB 612619-620 (1999)....................................................................................14

**Constitutions**

CAL. CONST. ...........................................................................................................1, 2

CAL. CONST. Article I, § 1...........................................................................................9

**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

iii

# TABLE OF AUTHORITIES (cont'd)

Page(s)

CAL. CONST. Article XIV, § 1 ...................................................................................................1, 2

U.S. CONST. Amend. IV ...........................................................................................................10, 11

**Federal Statutes**

8 U.S.C. § 1324a ..........................................................................................................................6, 15

8 U.S.C. § 1324b ................................................................................................................................8

Immigration Reform and Control Act of 1986 ("IRCA") ...............................................................14

National Labor Relations Act ..........................................................................................................14

**State Statutes**

Cal. Code Regs. § 9881 ....................................................................................................................12

Cal. Gov't. Code § 7285.1 ..................................................................................................................8

Cal. Gov't. Code § 7285.2 ...............................................................................................................8, 9

Cal. Lab. Code § 90.2 ................................................................................................................4, 5, 11

Cal. Lab. Code § 1019.1 ....................................................................................................................8

Cal. Lab. Code § 1019.2 ..........................................................................................................6, 8, 15

Cal. Lab. Code § 1171.5 ....................................................................................................................1

*S. 1200 a Bill to Amend the Immigration and Nationality Act* ......................................................14

**Rules**

Fed. R. App. 29(a)(4) ........................................................................................................................1

**Regulations**

8 C.F.R. § 247a.1(l) .....................................................................................................................6, 15

8 C.F.R. § 247a.2(b)(1)(viii) ........................................................................................................6, 15

8 C.F.R. § 274a ...............................................................................................................................15

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

1

## TABLE OF AUTHORITIES (cont'd)

2

Page(s)

3

**Other Authorities**

4

Adam Elmahrek, *ICE steps up enforcement at businesses in California,* L.A.
5     TIMES, Feb. 16, 2018...........................................................................................13

6

Andrew Khouri, *More Workers Say Their Bosses Are Threatening to Have Them
          Deported*, LA TIMES, Jan. 3, 2018.......................................................................8

7

8

Elizabeth A. Pascoe, and Laura Smart Richman, *Perceived Discrimination and
          Health: A Meta-Analytic Review*, 2018 PMC 531, 554. ........................................6

9

*Hearings Before the S. Comm. on the Judiciary, Subcomm. on Immigration and
          Refugee Policy*, 99th Cong. 1 (1985)(Statement of Thomas R. Donahue,
10        Secretary Treasurer, AFL-CIO). ........................................................................14

11

ICE Guidance for Employers Conducting Internal Employment Eligibility
12        Verification Form I-9 Audits, ICE, June 2015. ....................................................12

13

ICE Operation in LA results in 212 arrests, 122 notices of inspection, ICE., Feb.
14        16, 2018................................................................................................................13

15

Jason Green, *ICE targets 77 Northern California businesses in undocumented
          worker crackdown*, The MERCURY NEWS, Feb. 1, 2018. ..................................13

16

Memorandum of Understanding Between the Dep't Homeland Security and Dep't
17        of Labor Concerning Enforcement Activities at Worksites, Dec. 7, 2011. ...........8, 9

18

Samantha Artiga and Petry Ubri, *Living in an Immigrant Family in America: How
          Fear and Toxic Stress are Affecting Daily Life, Well-Being & Health*, KAISER
19        FOUND., Dec. 13, 2017. ......................................................................................9

20

U.S. Dep't of Labor Resources, DOL, April 2016. ......................................................12

21

U.S. Immigration and Customs Enforcement Fact Sheet: Form I-9 Inspection, ICE,
22        Jan. 8, 2018. ...................................................................................................11, 12

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

**IDENTITY AND INTEREST OF AMICI**

*Amici*, California Labor Federation ("Federation"), California State Council of Service Employees ("SEIU California"), et al. submit this brief in opposition to the United States' motion to enjoin the operation of AB 450.[1]  The Federation consists of more than 1,200 unions, representing 2.1 million union members and is dedicated to promoting and defending the interests of working people.  SEIU California is a non-profit labor organization consisting of over 700,000 members and its mission is to improve the lives of working people and their families.  The interest of additional amici and their corporate disclosure are attached as Appendix A.  California learned that workplace audits and reverification of work authorization were unnecessarily stressful, chaotic, and caused collateral damage to authorized workers.  California enacted AB 450 to protect workers throughout the State.  AB 450 is not an impermissible regulation of federal immigration law.

**SUMMARY OF ARGUMENT**

In enacting AB 450, California properly exercised its traditional police powers to protect its workers—an inviolable state interest under the California Constitution.  *See* CAL. CONST. art. XIV, § 1.  California's public policy affords all workers labor protections regardless of immigration status.  *See* Cal. Lab. Code § 1171.5. AB 450 furthers California's interest in protecting lawful workers from job loss or interruption by regulating certain employer conduct related to immigration status. It also prevents violations of workers' privacy interests by requiring employers to allow record or property searches only in response to a warrant. Plaintiff United States seeks to strip away those protections. AB 450 does not interfere with the government's ability to enforce immigration law. Nor does AB 450 prohibit employers from reverifying employee records or from conducting self-audits.  *Amici* therefore respectfully request that this Court deny the United States' Motion for Preliminary Injunction.

