LATHAM & WATKINS LLP
  Robert W. Perrin (SBN 194485)
   *robert.perrin@lw.com*
  Sarah F. Mitchell (SBN 308467)
   *sarah.mitchell@lw.com*
  Michael A. Hale (SBN 319056)
   *michael.hale@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Attorneys for *Amicus Curiae*
Anti-Defamation League

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, *et al.*,<br><br>    Defendants. | Case No. 2:18-cv-00490-JAM-KJN<br><br>The Honorable John A. Mendez<br><br>**ANTI-DEFAMATION LEAGUE'S** *AMICUS CURIAE* **BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: June 20, 2018<br>Time: 10:00 a.m.<br>Dept.: Courtroom 6, 14th Floor<br><br>Complaint Filed: March 6, 2018<br>Trial Date: Not yet set |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 2

II. ARGUMENT .............................................................................................................. 3

    A. The California Statutes at Issue Are Aimed at Protecting Victims and Witnesses of Crimes. ............................................................................... 3

    B. The United States' Requested Injunction Suppresses Reporting of Crimes and Compromises Community Safety. ................................................ 4

    C. The United States' Requested Injunction Directly and Disproportionately Harms Immigrant Communities and Leaves Them More Vulnerable to Hate Crimes. ........................................................... 7

III. CONCLUSION ........................................................................................................ 11

LATHAM&WATKINS™
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

i

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Galarza v. Szalczyk*,
   745 F.3d 634 (3d Cir. 2014) .................................................................................................. 5

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) ............................................................................................... 5

**STATUTES**

18 U.S.C. § 249(a) ......................................................................................................................... 8

Cal. Gov't Code § 7284.6 .............................................................................................................. 3

Cal. Gov't Code § 7285.1 .............................................................................................................. 3

Cal. Gov't Code § 7285.2 .............................................................................................................. 3

Cal. Gov't Code § 12532 ............................................................................................................... 3

Cal. Lab. Code § 90.2 .................................................................................................................... 3

Cal. Lab. Code § 1019.2 ................................................................................................................ 3

**REGULATIONS**

8 C.F.R. § 245.24 .......................................................................................................................... 5

**OTHER AUTHORITIES**

ADL, *Comparison of FBI Hate Crime Statistics (2016-2000)* (Nov. 2017),
   https://www.adl.org/sites/default/files/documents/Final%20PDF%20FBI%20
   Hate%20Crime%20Statistics%20Comparison%202000-
   2016%20%282%29.pdf ........................................................................................................ 9

ADL, *Executive Order on So-Called "Sanctuary Cities" Puts All Communities at
   Risk, ADL Says* (Jan. 25, 2017), https://www.adl.org/news/press-
   releases/executive-order-on-so-called-sanctuary-cities-puts-all-communities-
   at-risk-adl ............................................................................................................................... 8

ADL, *Hate Crimes*, https://www.adl.org/what-we-do/combat-hate/hate-crimes
   (last visited May 14, 2018) .................................................................................................... 8

ADL, *Testimony of Jonathan A. Greenblatt CEO and National Director Anti-Defamation League Before the Senate Judiciary Committee Hearings on Responses to Increase in Religious Hate Crimes* (May 2, 2017), https://www.adl.org/sites/default/files/documents/Final%20ADL%20statement%20Senate%20Judiciary%20Committee%20on%20combatting%20religious%20hate%20crime.pdf ........................................................................................... 10

Bureau of Justice Statistics, *Majority of Hate Crime Victimizations Go Unreported to Police* (June 29, 2017), https://www.bjs.gov/content/pub/press/hcv0415pr.cfm ....................................................... 10

Carolina Moreno, *Houston Police Announce Decrease in Latinos Reporting Rape, Violent Crimes* (Apr. 10, 2017), http://www.huffingtonpost.com/entry/houston-police-announces-decrease-in-latinos-reporting-rape-violent-crimes_us_58ebd5fae4b0df7e204455f4 ................................ 6

Chris Magnus, *Tuscon's Police Chief: Sessions's Anti-Immigrant Policies Will Make Cities More Dangerous*, N.Y. TIMES (Dec. 6, 2017) ........................................................ 6

Eyder Peralta, *You Say You're an American, but What If You Had to Prove It or Be Deported?*, NPR (Dec. 22, 2016), http://www.npr.org/sections/thetwo-way/2016/12/22/504031635/you-say-you-re-an-american-butwhat-if-you-had-to-prove-it-or-be-deported#foot1 ............................................................................................ 5

