BRADLEY S. PHILLIPS (State Bar No. 85263)
bradley.phillips@mto.com
GREGORY D. PHILLIPS (State Bar No. 118151)
gregory.phillips@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
T: (213) 683-9100
F: (213) 687-3702
Brad.Phillips@mto.com

*Counsel for Amici Curiae*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE OF CALIFORNIA, EDMUND GERALD BROWN JR., Governor of California, in his official capacity; and XAVIER BECERRA, Attorney General of the State of California, in his official capacity,<br><br>Defendants. | Case No. 2:18-cv-00490-JAM-KJN<br><br>**PROPOSED BRIEF OF *AMICI CURIAE* OF IMMIGRATION, LABOR AND EMPLOYMENT LAW SCHOLARS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION RE: AB 450**<br><br>Date:   None<br>Time:   None<br>Judge:  Hon. John A. Mendez<br><br>Complaint Filed:   March 6, 2018 |

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTERESTS OF AMICI..................................................................... 1

SUMMARY OF ARGUMENT........................................................................................ 1

ARGUMENT.................................................................................................................... 2

I.   The United States' Presentation of the Legislative Purposes and Objectives of IRCA
     Is Incomplete ......................................................................................................... 2

II.  AB 450 Is Not Conflict Preempted ....................................................................... 5

     A.   AB 450's Purpose Is to Ensure Workers Are Aware of Their Rights and Feel Safe
          Exercising Them............................................................................................. 6

     B.   California Possesses Expansive Authority to Regulate the Employment
          Relationship to Protect Workers.................................................................... 8

     C.   AB 450 Does Not Pose an Obstacle to IRCA .............................................. 10

          1.   IRCA Provides Immigration Authorities with a Comprehensive Set of
               Investigatory Tools and Does Not Rely on Voluntary Access to Implement the
               Federal Scheme....................................................................................... 10

          2.   Limiting Voluntary Access Will Help Ensure Bona Fide Investigations and
               Reduce Retaliation .................................................................................. 12

III. AB 450 Is Not Barred by the Intergovernmental Immunity Doctrine ........................ 13

CONCLUSION ............................................................................................................... 15

PROPOSED BRIEF OF AMICI CURIAE IN SUPP. OF OPP'N TO MOT. FOR PRELIM. INJ.

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Arizona v. United States*,
  567 U.S. 387 (2012) ........................................................................................ 2, passim

*Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake, Inc.)*,
  35 F.3d 1348 (9th Cir. 1994) ................................................................................. 2, 6

*Boeing Co. v. Movassaghi*,
  768 F.3d 832 (9th Cir. 2014) ................................................................................... 14

*Chamber of Commerce v. Whiting*,
  563 U.S. 582 (2011) .................................................................................................. 9

*DeCanas v. Bica*,
  424 U.S. 351 (1976) .................................................................................................. 8

*Does I thru XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) .................................................................................. 7

*Goldstein v. California*,
  412 U.S. 546 (1973) ............................................................................................... 2, 6

*Hoffman Plastic Compounds, Inc. v. NLRB*,
  535 U.S. 137 (2002) .................................................................................................. 3

*I.N.S. v. Delgado*,
  466 U.S. 210 (1984) ............................................................................................. 11, 12

*Illinois v. Rodriguez*,
  497 U.S. 177 (1990) ................................................................................................ 13

*Int'l Molders' Allied Workers' Local Union No. 164 v. Nelson*,
  799 F.2d 547 (9th Cir. 1986) .................................................................................. 11

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) (per curiam) ............................................................................. 2

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) .................................................................................................. 8

*Nat'l Ctr. for Immigrants' Rights v. I.N.S.*,
    913 F.2d 1350 (9th Cir. 1990), *rev'd on other grounds*, 502 U.S. 183
    (1991) ................................................................................................................ 1, 5

*North Dakota v. United States*,
    495 U.S. 423 (1990) ........................................................................................ 14

*Puente Ariz. v. Arpaio*,
    No. CV-14-01356-PHX-DGC, 2017 WL 1133012 (D. Ariz. Mar. 27,
    2017) .................................................................................................................. 5

*Puente Ariz. v. Arpaio*,
    Nos. 15-15211, 15-15213, 15-215, 2016 WL 1181917 (9th Cir. filed
    Mar. 2, 2016) ..................................................................................................... 4

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947) ...................................................................................... 5, 8

*Rivera v. NIBCO, Inc.*,
    364 F.3d 1057 (9th Cir. 2004) .......................................................................... 7

*Silkwood v. Kerr–McGee Corp.*,
    464 U.S. 238 (1984) .......................................................................................... 6

*Sure-Tan, Inc. v. NLRB*,
    467 U.S.884 (1984) ........................................................................................... 8

*Total TV v. Palmer Commc'ns, Inc.*,
    69 F.3d 298 (9th Cir.1995) ............................................................................... 6

*United States v. City of Arcata*,
    629 F.3d 986 (9th Cir. 2009) .......................................................................... 14

*United States v. Matlock*,
    415 U.S. 164 (1974) ........................................................................................ 13

*Wyeth v. Levine*,
    555 U.S. 555 (2009) .......................................................................................... 1

**STATE CASES**

*Del. Valley Field Servs. v. Ramirez*,
    105 A.3d 396 (Del. Super. Ct. 2012), *aff'd sub nom. Del. Valley Field
    Servs. v. Melgar-Ramirez*, 61 A.3d 617 (Del. 2013) ...................................... 9

*Grocers Supply, Inc. v. Cabello*,
    390 S.W.3d 707 (Tex. App. 2012) ..................................................................... 9

PROPOSED BRIEF OF AMICI CURIAE IN SUPP. OF OPP'N TO MOT. FOR PRELIM. INJ.

