CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA  90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
         crholguin@centerforhumanrights.org

*Attorneys for Amici Curiae*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CV 2:18-cv-490-JAM-KJN |
| | ) |
| Plaintiff, | ) **LEGAL SERVICES PROVIDERS** *AMICI* |
| | ) *CURIAE* **BRIEF** |
| vs | ) |
| | ) NO HEARING NOTICED |
| STATE OF CALIFORNIA, ET AL., | ) |
| | ) Honorable John A. Mendez |
| Defendants. | ) |

///

Legal Services Providers Amici Brief

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. INTEREST AND IDENTITY OF *AMICUS CURIAE* ............................................. 1

III. ARGUMENT ................................................................................................. 2

   1. WHEN VIEWED FROM THE PERSPECTIVE OF HOW IMPLEMENTATION AND OPERATION OF AB 450 AND FEDERAL LAW ACTUALLY IMPACT LOW-INCOME IMMIGRANTS, THE IMMIGRATION WORKER PROTECTION ACT IS NOT FEDERALLY PREEMPTED ................... 2

   2. WHEN VIEWED FROM THE PERSPECTIVE OF HOW IMPLEMENTATION AND OPERATION OF AB 103 AND FEDERAL LAW IMPACT LOW-INCOME IMMIGRANTS, AB 103 IS NOT FEDERALLY PREEMPTED ............................................................................. 6

   3. WHEN VIEWED FROM THE PERSPECTIVE OF HOW IMPLEMENTATION AND OPERATION OF SB 54 AND FEDERAL LAW ACTUALLY IMPACT LOW-INCOME IMMIGRANTS, SB 54 IS NOT FEDERALLY PREEMPTED ............................................................................. 9

IV. CONCLUSION ............................................................................................ 14

/ / /

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*, 567 U.S. 387, 419 (2012) .................................................. 8, 14

*Duncan Roy et al. v. County of Los Angeles et. al,* 2018 U.S. Dist. LEXIS 27268 (C.D. Cal. 2018) ............................................................................................................. 14

**Statutes**

California Government Code § 7285.1(a) ........................................................................ 3

California Government Code § 7285.2(a) ........................................................................ 3

California Government Code § 12532(b)(1) .................................................................... 8

California Government Code § 12532(b)(1)(A)-(C) ................................................... 7, 8

California Government Code § 7282.5 .......................................................................... 10

California Government Code § 7284.6(a)(1)(C) ............................................................. 9

California Government Code §§ 7310-7311 ................................................................... 7

California Government Code §12532(a) ......................................................................... 7

California Government Code §7284.6(a)(1)(A)-(E) ....................................................... 9

California Lab. Code § 1019.2(a) ........................................................................... 4, 5, 6

California Labor Code §90.2(a)(1) .................................................................................. 3

8 U.S.C. § 1373 ................................................................................................................ 9

8 U.S.C. § 1373(a) ...................................................................................................... 9, 10

8 U.S.C. §1373 ............................................................................................................... 11

INA § 274(b)(3) ............................................................................................................... 5

INA § 274A .................................................................................................................. 4, 6

INA § 274A (b)(1)(A) ..................................................................................................... 5

INA § 274A.(b)(2) ........................................................................................................... 6

Case 2:18-cv-00490-JAM-KJN   Document 140   Filed 05/21/18   Page 4 of 20
INA § 274A(b)(1)(A)(i)-(ii). ..................................................................................................5

**Regulations**

8 C.F.R. § 274a............................................................................................................................5

8 C.F.R. § 274a.2(b)(2)(ii) ..........................................................................................................3

8 C.F.R. § 274a.2(b)(B)(d)(vii) ...................................................................................................5

8 C.F.R. § 274a2(b)(B)(d)(vii) ....................................................................................................5

INA § 274(b)(3)(B)(i)-(ii) ...........................................................................................................5

**Other authorities**

*Santa Ana*: Ordinance No. NS-2908, Dec. 20, 2016, Sec. 6…………………………11

Mike McPhate: *California Today: Worries Over Deportation*, N.Y. TIMES, April 5, 2017……………………………………………………………………………12

Nik Theodore, *Insecure Communities: Latino Perceptions of Police Involvement in Immigration Enforcement*, Univ. Ill. at Chicago, 7 (May 2013) ………………. 12

