CHAD A. READLER
Acting Assistant Attorney General
MCGREGOR SCOTT
United States Attorney
AUGUST FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director
EREZ REUVENI
Assistant Director, Office of Immigration Litigation
U.S. Department of Justice, Civil Division
450 5th Street NW
Washington, DC 20530
Tel. (202) 307-4293
Erez.R.Reuveni@usdoj.gov
DAVID SHELLEDY
Civil Chief, Assistant United States Attorney
LAUREN C. BINGHAM
JOSEPH A. DARROW
FRANCESCA GENOVA
JOSHUA S. PRESS
Trial Attorneys
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:18-cv-490-JAM-KJN |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| THE STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., Governor of California, in his Official Capacity; and XAVIER BECERRA, Attorney General of California, in his Official Capacity, | Hearing Date: June 20, 2018 Time: 10:00 a.m. Courtroom: 6 |
| Defendants. | |

# TABLE OF CONTENTS

**BACKGROUND** ..................................................................................................1

    1.    Immigrant Worker Protection Act (AB 450) ........................................1

    2.    Inspection and Review of Facilities Housing Federal Detainees (AB 103)....................2

    3.    SB 54 and the California Values Act ..................................................3

**LEGAL STANDARD** ..........................................................................................4

**ARGUMENT** ........................................................................................................4

    A.    California has no authority to penalize employers who voluntarily cooperate with federal officials (AB 450)..............................................................4

    B.    California has no authority to mandate unique inspections of facilities holding federal immigration detainees (AB 103)................................9

    C.    California has no authority to prohibit cooperation with the federal government that is contemplated by federal law (SB 54) .................................. 10

**CONCLUSION** ..................................................................................................... 15

**CERTIFICATE OF SERVICE** ......................................................................... 17

# TABLE OF AUTHORITIES

## CASE LAW

*American Insurance Ass'n v. Garamendi,*
   539 U.S. 396 (2003) ................................................................................................................ 6

*Arizona v. United States,*
   567 U.S. 387 (2012) ......................................................................................................... 4, 5, 9

*Boeing Co. v. Movassaghi,*
   768 F.3d 832 (9th Cir. 2014) ............................................................................... 4, 7, 10, 13

*City of L.A. v. Patel,*
   135 S. Ct. 2443 (2015) ......................................................................................................... 13

*Crosby v. Nat'l Foreign Trade Council,*
   530 U.S. 363 (2000) ................................................................................................................ 6

*Gartrell Constr. Inc. v. Aubry,*
   940 F.2d 437 (9th Cir. 1991) ................................................................................................ 6

*Gregg v. Hawaii, Dep't of Pub. Safety,*
   870 F.3d 883 (9th Cir. 2017) ................................................................................................ 4

*Hines v. Davidowitz,*
   312 U.S. 52 (1941) ................................................................................................................. 4

*Hodel v. Virginia Surface Mining & Reclamation Ass'n,*
   452 U.S. 264 (1981) .............................................................................................................. 14

*I.N.S. v. Delgado,*
   466 U.S. 210 (1984) ................................................................................................................ 5

*Murphy v. National Collegiate Athletic Association,*
   2018 WL 2186168 (S. Ct. May 14, 2018) .......................................................................... 14

*New El Rey Sausage Co. v. U.S. I.N.S.,*
   925 F.2d 1153 (9th Cir. 1991) .............................................................................................. 8

*North Dakota v. United States,*
   495 U.S. 423 (1990) ............................................................................................................ 4, 7

*Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Admin.,*
   860 F.3d 1228 (9th Cir. 2017) .............................................................................................. 6

*Printz v. United States,*
   521 U.S. 898 (1997) .......................................................................................... 15

*Reno v. Condon,*
   528 U.S. 141 (2000) .......................................................................................... 15

*Sherman v. U.S. Parole Comm'n,*
   502 F.3d 869 (9th Cir. 2007) ............................................................................ 12

*United States v. City of Arcata,*
   629 F.3d 986 (9th Cir. 2010) .............................................................................. 7

*Wisconsin Dep't of Indus., Labor & Human Relations v. Gould, Inc.,*
   475 U.S. 282 (1986) ............................................................................................ 6

*Zepeda v. INS,*
   753 F.2d 719 (9th Cir. 1983) .............................................................................. 5

**FEDERAL STATUTES**

8 U.S.C. § 1103(a)(11) ............................................................................................. 9

8 U.S.C. § 1226 ....................................................................................................... 11