---

[1] Pursuant to Fed. R. App. 29(a)(4), amici certify that no counsel for a party authored this brief in whole or in part, and no person, other than amici or their counsel made a monetary contribution to the preparation or submission of this brief.  All parties have consented to the filing of this amicus brief.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

## I.   AB 450 PROPERLY REGULATES EMPLOYER CONDUCT TO PREVENT HARM TO WORKERS

The Supreme Court has long recognized that states have great latitude under their police powers to legislate as "to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Slaughter-House Cases*, 16 Wall. 36, 62 (1873) (quoting *Thorpe v. Rutland & Burlington R. Co.*, 27 Vt. 140, 149 (1855)).  In passing AB 450, the California Legislature acted squarely within its traditional police powers to protect the well-being of its workers, a state interest sacrosanct under  the California Constitution, which provides broad leeway to enact regulations for the general welfare and protection of employees within the State.  *See* CAL. CONST. art. XIV, § 1.

AB 450 seeks to ameliorate three primary harms to California employees:  (1) adverse employment consequences resulting from an I-9 audit where the employee may have been able to correct any identified deficiencies with sufficient notice and an opportunity to reverify; (2) adverse employment or health consequences resulting from an unnecessary or discriminatory reverification process; and (3) employer use of unnecessary or unjustified investigations, often for retaliatory reasons, resulting in workplace disruptions and adverse health consequences for workers.  These are the same harms that States, including California, have addressed for many years through regulation of employment and "matters of health and safety"—regulation that federal courts have upheld time and again in the face of federal preemption challenges.  *De Buono v. Nysa-Ila Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997); *see Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (1985) (recognizing the "presumption that state or local regulation of a matter related to health and safety is not invalidated under the Supremacy Clause"); *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 756 (1985) (state law requiring employer health insurance plans to include mental health coverage "is a valid and unexceptional exercise of the Commonwealth's police power" that does not conflict with federal law); *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423 (1952) (state law imposing criminal penalties on employers for deducting wages for employee absences for the purpose of voting does not violate the Constitution); *Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112 (9th Cir. 2008)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

1  (affirming state law requiring employers to make health care expenditures on behalf of certain

2  employees); *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857 (9th Cir. 1987) (employees' wrongful

3  discharge claims based on state's public policy as expressed in its health and safety regulations

4  not preempted by federal labor law).  AB 450 addresses each of these harms to employees by

5  regulating the conduct of employers, not that of any government agent.

6   **A.**   **AB 450'S NOTICE PROVISIONS PROTECT WORKERS AGAINST ADVERSE**
        **EMPLOYMENT CONSEQUENCES ARISING FROM I-9 AUDITS BY**
7        **PROVIDING SUFFICIENT NOTICE AND AN OPPORTUNITY TO CORRECT**
        **DEFICIENCIES**
8

9         AB 450 reduces the likelihood that an employer will terminate a lawfully authorized

10  worker by ensuring that the affected employee receives notice of the inspection and has an

11  opportunity to correct any deficiencies identified.  When employers fail to inform workers about

12  an I-9 audit or deny them an opportunity to reverify work authorization documents after an audit,

13  lawfully authorized workers may be adversely impacted.  It is common for authorized workers,

14  including lawful permanent residents and United States citizens, to be misidentified by

15  immigration authorities as lacking work authorization on the government's Notice of Suspect

16  Documents ("NSD").[2]  For example, Marcine Seid, an immigration attorney, has identified an I-9

17  audit in which one employee had lawful permanent residency and another who was a naturalized

18  United States citizen  both were listed on the NSD provided to their employer.[3]

19         Another example of this harm occurred in 2014 when factory workers in Southern

20  California were fired due to an alleged government audit.[4]  Some workers had complained to the

21  employer about payment irregularities, such as failure to pay overtime, the lack of available

22  drinking water in the factory, and  lack of sufficient restroom breaks.  In late 2014, the employer

23  summarily fired its workers ostensibly because immigration authorities informed the employer

24  _____

25  [2] Declaration of Marcine A. Seid, Attorney, ¶ 4 attached herein in Appendix B.  The NSD is a
   notice that may be issued on completion of an I-9 audit to an employer that advises the employer
   that based on a review of the Forms I-9 and documentation submitted by the employee, U.S.
26  Immigration and Customs Enforcement ("ICE") has determined that an employee is unauthorized
   to work.  *Id.*; *see also* NSD discussion *infra* at Part II.B.

27  [3] *Id.*

28  [4] Employee intake questionnaires and attorney interview notes (Dec. 2014) (on file with the
   author).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

3

AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

1    that none of its workers had "papers" to work in the United States. Despite questions, the

2    employer refused to provide the workers with any information. Had the workers been provided

3    with notice and an opportunity to correct any alleged deficiencies in their documentation, at least

4    some of these terminations might have been avoided. Also, and most troubling, these workers

5    could not know if an I-9 audit had actually occurred or if the employer was using an audit as an

6    excuse to retaliate against the workers for complaining.

7         A recent example clearly demonstrates how AB 450 addresses these concerns. A

8    California employer was the subject of an I-9 audit that commenced in January of 2018. On or

9    about May 3, 2018, ICE issued the NSD identifying fifteen workers as lacking work

10   authorization. The employer complied with AB 450, provided the required notice of audit results

11   to the affected employees, and gave them an opportunity to resubmit documents. Eleven of those

12   workers resubmitted documents establishing authorization to work to the employer. On or about

13   May 16, 2018, ICE issued a notice to the employer acknowledging that it had *incorrectly*

14   identified nine workers on the original NSD as lacking authorization to work and requested that

15   the employer reverse any adverse action taken against those workers. [5] Without AB 450, these

16   workers may never have had the chance to show that they were authorized to work.