German Lopez, *A New FBI Report Says Hate Crimes – Especially Against Muslims – Went up in 2016*, VOX (Nov. 13, 2017). https://www.vox.com/identities/2017/11/13/16643448/fbi-hate-crimes-2016 ........................ 8

H.R. REP. NO. 111-86 ........................................................................................................... 8

Int'l Ass'n of Chiefs of Police, *Police Chiefs Guide to Immigration Issues* 28 (July 2007), http://www.theiacp.org/Portals/0/pdfs/Publications/PoliceChiefsGuidetoImmigration.pdf ........................................................................................................................ 9

James Queally, *Fearing Deportation, Many Domestic Violence Victims Are Steering Clear of Police and Courts*, L.A. TIMES (October 9, 2017), http://www.latimes.com/local/lanow/la-me-ln-undocumented-crime-reporting-20171009-story.html ............................................................................................................ 6

Jason McGahan, *Day Laborers Have Become an Easy Target for Anti-Immigrant Vigilantes*, LA WEEKLY (Jan. 10, 2017), http://www.laweekly.com/news/day-laborers-have-become-an-easy-target-for-anti-immigrant-vigilantes-7803494 ..................... 10

Jeanine Braud, *et al.*, *U Visas for Immigrant Victims of Hate Crimes: A Practice Guide for Advocates*, U.C. BERKELEY PUB. L. AND LEGAL THEORY RESEARCH PAPER SERIES 20 (June 26, 2014), https://ssrn.com/abstract=2459315 .................................. 9

Jennifer Medina, *Too Scared to Report Sexual Abuse. The Fear: Deportation*, N.Y. TIMES (Apr. 30, 2017), https://nyti.ms/2qkt2wM .......................................................... 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

iii

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

Katayoun Kishi, *Assaults Against Muslims in U.S. Surpass 2001 Level*, PEW RESEARCH CENTER (Nov. 15, 2017), http://www.pewresearch.org/fact-tank/2017/11/15/assaults-against-muslims-in-u-s-surpass-2001-level .................................................................................................. 9

L.A. Cty. Comm'n on Human Relations, *2015 Hate Crime Report*, http://www.lahumanrelations.org/hatecrime/reports/2015%20Hate%20Crime%20Report%20PDF%20(1).pdf ............................................................................. 8

Liz Robbins, *New Weapon in Day Laborers' Fight Against Wage Theft: A Smartphone App*, N.Y. TIMES (Mar. 1, 2016), https://www.nytimes.com/2016/03/02/nyregion/new-weapon-in-day-laborers-fight-against-wage-theft-a-smartphone-app.html ............................................................... 10

Matthew Scheider, *Community Policing Nugget*, COPS OFFICE, USDOJ (Feb. 2008), http://web.archive.org/web/20170311171441/https:/cops.usdoj.gov/html/dispatch/february_2008/nugget.html .................................................................................. 4

Megan Casidy, *Phoenix Police: Armed robber targets day laborers with promise of work*, THE REPUBLIC (July 30, 2015), http://www.azcentral.com/story/news/local/phoenix/2015/07/30/phoenix-police-armed-robber-lobo-bandit-targets-day-laborers-promise-work/30918721 .................................................................................................... 10

Michael Shively, *et al.*, *Understanding Trends in Hate Crimes Against Immigrants and Hispanic-Americans*, NAT'L INST. OF JUSTICE (Dec. 27, 2013), https://www.ncjrs.gov/pdffiles1/nij/grants/244755.pdf ........................................ 9, 10

National Immigrant Women's Advocacy Project, *Promoting Access to Justice for Immigrants and Limited English Proficient Crime Victims in an Age of Increased Immigration Enforcement: Initial Report from a 2017 National Survey*, at 35 (May 3, 2018), http://library.niwap.org/wp-content/uploads/Immigrant-Access-to-Justice-National-Report.pdf. .................................... 6

Patrick McGreevy, *Hate Crimes Rise in California, State Report Says*, L.A. TIMES (July 3, 2017), http://www.latimes.com/politics/essential/la-pol-ca-essential-politics-updates-hate-crimes-rise-in-california-with-1499106658-htmlstory.html ......................................................................................................................... 9

Ric Anderson, *Q+A: ADL Leader Says That as Trump Surged, So Did Hate Crimes*, LAS VEGAS SUN (Dec. 22, 2016), https://lasvegassun.com/news/2016/dec/22/qa-adl-leader-says-that-as-trump-surged-so-did-hat .................................................................................................................... 8