*Salas v. Sierra Chemical Co.*,
    59 Cal. 4th 407 (2014) ............................................................................................... 8, 9

*Sanchez v. Dahlke Trailer Sales, Inc.*,
    897 N.W.2d 267 (Minn. 2017)......................................................................................... 9

**FEDERAL STATUTES**

8 U.S.C. § 1324a(e)-(f) ............................................................................................................ 3

8 U.S.C. § 1324a(h)(2) ............................................................................................................ 9

8 U.S.C. § 1357 ...................................................................................................................... 12

IRCA, Pub. L. No. 99-603 § 111(d) ..................................................................... 1, passim

**STATE STATUTES**

Cal. Gov't Code § 7285.1(a) ................................................................................................ 13

Cal. Gov't Code § 7285.2(a)(2)............................................................................................ 11

Cal. Lab. Code § 90.2 ............................................................................................................ 11

Cal. Lab. Code §§ 1019-1019.1 ............................................................................................. 6

**FEDERAL REGULATIONS**

8 C.F.R. § 274.2...................................................................................................................... 11

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 99-682, pt. 1, at 8-9 (1986) .......................................................................... 5

H.R. Rep. No. 99-682, pt. 1, at 46 (1986) ....................................................................... 5, 9

H.R. Rep. No. 99-682, pt. 2, at 8-9 (1986) ...................................................................... 1, 4

S. Rep. No. 99-132, at 8 (1985)............................................................................................. 5

S. Rep. No. 99-132, at 18-26 (1985) ..................................................................................... 3

S. Rep. No. 99-132, at 108 (1985)......................................................................................... 4

**TREATISES**

11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure 2948
    (2d ed. 1995) ................................................................................................................... 2

1

**OTHER AUTHORITIES**

Andrew Khouri, *More Workers Say Their Bosses Are Threatening to Have Them Deported*, L.A. Times (Jan. 3, 2018), http://www.latimes.com/business/la-fi-immigration-retaliation-20180102-story.html ................................................................. 7

Bernard Bell, *United States v. California: A Preliminary Assessment of the Challenge to California's "Immigrant Worker Protection Act*," Yale J. on Reg. Notice & Comment Blog (Mar. 31, 2018), http://yalejreg.com/nc/united-states-v-california-a-preliminary-assessment-of-the-challenge-to-californias-immigrant-worker-protection-act-by-bernard-w-bell/ ............................................... 13

Catherine Fisk, *The Anti-Subordination Principle of Labor and Employment Law Preemption*, 5 Harv. L. & Pol'y Rev. 17, 19 (2011) ............................. 10

Gillian E. Metzger, *Federalism and Federal Agency Reform*, 111 Colum. L. Rev. 1, 57 (2011) ........................................................... 14

*ICE Administrative Removal Warrants (MP3)*, Fed. Law Enforcement Training Ctr., https://www.fletc.gov/audio/ice-administrative-removal-warrants-mp3 (last visited May 15, 2018) ..................................... 12

*I-9 Central: Inspections*, U.S. Citizenship & Immigration Services, https://www.uscis.gov/i-9-central/retain-store-form-i-9/inspection/inspections (last visited May 14, 2018) .................................... 11

*Inspection Process*, U.S. Immigration and Customs Enforcement (Jan. 8, 2018), https://www.ice.gov/factsheets/i9-inspection ................................... 11

Justin Miller, *Trump's Immigration Crackdown Is Dangerous for Workers (Not Just Immigrants)*, Am. Prospect (Jan. 31, 2017), http://prospect.org/article/trump%E2%80%99s-immigration-crackdown-dangerous-workers-not-just-immigrants ........................................ 7

Kathleen Kim, *The Trafficked Worker as Private Attorney General: A Model for Enforcing the Civil Rights of Undocumented Workers* .............................. 7

Kati L. Griffith, *The Power of a Presumption: California as a Laboratory for Unauthorized Immigrant Workers' Rights*, 50 U.C. Davis L. Rev. 1279 (2017) ........................................................................ 8

Kati L. Griffith, *When Federal Immigration Exclusion Meets Subfederal Workplace Inclusion: A Forensic Approach to Legislative History*, 17 N. Y.U. J ............................................................. 4, 8, 10

PROPOSED BRIEF OF AMICI CURIAE IN SUPP. OF OPP'N TO MOT. FOR PRELIM. INJ.

Lawrence Tribe, *Intergovernmental Immunities in Litigation, Taxation and Regulation: Separation of Powers Issues in Controversies about Federalism*, 89 Harv. L. Rev. 682, 682, 701-11 (1976) ................................................. 15

Memorandum of John Kelly, Sec'y, U.S. Dep't of Homeland Security, Enforcement of the Immigration Laws to Serve the National Interest 2 (Feb. 20, 2017), https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Enforcement-of-the-Immigration-Laws-to-Serve-the-National-Interest.pdf............................ 5

Memorandum of John Morton, Dir., U.S. Immigration and Customs Enforcement on Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs (June 17, 2011), https://www.ice.gov/doclib/secure-communities/pdf/domestic-violence.pdf.......................................................... 5

Michael J. Wishnie, *Emerging Issues for Undocumented Workers*, 6 U. Pa. J. Lab. & Emp. L. 497 (2004) ...................................................................................... 10

Revised Memorandum of Understanding Between the Departments of Homeland Security and Labor Concerning Enforcement Activities at Worksites (Dec. 7, 2017), https://www.dol.gov/asp/media/reports/DHS-DOL-MOU.pdf ................................................................................................................ 5

Statement of President Reagan Upon Signing S. 1200, Nov. 10, 1986, reprinted in 1986 U.S.C.C.A.N. 5856-1, 5856-1 ........................................................ 3

PROPOSED BRIEF OF AMICI CURIAE IN SUPP. OF OPP'N TO MOT. FOR PRELIM. INJ.