/ / /

# I. INTRODUCTION

The United States seeks to enjoin enforcement of certain provisions of California law enacted through Assembly Bill 450, Assembly Bill 103, and Senate Bill 54 ("challenged California statutes"). The *Amici* will focus on the real life experiences of their low-income clients as they navigate the intersection of the implementation by California of the challenged statutes and by the Department of Homeland Security ("DHS") of federal law. Viewed through this lens, it becomes apparent that the California statutes are not preempted by federal law, primarily because the California statutes do not constitute legislation in a field that is exclusively occupied by the federal government, does not conflict with federal laws, and do not stand as an obstacle to the federal government's enforcement of immigration law.

## II. INTEREST AND IDENTITY OF *AMICUS CURIAE*

*Amici* are the Center for Human Rights and Constitutional Law, the Legal Aid Foundation of Los Angeles, the Legal Aid Society of Orange County, El Rescate, the International Institute of Los Angeles, the Legal Aid Foundation of Santa Barbara County, the Public Law Center, and La Raza Centro Legal. *Amici* are non-profit programs providing free legal services to low-income California residents, including immigrants. The proper resolution of this case is a matter of utmost concern to these programs because of its impact on their clients, many of who are immigrants or U.S. citizens with immigrant family members.

The proposed *Amici's* clients are mandated to comply with California and federal laws. Some of the *Amici* programs have clients that have been, are being, or may in the future be detained by the Immigration and Customs Enforcement ("ICE"), the immigration enforcement arm of the DHS, and some have immigrant clients who are workers with rights and obligations under the challenged California statutes and applicable federal laws.

The proposed *Amici* will show that their immigrant clients' treatment, rights and obligations under the challenged California statutes, in no way adversely impacts their clients' treatment, rights and obligations under relevant federal immigration laws.

In short, when viewed through the lens of the actual implementation and operation of AB 450, AB 103 and SB 54, and of relevant federal immigration laws, as experienced by those the laws are intended to impact, immigrants and those enforcing the state and federal laws regarding these immigrants are in full compliance with both the challenged state statutes and applicable federal laws. This strongly indicates federal law does not preempt the challenged California statutes.

### III.  ARGUMENT

**1. When viewed from the perspective of how implementation and operation of AB 450 and federal law actually impact low-income immigrants, the Immigration Worker Protection Act is not federally preempted**

The Immigrant Worker Protection Act ("AB 450") prohibits employers from voluntarily cooperating with federal immigration officials in certain circumstances. 2017 Cal. Stat. c. 492. AB 450 added §§7285.1-.2 to Government Code to prohibit

employers' "voluntary consent to an immigration enforcement agent … enter[ing] any nonpublic areas of a place of labor" without a warrant, Cal. Gov't Code § 7285.1(a), or "voluntary consent to … access… employee records" without a subpoena, a judicial warrant, or notice of inspection. Cal. Gov't Code § 7285.2(a).

In *Amici's* clients' experiences, ICE requests and picks up copies of I-9 forms and their attachments. These documents are not reviewed at the location of the business but at ICE offices where databases are accessed to determined whether employees whose I-9 forms are being reviewed are authorized to be employed, whether false documents have been used to gain employment, and whether the employer has properly completed the I-9 forms. AB 450 will not interfere with this process.

In *Amici's* clients' experiences, ICE always commences I-9 audits of employers by serving a Notice of Inspection. Therefore, implementation of this provision of AB 450 will not deter ICE from conducting I-9 audits of *Amici's* clients' I-9 records in the custody of their employers.

AB 450 also added § 90.2 to the Labor Code to require posting notice of any immigration-related inspections of I-9 forms or other employment records within 72 hours of receiving a notice of the inspection. Cal. Labor Code §90.2(a)(1).

As required by 8 C.F.R. § 274a.2(b)(2)(ii), it is *Amici's* clients' experience that ICE routinely provides a minimum of three days notice, and usually a few weeks notice, to *Amici's* clients' employers, *before* conducting I-9 audits. As noted above, in practice ICE almost always serves employers with a Notice of Inspection well before

the actual inspection takes place. Some of *Amici's* clients are already provided the type of notices referred to in § 90.2. Many labor union contracts require such notices. Employers very often advise *Amici's* clients of pending I-9 audits as the employers and *Amici's* clients wish to review and update their I-9 forms prior to copying the I-9 forms and supporting documents to provide to ICE for its review. Indeed, providing *Amici's* clients with notice of a pending I-9 audit gives them an opportunity to update their I-9 records, facilitating and making more efficient ICE's audit.