8 U.S.C. § 1226(a) ............................................................................................. 11, 12

8 U.S.C. § 1226(c)(1) ........................................................................................ 15, 16

8 U.S.C. § 1231 ....................................................................................................... 11

8 U.S.C. § 1231(a)(1)(B)(iii) ................................................................................... 11

8 U.S.C. § 1231(a)(2) .............................................................................................. 11

8 U.S.C. § 1231(a)(4) .............................................................................................. 11

8 U.S.C. § 1231(a)(4)(B) ......................................................................................... 11

8 U.S.C. § 1231(g)(1) ................................................................................................ 9

8 U.S.C. § 1231(g)(1)-(2) .......................................................................................... 9

8 U.S.C. § 1305 ....................................................................................................... 13

8 U.S.C. § 1324a(a)(1)(A) ......................................................................................... 5

8 U.S.C. § 1324a(a)(2) .......................................................................................... 5, 8

Opposition to Motion to Dismiss

8 U.S.C. § 1324a(b) ............................................................................................................ 6

8 U.S.C. § 1324a(b)(3) ....................................................................................................... 1

8 U.S.C. § 1324a(b)(6)(A) ................................................................................................. 5

8 U.S.C. § 1373 ......................................................................................................... 11, 13

42 U.S.C. § 5779(a) .......................................................................................................... 15

49 U.S.C. App. § 1305(a)(1) ............................................................................................ 14

### FEDERAL REGULATIONS

8 C.F.R. § 236.6 .......................................................................................................... 9, 10

### FEDERAL RULES FOR CIVIL PROCEDURE

Fed. R. Civ. P. 65 ............................................................................................................... 1

### FEDERAL REGISTER

68 Fed. Reg. 4364 ............................................................................................................ 10

68 Fed. Reg. 4366 ............................................................................................................ 10

### CALIFORNIA STATUTES

Assem. B. 103 ............................................................................................................... 9, 10

Assem. B. 450 .......................................................................................................... *passim*

CA. S.B. 54 ........................................................................................................................ 3

Cal. Gov. Code § 7282.5(a) ........................................................................................... 3, 4

Cal. Gov. Code § 7284.4(c) ............................................................................................. 12

Cal. Gov. Code § 7284.4(e) ....................................................................................... 12, 17

Cal. Gov. Code § 7284.4(f) .............................................................................................. 12

Cal. Gov. Code § 7284.5(a) ............................................................................................... 3

Cal. Gov. Code § 7284.6(a)(1)(C) ............................................................................... 3, 12

Cal. Gov. Code § 7284.6(a)(1)(D) ................................................................. 3, 12

Cal. Gov. Code § 7284.6(a)(1) ........................................................................ 12

Cal. Gov. Code § 7284.6(4) ............................................................................. 12

Cal. Gov. Code § 7285.1(b) .............................................................................. 2

Cal. Gov. Code § 7285.2(a)(2) .......................................................................... 8

Cal. Gov. Code § 7285.2(b) ............................................................................... 2

Cal. Gov. Code § 12532(b) ....................................................................... 2, 9, 10

Cal. Labor Code § 1019.2(a) .............................................................................. 8

Cal. Labor Code § 90.2(a)(1) ............................................................................. 2

Cal. Labor Code § 90.2(b)(1) ............................................................................. 2

Cal. Labor Code § 90.2(c) .................................................................................. 2

Cal. Penal Code § 6030 ..................................................................................... 10

Cal. Penal Code § 6031.1 .................................................................................. 10

Cal. Penal Code § 6031.1(a) ............................................................................... 2

## CALIFORNIA LEGISLATIVE HISTORY

CA. Assem. Comm. on the Judiciary Rep., Apr. 22, 2017 .................................. 1

CA S. Hearing, April 03, 2017
   https://ca.digitaldemocracy.org/hearing/52288?startTime=1150&vid=910977abbea937bca7424c
   93fe3caf1c (last visited on June 6, 2018) ...................................................... 3

Hearing on S.B. 54 before the S. Standing Comm. On Public Safety (Jan. 31,
   2017) (statement of Sen. Scott Wiener), https://ca.digitaldemocracy.org/hearing/10091?
   startTime=275&vid=381a741e4e525c9efccbbf6062c67f3c (last visited on June 6, 2018) ............... 3

California has enacted several laws with the express goal of interfering with "an expected increase in federal immigration enforcement activities." California Committee on the Judiciary Report (Assembly), Apr. 22, 2017, at 1. Separately and in concert, the challenged provisions have the purpose and effect of impeding enforcement of the immigration laws and impermissibly discriminating against the United States. As discussed below and in our briefing in support of our motion for a preliminary injunction, the motion to dismiss should be denied.