17        Another common situation that the § 90.2 notice provision addresses is employees who

18   have let their employment authorization documents ("EAD") expire because their employers do

19   not regularly reverify and they are reluctant to spend money unnecessarily on substantial renewal

20   fees. [6] These employees, who remain eligible to lawfully work, are able to obtain the necessary

21   documents to satisfy I-9 requirements if provided the opportunity, but employers often did not

22   give them that chance. The following are examples of instances where employees received

23   advice *not* to renew work authorization documents in order to save money, which would put them

---

[5] Correspondence between local union and employer, and Change to Notice of Inspection Results dated May 16, 2018 (on file with the author).

[6] The current USCIS filing fee to renew employment authorization documents is $410. See USCIS Application for Employment Authorization available at https://www.uscis.gov/i-765 (last visited May 11, 2018).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

4

AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

in especially precarious positions in I-9 audits where there had been no notice and opportunity to renew before an adverse employment decision could be taken[7]:

**Angela** works as a janitor in Southern California.[8]  Angela has been in work authorized Temporary Protected Status ("TPS") since 2000.  The TPS designation was routinely extended by Congress over the last eighteen years.  Each time TPS designation for her native country was extended, Angela was required to pay a fee to re-register her TPS status and another fee to renew her EAD.  Angela was routinely advised by her immigration lawyer not to renew her EAD in order to save money, especially if her employer was not checking to reverify expired work authorization documents.

**Luis Fuentes** is an organizer with a union in Southern California.  Many of the members that he represents are immigrant workers and he often attends legal clinics hosted by well-respected non-profit organizations that provide immigration services and legal representation. He also connects with other local and national immigrant rights organizations to keep abreast of issues that may impact immigrant workers.[9]  When the federal government announced the termination and last extension of TPS designation for certain countries earlier this year, Mr. Fuentes observed non-profit providers, immigration lawyers, and immigrant rights advocates discuss the option of advising workers not to renew their work authorization documents in order to save money on the costs of those fees.

Providing notice to employees about the initiation and results of an I-9 audit allows them to seek legal advice and correct any potential problems that may exist with their work authorization documents.  In doing so, § 90.2 helps ensure compliance with federal law, prevents needless interruption to or loss of employment, and prevents employers from concocting a fictional I-9 audit to retaliate against workers.

---

[7] The names used in case examples are pseudonyms in order to protect the identity of the workers.

[8] Telephone interview notes of worker with Monica Guizar, Attorney, Weinberg, Roger and Rosenfeld (May 9, 2018) (on file with the author).

[9] Declaration of Luis Fuentes attached herein under Appendix B.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

5
AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

**B.   AB 450 PROTECTS WORKERS AGAINST ADVERSE EMPLOYMENT CONSEQUENCES AND THE HEALTH IMPACTS OF STRESS FROM UNNECESSARY OR DISCRIMINATORY REVERIFICATION**

AB 450's codification of Labor Code § 1019.2, protects current workers from unnecessary reverification at times or in manners not required by federal law. *See* 8 U.S.C. §1324a (requiring verification at time of hire); 8 C.F.R. §247a.2(b)(1)(viii) (enumerating situations in which reverification is not required); 8 C.F.R. §247a.1(l) (defining constructive knowledge). When employers improperly reverify work authorization documents of current work-authorized employees, it can result in loss of work and unjust termination.  Some authorized workers are required to take time off work to visit agencies—in some cases multiple times—to provide proof of authorization even though not required by law.

By limiting unwarranted reverification, §1019.2 reduces the likelihood that reverification will be misused. The perception that they are subject to reverification for discriminatory reasons can have significant negative health impacts.  *See* ELIZABETH A. PASCOE AND LAURA SMART RICHMAN, PERCEIVED DISCRIMINATION AND HEALTH: A META-ANALYTIC REVIEW (National Institutes of Health 2009) ("perceived discrimination has a significant negative effect on both mental and physical health.  Perceived discrimination also produces significantly heightened stress responses and is related to participation in unhealthy and nonparticipation in healthy behaviors."), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2747726/.  The following case examples demonstrate this harm:

**Rosa** works for a large healthcare provider in Southern California.  She is a United States citizen born in Gilroy, California.[10]  Rosa's employer reverified her work authorization documents, even though not required to do so by law, and questioned why the name on her Social Security card listed only one last name while her driver's license listed two last names.  Rosa explained that her card  listed only her maiden name, while her driver's license also listed her last name through marriage.  Her employer instructed Rosa to visit the Social Security Administration ("SSA") and obtain a document that proved she was the same person.  She went to the SSA, obtained a document explaining that she was the same person and that her Social Security number

---

[10] Worker email statement to Union SEIU UHW forwarded to Monica Guizar, Weinberg, Roger and Rosenfeld (May 3, 2018) (on file with the author).

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

6

was hers, and submitted it to her employer.  Her employer refused to accept the document,
demanded she provide more proof of work authorization and stated that she was undocumented.

Rosa then brought her birth certificate, her baptism certificate, and other documents to
prove her identity and that she was a United States citizen.  Her employer refused to accept the
additional documents.  When those documents were not accepted, Rosa again visited the SSA's
office, added her married surname to her name, and obtained a new Social Security card
reflecting her maiden and married surnames.  She then presented the new card with both last
names, her birth certificate, her mother's birth certificate (who was born in Denver, Colorado),
and her father's citizenship paperwork to her employer.  The employer refused to accept the
documents and told Rosa that she "could have purchased" her Social Security card "anywhere."