Ryan Lucas, *Hate Crimes up in 2016, FBI Statistics Show*, NATIONAL PUBLIC RADIO (Nov. 13, 2017), https://www.npr.org/2017/11/13/563737883/hate-crimes-up-in-2016-fbi-statistics-show ................................................................................... 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

iv

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

*Sanctuary Cities Don't 'Breed Crime.' They Encourage People to Report Crime*,
  THE WASHINGTON POST (Apr. 24, 2018),
  https://www.washingtonpost.com/news/monkey-
  cage/wp/2018/04/24/sanctuary-cities-dont-breed-crime-they-encourage-
  people-to-report-crime/?noredirect=on&utm_term=.2a830008f040 ...................................... 7

Sefano Camino, Giovanni Mastrobuoni, & Antonio Nicolo, *Silence of the
  Innocents: Illegal Immigrants' Underreporting of Crime and their
  Victimization*, IZA (Oct. 2016),
  https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2861091 ............................................. 5

Stephen Lee, *Policing Wage Theft in the Day Labor Market*, 4 U.C. IRVINE L.
  REV. 655 (2014) ................................................................................................................. 10

Tom K. Wong, *The Effects of Sanctuary Policies on Crime and the Economy*,
  CTR. FOR AM. PROGRESS (Jan. 26, 2017),
  https://www.americanprogress.org/issues/immigration/
  reports/2017/01/26/297366/the-effects-of-sanctuary-policies-on-crime-and-
  the-economy ........................................................................................................................ 7

*United States*, UNIVISIONNEWS (June 14, 2017),
  https://www.univision.com/univision-news/united-states/six-months-of-hate-
  how-anti-immigrant-sentiment-is-affecting-latinos-in-the-united-states ................................ 8

USCIS, *Victims of Criminal Activity: U Nonimmigrant Status* (Aug. 2017),
  https://www.uscis.gov/humanitarian/victims-human-trafficking-other-
  crimes/victims-criminal-activity-u-nonimmigrant-status/victims-criminal-
  activity-u-nonimmigrant-status (last visited May 14, 2018) ................................................... 5

# IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Anti-Defamation League ("ADL") is a non-profit organization that fights anti-Semitism and all forms of bigotry, defends democratic ideals, and protects civil rights for all.  ADL has regional offices across the country, including five offices in California.

ADL is a leading organization in preventing and responding to hate crimes, having drafted the nation's first model hate crime law and having led a large coalition advocating for the passage of the federal Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act.  ADL has also been recognized as a leading resource on effective responses to violent bigotry and building bridges of communication, understanding, and respect among diverse communities.  To support those aims, ADL trains law enforcement on issues including hate crimes and implicit bias.

ADL is uniquely situated to assist the Court in evaluating the United States' requested preliminary injunction.  Specifically, ADL can provide perspective on the likely suppressive effect of the injunction on the reporting and prevention of crimes, including hate crimes.  ADL's arguments thus further demonstrate, beyond the parties' briefing, why this Court should deny the preliminary injunction.

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), ADL states that no party's counsel authored this brief in whole or in part, and no party, party's counsel, or other person contributed money intended to fund the preparation or submission of this brief.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

1

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

## I. INTRODUCTION

The preliminary injunction that the United States seeks is not only unconstitutional, but deliberately seeks to undo the protections that California law provides to its most vulnerable communities and residents. Enjoining the provisions of California's duly enacted Senate Bill 54 ("SB 54"), Assembly Bill 450 ("AB 450"), and Assembly Bill 103 ("AB 103") – as the United States requests – would force California to set aside critical protections designed to build trust and cooperation between law enforcement officials and immigrant and minority communities. The resulting erosion of trust between police and citizens would leave a large segment of the population more vulnerable to crimes, especially hate crimes. Indeed, the effects of the injunction would be felt most acutely by those members of society most in need of protection.

California's laws are carefully crafted to comply with federal immigration law, yet at the same time guarantee that citizens are not deterred from reporting crimes or otherwise engaging with local law enforcement because of fears that the authorities will question their immigration status. The goal is to ensure that local law enforcement is focused on deterring and responding to crimes rather than on whether the victim, witness, or offender is an immigrant. In addition to conserving limited resources, California's statutes are thus designed to *assist* local law enforcement – *i.e.*, to advance police-community relations and encourage community members to come forward to report crimes, and turn to police for protection without the fear that their immigration or citizenship status will subject them to legal action themselves.