## IDENTITY AND INTERESTS OF AMICI

Amici curiae are 26 scholars of immigration, labor and/or employment law who have an interest in the proper construction of federal immigration law and its interaction with labor and employment law. Amici, who are listed in Appendix A, respectfully submit this brief to address critical issues of statutory interpretation and the resolution of alleged conflicts between federal immigration law and state and local efforts to protect workers.

## SUMMARY OF ARGUMENT

Policymakers today face significant challenges balancing the demands of a changing economy with the promotion of the health, safety and security of a diverse workforce. State and local governments have long been regulatory pioneers in this area, to the benefit of the nation. In California, where immigrants comprise one-third of the labor force, legislators have enacted AB 450 (the "Immigrant Worker Protection Act") out of a concern that employer participation in anticipated immigration round-ups would unacceptably threaten the State's ability to realize its labor and employment goals. Though the specific provisions of AB 450 are far from radical, they have drawn the ire of the current administration. Alleging that AB 450 offends the Supremacy Clause, the United States has moved this Court to preliminarily enjoin California's new law.

The "touchtone in every pre-emption case" is Congress's purpose, *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation omitted), not that of the Executive Branch. In this brief, amici have compiled important information about the purposes and objectives of the Immigration Reform and Control Act of (1986) ("IRCA"). Our research shows that IRCA was a "carefully crafted political compromise," *Nat'l Ctr. for Immigrants' Rights v. I.N.S.*, 913 F.2d 1350, 1366 (9th Cir. 1990), *rev'd on other grounds*, 502 U.S. 183 (1991), designed to balance a range of interests, including the protection of undocumented workers, whose exploitation up to that point had had a "depressing effect on working conditions" for all, H.R. Rep. No. 99-682, pt. 2, at 8-9 (1986).

PROPOSED BRIEF OF AMICI CURIAE IN SUPP. OF OPP'N TO MOT. FOR PRELIM. INJ.

By reducing the power disparity between employers and employees when it comes to dealing with immigration authorities, AB 450 ensures that immigrant workers are better able to enforce their labor rights. In this way, AB 450's provisions are not anathema to Congress's objectives, but rather reconcilable with them.

To prevail on a claim of conflict preemption, the United States must do more than suggest that AB 450 makes the job of immigration authorities "more difficult." *Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev.* (*In re Baker & Drake, Inc.*), 35 F.3d 1348, 1354 (9th Cir. 1994). Preemption is found only in "those situations where conflicts will necessarily arise." *Goldstein v. California*, 412 U.S. 546, 554 (1973). AB 450 is a legitimate exercise of California's police powers. The federal scheme does not rely on immigration authorities having voluntary access to workplaces. The Court should find that the United States has not met its burden to show a likelihood of success on its preemption claim.

Further, the Court should not expand the doctrine of intergovernmental immunity in the way the United States requests. States need room to innovate to meet the labor and employment challenges of our time. A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure 2948 (2d ed. 1995)). The Court should deny the United States' motion.

## ARGUMENT

### I. The United States' Presentation of the Legislative Purposes and Objectives of IRCA Is Incomplete

In order to succeed on a claim that AB 450 is preempted because it conflicts with federal law, the United States must show that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399-400 (2012) (citation omitted). The United States would have the Court believe that IRCA's purpose—like that of the current

administration's—is singularly focused on maximizing immigration enforcement in the workplace. Mot. for Prelim. Inj. 11-2, ECF No. 2-1 ("PI Motion").  However, as amici explain below, Congress's purpose in enacting IRCA was far more nuanced than the United States suggests, reflecting a balance of a range of interests. *Arizona*, 567 U.S. at 405. Notably, Congress focused its sanctions on *employers* and deliberately did not impose additional penalties on employees; it recognized that marginalizing undocumented workers "who already face the possibility of employer exploitation" would incentivize employers to hire them and depress working conditions generally, thereby undermining IRCA's success. *Id.* at 399. To evaluate the United States' claim properly, the Court must assess these "purposes and objectives of Congress" by engaging in an examination of IRCA's text and legislative history. *Id.* at 399 (citation omitted).

Congress enacted IRCA in 1986 to "combat[] the employment of [unauthorized immigrants][.]" *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002). The measure was the product of a lengthy legislative process dating back to 1971. S. Rep. No. 99-132, at 18-26 (1985) (discussing the 15-year history of IRCA). Upon signing the bill, President Reagan described IRCA as "one of the longest and most difficult legislative undertakings of recent memory." Statement of President Reagan Upon Signing S. 1200, Nov. 10, 1986, reprinted in 1986 U.S.C.C.A.N. 5856-1, 5856-1.

A primary goal of IRCA was to reduce the economic incentives for employers to hire undocumented workers. One way in which IRCA sought to achieve this goal was to impose a graduated series of civil and criminal sanctions on employers who knowingly employ undocumented workers. *See* 8 U.S.C. § 1324a(e)-(f). Congress also believed, however, that it was important to allocate funds to vigorous enforcement of labor standards in workplaces where undocumented workers were employed. IRCA, Pub. L. No. 99-603 § 111(d) (appropriating funds for enforcement activities of Department of Labor's Wage and Hour Division to "deter the employment of unauthorized [immigrants] and remove the economic incentive for employers to exploit and use such [immigrants]"). Congress made clear that it was also not displacing state and federal

power "to remedy unfair practices committed against undocumented employees for . . . engaging in [protected] activit[y]." H.R. Rep. No. 99-682, pt. 2, at 8-9 (1986).