Section 90.2 will not in any material way alter *Amici's* client's rights or obligations – or their employers' rights and obligations – under federal law. *Amici* are aware of no actions by DHS to implement any federal law, regulation, or policy impacting their clients' actions or decisions that is prohibited or changed by what § 90.2 requires.

AB 450 prohibits *Amici's* clients' employers from "re-verifying the employment eligibility of a current employee at a time or in a manner not required by specified federal law." Cal Lab. Code § 1019.2(a). This state law will not interfere in any way with ICE'sI-9 functions.  The law clearly remains that *Amici's* clients' employers shall not: "Hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien (as defined in subsection (h)(3)) with respect to such employment …" 8 U.S.C. § 1324a(1).

Under INA § 274A *Amici's* clients' employers are required to "attest … on a form … that [they have] verified that the individual is not an unauthorized alien," by

examining certain documents designated by the DHS Secretary. INA § 274A (b)(1)(A). If an *Amici* client provides a document that reasonably appears on its face to be genuine, nothing in federal law *Amici* is aware of based on its clients' experiences requires the employer to solicit the production of any other document from *Amici's* clients. This is consistent with the terms of INA § 274A(b)(1)(A)(i)-(ii).

The INA requires *Amici's* clients' employers to retain verification forms and to make them available for inspection by DHS officers. INA § 274(b)(3). Nothing in AB 450 changes this. *Amici's* clients' employers also retain verification documents for three years after the date of recruiting or referral, in the case of hiring of an individual three years after the date of such hiring, or one year after the date the individual's employment is terminated, whichever is later. This is required by INA § 274(b)(3)(B)(i)-(ii) and 8 C.F.R. § 274a. Nothing in AB 450 changes this.

Upon employment authorization expiration, *Amici's* clients' employers who are complying with federal law re-verify on the Form 1-9 to reflect that *Amici's* clients are still authorized to work in the United States. This is required by 8 C.F.R. § 274a2(b)(B)(d)(vii). *Amici's* clients' employers generally re-verify the document's identification number and expiration date, on the Form I-9 and sign the attestation. This practice is required by 8 C.F.R. § 274a.2(b)(B)(d)(vii). Nothing in AB450 changes this.

Under California Labor Code § 1019.2(a) (AB 450) no changes are made regarding what documents *Amici's* clients' employers must review and attest to permit

gainful lawful employment. Rather AB 450 reinforces current federal regulations, the United States Code, and established employer-employee protocols.

California Labor Code § 1019.2(a) does not nullify *Amici's* clients' employers' duties to ensure lawful employment, or to comply with documentation review, attestation, and documentation retention.

Under INA § 274A *Amici's* clients are still required to attest and establish that they are citizens or nationals of the United States, immigrants lawfully admitted for permanent residence, or immigrants authorized under the Act or by the Attorney General to be hired, recruited, or referred for such employment. Amici's clients must and do still comply with the documentation requirements set out at in INA § 274A(b)(1)-(2), and 8 C.F.R. § 274a.

From the perspective of *Amici's* clients' rights and obligations, AB 450 does not conflict or interfere with the enforcement of federal statutes or rules as they regulate *Amici's* clients' right to be employed and obligations upon being hired and while they remain employed. In their interactions with the State and federal governments, *Amici's* clients and their employers have rights that can be honored and obligations that can be fulfilled created by state and federal laws that are not in conflict.

**2. When viewed from the perspective of how implementation and operation of AB 103 and federal law impact low-income immigrants, AB 103 is not federally preempted**

Sections 6 and 12 of Assembly Bill 103 (AB 103) added Chapter 17.8 and §12532 to the Government Code, respectively. 2017 Cal. Stat. c. 17, §§6, 12. Under

§12532, state governmental officials must review "detention facilities in which noncitizens are being housed or detained for purposes of civil immigration proceedings in California," California Government Code §12532(a), and report on the conditions of confinement, the standard of care and due process provided to detainees, and the circumstances of the detainees' apprehension and transfer to the facility. *Id.* §12532(b)(1). Under Chapter 17.8, municipal government or law-enforcement agencies with no contract to house adult or minor noncitizen detainees for civil-immigration purposes may not enter such contracts, and municipal government or law-enforcement agencies with such contracts may not enter into new contracts to expand the number of contract beds used in locked detention facilities. California Government Code §§ 7310-7311.