## BACKGROUND

*1. Immigrant Worker Protection Act (AB 450)*

The Immigration Worker Protection Act, or AB 450, was enacted to regulate employers who might be the subject of "immigration worksite enforcement actions" by federal immigration authorities. AB 450, Preamble. To that end, AB 450 restricts private (and public) employers from voluntarily cooperating with federal officers who seek information relevant to federal efforts to investigate the unauthorized employment of aliens.

Among other things, AB 450 adds Sections 7285.1 and 7285.2 to the California Government Code. Section 7285.1(a) provides that an employer or its agent "shall not provide voluntary consent to an immigration enforcement agent to enter any nonpublic areas of a place of labor," unless "the immigration enforcement agent provides a judicial warrant," or consent is "otherwise required by federal law." Section 7285.2(a)(1) similarly prohibits an employer or its agent from "provid[ing] voluntary consent to an immigration enforcement agent to access, review, or obtain the employer's employee records without a subpoena or judicial warrant." Section 7285.2(a)(2) contains an exception for certain documents for which the Federal Government has provided a "Notice of Inspection" issued pursuant to 8 U.S.C. § 1324a(b)(3).

AB 450 also adds provisions to the California Labor Code that establish new requirements that employers must satisfy before allowing U.S. Immigrations and Customs Enforcement ("ICE"), a

component of the U.S. Department of Homeland Security ("DHS"), to conduct its inspection process. New Section 90.2 requires employers to notify employees and their authorized representatives of upcoming inspections of employment records "within 72 hours of receiving notice of the inspection," Labor Code § 90.2(a)(1), and requires employers to provide employees and their authorized representatives, within 72 hours, with copies of written immigration agency notices providing results of inspections, *id.* § 90.2(b)(1). New Section 1019.2(a) of the Labor Code provides that an employer or its agent "shall not reverify the employment eligibility of a current employee at a time or in a manner not required by Section 1324a(b) of Title 8 of the United States Code."

All these provisions are subject to a schedule of civil penalties of $2,000 to $5,000 for a first violation and $5,000 to $10,000 for each subsequent violation. Cal. Gov. Code §§ 7285.1(b), 7285.2(b); Labor Code § 90.2(c).

*2. Inspection and Review of Facilities Housing Federal Detainees (AB 103)*

Under longstanding California law, all "local detention facilities" are subject to biennial inspections concerning health and safety, fire suppression preplanning, compliance with training and funding requirements, and the types and availability of visitation. Cal. Penal Code § 6031.1(a). The term "local detention facilities" includes facilities operated by cities, counties, or private entities that contract with cities or counties (while excluding certain specialized facilities), but does not include federal facilities. *Id.* § 6031.4.

AB 103, which adds § 12532(a) to the California Government Code, establishes a separate inspection and review scheme applicable only to facilities "in which noncitizens are being housed or detained for purposes of civil immigration proceedings in California." Unlike the inspections established by Cal. Penal Code § 6031.1(a), the new scheme instructs the California Attorney General to examine, among other things, the "due process provided" to civil immigration detainees, and "the circumstances around their apprehension and transfer to the facility." Cal. Gov. Code § 12532(b).

Section 12532(c) requires that the state "shall be provided all necessary access for the observations necessary to effectuate reviews required pursuant to this section, including, but not limited to, access to detainees, officials, personnel, and records."

### 3. SB 54 and the California Values Act

The California Values Act is part of SB 54, which "prohibit[s] state and local law enforcement agencies," other than employees of the state Department of Corrections and Rehabilitation, from "cooperat[ing] with [Federal] immigration authorities" other than in very limited, circumscribed circumstances. *See* SB 54, Preamble; Cal. Gov. Code § 7282.5(a). The Act is intended to serve as a "counterbalance to this [Presidential] administration" on immigration matters, *see* Hearing on S.B. 54 before the S. Standing Comm. On Public Safety (Jan. 31, 2017) (statement of Sen. Scott Wiener),[1] by requiring state and local actions on immigration "separate from that of the federal government." Senate Floor Hearing on 04-03-2017.[2]

Among other things, with certain exceptions discussed below, new Section 7284.6 prohibits state and local officials from "[p]roviding information regarding a person's release date or responding to requests for notification by providing release dates or other information," Cal Gov. Code § 7284.6(a)(1)(C); providing "personal information," including an individual's home address or work address, *id.* § 7284.6(a)(1)(D); and "[t]ransfer[ring] an individual to immigration authorities," *id.* § 7284.6(a)(4).