Rosa's employer suspended her from work. She immediately contacted an attorney.  She
also informed a friend in management that she had scheduled an appointment with an attorney.
On the second day of Rosa's suspension, her employer contacted her, told her that the "whole
thing was a misunderstanding," and immediately reinstated her.  The stress from this incident, the
potential of losing her job, and the accusation of being undocumented exacerbated Rosa's
existing medical condition and resulted in her hospitalization.

**Jenny** is a lawful permanent resident who works as a janitor in Southern California.[11]
Jenny's employer incorrectly transcribed her information on the I-9 form at the time of hire.
Based on this error, the employer later claimed that Jenny was not authorized to work and fired
her.  Her union filed a grievance and assisted her with informing the employer of its error,
providing proof that Jenny was a lawful permanent resident and demanding that she be reinstated.
Ultimately, Jenny spent six months out of work because her employer refused to believe that she
was authorized to work.  Federal law does not require (and prohibits) reverification of lawful
permanent residents.

When workers in lawful work status are improperly questioned by employers about their
work authorization, are not believed to have proper work status despite having presented proper
documentation, or are presumed to be undocumented, they suffer harm.  Prior to AB 450's

[11] Grievance and correspondence between the union and the employer (on file with the author).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

7
AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

1   codification at Lab. Code § 1019.2, if workers could not provide evidence that an unnecessary

2   reverification of employment authorization had been conducted based on employer animus,

3   discriminatory intent, or retaliation for having engaged in protected activity, they were left with

4   little recourse.  *See, e.g.*, 8 U.S.C. § 1324b (prohibits document abuse if made for the purpose or

5   with intent of discriminating against an individual); Cal. Lab. Code § 1019.1 (prohibits

6   reverification using an unfair immigration-related practice).

7   **C.   AB 450 PREVENTS UNWARRANTED INTRUSION, REDUCES WORKPLACE**
    **STRESS, AND PROTECTS WORKERS FROM EMPLOYER USE OF**
8   **IMMIGRATION ENFORCEMENT TO RETALIATE AGAINST WORKERS**

9         Beginning in 2017, threats by California employers to call immigration authorities to their

10  place of business to arrest workers has been on the rise.[12] AB 450's addition of California

11  Government Code sections 7285.1 and 7285.2 prevent employers from using immigration

12  enforcement as a tool to retaliate against workers.  The following case example demonstrates this

13  harm:

14        **Anthony** and his co-workers work for an Italian restaurant in Southern California.[13]

15  Anthony and his co-workers initiated a campaign to improve working conditions at their

16  workplace based on wage payment irregularities and lack of accommodations for breastfeeding

17  employees.  The workers filed wage claims, prepared a petition, and delivered it to their employer

18  demanding payment of unpaid wages and to improve working conditions.  After the action, the

19  restaurant manager approached Anthony and said:  "Soon I'm going to get rid of all of you."

20  Anthony asked:  "How?"  The manager told Anthony that he was going to call immigration on the

21  workers.

22        Indeed, the federal government agrees that immigration enforcement should not be used

23  by employers to retaliate against workers or interfere with labor disputes.  *See* Revised

24  Memorandum of Understanding ("MOU") Between the Department of Homeland Security and

25  Department of Labor Concerning Enforcement Activities at Worksites (Dec. 7, 2011), *available*

26  _____
    [12] Andrew Khouri, *More Workers Say Their Bosses Are Threatening to Have Them Deported*,
27  L.A. TIMES, Jan. 3, 2018, available at http://www.latimes.com/business/la-fi-immigration-
    retaliation-20180102-story.html  (last visited May 11, 2018).

    [13] Telephonic interview with Manuel Villanueva, Workplace Justice Organizer Restaurant
28  Opportunities Center of Los Angeles ROC-LA (May 8, 2018) (notes on file with author).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

*at* https://www.dol.gov/asp/media/reports/DHS-DOL-MOU.pdf; *see also* Addendum to Revised MOU (May 2016) available at https://www.dol.gov/sites/default/files/documents/MOU-Addendum.pdf.  By regulating employer conduct with respect to searches of "nonpublic areas of a place of labor" or of "the employer's employee records," AB 450 makes it more difficult for employers to use immigration enforcement to intimidate and retaliate against workers, which can result in workplace stress.  Reducing workplace stress is a significant health concern that directly implicates the state's police power to legislate for the protection of workers.  The stress caused by workplace searches is likely to impact immigrant employees with particular force even when they are lawfully permitted to work in the U.S.  *See, e.g.*, SAMANTHA ARTIGA & PETRY UBRI, LIVING IN AN IMMIGRANT FAMILY IN AMERICA:  HOW FEAR AND TOXIC STRESS ARE AFFECTING DAILY LIFE, WELL-BEING, & HEALTH (The Henry J. Kaiser Family Foundation 2017) (describing results of extensive public health study indicating that "immigrant families, including those with lawful status, are experiencing resounding levels of fear and uncertainty" in the current political climate), *available at* https://www.kff.org/disparities-policy/issue-brief/living-in-an-immigrant-family-in-america-how-fear-and-toxic-stress-are-affecting-daily-life-well-being-health/.

Searches of personnel files, which may contain embarrassing or non-flattering information that workers would not want shared, also implicate employees' individual right to privacy, an especially strong state interest in California, where the state constitution explicitly enumerates it as an "inalienable right[]."  CAL. CONST. art. I, § 1.  California courts recognize this right in the private employment setting.  *See, e.g.*, *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 287 (Cal. 2009); *Feminist Women's Health Ctr. v. Sup. Ct.*, 52 Cal. App. 4th 1234, 1244-45 (Cal. 3d 1997). Section 7285.2 reduces the likelihood that employers will allow employees' private information, unrelated to authorization to work, to be inspected by authorities.  AB 450 prevents employers from allowing unlawful intrusions, searches, reduces workplace stress, and makes it difficult for employers to use enforcement as a tool to retaliate.