As California officials and law enforcement leaders around the nation have attested, there is a demonstrable risk that both documented and undocumented immigrants would be dissuaded from engaging with local enforcement efforts, including efforts to combat hate crime, if the requested injunction is entered. In the wake of the anti-immigrant rhetoric and policies advocated by the current Administration, members of immigrant groups already justifiably fear that the police will report their immigration information – or that of a family member or friend – to Immigration and Customs Enforcement ("ICE"), thereby resulting in detention and/or deportation. As a consequence, many individuals are avoiding contact with law enforcement, causing immediate irreparable harm to communities in California and across the country.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

2

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

In the experience of ADL, this break-down of trust and cooperation between police and minority communities leaves communities more vulnerable to hate crimes. Moreover, the resulting lawlessness compromises the safety of *all* citizens and residents, as the elimination of trust in local law enforcement makes it much harder for law enforcement to get the information they need from immigrant communities to prevent crime, including in particular hate crime. Accordingly, ADL submits this *amicus* brief in support of California and urges this Court to deny the United States' request for a preliminary injunction. Only denial of the injunction can prevent the immediate and irreparable harm that will otherwise ensue from the consequent erosion of trust and cooperation between immigrant communities and law enforcement.

## II. ARGUMENT

### A. The California Statutes at Issue Are Aimed at Protecting Victims and Witnesses of Crimes.

Contrary to the United States' assertions, the California laws at issue were not "intended to uniquely impede the enforcement of the immigration laws" (Plaintiff's Motion for a Preliminary Injunction at 32); rather, they were enacted to secure the enforcement of state criminal law, in particular by encouraging victims and witnesses to come forward and report crime, and to protect the rights of vulnerable communities in California.

Specifically, SB 54 was enacted to facilitate the reporting of crimes and strengthen community policing efforts by defining when law enforcement agencies ("LEAs") may use their resources to assist the federal government with immigration enforcement. *See* Cal. Gov't Code § 7284.6. AB 450 was enacted to protect the privacy rights of California workers when the federal government seeks to conduct inspections. *See* Cal. Gov't Code §§ 7285.1, 7285.2; Cal. Lab. Code §§ 90.2, 1019.2. And, AB 103 was enacted to protect the welfare and due process rights of those detained in California for civil immigration-enforcement purposes. *See* Cal. Gov't Code § 12532. These statutes are designed to build trust between LEAs and immigrant communities in California by eliminating the fear that any interaction with law enforcement will inevitably lead to deportation, while also allowing LEAs to engage with federal immigration enforcement when

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

3

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

serious crime is at issue. Moreover, they help protect the safety, well-being, and rights of all people in California.

The statutes, along with other policies and statutes in California, are thus expressly aimed at fostering cooperation and communication between law enforcement and the public. This is the cornerstone of "community policing," which is based on forging partnerships between law enforcement and community members and groups. The U.S. Department of Justice itself has affirmed that the value of community policing efforts depends in the first instance on establishing trust between the community and law enforcement, because "[c]itizens who do not trust the police are less likely to report crime and participate in developing solutions to problems."[1] A critical element of developing this trust – and the animating purpose behind the adoption of the state laws that the United States now challenges – is creating an environment in which both victims and witnesses are willing to come forward and actively participate in criminal investigations. California's protective statutes are designed to do just that, *i.e.*, to encourage community members – regardless of their immigration or citizenship status – to contact and cooperate with local police without fear of deportation or other immigration consequences. Public safety throughout this nation depends on *all* community members having this trust.

### B. The United States' Requested Injunction Suppresses Reporting of Crimes and Compromises Community Safety.

If the Court grants the United States' motion for a preliminary injunction, the California statutes would be dead letters, and the community safety and trust that California has fostered over decades of community policing would be replaced by suspicion and fear. By undermining critical protective statutes and coercing local law enforcement agencies to enforce a federal immigration program, the requested injunction would drive a wedge between police officers and the residents they protect. Immigrants and members of communities with large immigrant

---

[1] Matthew Scheider, *Community Policing Nugget*, CMTY. ORIENTED POLICING SERVS. OFFICE, U.S. DEP'T OF JUSTICE (Feb. 2008), http://web.archive.org/web/20170311171441/https:/cops.usdoj.gov/html/dispatch/february_2008/nugget.html.