An empirical analysis of IRCA's legislative history by an amicus confirms that labor concerns were at the center of the debate. *See* Kati L. Griffith, *When Federal Immigration Exclusion Meets Subfederal Workplace Inclusion: A Forensic Approach to Legislative History*, 17 N.Y.U. J. Legis. & Pub. Pol'y 881, 909-14 (2014) (finding that a "systematic review of IRCA's legislative history supports the . . . view that labor concerns were a main tenet of IRCA's purposes"). Legislators had concerns about the impact of unauthorized migration on authorized workers as well as about the treatment of unauthorized workers. *Id.* They "more often than not linked the treatment of unauthorized workers with their concern for authorized workers," *id.* at 910, noting the harmful effects of the existence of an "exploitable underclass . . . fearful of reporting job-related abuse and who have virtually nowhere to turn," *id.* at 915 (quoting S. Rep. No. 99-132, at 108 (1985)).

Consistent with this understanding, when designing the federal scheme, Congress deliberately chose not to impose additional penalties on workers for unauthorized work or commit to unyielding enforcement of the immigration laws against workers. Congress's decision not to impose criminal penalties on undocumented workers "reflect[ed] a considered judgment that making criminals out of [noncitizens] . . . who already face the possibility of employer exploitation because of their removable status" would exacerbate their weak bargaining position and "be inconsistent with federal policy and objectives." *Arizona*, 567 U.S. at 405. Congress also made the federal scheme versatile, allowing for the exercise of prosecutorial discretion to accommodate, among other interests, the legislative goals of IRCA. *See* Amicus Brief of the United States in *Puente Ariz. v. Arpaio*, Nos. 15-15211, 15-15213, 15-215, 2016 WL 1181917, at *19 (9th Cir. filed Mar. 2, 2016).[1] Finally, Congress limited the uses to which the new system of

---

[1] For example, in 2011, the Department of Homeland Security entered into a Memorandum of Understanding (MOU) with the U.S. Department of Labor to reduce the

1  employment verification could be put, to prevent the verification system from being

2  utilized as a "paper trail . . . for the purpose of apprehending undocumented

3  [immigrants]." *Puente Ariz. v. Arpaio*, No. CV-14-01356-PHX-DGC, 2017 WL 1133012,

4  at *6-8 (D. Ariz. Mar. 27, 2017) (quoting H.R. Rep. No. 99-682, pt. 1, at 8-9 (1986)).

5        Congress intended through IRCA to "balance[] specifically chosen measures

6  discouraging illegal employment with measures to protect those who might be adversely

7  affected." *Nat'l Ctr. for Immigrants' Rights*, 913 F.2d at 1366. Congress adopted this

8  approach in lieu of a "massive increase[] in enforcement—in neighborhoods and work

9  places," an approach legislators believed would be unacceptably "intrusive[.]" S. Rep.

10  No. 99-132, at 8 (1985); *see also* H.R. Rep. No. 99-682, pt. 1, at 46 (1986) (employer

11  sanctions "most humane, credible and effective way to respond"). IRCA is a "political

12  compromise . . . at every level." *Nat'l Ctr. for Immigrants' Rights*, 913 F.2d at 1366.

13  **II.      AB 450 Is Not Conflict Preempted**

14        AB 450 was enacted to promote the health, safety, and well-being of workers,

15  particularly those at the margins of the economy. In this way, its provisions can be

16  harmonized with the objectives of IRCA. Moreover, because AB 450 is an exercise of

17  California's historic police powers, the Court should hesitate to disturb it. *See Rice v.*

18  *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Even if the Court finds some tension

19

20  risk that unscrupulous employers could inappropriately use immigration enforcement to
undermine efforts to enforce labor standards. Revised Memorandum of Understanding

21  Between the Departments of Homeland Security and Labor Concerning Enforcement
Activities at Worksites (Dec. 7, 2017), https://www.dol.gov/asp/media/reports/DHS-

22  DOL-MOU.pdf. A separate memorandum from 2011 provided that immigrants engaged in
a protected activity to vindicate labor rights or who "may be in a non-frivolous dispute

23  with an employer" would be considered for the favorable exercise of prosecutorial

24  discretion. Memorandum of John Morton, Dir., U.S. Immigration and Customs
Enforcement on Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs (June

25  17, 2011), https://www.ice.gov/doclib/secure-communities/pdf/domestic-violence.pdf.
That memorandum has been revoked by the current administration. Memorandum of John

26  Kelly, Sec'y, U.S. Dep't of Homeland Security, Enforcement of the Immigration Laws to
Serve the National Interest 2 (Feb. 20, 2017),

27  https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Enforcement-of-the-
Immigration-Laws-to-Serve-the-National-Interest.pdf (rescinding all prior existing

28  conflicting directives, memoranda or field guidance re: prosecutorial discretion).

between AB 450 and federal law, that is not a sufficient basis to invalidate the measure. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 256 (1984); *In re Baker & Drake*, 35 F.3d at 1354 (conflict preemption requires more than showing that state law makes realization of federal objectives "more difficult"). Rather, the United States must show that AB 450 actually obstructs the legislative purposes of IRCA. *See Arizona*, 567 U.S. at 399-400; *Goldstein*, 412 U.S. at 554 (preemption only available in "those situations where conflicts will necessarily arise"); *Total TV v. Palmer Commc'ns, Inc.*, 69 F.3d 298, 304 (9th Cir.1995) ("hypothetical conflict is not a sufficient basis for preemption"). Because the United States has not demonstrated that AB 450 obstructs the operation of federal law or IRCA's purposes, its preemption challenge should fail.