The relevant portion of § 12532 states the review of detention facilities shall include, but not be limited to the following:

> (A) A review of the conditions of confinement, (B) A review of the standard of care and due process provided to the individuals …, (C) A review of the circumstances around their apprehension and transfer to the facility.

California Government Code § 12532(b)(1)(A)-(C)

*Amici's* clients housed in non-federal contracted facilities awaiting removal proceedings will be in the functionally same position with regards to the federal

government's arrest, removal, and deportation determinations with or without the enactment of CAL. California Government Code § 12532(b)(1)(A)-(C).

In *Arizona v, United States*, the Court held that States cannot make unilateral determinations "about the removability of immigrants" wholly separate from federal officials, and that any attempt to do so creates an obstacle to the full purpose and objective of Congress. *Arizona v. United States*, 567 U.S. 387, 419 (2012).

California Government Code § 12532(b)(1) is not conflict preempted and does not parallel section 6 of Arizona's law, purporting to allow state officials to decide that an immigrant should be held for deportation, and then arrest the immigrant.

Unlike Arizona, California state officials are not engaging in a unilateral role to override the federal government's detention of *Amici's* immigrant clients or challenging the federal government's decision on removability. ICE already contracts with for-profit companies and non-profit groups to detain *Amici's* clients in California and may continue to do so.

Under AB 103 ICE agents currently possess the same authority to engage in the arrest and detention of *Amici's* clients who are subject to arrest and detention under federal law as they possessed prior to the enactment of AB 103. *Amici's* clients do not have a greater or lesser defense to deportation under AB 103, or a greater or lesser opportunity for release on bond.

*Amici's* clients who may be detained for ICE in California facilities may in the long run benefit by having due process abuses curbed through the issuance of reports

contemplated by AB 103, but their basic rights and obligations under federal law will remain unchanged. There is therefore no conflict between AB 103 and federal law.

**3. When viewed from the perspective of how implementation and operation of SB 54 and federal law actually impact low-income immigrants, SB 54 is not federally preempted**

Senate Bill 54 ("SB 54"), the California Values Act, in limited ways restricts state and local law enforcement from voluntarily cooperating with federal agencies with regards certain California immigrants. These include providing release dates except in the cases of serious crimes, detaining individuals based on unconstitutional federal hold requests, providing individuals' home or work addresses to immigration officials, and making or intentionally participating in arrests based on civil immigration warrants. California Government Code §7284.6(a)(1)(A)-(E). None of these requirements violate any existing federal laws with which *Amici's* clients or their police or jailers must comply.

Under 8 U.S.C. § 1373 entities or officials detaining *Amici's* clients may not prohibit or restrict the sending to or receiving from DHS, "information regarding the citizenship or immigration status," of any individual. 8 U.S.C. § 1373(a). Nothing in SB 54 changes *Amici's* clients' rights or protections from such federally mandated disclosures.

Under amended California Government Code § 7284.6(a)(1)(C), California law enforcement agencies shall not use their resources to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes, including providing

information regarding a person's release date unless that information is available to the public, or is in response to a notification request from immigration authorities in accordance with Section 7282.5. Responses are never required, but are permitted under this subdivision, provided that they do not violate any local law or policy.

8 U.S.C. § 1373(a) does not address policies limiting other forms of information sharing with DHS regarding *Amici's* clients. As before, *Amici's* clients' citizenship and immigration status will still be shared with federal entities.

Pursuant to California Government Code § 7282.5, local law enforcement will continue to provide, to the extent they currently do so, release dates of *Amici's* clients in a wide range of circumstances involving all serious crimes against persons and property. These crimes include virtually every serious crime any one may be convicted of in California. Cities and police departments throughout California as a matter of policy already provide less information to DHS than SB 54 contemplates. The level of cooperation with ICE SB 54 allows is far more than the limited way in which federal law requires cooperation as set forth in 8 U.S.C. § 1373 (local jurisdictions must respond to requests for citizenship and immigration status of a named individual).