Affected state and local officials may share information relating to release dates only where an individual subject to such information sharing has been convicted of a limited set of crimes, or where the information is available to the public. Cal. Gov. Code §§ 7284.5(a), 7284.6(a)(1)(C). Personal information may be shared only if it is available to the public. *Id.* § 7284.6(a)(1)(D). Transfers to federal immigration authorities may occur only if the United States presents a "judicial warrant or

---

[1]  https://ca.digitaldemocracy.org/hearing/10091?startTime=275&vid=381a741e4e525c9efccbbf6062c67f3c
[2]  https://ca.digitaldemocracy.org/hearing/52288?startTime=1150&vid=910977abbea937bca7424c93fe3caf1c.

judicial probable cause determination," or the individual in question has committed one of a specified set of crimes. Cal. Gov. Code §§ 7284.6(a)(4), 7282.5(a).

## LEGAL STANDARD

A motion to dismiss must be denied if, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party," the Court concludes that the complaint "plausibly suggest[s] an entitlement to relief." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 886-87 (9th Cir. 2017) (quotation marks omitted).

## ARGUMENT

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 395 (2012). California may not interfere with the United States' ability to enforce the immigration laws, and its legal theories here would authorize the state to impede the enforcement of any federal law based on policy disagreements with the Executive Branch.

The provisions at issue here are invalid under each of two related doctrines. First, a law is preempted by federal law if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Second, under the doctrine of intergovernmental immunity, "state laws are invalid if they 'regulate the United States directly or discriminate against the Federal Government or those with whom it deals.'" *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality op.) (brackets omitted)). The provisions at issue impermissibly interfere with the United States' enforcement of the immigration laws and single out for adverse treatment those who assist with immigration enforcement efforts.

**A.    California has no authority to penalize employers who voluntarily cooperate with federal officials (AB 450)**

1. The Immigration Reform and Control Act of 1986 ("IRCA") creates a "comprehensive

framework for combating the employment of illegal aliens." *Arizona*, 567 U.S. at 404. IRCA makes it illegal for employers to knowingly hire, recruit, refer, or continue to employ unauthorized workers. *See* 8 U.S.C. § 1324a(a)(1)(A), (a)(2). Employers who attempt to comply in good faith with verification requirements are protected from civil and criminal penalties under federal law. *Id.* § 1324a(b)(6)(A). Congress established a nationally uniform inspection process whereby employers are required to retain documentary evidence of authorized employment of aliens, and to permit federal investigative officers to inspect that evidence. *See id.* § 1324a(b).

Federal law allows immigration officials to enter a place of employment for immigration enforcement purposes without first procuring a judicial warrant. Instead, Congress provided for a method for immigration enforcement, including in the context of worksite inspections, premised on private property owners' ability to consent to inspections of their property and their employees.

It is thus established that "[i]n the course of enforcing the immigration laws, [federal immigration officers may] enter[] employers' worksites to determine whether any illegal aliens may be present as employees." *I.N.S. v. Delgado*, 466 U.S. 210, 211-12 (1984). Indeed, as the Ninth Circuit has recognized, "Congress, in adopting [Section 1357 of the INA]" intended for immigration officers to possess enforcement authority "to the fullest extent permissible under the fourth amendment." *Zepeda v. INS*, 753 F.2d 719, 725 (9th Cir. 1983).

2. AB 450 imposes civil penalties on private employers in California who provide voluntary consent to immigration enforcement agents who seek to enter nonpublic areas of the workplace. Cal. Gov. Code § 7285.1(a). The Constitution does not allow California to impede federal law enforcement in this fashion.

It is well established that a state enactment is preempted if it "results in interference with federal government functions." *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 438 (9th Cir. 1991). AB 450 interferes with federal immigration enforcement by making it more difficult for federal officers

to investigate immigration violations at employment sites. California cannot plausibly assert that it is vindicating a legitimate state interest in employee privacy, given that the state enactment does not apply to other types of investigatory activity. Rather, AB 450's clear purpose and effect is to prevent federal officials from carrying out their functions.