//

//

//

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

9

AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

## II.   AB 450 IS NOT AN OBSTACLE TO IMMIGRATION ENFORCEMENT

**A.   AB 450 CANNOT INTERFERE WITH AN EMPLOYER'S RIGHT TO CONSENT BECAUSE SUCH A RIGHT DOES NOT EXIST**

The U.S. argues that AB 450's Government Code provisions interfere with an employer's "right to consent to a police search." P.I. at 1. But no such right exists. The Fourth Amendment only protects the right to be free from unreasonable searches and seizure. *See, e.g.*, *Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990). This generally means searches must be pursuant to a warrant, "subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357). Nothing in the Fourth Amendment's text nor any case law interpreting it establishes a right to consent to searches. AB 450 cannot interfere with a right that does not exist.

It is true that law enforcement may conduct a search where the subject of the search has provided voluntary consent to do so. *See, e.g.*, *Schneckloth*, 412 U.S. at 219 (1973); *Davis v. United States*, 328 U.S. 582, 593-94 (1946); *Zap v. United States*, 328 U.S. 624, 630 (1947). The validity of consent searches implies that individuals have a constitutionally-protected right to *refuse* consent, a right that AB 450 clearly promotes. *See, e.g.*, *Schneckloth*, 412 at 227 ("While knowledge of the *right to refuse consent* is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.") (emphasis supplied). That there exists a right to refuse consent, however, does not mean that the opposite is true, *i.e.*, that there is a right to affirmatively consent to a search. Concluding that the Fourth Amendment provides a right to consent to searches is illogical and unsupported by authority.

The United States misleadingly cites *People v. Shields*, 205 Cal.App.3d 1065, 1068 (1998). *Shields* addresses the police's ability to temporarily detain employees in their workplace after an employer consents to a search of the premises and held that the employer cannot consent to the employee's detention. The quoted passage regarding the employer's "right to consent" is *dicta* referring to the reality that it is an employer who controls access to a property, and not employees (unless they are authorized to act on behalf of the employer). Likewise, in *In re. Rudolph and Sletten, Inc., Employer*, 2004 CA OSHA App. Bd. LEXIS 2, at *5 (Cal. OSHA

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

1   Mar. 30, 2004), the California OSHA Board merely recognized consent as an exception to the

2   Fourth Amendment warrant requirement, and determined whether such consent had been

3   provided in the particular factual circumstances presented.

4        The two cases the United States cites for the proposition that "law enforcement entities

5   may rely on consent and need not normally procure judicial warrants before fulfilling their

6   regulatory mandates" are also inapposite. PI at 16. Both cases involve employers refusing to

7   provide consent to searches and the agencies *procuring judicial warrants*. *See Walnut Hill Estate*

8   *Enters., LLC v. City of Oroville*, 2010 U.S. Dist. LEXIS 74084 (E.D. Cal. July 21, 2010)

9   (upholding validity of warrants for fire inspection after employer refused consent); *Salwasser*

10  *Mfg. Co. v. OSHA Appeals Bd.*, 214 Cal.App.3d 625 (1989) (upholding validity of Cal. OSHA

11  inspection warrant after employer refused consent). These cases do not support the claim that

12  obtaining consent is the "normal" procedure and obtaining a warrant is some kind of

13  aberration. To the contrary, they reaffirm that obtaining a warrant is something law enforcement

14  routinely does to comply with the requirements of the Fourth Amendment.

15       The Fourth Amendment prohibits unreasonable searches. AB 450 does not subject

16  anyone to an unreasonable search and thus, does not violate the Fourth Amendment. Employers

17  do not have a right to consent to a search, and thus restrictions on their ability to provide such

18  consent do not interfere with federal law.

19  **B.     AB 450'S NOTICE PROVISIONS DO NOT INTERFERE WITH THE I-9
            INSPECTION PROCESS**

20

21       AB 450's requirement that employers notify employees of I-9 inspections and the results

22  of those inspections reflects California's exercise of its broad authority to regulate the

23  employment relationship for the benefit of all employees. *See* Cal. Lab. Code § 90.2. ICE

24  initiates the I-9 inspection process by serving a Notice of Inspection (NOI) on an employer which

25  compels the production of Forms I-9. *See* U.S. Immigration and Customs Enforcement Fact

26  Sheet: Form I-9 Inspection review, *available at* https://www.ice.gov/factsheets/i9-inspection (last

27  visited March 19, 2018). The NOI will usually identify the date, time, and location for turning

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

11
AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

1    over I-9 forms and other documentation that ICE requests.  *Id.*  AB 450 does not interfere with

2    this process and solely requires employers to notify employees that the NOI has been served.

3         California has for decades required all employers to post important information pertinent

4    to a variety of employee rights in the workplace.  Employers must provide notice to employees

5    regarding issues ranging from workers' compensation benefits and medical treatment, *see* 8 Cal.

6    Code Regs. § 9881, in effect since 1989, to safety rules and regulations, *see* Cal. Lab.

7    Code§ 6328, in effect since 1973. The U.S. Department of Labor (DOL) itself acknowledges on

8    its website that employers must comply with both federal and state requirements regarding

9    workplace postings.  *See* DOL website, *available at*

10   https://www.dol.gov/whd/resources/posters.htm/ (last visited on May 10, 2018).  AB 450's

11   employee notice provision is firmly in line with the myriad other state posting requirements that

12   alert employees of their rights and responsibilities with respect to their employment.