US-DOCS\101309135.4

4

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

populations would reasonably fear that their interaction with law enforcement would necessarily lead to unwanted interaction with ICE.  As a result, both undocumented and documented immigrants will be unwilling to report crimes and to assist in police investigations out of justifiable fear that contact with local police will lead to their detention and/or deportation, or that of a family member of friend.[2]

California's recognition that enforcement of state criminal law should be delinked, where possible, from the enforcement of federal immigration law simply echoes what the federal government itself has previously acknowledged.  Indeed, federal agencies have expressly affirmed the importance of encouraging undocumented victims to report criminal activity and cooperate in the prosecution of crimes.  As but one example, 8 C.F.R. § 245.24 provides an incentive for undocumented immigrants who are victims of certain enumerated crimes to report those crimes, and thereby become eligible to apply for lawful immigration status.  U.S. Citizenship and Immigration Services has stated that the purpose of this provision is "to strengthen the ability of law enforcement agencies to investigate and prosecute cases of domestic violence, sexual assault, trafficking of aliens and other crimes, while also protecting victims of crimes."[3]

Consistent with these observations, research has confirmed that the fear of retribution following interaction with law enforcement has serious practical implications for community safety.[4]  Indeed, this Administration's immigration-related policies have exacerbated fears and

---

[2]   Fears of being treated as undocumented are well-founded.  At times, ICE civil detainer requests have been directed towards U.S. Citizens. *See Mendia v. Garcia*, 768 F.3d 1009, 1011 (9th Cir. 2014) (U.S. citizen spent two years in pre-trial detention as a result of the detainer); *Galarza v. Szalczyk*, 745 F.3d 634, 636–38 (3d Cir. 2014) (U.S. citizen held in jail for three days pursuant to erroneous detainer); Eyder Peralta, *You Say You're an American, but What If You Had to Prove It or Be Deported?*, NPR (Dec. 22, 2016), http://www.npr.org/sections/thetwo-way/2016/12/22/504031635/you-say-you-re-an-american-butwhat-if-you-had-to-prove-it-or-be-deported#foot1 (from October 2007 through July 2015, 693 detainers issued to local LEAs were lifted or resolved with the outcome "United States Citizen Interviewed").

[3]   USCIS, *Victims of Criminal Activity:  U Nonimmigrant Status* (Aug. 2017), https://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/victims-criminal-activity-u-nonimmigrant-status (last visited May 14, 2018).

[4]   *See, e.g.*, Sefano Camino, Giovanni Mastrobuoni, & Antonio Nicolo*, Silence of the Innocents:  Illegal Immigrants' Underreporting of Crime and Their Victimization*, IZA (Oct. 2016), https://ssrn.com/abstract=2861091.

anxieties, and thus already changed the landscape of the community's interaction with law enforcement. Since last year, there has been decreased crime reporting in the Latino community.[5] For example, in Houston and Los Angeles, rape reports by Latinos went down by 42.8 and 25 percent, respectively, from 2016.[6] Reports of spousal abuse by Latino victims have declined by 18, 13, and 3.5 percent in San Francisco, San Diego, and Los Angeles, respectively, as compared to 2016, while reporting among non-Latinos has remained the same.[7] The decline in reports of sexual assault, in particular, has led to increased difficultly in investigating and prosecuting domestic violence.[8] In a 2017 survey of law enforcement personnel across the country, officers reported a "decline in cooperation and a rise in fear of law enforcement" among immigrant communities.[9] This decline in cooperation "is leading to increased recidivism by perpetrators of a range of crimes in their communities, including domestic and sexual violence crimes."[10] The overall effect of enjoining California's protective statutes would not be a reduction in crime, but rather an *increase* in crime, as the necessary trust and cooperation between the police and local communities is reduced.

Moreover, contrary to the United States' assertions, there is demonstrable evidence that "sanctuary" policies, such as the policies that animate the statutes at issue, reduce crime. For example, one study completed in early 2017 compared counties with a "sanctuary" policy – *i.e.*, counties that do not assist federal immigration enforcement officials by holding people in

---

[5] *See* Chris Magnus, *Tuscon's Police Chief: Sessions's Anti-Immigrant Policies Will Make Cities More Dangerous*, N.Y. TIMES (Dec. 6, 2017), https://nyti.ms/2nBbnTZ.

[6] Carolina Moreno, *Houston Police Announce Decrease in Latinos Reporting Rape, Violent Crimes* (Apr. 10, 2017), http://www.huffingtonpost.com/entry/houston-police-announces-decrease-in-latinos-reporting-rape-violent-crimes_us_58ebd5fae4b0df7e204455f4.

[7] James Queally, *Fearing Deportation, Many Domestic Violence Victims Are Steering Clear of Police and Courts*, L.A. TIMES (October 9, 2017), http://www.latimes.com/local/lanow/la-me-ln-undocumented-crime-reporting-20171009-story.html.