### A.   AB 450's Purpose Is to Ensure Workers Are Aware of Their Rights and Feel Safe Exercising Them

AB 450's purpose is "to ensure that all California workers, regardless of immigration status, enjoy the protections afforded them under state law[.]" Assembly Committee on Appropriations, Analysis of AB 450 (May 17, 2017), Request for Judicial Notice ("RJN") Ex. I, ECF No. 78. When enacting AB 450, legislators were aware that California law extends labor protections, rights and remedies to all workers in the State, regardless of immigration status. *See* Senate Committee on Labor and Industrial Relations, Analysis of AB 450 (June 28, 3017), RJN Ex. J. At the time, California law also prohibited employers from engaging in unfair immigration-related practices, such as contacting immigration authorities about workers in retaliation for exercising their labor rights or re-verifying their employment authorization. Cal. Lab. Code §§ 1019-1019.1. Concerned about reports of recent worksite immigration round-ups and their impact on undocumented workers' practical ability to enforce their labor rights, California sought to fortify its regime by introducing greater parity in the relationship between employers and employees when dealing with immigration authorities and ensuring that "affected workers . . . [are] cognizant of their rights during [federal enforcement] actions." Assembly Committee on Appropriations, Analysis of AB 450, RJN Ex. I.

It is not a new revelation that the specter of immigration enforcement against workers can severely undercut the integrity of labor and employment laws. As one of the amici has explained, undocumented workers "play an important role [as private attorneys general] in the furtherance of substantive legal norms and societal values." Kathleen Kim, *The Trafficked Worker as Private Attorney General: A Model for Enforcing the Civil Rights of Undocumented Workers*, 2009 U. Chi. Legal F. 247, 300-04 (2009) (describing cases in which undocumented workers have come forward to report violations of workplace laws to the benefit of the broader public). Courts have recognized the *in terrorem* effect that the exposure to immigration enforcement action can have on noncitizen workers' willingness to play this role. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064-66 (9th Cir. 2004) (upholding protective order prohibiting discovery into plaintiffs' immigration status on grounds that such discovery would undermine the "public interest in enforcing Title VII and [the California Fair Employment and Housing Act]"); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068-69, 1073 (9th Cir. 2000) (permitting plaintiffs to proceed anonymously and recognizing the public interest in plaintiffs enforcing their statutory rights). Nevertheless, recent shifts in federal policy have increased the vulnerability of undocumented workers at the workplace.[2] Reports of retaliation by employers against workers on the basis of their immigration status are on the rise.[3] In enacting AB 450, California has attempted to alleviate some of the *in terrorem* effect of worksite immigration operations and reduce the ability of employers to use immigration enforcement as a tool for retaliation by working within the confines of the law to insist that employers not affirmatively facilitate the arrest and detention of their employees while they are at work.

---

[2] *See* Justin Miller, *Trump's Immigration Crackdown Is Dangerous for Workers (Not Just Immigrants)*, Am. Prospect (Jan. 31, 2017), http://prospect.org/article/trump%E2%80%99s-immigration-crackdown-dangerous-workers-not-just-immigrants.

[3] *See, e.g.*, Andrew Khouri, *More Workers Say Their Bosses Are Threatening to Have Them Deported*, L.A. Times (Jan. 3, 2018), http://www.latimes.com/business/la-fi-immigration-retaliation-20180102-story.html.

PROPOSED BRIEF OF AMICI CURIAE IN SUPP. OF OPP'N TO MOT. FOR PRELIM. INJ.

### B.     California Possesses Expansive Authority to Regulate the Employment Relationship to Protect Workers

As the Supreme Court observed before the enactment of IRCA in *DeCanas v. Bica*, 424 U.S. 351 (1976), there is a strong tradition of states acting within their police powers to "regulate the employment relationship to protect workers within the state." *Id.* at 356. California's "interest in reducing immigration status effects on state [] workplace protections undoubtedly emanates" from these historic police powers. Kati L. Griffith, *The Power of a Presumption: California as a Laboratory for Unauthorized Immigrant Workers' Rights*, 50 U.C. Davis L. Rev. 1279, 1295-96 (2017) (considering preemption dimensions of California measures that seek to protect unauthorized immigrant workers, among others). In preemption cases, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Rice*, 331 U.S. at 230). This is particularly true where, as here, the "field" at issue is one "which the States have traditionally occupied." *Id.*

Even after the passage of IRCA, numerous courts have rejected the claim that federal law preempts state labor and employment laws that offer protections to unauthorized workers. *See* Griffith, *A Forensic Approach to Legislative History*, at 890 (identifying 21 cases where judges did not find any conflict between subfederal workplace protections and IRCA). For example, in *Salas v. Sierra Chemical Co.*, 59 Cal. 4th 407 (2014), the California Supreme Court upheld a state statute extending employee protections to unauthorized workers, including lost pay compensation for the period predating an employer's discovery of an employee's ineligibility to work. Addressing the issue of obstacle preemption, the court found that permitting unauthorized workers to enjoy the protections of state law was in keeping with IRCA's purpose of "eliminating employers' economic incentives to hire such workers." *Id.* at 425-26 (citing *Sure-Tan, Inc. v. NLRB*, 467 U.S.884 (1984)). In the court's judgment, "[i]t would frustrate rather than advance the policies underlying federal immigration law to leave unauthorized

workers so bereft of state labor law protections that employers have a strong incentive to 'look the other way' and exploit a black market for illegal labor." *Id.* at 426.