Before SB 54 was enacted, when *Amici's* clients were arrested and taken before a magistrate on a charge involving a serious crime, and the magistrate made a finding of probable cause, law enforcement officials could and sometimes would cooperate with immigration officials. With the enactment of California Government Code § 7282.5(b), this will not change much for *Amici's* clients. Law enforcement officials

may and do continue to cooperate with immigration officials when an *Amici* client is arrested and a probable cause determination is made by a judge or magistrate regarding the commission of a serious crime.

8 U.S.C. §1373 does not mandate that local law enforcement officials provide ICE information about *Amici's* clients' release dates.

In a wide range of situations throughout California, both before and after the enactment of SB 54, cities and counties and their law enforcement agencies have opted for various levels of cooperation with ICE.[1]

---

[1] *See e.g. Santa Ana*: Ordinance No. NS-2908, Dec. 20, 2016, Sec. 6 ("No City agency, department, officer, employee, or agent shall use City funds, resources, facilities, property, equipment, or personnel to assist in the enforcement of federal immigration law, unless such assistance is required by any valid and enforceable federal or state law or is contractually obligated. Nothing in this Section shall prevent the City, including any agency, department, officer, employee, or agent of the City, from lawfully discharging his or her duties in compliance with and in response to a lawfully issued judicial warrant or subpoena."), at http://voiceofoc.org/wp-content/uploads/2017/01/Santa-Ana-sanctuary-city-ordinance-adopted.pdf; Oakland City Council Resolution No. 87036, January 16, 2018: Clarifying And Reaffirming Policy On Non-Cooperation With ICE, ("[T]he City of Oakland's policy is that: OPD shall not provide law enforcement assistance, including traffic support, to ICE , including any subdivision of ICE, in any capacity, except to respond to a public safety emergency") available at https://oakland.legistar.com/View.ashx?M=F&ID=5761718&GUID=27F9C496-CDF9-4AAE-B0BC-DF2DB54D6DC9; San Francisco Administrative Code §§12H-12I (Immigration Status and Civil Immigration Detainers); Los Angeles: Executive Directive 20 ("The City will not assist or cooperate with any effort by federal immigration agents to use public facilities or resources for the purposes of enforcing federal civil immigration law."), available at https://www.lamayor.org/sites/g/files/wph446/f/page/file/Exec.%20Dir.%20No.%2020--Standing%20with%20Immigrants.pdf.  All links last checked May 18, 2018.

At bottom, these local decisions are based on an assessment of the extent to which greater cooperation with ICE *decreases* the reporting of serious crimes and cooperation with law enforcement in prosecuting criminals. Studies show, for example, that immigrant survivors of domestic violence and human trafficking overwhelmingly (78%) are afraid to report crimes to the police given current immigration enforcement policies and entanglement of local law enforcement and federal immigration enforcement.[2] An April 2017 survey by the Luskin School of Public Affairs at UCLA found that 80% of Latino residents said that contact with any government agency or program increases the risk of deportation.[3] Even before the recent surge in immigration enforcement, a 2013 study found that more than 40% of Latinos surveyed in Los Angeles were "less likely to volunteer information about crimes because they fear getting caught in the web of immigration enforcement themselves or bringing unwanted attention to their family or friends"—regardless of their immigration status.[4]

---

[2] Asian Pacific Institute on Gender-Based Violence (APIGBV), et al., *2017 Advocate and Legal Service Survey Regarding Immigrant Survivors*, June 1, 2017, at https://www.tahirih.org/wp-content/uploads/2017/05/2017-Advocate-and-Legal-Service-Survey-Key-Findings.pdf.

[3] Mike McPhate: *California Today: Worries Over Deportation*, N.Y. TIMES, April 5, 2017, https://www.nytimes.com/2017/04/05/us/california-today-worries-over-deportation.html.

[4] Nik Theodore, *Insecure Communities: Latino Perceptions of Police Involvement in Immigration Enforcement*, Univ. Ill. at Chicago, 7 (May 2013), https://greatcities.uic.edu/wpcontent/uploads/2014/05/Insecure_Communities_Report_FINAL.pdf.

Based on their own localized law enforcement experiences, and numerous studies that assess the drop in crime reporting as entanglement with ICE enforcement increases, cities and counties throughout California (and the country) have made local decisions on the extent to which they will become involved in ICE activities. SB 54 actually leaves local entities free to cooperate with ICE on matters impacting *Amici's* clients to a far greater extent than required by federal law.