AB 450 would not survive judicial scrutiny even if, as California asserts, it was "enacted under California's well-established police powers." Mem. 9. The Supreme Court has repeatedly made clear that state enactments may be preempted even if the state is acting in an area of traditional state authority. *See, e.g., Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 366-67 (2000) (invalidating a Massachusetts law that restricted the State itself from purchasing from companies doing business with Burma); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 525-26 (2003) (invalidating California regulation of insurers doing business in the state); *Wis. Dep't of Indus., Labor & Human Relations v. Gould, Inc.*, 475 U.S. 282 (1986) (invalidating Wisconsin law that prohibited certain violators of the federal law from doing business with the State). In any event, inhibiting federal immigration authorities is not a matter within California's "police power."

The state fares no better in observing that "AB 450 does not . . . foreclose immigration enforcement agents' access to the workplace altogether." Mem. 10. Contrary to the state's understanding, a state statute need not entirely thwart the implementation of federal law in order to be preempted. Thus, in *Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Admin.*, 860 F.3d 1228 (9th Cir. 2017), the Ninth Circuit invalidated a state enactment that purported to require the Drug Enforcement Administration to secure a court order before it could obtain testimony and documents with a subpoena. The court explained that the additional requirement of obtaining a court order "stands as an obstacle to the full implementation of the [Controlled Substances Act] because it interferes with the methods by which the federal statute was designed to reach its goal." *Id.* at 1236.

For similar reasons, AB 450 violates principles of intergovernmental immunity by imposing

penalties on private employers only to the extent that they voluntarily deal with the United States. It is established that "the States may not directly obstruct the activities of the Federal Government." *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (quoting *North Dakota*, 495 U.S. at 437-38). Applying this principle in *Arcata*, the Ninth Circuit invalidated local ordinances that purported to regulate military recruiting. *Arcata*, 629 F.3d at 991. Similarly, in *Boeing Co. v. Movassaghi*, the Ninth Circuit invalidated a state enactment that purported to create special rules for cleanup of a federal nuclear site. *Boeing*, 768 F.3d at 840.

California urges that AB 450 does not regulate "federal immigration-enforcement officials," but instead operates only against employers in the state. Mem. 10. This assertion runs headlong into the basic principle that "a regulation imposed on one who deals with the Government has as much potential to obstruct governmental functions as a regulation imposed on the Government itself." *North Dakota*, 495 U.S. at 438. The Supreme Court "has required that the regulation be one that is imposed on some basis unrelated to the object's status as a Government contractor or supplier, that is, that it be imposed equally on other similarly situated constituents of the State." AB 450 imposes penalties based solely on the private entity's decision to deal with the government. Just as California could not directly prohibit the Federal Government from entering private property with consent from the property owner, or impose a tax only on those businesses that enter into agreements with the United States, the state may not impose unique burdens on entities that cooperate with immigration officers.

The other challenged provisions of AB 450 have the same purpose and effect of impermissibly regulating and discriminating against the United States. Section 7285.2(a)(1) prevents employers from voluntarily consenting to review of employee records. Although the statute contains exceptions for particular categories of documents, Cal. Gov. Code § 7285.2(a)(2), when it applies, the statute deliberately stands as an obstacle to the enforcement of federal laws and targets the United

States for adverse treatment. California's assertion that the statute is designed to "minimize disruptions and reduce[] the likelihood of indiscriminate harassment and detention of all workers," Mem. 9, is merely another way of saying that the statute is designed to prevent the United States from taking enforcement actions it has authority to take in the manner it chooses.

Similarly impermissible is California's effort to require employers to provide notice to their employees of upcoming inspections and their results. Cal. Lab. Code § 90.2. It would be unthinkable for a state to require that suspects be warned of upcoming criminal investigations by the Federal Bureau of Investigation, or that suspects be kept up to date on the results of investigative work done by the Bureau. There is no basis for a different rule for federal officers enforcing the immigration laws.

Finally, AB 450 precludes employers from reverifying the employment eligibility of their employees, except when such reverification is required by federal law. Cal. Labor Code 1019.2(a). Under IRCA, it is unlawful not only to hire an unauthorized worker, but also "to continue to employ [an] alien in the United States knowing the alien is (or has become) an unauthorized alien with respect to such employment." 8 U.S.C. § 1324a(a)(2). Thus, although employers do not have an obligation to reverify employment status for any particular individual, they do have a continuing obligation avoid knowingly employing unauthorized aliens. And as the Ninth Circuit has recognized, in some circumstances "deliberate failure to investigate suspicious circumstances imputes knowledge." *New El Rey Sausage Co. v. U.S. INS*, 925 F.2d 1153, 1158 (9th Cir. 1991). Congress thus intended that employers, who will have superior information, would prevent unauthorized employment. Prohibiting employers from reverifying authorization when they deem it appropriate interferes with the operation of this federal scheme.