13        After the audit, the employer is informed of the results, often via a NSD.  The NSD

14   provides employers and any identified employees an opportunity to present additional

15   documentation to demonstrate work authorization "if they believe the finding is in error." *Id.*  AB

16   450 places no requirements on the employer with respect to compliance with the NOI.  Instead,

17   AB 450 only directs employers to notify an affected employee of the audit's results in relation to

18   him or her and of the opportunity to demonstrate work authorization before any adverse action is

19   taken.

20        AB 450's notice requirements are in line with the federal government's own guidance

21   encouraging employer transparency with its employees, particularly when it comes to audits of I-

22   9 records and reverification of employees' work authorization.  *See* ICE Guidance for Employers

23   Conducting Internal Employment Eligibility Verification Form I-9 Audits, *available at*

24   https://www.ice.gov/sites/default/files/documents/Document/2015/i9-guidance.pdf (last visited on

25   March 19, 2018) (recommending a transparent process for interacting with employees and

26   informing workers whether an audit is "in response to a government directive"); *see also*

27   *Chamber of Commerce of the United States v. Whiting,* 563 U.S. 582, 608-09 (2011) (finding that

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

12
AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

1    Arizona's requirement that employers use E-Verify to determine whether employees were eligible

2    to work was not preempted where the federal government had encouraged the use of E-Verify).

3          Plaintiff fails to demonstrate how AB 450's notice provisions have interfered with its

4    ability to enforce immigration law.  *See, e.g.*, Declaration of Thomas D. Homan ¶ 84 (speculating

5    that the notice provision "may create confusion on behalf of an employer," but providing no

6    evidence that such confusion has ever actually occurred).  Instead, the government has touted its

7    immigration enforcement efforts in California, including serving hundreds of NOI's on employers

8    to audit I-9 records.  *See* U.S. Immigration and Customs Enforcement, News Releases *ICE*

9    *operation in LA results in 212 arrests, 122 notices of inspection* (Feb. 16, 2018) *available at*

10   https://www.ice.gov/news/releases/ice-operation-la-results-212-arrests-122-notices-inspection

11   (last visited April 2, 2018); *see also* Jason Green, *ICE targets 77 Northern California businesses*

12   *in undocumented worker crackdown*, THE MERCURY NEWS, Feb. 1, 2018, *available at*

13   https://www.mercurynews.com/2018/02/01/ice-targets-77-northern-california-businesses-in-

14   crackdown-on-illegal-workers/ (last visited April 2, 2018); Adam Elmahrek, *ICE steps up*

15   *enforcement at businesses in California*, targeting employers and workers, THE LOS ANGELES

16   TIMES, Feb. 16, 2018, *available at* http://www.latimes.com/local/lanow/la-me-ln-ice-audits-

17   20180216-story.html (last visited April 2, 2018).

18          **1.      There Is No Evidence That AB 450 Has Interfered with Audits**

19          The United States has not provided evidence to show AB 450 interferes with enforcement,

20   and actual audits conducted since its enactment demonstrate this is not the case. *See eg., infra* at

21   Part I.A.  For example, employers served with NOIs in 2018 complied with the AB 450 notice

22   requirements and provided said I-9 forms and other documentation to ICE.[14]  On or about April 9,

23   2018, ICE completed one of these audits and served the NSD on one of these employers.[15]  The

24   employer complied with AB 450's notice requirements with respect to the NSD.[16]

25

26   _____

     [14] Correspondence between employers and four separate unions (Jan. 29, 2018 and Jan. 30, 2018)
27   (on file with the author).

     [15] Correspondence between employer and unions (April 9, 2018) (on file with author).
28   [16] *Id.*

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

2.    **Protections for Employees Similar to Those in AB 450 Have Been Enforced in the Collective Bargaining Context with no Negative Impacts on Employers' Ability to Comply with Federal Labor Law and Immigration Law Obligations**

During the Congressional legislative debate ultimately resulting in the passage of the Immigration Reform and Control Act of 1986 ("IRCA"), organized labor ensured that Congress did not ignore the importance of labor protections and advocated for discrimination protections in the employer sanctions law. *See S. 1200 a Bill to Amend the Immigration and Nationality Act to Effectively Control Unauthorized Immigration to the United States, and for Other Purposes: Hearings Before the S. Comm. on the Judiciary, Subcomm. on Immigration and Refugee Policy*, 99th Cong. 1 (1985) (Statement of Thomas R. Donahue, Secretary Treasurer, AFL-CIO). Since IRCA's enactment, worker advocates and labor unions have had to ensure workers' rights are protected as employers comply with IRCA. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 104 S. Ct. 2803 (1984); *Agri Processor Co. v. NLRB*, 514 F.3d 1 (2008).

For example, immigration issues such as work authorization impact terms and conditions of employment. Under federal labor law, these topics trigger certain employer bargaining obligations under the National Labor Relations Act. *See Aramark Educ. Servs.*, 355 NLRB No. 11 (2010) (employer has 8(a)(5) obligation to bargain with union before implementing policy requiring workers to correct SSA no-matches), *abrogated on other grounds by New Process Steel, L.P. v. NLRB*, 130 S. Ct. 2635 (2010); *Operating Engineers Local 3 (Nortech Waste)*, 336 NLRB 554, 570 (2001) (employee questioned about work authorization enjoys Weingarten rights, and employer has 8(a)(5) obligation to bargain with the Union concerning IRCA matters); *Washington Beef, Inc.*, 328 NLRB 612619-620 (1999) (where employer received INS notice that employees did not possess valid work authorization documents, employer had 8(a)(5) bargaining obligation concerning length of time employees must be given to reverify work authorization, except where employee admitted lack of work authorization).