[8] Jennifer Medina, *Too Scared to Report Sexual Abuse. The Fear: Deportation*, N.Y. TIMES (Apr. 30, 2017), https://nyti.ms/2qkt2wM.

[9] National Immigrant Women's Advocacy Project, *Promoting Access to Justice for Immigrants and Limited English Proficient Crime Victims in an Age of Increased Immigration Enforcement: Initial Report from a 2017 National Survey*, at 35 (May 3, 2018), http://library.niwap.org/wp-content/uploads/Immigrant-Access-to-Justice-National-Report.pdf.

[10] *Id.* at 54.

custody beyond their release date – with non-sanctuary counties that were similar on a broad range of demographic characteristics. The study concluded that "[t]here are, on average, 35.5 fewer crimes committed per 10,000 people in sanctuary counties compared to nonsanctuary counties."[11] Additionally, a recent survey of undocumented Mexican nationals in San Diego County found that that "if local law enforcement officials were working together with ICE, 60.8 percent said they are less likely to report a crime they witnessed, and 42.9 percent said they are less likely to report being a victim of crime."[12] Research has shown that "enlisting local law enforcement agencies to enforce federal immigration law can drive undocumented immigrants deeper into the shadows."[13]

If the United States' requested injunction is granted, the harms that will occur from the breakdown of community policing and crime reporting will be immediate and irreparable. It will be difficult – if not impossible – for local police to rebuild the bonds of trust and cooperation with immigrant communities.

### C. The United States' Requested Injunction Directly and Disproportionately Harms Immigrant Communities and Leaves Them More Vulnerable to Hate Crimes.

By forcing California to set aside its statutes aimed at building trust between police and citizens, the United States will leave a large segment of the population particularly vulnerable to crimes, especially hate crimes.

Forty-five states – including California – and the District of Columbia have shown their commitment to protecting minority groups by enacting hate crime legislation based on, or similar

---

[11] Tom K. Wong, *The Effects of Sanctuary Policies on Crime and the Economy*, CTR. FOR AM. PROGRESS (Jan. 26, 2017), https://www.americanprogress.org/issues/immigration/reports/2017/01/26/297366/the-effects-of-sanctuary-policies-on-crime-and-the-economy.

[12] Tom K. Wong, *Sanctuary Cities Don't 'Breed Crime.' They Encourage People to Report Crime*, THE WASHINGTON POST (Apr. 24, 2018), https://www.washingtonpost.com/news/monkey-cage/wp/2018/04/24/sanctuary-cities-dont-breed-crime-they-encourage-people-to-report-crime/?noredirect=on&utm_term=.2a830008f040.

[13] *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

7

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

to, a model statute drafted by ADL.[14] The landmark Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act of 2009 ("HCPA") created a new federal law which criminalizes willfully causing bodily injury when the crime was committed because of the actual or perceived race, color, religion, or national origin of the victim, or the crime was committed because of actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability, and the crime affected interstate or foreign commerce or occurred within federal special maritime and territorial jurisdiction. 18 U.S.C. § 249(a). The purpose of the HCPA is to create more effective response to and prevention of hate crimes, which "are disturbingly prevalent, [] pose a significant threat to the full participation of all Americans in our democratic society," and "are significantly under-reported."[15] This Congressional commitment to protecting the most vulnerable communities in our society will be directly undermined, and irreparably harmed, by enjoining the California statutes at issue.

ADL has closely monitored and exposed the increasingly hateful anti-immigrant, anti-Latino, and anti-Muslim rhetoric that has surrounded the national debate on immigration reform.[16] During the period since the 2016 presidential election, individuals have reported increased hate incidents and hate crimes targeting Latinos based on perceived immigration status.[17] Indeed, studies have shown that reported hate crimes have been on the rise.[18] For

---

[14] ADL, *Hate Crimes*, https://www.adl.org/what-we-do/combat-hate/hate-crimes (last visited May 14, 2018).

[15] H.R. REP. NO. 111-86 at 5.

[16] ADL, *Executive Order on So-Called "Sanctuary Cities" Puts All Communities at Risk, ADL Says* (Jan. 25, 2017), https://www.adl.org/news/press-releases/executive-order-on-so-called-sanctuary-cities-puts-all-communities-at-risk-adl; Ric Anderson, *Q+A: ADL Leader Says That as Trump Surged, So Did Hate Crimes*, LAS VEGAS SUN (Dec. 22, 2016), https://lasvegassun.com/news/2016/dec/22/qa-adl-leader-says-that-as-trump-surged-so-did-hat.