In the workers' compensation context, "courts have exhaustively discussed the interplay of their jurisdiction's workers' compensation laws and IRCA" and found, based on similar reasoning, that IRCA does not bar unauthorized workers from receiving benefits. *Del. Valley Field Servs. v. Ramirez*, 105 A.3d 396, 405 (Del. Super. Ct. 2012), *aff'd sub nom. Del. Valley Field Servs. v. Melgar-Ramirez*, 61 A.3d 617 (Del. 2013). The Minnesota Supreme Court thus observed that compliance with a workers' compensation anti-retaliation statute would not obstruct federal law since "IRCA is premised on the conclusion that '[e]mployment is the magnet that attracts [immigrants] here illegally'" and "enforcing labor laws . . . *furthers* . . . IRCA's goal of discouraging employers from hiring unauthorized [immigrants]." *Sanchez v. Dahlke Trailer Sales, Inc.*, 897 N.W.2d 267, 277 (Minn. 2017) (quoting H.R. Rep. No. 99-682, pt. 1, at 46 (1986)) (emphasis in original). Similarly, Delaware Superior Court explained in *Ramirez*, workers' compensation or other labor and employment protections could not be considered prohibited "sanction[s]" under 8 U.S.C. § 1324a(h)(2) simply because they extended to undocumented workers. *Ramirez*, 105 A.3d at 406.[4]

In sum, courts are hesitant to find that state laws protecting workers are preempted by IRCA, even where they apply to or are specifically designed to protect undocumented workers. *See Grocers Supply, Inc. v. Cabello*, 390 S.W.3d 707, 718-24 (Tex. App. 2012) ("To conclude otherwise . . . would be a 'freewheeling' judicial inquiry that would undercut the principle that it is Congress . . . that preempts state law.") (quoting *Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011)). The main situations in which courts have found state action to be in conflict with IRCA have involved employee

---

[4] According to the court, "[t]o construe [the statute] . . . otherwise" would have absurd results, precluding "state and local officials [from even] being []able to impose even a traffic fine upon a person who has employed an undocumented [immigrant]." *Id.* For a penalty "to fall within the purview of § 1324a(h)(2), the benefits must be awarded . . . as a means of penalizing employers *for employing [undocumented immigrants]*." *Id.* (emphasis in original).

PROPOSED BRIEF OF AMICI CURIAE IN SUPP. OF OPP'N TO MOT. FOR PRELIM. INJ.

1    reinstatement or lost pay compensation for the period after an employer has discovered a

2    worker's unauthorized status, *see* Griffith, *A Forensic Approach to Legislative History*, at

3    889; Michael J. Wishnie, *Emerging Issues for Undocumented Workers*, 6 U. Pa. J. Lab. &

4    Emp. L. 497, 505 (2004), or state law attempts to impose penalties on *workers* for

5    unauthorized work, *see Arizona*, 567 U.S. at 402-06.

6         There is another reason why state and local efforts to protect undocumented

7    workers should be given special solicitude on a preemption challenge. As an amicus has

8    argued, the "employee-protective purpose" of local laws that extend to immigrant

9    workers "should restrain courts from deciding that federal law preempts local laws[.]"

10    Catherine Fisk, *The Anti-Subordination Principle of Labor and Employment Law*

11    *Preemption*, 5 Harv. L. & Pol'y Rev. 17, 19 (2011). This is because IRCA does not

12    operate in a vacuum, but against a backdrop of protective labor legislation, including at

13    the federal level. Thus, any preemption analysis should consider not only federal

14    immigration law, but the policies reflected in federal labor law as well. *Id.* at 625-27.

15        **C.**    **AB 450 Does Not Pose an Obstacle to IRCA**

16            *1.*    *IRCA Provides Immigration Authorities with a Comprehensive Set*
      *of Investigatory Tools and Does Not Rely on Voluntary Access to*

17                *Implement the Federal Scheme*

18         In its motion, the United States makes an unsupported claim that Congress

19    designed a federal scheme for immigration enforcement, "including in the context of

20    worksite inspections, that is ***premised on*** the private property owner's ability to consent

21    to inspections of their property and employee records." PI Motion at 11-12 (emphasis

22    added).  There is a vast difference between stating that immigration agents are *permitted*

23    to rely on consent to access private property and records and suggesting that the federal

24    scheme *needs* or *is based on* such consent. A closer examination of the federal scheme

25    reveals that voluntary consent is in fact not necessary; Congress's full intent can be

26    realized through the many tools that immigration authorities have been given.

27         As discussed above, IRCA's primary regulatory focus was on *employers*, not

28    employees. With respect to employers, IRCA requires employers to verify the

employment eligibility of employees and to maintain a record of the Form I-9 and related documents for a specified period of time. *See, e.g.*, 8 C.F.R. § 274.2. When federal authorities conduct an inspection, they typically do so by serving a Notice of Inspection (NOI).[5] AB 450 contains no restriction on employers providing I-9 and other documents in response to a NOI—in fact, AB 450 specifically exempts such documents from its subpoena or warrant requirement. Cal. Gov't Code § 7285.2(a)(2). AB 450 simply requires employers to provide notice to employees of a NOI—something that employers have always been authorized to do—and provide employees for whom a deficiency has been identified an opportunity to correct the deficiency. Cal. Lab. Code § 90.2.[6]

When immigration authorities need to conduct an inspection of a place of business unrelated to I-9 documents and without prior notice, they may seek a subpoena or warrant. The United States claims that the Immigration and Nationality Act (INA) provides no procedure for procuring a judicial warrant, PI Motion at 13, but federal law actually ***does*** allow immigration authorities to obtain a judicial warrant for a worksite operation. In fact, to obtain a warrant, immigration authorities need not even meet the relatively more stringent requirements for obtaining a search warrant in the criminal law context. They can obtain a judicial warrant by meeting a more relaxed "hybrid standard of probable cause." *Int'l Molders' Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 552 (9th Cir. 1986) (describing standard for "*Blackie's* warrant"). In the main case cited by the United States for the proposition that immigration authorities should be able to obtain unfettered access to worksites without a warrant, *the INS had a warrant.* *See I.N.S. v. Delgado*, 466 U.S. 210, 212 (1984) (stating that worksite surveys INS