With regards accessing data about *Amici's* clients, with or without SB 54, ICE has access to state and regional criminal justice networks and databases, including the National Crime Information Center (NCIC), that allow law enforcement agencies to identify individuals who have been arrested and convicted. NCIC is a Federal Bureau of Investigation (FBI) database containing "an electronic clearinghouse of crime data that can be tapped into by virtually every criminal justice agency nationwide, 24 hours a day, 365 days a year." National Crime Information Center (NCIC) (Federal Bureau of Investigation), https://www.fbi.gov/services/cjis/ncic.[5]  Fingerprints of an *Amici* client taken at booking on criminal charges are checked automatically against the FBI and DHS databases. This biometric data is also sent to ICE. All wanted person's inquiries automatically will also be run through the Immigration Violators File (IVF). If there's a match, ICE is alerted.

---

[5] NCIC serves more than 90,000 criminal justice and law enforcement agencies, along with judges, prosecutors, corrections officers, court administrators, and a variety of other criminal justice officials by providing information that can help apprehend fugitives, locate missing persons, identify convicted sexual offenders, uncover weapons used in crimes, locate and return stolen property, and more.

ICE may request release dates for *Amici* clients held in custody, but nothing in federal law requires a local jurisdiction to respond to such a request. Most local jurisdictions already provide release dates to ICE if a serious crime was involved and nothing in SB 54 will change that.

SB 54 also provides that local authorities should not investigate, interrogate, detain, detect, or arrest persons, including *Amici's* clients, "for immigration enforcement purposes, including… Detaining an individual on the basis of a hold request." California Government Code § 7284.6(a)(1)(B). This provision of SB 54 does not interfere with the federal government's ability to collect information regarding the immigration and citizenship status of *Amici's* clients, the sole federally-imposed requirement under 8 U.S.C. § 1373. Hold requests have repeatedly been found unconstitutional by the federal courts and therefore *Amici* is unaware of any jurisdiction in California that honored hold requests before SB 54 was enacted or honors since it was enacted.[6]

## IV.  CONCLUSION

As discussed above, when the impact of the federal and relevant state laws on California residents are carefully examined, it becomes clear that in the operation of these laws, there is no conflict between the challenged California statutes, and federal law.  Implementation of AB 450, AB 103, and SB 54 is going forward without violating any federal laws regarding immigration enforcement.

---

[6] *See, e.g.*, *Duncan Roy et al. v. County of Los Angeles et. al,* 2018 U.S. Dist. LEXIS 27268 (C.D. Cal. 2018); *see also Arizona v. United States*, 132 S. Ct. 387 (2012).

If President Trump and Attorney General Jeffrey Sessions are unhappy with the extent to which many states, counties and cities have taken steps to protect their residents' safety and well-being by limiting cooperation with ICE's enforcement activities, they should go to Congress and seek stronger federal laws requiring greater cooperation by local jurisdictions with ICE's immigration enforcement actions.

The challenged California statutes provide a *floor* for local entities to follow in their involvement with ICE enforcement operations. That floor is far *below* the ceiling created by what federal law requires of local entities.

Instead of seeking a change in federal law, President Trump and Attorney General Sessions have threatened local jurisdictions with funding cuts and in this case are asking the Court to involve itself in a dispute they should take to Congress to resolve.

The challenged California statutes serve to protect California immigrants without violating or conflicting with any federal laws regarding the role local entities must play in ICE enforcement functions. As long as ICE complies with the federal laws that govern its functions, implementation of AB 450, AB 103, and SB 54 will in no way interfere with ICE's achievement of its enforcement goals.

Dated: May 18, 2018                                  Respectfully submitted,

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Peter A. Schey
Carlos Holguín
/s/*Peter Schey*
*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I, Peter Schey, declare and say as follows:

I am over eighteen years of age and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 S. Occidental Blvd., Los Angeles, CA 90057, in said county and state.

On May 18, 2018, I electronically filed the following document(s):

- **LEGAL SERVICES PROVIDERS *AMICI CURIAE* BRIEF**

with the United States District Court, Eastern District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Peter Schey*
*Attorneys for Proposed Amici*