## B.   California has no authority to mandate unique inspections of facilities holding federal immigration detainees (AB 103)

1. The INA explicitly recognizes the Federal Government's authority to "arrange for

appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). Congress expressly contemplated that some of those aliens might not be housed in federal facilities. *See id.* §§ 1231(g)(1)-(2), 1103(a)(11). DHS, through ICE, utilizes nonfederal detention facilities in California to house civil immigration detainees in Federal custody. Compl. ¶ 40.

Although detainees may be housed in nonfederal facilities, they remain federal detainees subject to the control of the Federal Government. Federal law does not contemplate any role for the facility itself, or for states and localities, in determining which aliens are properly subject to detention. And federal regulation prohibits state, local, or private facilities from disclosing information related to detainees. 8 C.F.R. § 236.6.

2. AB 103 mandates inspection and review of immigration detention facilities that include the California Attorney General's own assessment of the basis for the alien's detention and transfer and the due process afforded to the alien. *See* Cal. Gov. Code § 12532(b). California thus impermissibly seeks through AB 103 to use the location of detention as a mechanism to mandate inspections and undertake its own review of the United States' enforcement of federal immigration law. Federal immigration enforcement is the prerogative of the National Government, and California has no authority to second-guess the United States' determinations regarding detention and transfer of aliens. *See generally Arizona*, 567 U.S. at 394-97.

California mistakenly suggests that singling out facilities housing federal detainees is permissible because the additional burdens imposed by the inspections are not sufficiently significant to raise constitutional concerns. The State cites no instance in which a court has upheld a law that creates a unique regime for facilities that contract with the Federal Government, regardless of the level of burden involved. In any event, the state enactment does impose burdens, requiring that state officials "be provided all necessary access" to carry out AB 103. Cal. Gov. Code § 12532(c). Section 12532(c) thus compels facilities to participate in the inspection process, diverting scarce resources

from other important law enforcement tasks.

In addition, although AB 103 does not itself require public disclosure of detainee information, it requires the California Attorney General to make public his report, and requires the Federal Government to release detainee information. AB 103's required release of sensitive information cannot be reconciled with 8 C.F.R. § 236.6, which was adopted to "guarantee[] that information regarding federal detainees will be released under a uniform federal scheme rather than the varying laws of fifty states." 68 Fed. Reg. 4364, 4366 (Jan. 29, 2003).

California's defense of AB 103 from the intergovernmental immunity doctrine fails for similar reasons. AB 103 discriminates against facilities holding federal immigration detainees by creating a unique scheme applicable only to such facilities. *Compare* Cal. Gov. Code § 12532(b) *with* Cal. Penal Code §§ 6030, 6031.1. AB 103 thus runs afoul of the principle that a private contractor "cannot be subjected to discriminatory regulations because it contracted with the federal government." *Boeing*, 768 F.3d at 842.

California suggests that "reviews under AB 103 are less onerous than reviews for other detention facilities." Mem. 12. This subjective factual assertion could not be proper grounds for dismissal at this early stage of the litigation. Moreover, the state does not dispute that AB 103 subjects immigration detention facilities to unique forms of examination to which no other facilities are subject.

C.   **California has no authority to prohibit cooperation with the Federal Government that is contemplated by federal law (SB 54)**

1. In addition to establishing the circumstances in which aliens can enter, remain in, or be removed from the United States, the INA codifies the Executive Branch's constitutional and inherent authority to investigate, arrest, and detain aliens suspected of being, or found to be, not lawfully in the United States. *See* 8 U.S.C. §§ 1226, 1231, 1357. Knowledge of the date of release from state or local custody or the home address of aliens covered by these provisions is critical to DHS's

ability to fulfill its statutory obligations regarding detention and removal.

Congress has generally permitted confinement pursuant to state or local criminal sentences to proceed notwithstanding the prospect of or pendency of federal removal proceedings, by providing that the United States "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment." 8 U.S.C. § 1231(a)(4); *see id.* § 1231(a)(4)(B) (permitting earlier removal in certain circumstances). In various ways, the INA presumes that the United States will be made aware of the release date of aliens in state or local custody. The United States must detain individuals who have committed certain crimes "when the alien is released," if the alien is already in the custody of state or local officials. *Id.* § 1226(c)(1). Aliens subject to a final order of removal must be removed within 90 days, during which time an alien subject to a final order of removal shall be detained pending effectuation of the order. *Id.* § 1231(a)(2). For aliens subject to criminal confinement, this removal period begins "on the date the alien is released from detention or confinement." *Id.* § 1231(a)(1)(B)(iii). For other aliens, detention is at the discretion of federal officials, subject to certain constraints set out in federal law. *See, e.g., id.* § 1226(a).