As a result, since IRCA's enactment, labor unions have represented workers in government audits, enforcement actions, and reverification of work authorization to ensure protections similar to those in AB 450. *Id.* Some unions have collective bargaining language

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

14

AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

1    addressing these issues that in some cases are similar to AB 450's requirements.[17]  Unions have

2    consistently enforced this type of collective bargaining language.

3    **C.    AB 450'S REVERIFICATION PROVISION DOES NOT INTERFERE WITH
          IMMIGRATION ENFORCEMENT**

4

5         Labor Code § 1019.2 does not prohibit employer self-audits or reverification. Nor does it

6    prohibit employer compliance with federal law. 8 U.S.C. § 1324a; 8 C.F.R. § 274a; 8 C.F.R. §

7    274a.2(b)(1)(viii); 8 C.F.R. § 274a.1(l)(defines constructive knowledge); *see also Aramark*

8    *Facility Srvs. v. SEIU, Local 1877*, 530 F.3d 817 (9th Cir. 2008).  AB 450's provision ensures

9    that employers are not putting employees through unnecessary verification when not required by

10   law.  *See Santillan v. USA Waste of Cal.*, 853 F.3d 1044, 1045-46 (9th Cir. 2017) (holding that an

11   employer did not have a legitimate business interest to make reinstatement contingent on

12   verifying authorization to work because said verification was not required by law).

13                                **III.    CONCLUSION**

14        AB 450 is a valid exercise of the State's police powers to legislate employment

15   regulations for the protection of workers.  The law addresses concrete harms to employees

16   without causing any interference with immigration enforcement activities.  The Motion for a

17   Preliminary Injunction should be denied.

18

19   Dated:  May 18, 2018                        WEINBERG, ROGER & ROSENFELD
                                                 A Professional Corporation
20

21                                                   */S/ Monica T. Guizar*
                                          By:    ANTONIO RUIZ
22                                               MONICA T. GUIZAR
                                                 ERIC J. WIESNER
23
                                                 Attorneys for Amici California Labor Federation,
24                                               AFL-CIO; and California State Council of Service
                                                 Employees
25

26

27

28

---

[17] California Labor Federation model collective bargaining language on immigration issues (on
file with the author).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

15
AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS
Case No. 2:18-cv-00490-JAM-KJN

**APPENDIX A:  IDENTITY AND INTEREST OF *AMICI CURIAE***

**California Labor Federation, AFL-CIO** is a labor federation that consists of more than 1,200 unions, representing 2.1 million union members in manufacturing, retail, construction, hospitality, public sector, health care, entertainment and other industries.  The California Labor Federation ("Federation") is dedicated to promoting and defending the interests of working people and their families for the betterment of California's communities. From legislative campaigns to grassroots organizing, its affiliates are actively engaged in every aspect of California's economy and government.  The Federation's three main areas of work include: Legislative Action, Political Action, and Economic Action.  The Federation's achievements have included restoring daily overtime pay, raising the minimum wage and passing the nation's first Paid Family Leave law.

**California State Council of Service Employees** ("SEIU California") is a non-profit labor organization affiliated with the Service Employees International Union ("SEIU") consisting of over 700,000 members in California.  SEIU California's mission is to improve the lives of working people and their families and lead the way to a more just and humane society. SEIU fights for jobs with decent wages, healthcare, pensions, better working conditions, and more opportunities. The SEIU California strives to build greater unity among all SEIU locals in California and to mobilize its membership to pursue an action-oriented, issue-driven agenda. SEIU California accomplishes its mission through: Member and Public Education, Member Mobilization, Voter Registration, "Get out the Vote" efforts, Legislative Advocacy in the Capitol and in Districts, and Activists' Training.  SEIU California works in the areas of healthcare, long-term care, public services (both state workers and local), and building services.

**Asian Americans Advancing Justice- Los Angeles** ("Advancing Justice – LA") is the nation's largest legal and civil rights organization for Asian Americans, Native Hawaiians, and Pacific Islanders (NHPI).  Founded in 1983 as the Asian Pacific American Legal Center, Advancing Justice - LA serves more than 15,000 individuals and organizations every year. Through direct services, impact litigation, policy advocacy, leadership development, and capacity

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
AuthorOfficeAddress
AuthorOfficeGeneralNo1

16
APPENDIX A:  IDENTITY AND INTEREST OF *AMICI CURIAE*

1   building, Advancing Justice - LA focuses on the most vulnerable members of Asian American

2   and NHPI communities, including immigrant workers who face exploitation in the workplace,

3   while also building a strong voice for civil rights and social justice.  Advancing Justice - LA is

4   based in downtown Los Angeles, with satellite offices in Orange County and Sacramento.

5       **Legal Aid at Work** ("LAAW") is a nonprofit legal organization, based in San Francisco,

6   California, whose mission is to protect and expand the employment and civil rights of

7   underrepresented workers and community members.  LAAW does this by engaging in impact

8   litigation, direct legal services, legislative advocacy and community education. Through its

9   National Origin and Immigrants' Rights Program, LAAW advocates on behalf of immigrant

10  workers who face discrimination and exploitation in the workplace because of their national

11  origin.