[17] Jessica Weiss, *Six Months of Hate: How Anti-immigrant Sentiment Is Affecting Latinos in the United States*, UNIVISIONNEWS (June 14, 2017), https://www.univision.com/univision-news/united-states/six-months-of-hate-how-anti-immigrant-sentiment-is-affecting-latinos-in-the-united-states.

[18] *See, e.g.,* German Lopez, *A New FBI Report Says Hate Crimes – Especially Against Muslims – Went up in 2016*, VOX (Nov. 13, 2017). https://www.vox.com/identities/2017/11/13/16643448/fbi-hate-crimes-2016 (according to FBI statistics, reported hate crimes in 2016 increased by nearly 5 percent); L.A. Cty. Comm'n on Human Relations, *2015 Hate Crime Report*, http://www.lahumanrelations.org/hatecrime/reports/2015%20Hate%20Crime%20Report%20PDF%20(1).pdf (finding that crimes targeting Latino/as jumped 69 percent in Los Angeles County

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

8

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

example, California saw an 11.2 percent increase in reported hate crimes from 2015 (before the anti-immigrant rhetoric of the election campaign) to 2016, with the majority of the reported hate crimes in California in 2016 occurring on the basis of race, ethnicity, or national origin.[19] The FBI reported in November 2017 that, nationally, hate crimes rose nearly 5 percent from 2015 to 2016, including a 19 percent increase in anti-Muslim hate crimes.[20]

People within immigrant communities are especially vulnerable to hate crime.[21] One study found that "[i]n a national survey of 464 immigration service providers conducted in 2012 [], advocates reported that 73% of hate crime victims they had served were targeted on the basis of immigration status/nationality."[22] Both documented and undocumented immigrants, and even members of minority communities that may be perceived as immigrants, face an increased danger of hate crimes.

While the increased number of reported hate crimes is already troubling, the data certainly *underrepresents* the number of hate crimes occurring across the U.S.  Out of 15,254 law enforcement agencies that participated in FBI's Hate Crime Statistics Act data collection in 2016, less than 12 percent reported one or more hate crimes to the FBI.[23]  Data obtained by the Bureau of Justice Statistics' National Crime Victimization Survey show that, from 2011 to 2015,

---

in 2015); Michael Shively, *et al.*, *Understanding Trends in Hate Crimes Against Immigrants and Hispanic-Americans*, NAT'L INST. OF JUSTICE (Dec. 27, 2013), https://www.ncjrs.gov/pdffiles1/nij/grants/244755.pdf ("From 2010 to 2011, there was a statistically significant increase in the prevalence of harassment or bullying targeting Hispanics because of their ethnicity.").

[19] Patrick McGreevy, *Hate Crimes Rise in California, State Report Says*, L.A. TIMES (July 3, 2017), http://www.latimes.com/politics/essential/la-pol-ca-essential-politics-updates-hate-crimes-rise-in-california-with-1499106658-htmlstory.html.

[20] Ryan Lucas, *Hate Crimes up in 2016, FBI Statistics Show*, NATIONAL PUBLIC RADIO (Nov. 13, 2017), https://www.npr.org/2017/11/13/563737883/hate-crimes-up-in-2016-fbi-statistics-show; Katayoun Kishi, *Assaults Against Muslims in U.S. Surpass 2001 Level*, PEW RESEARCH CENTER (Nov. 15, 2017), http://www.pewresearch.org/fact-tank/2017/11/15/assaults-against-muslims-in-u-s-surpass-2001-level.

[21] Int'l Ass'n of Chiefs of Police, *Police Chiefs Guide to Immigration Issues* 28 (July 2007), http://www.theiacp.org/Portals/0/pdfs/Publications/PoliceChiefsGuidetoImmigration.pdf.

[22] Jeanine Braud, *et al.*, *U Visas for Immigrant Victims of Hate Crimes:  A Practice Guide for Advocates*, U.C. BERKELEY PUB. L. AND LEGAL THEORY RESEARCH PAPER SERIES 20 (June 26, 2014), https://ssrn.com/abstract=2459315.