---

[5] *I-9 Central: Inspections*, U.S. Citizenship & Immigration Services, https://www.uscis.gov/i-9-central/retain-store-form-i-9/inspection/inspections (last visited May 14, 2018). Alternatively, they may utilize subpoenas or warrants to inspect documents without providing three-days notice. *Id.*

[6] With respect to employees for whom a deficiency has been identified, ICE already instructs employers to provide them with notice and an opportunity to respond. *See Form I-9 Inspection Process*, U.S. Immigration and Customs Enforcement (Jan. 8, 2018), https://www.ice.gov/factsheets/i9-inspection ("The employer should provide the employee with a copy of the notice, and give the employee an opportunity to present ICE with additional documentation to establish their work eligibility.").

1   conducted in January and September 1977 were conducted "pursuant to two warrants").

2   That federal authorities would prefer not to have to make the necessary showing to get a

3   warrant before descending upon a business is unsurprising. But there is no doubt that

4   they can obtain warrants with relative ease.

5               2.     *Limiting Voluntary Access Will Help Ensure Bona Fide*

6                    *Investigations and Reduce Retaliation*

7        The United States appears to be less concerned with AB 450's impact on its ability

8   to investigate *employers* and more concerned with maximizing its ability to enter

9   worksites so that it can engage in routine immigration enforcement against *workers*. PI

10  Motion at 11-12 (citing 8 U.S.C. § 1357 and citing *Delgado* and *Zepeda*, both pre-IRCA

11  cases). Those activities fall under a different part of the INA that regulates immigration

12  officers and agents, not employers or their employees. *See, e.g.*, 8 U.S.C. § 1357.

13       When immigration authorities enter workplaces to apprehend workers, they

14  sometimes do so with non-judicial administrative warrants or no warrant at all. Unlike a

15  judicial warrant, an administrative warrant does not authorize immigration officials to

16  enter non-public parts of a business. *See, e.g.*, *ICE Administrative Removal Warrants*

17  *(MP3)*, Fed. Law Enforcement Training Ctr., https://www.fletc.gov/audio/ice-

18  administrative-removal-warrants-mp3 (last visited May 15, 2018) ("primary difference"

19  between criminal warrant and administration warrant "is that, unlike a criminal warrant . .

20  ., a removal warrant does not authorize the ICE officer to enter . . . an REP [reasonable

21  expectation of privacy] area to execute the warrant"). However, administrative warrants

22  can be confused with criminal warrants. AB 450 helps to ensure that employers do not

23  provide voluntary access to authorities in the mistaken belief that an administrative

24  warrant authorizes them to enter nonpublic areas of a business.

25       When immigration officials have no warrant, commentators have observed that

26  the consent doctrine may be "insufficiently protective" because individuals from whom

27  consent is sought, such as the front desk clerk at a business, may lack knowledge of the

28  ability to refuse the request. Bernard Bell, *United States v. California: A Preliminary*

*Assessment of the Challenge to California's "Immigrant Worker Protection Act*," Yale J. on Reg. Notice & Comment Blog (Mar. 31, 2018), http://yalejreg.com/nc/united-states-v-california-a-preliminary-assessment-of-the-challenge-to-californias-immigrant-worker-protection-act-by-bernard-w-bell/. "Consent doctrine is even more problematic [where, as here] the person who consents is not the target of the search." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181, 186 (1990) and *United States v. Matlock*, 415 U.S. 164, 171 (1974)). Employers "may have no interest in ensuring that the government has an adequate justification for conducting a search . . . confident that any untoward effects will not be directed at the company." *Id.*

By extending its protections to all "places of labor,"[7] AB 450 benefits some of the most vulnerable workers in the state, i.e., those whose employers would not otherwise be aware of their procedural rights or be inclined to exercise them.[8] It ensures that investigations by immigration authorities have adequate justification and reduces the *in terrorem* effect of exploitative or haphazard immigration enforcement on the enforcement of labor and employment laws in the state.

## III.    AB 450 Is Not Barred by the Intergovernmental Immunity Doctrine

The United States also argues that AB 450 violates the doctrine of intergovernmental immunity. PI Motion at 14-18. This Court should decline the United States' invitation to expand intergovernmental immunity beyond conventional understandings of its reach.

---

[7] The United States suggests that "places of labor" could be read to include locations within 25 miles of the international border, where immigration authorities can have access to "private lands, but not dwellings, for the purpose of patrolling the border," or locations that authorities must be able to enter in the event of exigent circumstances. ECF No. 2-1 at 14 n.8. But in both of those cases, authorities need neither a warrant *nor* "voluntary consent" to enter. Cal. Gov't Code § 7285.1(a). AB 450 is therefore irrelevant.

[8] The United States' argument that AB 450 will impede investigations into human smuggling or trafficking, PI Motion at 16-17, is misplaced. Those involved in smuggling or trafficking are unlikely to consent to a search even without AB 450, and to the extent that authorities learn of criminal activity, they may enter private property with a search warrant.