Congress expressly provided in 8 U.S.C. § 1373 that "[n]otwithstanding any other provision of . . . law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal authorities] information regarding the citizenship or immigration status . . . of any individual."

2. New Section 7284.6 of the California Government Code deliberately seeks to undermine the system that Congress designed. The statute limits the ability of state and local officers to share release dates, thus inhibiting DHS's ability to arrest an alien upon release from custody and thus fulfill its statutory responsibilities regarding detention and removal. The effect of the prohibition on providing release dates is compounded by SB 54's prohibition on sharing personal information, including home addresses, with the Federal Government, § 7284.6(a)(1)(D), depriving DHS of

information needed to locate aliens in the absence of an orderly transfer of custody.

New Section 7284.6(a)(4) likewise impermissibly undermines the INA's structure and impedes the enforcement of the immigration laws by limiting the ability of state and local officers to transfer individuals to federal custody. As discussed, the INA contemplates that DHS will be able to take custody of removable criminal aliens directly at the point and place of release from state or local detention. *See, e.g.*, 8 U.S.C. § 1226(c)(1). Requiring a judicial warrant or judicial finding of probable cause is irreconcilable with the INA, which establishes a system of civil administrative warrants as the basis for immigration arrest and removal, and does not require or contemplate use of a judicial warrant for civil immigration enforcement. *See* 8 U.S.C. §§ 1226(a), 1231(a); *see Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 876-80 (9th Cir. 2007) (stating that an executive officer can constitutionally make the necessary probable-cause determination to warrant arrest of an alien "outside the scope of the Fourth Amendment's Warrant Clause," without presentment to a judicial officer).

3. Sections 7284.6(a)(1)(C) & (D) and 7284.6(a)(4) also violate the doctrine of intergovernmental immunity because the restrictions on information-sharing and transfer apply only to requests made specifically by immigration authorities. *See* Cal. Gov. Code §§ 7284.4(e), 7284.6(a)(1), (1)(C), (4). That the statute's application could extend to cooperating state and local officials carrying out immigration functions only underscores the scope of interference with the enforcement of federal law. *See id.* § 7284.4(c), (f).

California asserts that the doctrine of intergovernmental immunity does not apply when "California is regulating law-enforcement matters under the general police power." Mem. 7. The State identifies no case that has adopted this principle. To the contrary, in *Boeing*, although a state purported to regulate environmental cleanup—a subject plainly within the state's authority as a general matter—the Ninth Circuit had no trouble applying the doctrine of intergovernmental immunity. 768 F.3d at 842; *see also* Reply Br. at I.B.2.

4. In prohibiting officials from sharing information such as an alien's release date, sections 7284.6(a)(1)(C) & (D) also directly conflict with 8 U.S.C. § 1373, under which a state or local government may not prohibit the exchange of "information regarding" an individual's immigration status. Information such as the release date is "information regarding" immigration status within the contemplation of § 1373. That term does not merely denote an alien's technical immigration status (as California has argued), a reading that construes too narrowly the phrase "information regarding" and disregards the interrelationship between state custody and federal obligations. *See Lamar, Archer & Cofrin, LLP v. Appling*, No. 16-1215, slip op. at 5-9 (S. Ct. June 4, 2018) (holding that words like "regarding" should be read expansively). Similarly, information such as an alien's address is relevant to many immigration status issues, such as whether the alien has kept DHS informed of any change of address as required under 8 U.S.C. § 1305.

Although California touts the "savings clause" in SB 54, we do not understand California to read its statute to authorize its officers to provide release dates to federal officials as needed. California cannot insulate prohibitions that on their face contravene § 1373 by enacting what is in effect merely a declaration that the prohibitions do not violate the federal statute. And even if the statute's scope is somehow limited by the savings clause, the relevant inquiry relates to the statute's actual application, not to circumstances in which it has no effect. *See City of Los Angeles. v. Patel*, 135 S. Ct. 2443, 2451 (2015).

5. California's invocation of the Tenth Amendment turns principles of federalism on their head. The Federal Government is not requiring California to regulate a particular activity or to enforce a federal regulatory scheme. A state could decline to take aliens potentially subject to removal into custody, or release them prior to the completion of their sentences based on the state's interest. *See* 8 U.S.C. 1231(a)(4)(B)(ii). The point is that if a state accepts the opportunity provided by Congress and elects to imprison aliens potentially subject to removal before the United States takes

custody, it cannot do so in a way that interferes with the United States's ability to later remove the aliens. *See Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 290-91 (1981) ("We fail to see why the Surface Mining Act should become constitutionally suspect simply because Congress chose to allow the States a regulatory role."); *see* Reply Br. at 1.C.4.

The Supreme Court's recent decision in *Murphy v. NCAA*, 2018 WL 2186168 (S. Ct. May 14, 2018), is not to the contrary. The federal statute at issue in that case did not regulate private persons by making sports gambling unlawful under federal law. Instead, the statute purported to make it unlawful for states to authorize sports gambling schemes. The Court left no doubt that – as has always been the case – federal law can preempt state law when federal law regulates private actors pursuant to a power conferred on Congress by the Constitution. Indeed, California recognizes as much in its supplemental brief. Supp. Br. 2.

There can be no serious dispute that the INA permissibly regulates aliens by providing for their removal and detention, and, as discussed, the restrictions imposed by SB 54 are preempted quite apart from § 1373. California nevertheless seeks to analogize the question here to that at issue in *Murphy*, focusing on § 1373, and urging that the statute cannot validly preempt state law because it is phrased as "a prohibition on 'state' or 'local governmental entit[ies] or official[s],'" Supp. Br. 2 (alterations in original). But as the Supreme Court explained, "it is a mistake to be confused by the way in which a preemption provision is phrased." *Murphy*, 2018 WL 2186168, at *15. The Court noted, for example, that it had upheld a provision stating that "no State or political subdivision thereof . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any [covered] air carrier." *Id.* (quoting 49 U.S.C. App. § 1305(a)(1) (1988 ed.)) (alterations in original). That provision was part of a scheme regulating air carriers, and § 1373 is part of a scheme regulating aliens. In either instance no commandeering occurs because where the Federal Government regulates individuals, including

through access to information concerning those individuals, and states may not obstruct those regulatory schemes. *See Printz v. United States*, 521 U.S. 898, 913 (1997) (recognizing "duty owed to the National Government, on the part of all state officials, to enact, enforce, and interpret state law in such fashion as not to obstruct the operation of federal law").

Even if SB 54 did not frustrate the enforcement of federal law, and even if preemption of state laws interfering with immigration enforcement function as a "requirement," California's argument still fails. A requirement to respond to a federal inquiry about an alien's release date would in no sense be "commandeering," but would instead constitute the same type of requirement that could be imposed on a private entity with information relevant to federal enforcement efforts, such as an I-9 form maintained by an employer. The Constitution does not prohibit federal enactments that "do[] not require the States in their sovereign capacity to regulate their own citizens," but instead "regulate[] the States as the owners of data bases." *Reno v. Condon*, 528 U.S. 141, 151 (2000); *see* Reply Br. at I.C.4.

In addition, the Court has recognized that statutes "which require only the provision of information to the Federal Government[] do not involve . . . the forced participation of the States' executive in the actual administration of a federal program." *Printz*, 521 U.S. at 918. The Supreme Court's Tenth Amendment cases are not properly read to invalidate reporting requirements, such as the requirement for "state and local law enforcement agencies to report cases of missing children to" the United States. *Id.* at 936 (O'Connor, J., concurring) (citing 42 U.S.C. § 5779(a)). Here, similarly, any requirement that California provide information already in its possession that it already allows localities to disclose to the public, Cal. Gov. Code § 7284.6(a)(1)(C), (D), and that the United States needs to carry out federal law, does not violate the Tenth Amendment. *See* Reply Br. at I.C.4, n.13

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.

DATED: June 6, 2018

CHAD A. READLER
Acting Assistant Attorney General

MCGREGOR SCOTT
United States Attorney

AUGUST FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

/s/ Erez Reuveni
EREZ REUVENI
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
450 5th St NW
Washington, DC 20530
Telephone: (202) 307-4293
Fax: (202) 616-8202
E-mail: Erez.R.Reuveni@usdoj.gov

DAVID SHELLEDY
Civil Chief, Assistant United States Attorney

LAUREN C. BINGHAM
JOSEPH A. DARROW
FRANCESCA GENOVA
JOSHUA S. PRESS
Trial Attorneys

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the U.S. District Court for the Eastern District of California's Electronic Document Filing System (ECF), which will serve a copy of this document upon all counsel of record.

By:   */s/ Erez Reuveni*
        EREZ REUVENI