12      **The Maintenance Cooperation Trust Fund** ("MCTF") is a California statewide

13  watchdog organization working to abolish illegal and unfair business practices in the janitorial

14  industry.  The MCTF exposes unlawful operations, encourages accountability, promotes

15  responsible business practices, and helps level the playing field in the interest of clients,

16  employers, workers and the general public. Since its inception in 1999, the MCTF has assisted in

17  the collection of more than $26 million in unpaid wages for more than 5,000 janitors working in

18  many industries in California. Many of the workers we have assisted are immigrant workers who

19  are unfamiliar with their rights and protections as workers in the state of California.  We have

20  assisted workers when they face retaliation from employers for reporting a wage and hour

21  violation, an injury, or a health hazard at work.  Many times the retaliation is in the form of a

22  threat to report them or a family member to Immigration Customs and Enforcement or to re-

23  verify their immigration status.  In order to ensure compliance with employment laws in the

24  janitorial industry, it is imperative that the rights of all workers are enforced regardless of

25  immigration status. We are interested in supporting policies that promote the enforcement of the

26  rights of immigrant workers and also for their well-being and sense of inclusion as community

27  members.

28

**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
AuthorOfficeAddress
AuthorOfficeGeneralNo1

17
APPENDIX A:  IDENTITY AND INTEREST OF *AMICI CURIAE*

1    **United Food and Commercial Workers International Union** ("UFCW") is a labor

2    organization which represents working men and women across the United States.  UFCW's 1.3

3    million members work in a range of industries, with a majority working in retail food,

4    meatpacking and poultry, food processing and manufacturing, and non-food retail.  UFCW's

5    objective is the elevation of its members and assistance to other persons engaged in the

6    performance of work for the purpose of improving wages, hours, benefits, and working

7    conditions.  UFCW also endeavors to advance and safeguard full employment, economic security,

8    and social welfare of its members and of workers generally.

9    **UNITE HERE** represents workers throughout the U.S. and Canada who work primarily

10   in the hotel, gaming, and food service industries.

11   ## DISCLOSURE STATEMENT

12   Amici that are non-profit organization have no parent corporations and no publicly traded

13   stock.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   140990\968867

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
AuthorOfficeAddress
AuthorOfficeGeneralNo1

APPENDIX A:  IDENTITY AND INTEREST OF *AMICI CURIAE*

DECLARATION OF MARCINE A. SEID

I, Marcine A. Seid, hereby declare as follows:

1.      I am an attorney licensed to practice law.  I am the principal attorney of the Seid Law Group located in Palo Alto, California.  I make this declaration upon my personal knowledge, and, if called as a witness, I could competently testify to the facts hereinafter stated.

2.      I have been practicing immigration law for over twenty years.  I advise and represent start-ups, emerging high technology companies, medium sized companies, and multi-national companies in the Silicon Valley and throughout the 50 States.  My experience includes consulting on I-9 employment verification issues, advising employers in the implementation of compliance policies and procedures, and representing employers in agency immigration worksite investigations.

3.      In my experience representing employers in immigration worksite investigations and I-9 inspections, upon the conclusion of the audit, there are always employees that the Department of Homeland Security ("DHS") mistakenly identifies as lacking work authorization and incorrectly places on a Notice of Suspect Documents ("NSD") list.  Employers learn of the mistake upon reverification of employees listed on the NSD.

4.      For example, in an I-9 audit involving a Northern California employer that I advised, employees in work authorized and lawful permanent resident status were incorrectly listed on the NSD.  One employee had lawful permanent residency.  Another employee was a naturalized United States citizen and other employees had valid work authorization to lawfully work in the United States.

5.      Although I have provided an example from only one case, there are many other cases in which DHS inaccurately lists work authorized employees on the NSD.  To my knowledge and based on my experience, the inaccurate identification of work authorized employees on the NSD is the norm rather than the exception.  Many of these employees are lawful permanent residents and even U.S. Citizens who are often incorrectly placed on the NSD by DHS.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.  Executed this 3 day of May 2018 in Palo Alto, California.

_Marcine A. S____

Marcine A, Seid, Esq.

## DECLARATION OF LUIS FUENTES

I, Luis Fuentes, hereby declare as follows:

1.      I am an organizer employed with a local union affiliated with the Service Employees International Union ("SEIU") in Southern California.

2.      Many of the members that our local union represents are immigrant workers.

3.      As part of my job, I often attend legal clinics hosted by well-respected non-profit organizations that provide immigration services and legal representation to immigrants. I also connect with other local and national immigrant rights organizations to keep abreast of issues that may impact immigrant workers.

4.      Earlier this year, when the federal government announced the termination and last extension of the Temporary Protected Status ("TPS") designation for certain countries, I observed non-profit providers, immigration lawyers, and immigrant rights advocates discuss the option of advising workers not to renew their work authorization documents in order to save money on the costs of those fees.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.  Executed this 17th day of May 2018 in Los Angeles, California.

Luis Fuentes

**CERTIFICATE OF SERVICE**

Case Name:   The United States of America v.        No. 2:18-cv-00490-JAM-KJN
             The State of California, et al.

    I hereby certify that on May 18, 2018, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

        **BRIEF OF AMICI CURIAE CALIFORNIA LABOR FEDERATION, CALIFORNIA STATE COUNCIL OF SERVICE EMPLOYEES, ET AL. IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

    I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 18, 2018, at Los Angeles, California.

    Melanie Garion            */s/ Melanie Garion*
        Declarant                         Signature

140990\968823

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
Author/Office/Address
Author/Office/GeneralNo1