[23] ADL, *Comparison of FBI Hate Crime Statistics (2016-2000)* (Nov. 2017), https://www.adl.org/sites/default/files/documents/Final%20PDF%20FBI%20Hate%20Crime%20Statistics%20Comparison%202000-2016%20%282%29.pdf.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

9

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

the majority (54 percent) of hate crime victimizations in the U.S. were not reported to the police.[24]

Moreover, the most likely victims of hate crimes are also those least likely to report those crimes.[25] These individuals are often immigrants who face cultural and language barriers, along with fear of deportation or reprisal if they report incidents to the police.[26] Immigrant victims of crime often do not recognize the victimization they face as a crime and, even when a victim overcomes substantial barriers and reports a crime, "the crime may not be recognized as bias motivated by the local police because of lack of training or language difficulties."[27]

These barriers extend beyond the fear of reporting violent crimes to infect every aspect of immigrant life. Indeed, people within immigrant communities are particularly susceptible to economic crimes, including wage theft and other employer abuses.[28] Day laborers are easy targets for unscrupulous employers, who hire them and then disappear before paying their day's wages.[29] Workers who are robbed of their wages are often afraid to report the theft because of their immigration status. As Professor Stephen Lee of the University of California, Irvine School of Law stated, "[D]istrust of the police effectively neutralizes the potential of wage theft statutes when enforced against employers who hire unauthorized immigrant workers."[30]

---

[24] Bureau of Justice Statistics, *Majority of Hate Crime Victimizations Go Unreported to Police* (June 29, 2017), https://www.bjs.gov/content/pub/press/hcv0415pr.cfm.

[25] ADL, *Testimony of Jonathan A. Greenblatt CEO and National Director Anti-Defamation League Before the Senate Judiciary Committee Hearings on Responses to Increase in Religious Hate Crimes* (May 2, 2017), https://www.adl.org/sites/default/files/documents/Final%20ADL%20statement%20Senate%20Judiciary%20Committee%20on%20combatting%20religious%20hate%20crime.pdf.

[26] *Id.*

[27] Michael Shively, *et al.*, *Understanding Trends in Hate Crimes Against Immigrants and Hispanic-Americans*, NAT'L INST. OF JUSTICE (Dec. 27, 2013), https://www.ncjrs.gov/pdffiles1/nij/grants/244755.pdf.

[28] Liz Robbins, *New Weapon in Day Laborers' Fight Against Wage Theft: A Smartphone App*, N.Y. TIMES (Mar. 1, 2016), https://nyti.ms/2mJBnst.

[29] Stephen Lee, *Policing Wage Theft in the Day Labor Market*, 4 U.C. IRVINE L. REV. 655 (2014).

[30] *Id.* at 665. Day laborers are also especially vulnerable to robberies and anti-immigration vigilantes. *See, e.g.,* Jason McGahan, *Day Laborers Have Become an Easy Target for Anti-Immigrant Vigilantes*, LA WEEKLY (Jan. 10, 2017), http://www.laweekly.com/news/day-laborers-have-become-an-easy-target-for-anti-immigrant-vigilantes-7803494; Megan Cassidy, *Phoenix Police: Armed Robber Targets Day Laborers with Promise of Work*, THE REPUBLIC

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

10

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF

If the United States' requested preliminary injunction is entered, victims and witnesses will hesitate to contact law enforcement when doing so may subject them or their family members to possible detention or deportation in the absence of statutory protections.  Combined with the current atmosphere surrounding the immigration debate, this lack of community engagement will leave vast portions of the population especially vulnerable to hate crimes and other criminal attacks.  Offenders will specifically target victims in immigrant communities without fear of prosecution.  Indeed, it effectively will create an underclass of people – primarily, although by no means exclusively, in the Latino community – who have no meaningful access to police services.  These effects of the United States' actions are immediate and irreparable – law enforcement officials around the nation have spent countless hours building relationships with immigrant communities that now are being threatened or destroyed.

## III. CONCLUSION

For the foregoing reasons, ADL requests that the Court deny the United States' Motion for a Preliminary Injunction.

DATED:  May 18, 2018

LATHAM & WATKINS LLP

By  */s/ Robert W. Perrin*
    Robert W. Perrin
    Sarah F. Mitchell
    Michael A. Hale
355 S. Grand Ave., Suite 100
Los Angeles, CA 90071
(213) 485-1234

ANTI-DEFAMATION LEAGUE
    Steven M. Freeman
    Melissa Garlick

605 Third Avenue
New York, NY 10158
(212) 885-7700

Attorneys for Anti-Defamation League

---

(July 30, 2015), http://www.azcentral.com/story/news/local/phoenix/2015/07/30/phoenix-police-armed-robber-lobo-bandit-targets-day-laborers-promise-work/30918721.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\101309135.4

11

ANTI-DEFAMATION LEAGUE'S
*AMICUS CURIAE* BRIEF