In the modern era, "[t]he Court has . . . adopted a functional approach to claims of governmental immunity, accommodating of the full range of each sovereign's legislative authority and respectful of the primary role of Congress in resolving conflicts between the National and State governments*." North Dakota v. United States*, 495 U.S. 423, 435 (1990). The federal government can assert immunity only from regulation that discriminates against the federal government directly or, in the case of contractors or suppliers, indirectly through those "with whom [the federal government] deals." *Id.* at 435-38. AB 450 plainly does not regulate the federal government directly. *Cf. United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2009). AB 450 also does not regulate the federal government indirectly. Employers subject to AB 450 are not being regulated because of their status as government contractors or suppliers, *North Dakota*, 495 U.S. at 438; they are being regulated because of California's desire to improve the condition of all workers, which necessarily implicates all employers in the state. *Cf. Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014).[9]

"Claims to any further degree of immunity must be resolved under principles of congressional pre-emption." *North Dakota*, 495 U.S. at 435. That is because it is Congress, not the courts, that plays the "primary role" in deciding whether the accomplishment of federal purposes requires displacing state law today. *Id.*; Gillian E. Metzger, *Federalism and Federal Agency Reform*, 111 Colum. L. Rev. 1, 57 (2011) ("Much of the resultant doctrine of federal intergovernmental immunity has been cut back over time, with such concerns now addressed largely under the aegis of preemption."). Since Congress was well aware of how to preempt state law and chose not

---

[9] The United States suggests that employers subject to AB 450 are like the contractor in *Boeing Co.* because AB 450 "imposes penalties on private employers . . . to the extent they voluntarily cooperate with the United States," and therefore, intergovernmental immunity should extend to them. PI Motion at 14-15. But AB 450 clearly applies to all employers. Compliance with AB 450 imposes no special hardship on them. Even those who would prefer not to follow AB 450 cannot be compared to government contractors or suppliers because, unlike contractors or suppliers, they have no legal relationship to or obligation to perform functions for the federal government absent a NOI, subpoena, or warrant.

-14-                    2:18-cv-00490-JAM-KJN

PROPOSED BRIEF OF AMICI CURIAE IN SUPP. OF OPP'N TO MOT. FOR PRELIM. INJ.

1    to do so here, no further elaboration of the implications of the Supremacy Clause is

2    necessary. *See generally* Lawrence Tribe, *Intergovernmental Immunities in Litigation,*

3    *Taxation and Regulation: Separation of Powers Issues in Controversies about*

4    *Federalism*, 89 Harv. L. Rev. 682, 682, 701-11 (1976) (expressing doubt about judicial

5    branch's ability to determine when a tax or regulation is "really" a burden on a federal

6    instrumentality and calling for "attention to the question of who should decide"—to

7    which he answers: Congress).

8                                      **CONCLUSION**

9         AB 450 was crafted to promote the well-being of workers in California without

10   conflicting with federal law. Amici urge the Court to decline the United States' request

11   for a preliminary injunction.

12

13   Dated: May 18, 2018                  MUNGER, TOLLES & OLSON LLP

14

15                                         By:  __/s/ Bradley S. Phillips_____

16                                            Bradley S. Phillips
                                             350 South Grand Avenue, 50th Floor
17                                           Los Angeles, CA 90071
                                             T: (213) 683-9100
18                                           F: (213) 687-3702
                                             Brad.Phillips@mto.com
19
                                             *Counsel for Amici Curiae*
20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of May, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing.

Dated:   May 18, 2018
         Los Angeles, CA

                                       /s/ *Bradley S. Phillips*
                                        Bradley S. Phillips

# APPENDIX A[1]

Annie Lai
Assistant Clinical Professor of Law
UC Irvine School of Law

Kathleen Kim
Professor of Law
Loyola Law School

Emily Robinson
Co-Director, Immigrant Justice Clinic
Loyola Law School

Catherine L. Fisk
Barbara Nachtrieb Armstrong Professor of Law
University of California, Berkeley School of Law

William B. Gould IV
Charles A. Beardsly Professor of Law, Emeritus
Stanford Law School

Bill Ong Hing
Professor of Law and Migration Studies
University of San Francisco School of Law

Sameer Ashar
Clinical Professor of Law
UC Irvine School of Law

Caitlin Barry
Assistant Professor of Law
Director, Farmworker Legal Aid Clinic
Villanova University, Charles Widger School of Law

Kristina M. Campbell
Jack and Lovell Olender Professor of Law
Co-Director, Immigration and Human Rights Clinic
UDC David A. Clarke School of Law

Scott Cummings
Professor of Law
UCLA School of Law

Keith Cunningham-Parmeter
Professor of Law
Willamette University College of Law

Ruben J. Garcia
Professor of Law
University of Nevada, Las Vegas

---

[1] Amici curiae appear in their individual capacities; institutional affiliations and titles are provided here for identification purposes only.

1

2 Shannon Gleeson, PhD
Associate Professor of Labor Relations, Law and History
3 Cornell University School of Industrial and Labor Relations

4 Jennifer Gordon
Professor of Law
5 Fordham University School of Law

6 Kati Griffin
Associate Professor
7 Cornell University School of Industrial and Labor Relations

8 Stephen Lee
Associate Dean for Faculty Research and Development
9 Professor of Law
UC Irvine School of Law

10 Jennifer J. Lee
Assistant Clinical Professor of Law
11 Temple University Beasley School of Law

12 Beth Lyon
Clinical Professor of Law
13 Cornell Law School

14 Angela D. Morrison
Associate Professor of Law
15 Texas A&M University School of Law

16 Maria L. Ontiveros
Professor of Law
17 University of San Francisco School of Law

18 James Gray Pope
Professor of Law
19 Rutgers Law School

20 Nina Rabin
Clinical Professor of Law
21 University of Arizona, James E. Rogers College of Law

22 Leticia M. Saucedo
Professor of Law
23 UC Davis School of Law

24 Hina Shah
Director, Women's Employment Rights Clinic
25 Associate Professor of Law
Golden Gate University School of Law

26

27 Noah D. Zatz
Professor of Law
28 UCLA School of Law

APPENDIX A

1

2   Michael J. Wishnie
    William O. Douglas Clinical Professor of Law
3   Yale Law School

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX A