LEON J. PAGE, COUNTY COUNSEL
JOHN (JACK) W. GOLDEN, Senior Assistant (SBN 092658)
WENDY J. PHILLIPS, Senior Deputy (SBN 178452)
STEVEN C. MILLER, Senior Deputy (SBN 112951)
PATRICK K. BRUSO, Deputy (SBN 272109)
BENJAMIN L. BERNARD, Deputy (SBN 314698)
OFFICE OF THE COUNTY COUNSEL
333 West Santa Ana Boulevard, Suite 407
Post Office Box 1379
Santa Ana, California 92702-1379
Telephone: (714) 834-3300
Facsimile: (714) 834-2359

*Attorneys for Amici Curiae* COUNTY OF ORANGE *and* SANDRA HUTCHENS, Sheriff-Coroner for the County of Orange

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., *Governor of California, in his Official Capacity*; and XAVIER BECERRA, *Attorney General of California, in his Official Capacity*,<br><br>    Defendants. | Case No.: 2:18-cv-00490-JAM-KJN<br><br>**BRIEF OF AMICI CURIAE COUNTY OF ORANGE AND SANDRA HUTCHENS, SHERIFF-CORONER FOR THE COUNTY OF ORANGE** |

//
//
//
//
//
//
//
//
//

BRIEF OF AMICI CURIAE COUNTY OF ORANGE AND
SANDRA HUTCHENS, SHERIFF-CORONER FOR THE COUNTY OF ORANGE

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES……………………………………………………………ii

I.     IDENTITY AND INTEREST OF AMICI CURIAE ................................................1

II.    ARGUMENT................................................................................................................2

        A.    California's Senate Bill 54 And Assembly Bill 103 Are Preempted By The Exclusive Governance Of The Federal Government In Regard To Immigration. ..........................................2

        B.    The California Values Act Has Impermissibly Interfered With The County's Voluntary Cooperation With Federal Immigration Officials To The Detriment To Public Safety.............6

III.   CONCLUSION ...........................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. United States*
 567 U.S. 387 (2012) ........................................................................................... 2, 5, 6, 8

*Armstrong v. Exceptional Child Center, Inc.*
 135 S.Ct. 1378 (2015) ................................................................................................. 3

*Crosby v. National Foreign Trade Council*
 530 U.S. 363 (2000) .................................................................................................... 3

*English v. General Elec. Co.*,
 496 U.S. 72 (1990) ...................................................................................................... 2

*Florida Lime & Avocado Growers, Inc. v. Paul*
 373 U.S. 132 (1963) ................................................................................................ 3, 5

*Freilich v. Upper Chesapeake Health, Inc.*
 313 F.3d 205 (4th Cir. 2002) ...................................................................................... 5

*Gade v. National Solid Wastes Management Assn.*
 505 U.S. 88 (1992) ...................................................................................................... 2

*Hines v. Davidowitz*
 312 U.S. 52 (1941) .......................................................................................... 2, 3, 5, 6

*Murphy v. National Collegiate Athletic Ass'n*
 138 S.Ct. 1461 (2018) ................................................................................................. 3

*New York v. United States*
 505 U.S. 144, 166 (1992) ............................................................................................ 3

*Printz v. United States*
 521 U.S. 898 (1997) .................................................................................................... 4

*Reno v. Condon*
 528 U.S. 141 (2000) .................................................................................................... 4

*Rice v. Santa Fe Elevator Corp.*
 331 U.S. 218 (1947) .................................................................................................... 2

*Toll v. Moreno*
 458 U.S. 1 (1982) ........................................................................................................ 2

*United States v. Brown*,
 No. 07-485, 2007 WL 4372829
 (S.D.N.Y. Dec. 12, 2007),
 aff'd 328 F. App'x 57 (2d Cir. 2009) .......................................................................... 5

//

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

**Statutes**

8 U.S.C. § 1357(g)(10)(A) ................................................................................................6

**Constitution(s)**

U.S. Const. art. VI, cl. 2 ..................................................................................................2

## I. IDENTITY AND INTEREST OF AMICI CURIAE

Amicus Curiae COUNTY OF ORANGE ("County" and/or "the County") is a political subdivision of Defendant STATE OF CALIFORNIA. Amicus Curiae SANDRA HUTCHENS, Sheriff-Coroner for the County of Orange ("Sheriff" and/or "the Sheriff") is a constitutionally elected official for the County sworn to enforce the constitutions of both Plaintiff UNITED STATES OF AMERICA and Defendant STATE OF CALIFORNIA. Since both Amici Curiae have direct and vital interests in the issues before this Court, both Amici Curiae hereby submit this brief in support of Plaintiff's Motion for Preliminary Injunction and in opposition to California Defendants' Motion to Dismiss in accordance with this Court's "Order Denying Motion for Leave to Intervene by County of Orange and Sandra Hutchens" entered on June 4, 2018 (ECF 163), which permits the filing of this brief herein. The undersigned counsel for the Amici Curiae have authored this brief in whole.

The California Values Act [a.k.a. Senate Bill 54 (S.B. 54) codified as California Government Code sections 7284, *et seq*.] is a deliberate effort by Defendants STATE OF CALIFORNIA; EDMUND GERALD BROWN JR., Governor of California, in his Official Capacity; and XAVIER BECERRA, Attorney General of California, in his Official Capacity (collectively "the State" and/or "Defendants" and/or "California Defendants") to obstruct the federal government's ability to enforce federal immigration law. The County and the Sheriff have a strong interest in the preemption of the California Values Act under the Supremacy Clause. The California Values Act puts the public safety of Orange County's local residents at risk by restricting the Sheriff's communication and cooperation with federal immigration authorities. Moreover, the Sheriff's discretionary power to disclose information to federal immigration authorities conferred by Congress pursuant to 8 U.S.C. § 1373(a) is being extinguished by the California Values Act. Furthermore, because the Sheriff has taken an oath to support the United States Constitution and believes the California Values Act is unconstitutional, she is in a position of having to choose between violating her oath to the federal

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

Constitution or refusing to comply with the state law, which could result in her expulsion from office.

## II. ARGUMENT

### A. California's Senate Bill 54 And Assembly Bill 103 Are Preempted By The Exclusive Governance Of The Federal Government In Regard To Immigration.

State laws are preempted when they conflict with federal law, including when they stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  In the field of immigration, it is clear that "the Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012) (citing *Toll v. Moreno*, 458 U.S. 1, 10 (1982)).  This power is conferred on Congress by the Constitution under Article I, Section 8, Clause 4, and because the United States has the inherent power as sovereign to "control and conduct relations with foreign nations."  See *Toll*, 458 U.S. at 10.  When the National Government is operating under its express constitutional power, the Supremacy Clause provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

One of the ways in which state law must give way to federal law is when Congress, acting within its proper authority, has determined that conduct must be regulated by its exclusive governance.  See *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 115 (1992).

> "The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive… that Congress left no room for the States to supplement it' or where there is a 'federal interest… so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Arizona*, 567 U.S. at 399 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); see also *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

//

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

A second way in which state law is preempted is when state law conflicts with federal law. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000). This includes situations such as those present in this case, where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), and those instances where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines*, 312 U.S. at 67.

The Supreme Court states "[p]reemption is based on the Supremacy Clause, and that Clause is not an independent grant of legislative power to Congress. Instead, it simply provides "a rule of decision." It specifies that federal law is supreme in case of a conflict with state law." *Murphy v. National Collegiate Athletic Ass'n*, 138 S.Ct. 1461, 1479 (2018) (quoting *Armstrong v. Exceptional Child Center, Inc.*, 135 S.Ct. 1378, 1383 (2015). There are two requirements for preemption:

> "First, it must represent the exercise of a power conferred on Congress by the Constitution; pointing to the Supremacy Clause will not do. Second, since the Constitution "confers upon Congress the power to regulate individuals, not States," the [act's] provision at issue must be best read as one that regulates private actors." *Murphy,* 138 S.Ct. at 1479 (2018) (quoting *New York v. United States*, 505 U.S. 144, 166 (1992)).

Here, 8 U.S.C. § 1373 is the exercise of an essential power to regulate immigration conferred on Congress by the Constitution under Article I, Section 8, Clause 4. Second, the purpose of Section 1373 is to regulate individuals and naturally to have access to information necessary to that regulation. Congress undoubtedly has the authority to access information necessary to effectuate its regulation of individuals in the field of immigration. Congress in its enactment of Section 1373 decided to devise a scheme of cooperative federalism where Congress chose merely to block any interference that would prevent the federal government from receiving necessary regulatory information regarding those individuals. Because Section 1373 represents the exercise of a power conferred upon Congress by the Constitution and because it regulates private actors which naturally includes their information, it preempts S.B. 54

which stands in direct contradiction to federal access of private actor's information under federal regulation.

Not only does Section 1373 meet both prongs for preemption, but its provisions are fundamentally different than the statute at issue in *Murphy*. First, the United States does not simply point to the Supremacy clause to undergird its authority to enforce a federal statute generally making it unlawful for a State to license sports gambling. Rather, the power that underlies Section 1373 is the exercise of an essential power to regulate immigration conferred on Congress by the Constitution. Second, in *Murphy* an essential underlying principle for the court, and the second prong of the preemption test, is that the statute cannot be characterized as a power conferred to a private actor or a regulation over a private actor; whereas Section 1373 is a regulatory scheme over private actors. Third, Section 1373 is about information access while *Murphy* has nothing to do with information access.

The State's interpretation of *Murphy* to stand for the proposition that if the State had to give access to information of private actors who are within the regulation scheme of federal immigration authorities, then that would be tantamount to commandeering is an untenably expansive interpretation of *Murphy*. The federal agencies are only seeking to access the private information that they have been authorized by Congress to obtain. Just because that information is in the hands of state and local governments does not mean that federal access now becomes commandeering, and there is nothing in *Murphy* which would stand for that proposition. To hold otherwise would be to take the prohibition of anticommandeering to the extreme, and is not supported by prior Supreme Court precedent. See *Reno v. Condon*, 528 U.S. 141, 150 (2000) (holding federal provision as consistent with Tenth Amendment even if the regulation would "require time and effort on the part of state employees"); *Printz v. United States*, 521 U.S. 898, 918 (1997) (statutes "which require provision of information to the Federal Government do not involve ... the forced participation of the States' executive in the actual administration of a federal program"); see, e.g., *Freilich v. Upper Chesapeake Health,*

*Inc.*, 313 F.3d 205, 214 (4th Cir. 2002); *United States v. Brown*, No. 07-485, 2007 WL 4372829 at *6 (S.D.N.Y. Dec. 12, 2007), aff'd 328 F. App'x 57 (2d Cir. 2009); cf. *Arizona*, 567 U.S. at 411 ("Consultation between federal and state officials is an important feature of the immigration system").  While there are limits to what the federal government can require the states to do, there is nothing that indicates that a mere request for information would violate the Tenth Amendment, even if it may require time and effort on the part of state employees.  Obtaining information regarding regulation of private actors is not the same as actually regulating the party with that information.  The state and local governments are merely acting as pass-through entities for information regarding private actors to which federal agencies are properly entitled under federal law. To invalidate any federal provision that may require the states to do something, no matter how minimal, under the anticommandeering doctrine, is not the law.

      Similarly, A.B. 103 is in direct conflict with the federal scheme involving immigration.  Indeed, even regulations that "complement" federal law, or "enforce additional or auxiliary regulations," are preempted by a comprehensive federal scheme. *Hines*, 312 U.S. at 66-67; *Arizona*, 567 U.S. at 387.  A.B. 103 imposes additional burdens on the federal scheme of immigration, in the form of inspections of facilities housing federal detainees. The state has no authority to enforce these additional and auxiliary regulations on the federal government.  The County has contracted with the federal government to house federal detainees, and is thus bound to the dictates of the federal government, and not the whims of the state.  Declaration of Robert J. Peterson in Support of Motion by County of Orange and Sandra Hutchens, Sheriff-Coroner for the County of Orange, for Leave to Intervene ("Peterson Decl."), ¶¶2-3. (ECF 59-3.) (See attached hereto as **Exhibit 1** to this brief.)  The Sheriff has already been put in the untenable position of having to satisfy both inspections under A.B. 103 and operating under the Intergovernmental Service Agreement with ICE.  Peterson Decl., ¶4.  Complying with opposite federal and state dictates is an "impossibility" for the County. *Florida Lime & Avocado Growers, Inc.*, 373 U.S. at 142-43.

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

Because S.B. 54 and A.B. 103 "stand as an obstacle to the accomplishment and execution of the full purposes and objections" of Congressional immigration law, *Arizona*, 567 U.S. at 406; *Hines*, 312 U.S. at 67; because Section 1373 satisfies the Supreme Court's two prong test in *Murphy* for valid preemption; and since the anticommandeering doctrine is inapplicable, those two state laws are ultimately preempted.

### B. The California Values Act Has Impermissibly Interfered With The County's Voluntary Cooperation With Federal Immigration Officials To The Detriment To Public Safety.

It is clear that the state and federal laws at issue are in conflict. The California Values Act requires that the Sheriff choose between complying with state law or complying with federal law. Declaration of Sandra Hutchens in Support of Reply by the United States of America in Support of Motion for Preliminary Injunction ("Hutchens Decl."), ¶4. (ECF 171-6) (See attached hereto as **Exhibit 2** to this brief.)

As stated in *Arizona*, 567 U.S. at 411-412:

> "Consultation between federal and state officials is an important feature of the immigration system. Congress has made clear that no formal agreement or special training needs to be in place for state officers to "communicate with the [Federal Government] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States." 8 U.S.C. § 1357(g)(10)(A).

As a practical matter, the California Values Act creates a public safety issue for the citizens of Orange County by restricting the Sheriff's ability to share information and cooperate with ICE and federal immigration authorities in regards to inmates in the Orange County Jail. Hutchens Decl., ¶4. Specifically, the Sheriff may be required under California law to release an inmate with an ICE detainer without communicating that inmate's release to ICE. That individual may then go on to commit a terrible crime, which would have been prevented if the Sheriff was allowed to cooperate with ICE under federal law. *Id.*, at ¶5. This scenario is a risk that is already in place. Between January 1, 2018, and April 30, 2018, the Orange County Sheriff's Department has had

601 inmates with ICE detainers. *Id.*, at ¶6.  Of those, 341 inmates were released without notification to ICE, due to the limitations of the California Values Act. *Id.*

The Orange County Sheriff's Department conducted a random sampling of the charges pending against 89 of the 341 inmates with ICE detainers who were released without informing ICE.  Hutchens Decl., ¶7.  Forty-two of the 89 records reviewed (47%) were charged with violent or serious crimes that present a public safety concern, including but not limited to: willful infliction of corporal injury, possession of methamphetamine for sale, possession of firearms and a controlled substance, assault with a deadly weapon, lewd or lascivious acts on a minor, possession of a loaded firearm, statutory rape, willful harm or injury to a child, intimidation of witnesses and victims, and threat to commit crime that will result in death or great bodily injury.  *Id.*  These are individuals that, but for the state law at issue, would have likely been detained by ICE under their immigration detainers.  The only reason they could not be detained by ICE is because state law prevents the Orange County Sheriff from communicating this information with the federal government, despite the fact that the Sheriff wishes to do so.  *Id.*  These individuals are now walking the streets of Orange County, where they represent a threat to public safety.  *Id.*

Additionally, a review of the records determined that 45 out of the 341 inmates with ICE detainers who were released without informing ICE have been rearrested at least once in Orange County.  *Id.*, at ¶8.  Out of this 13% recidivism rate, a handful have been arrested more than once during the four-month period.  *Id.*  The crimes include, but are not limited to, attempted murder, assault with a deadly weapon, spousal battery, DUI, child abduction and sex crimes on a child, and possession of drugs or paraphernalia.  *Id.*  It is difficult to be aware of this information and come to the conclusion the state has reached that the California Values Act was instituted to protect the public.

The Orange County Sheriff's Department has also been forced to decline to provide ICE investigators personal identifying information of two former inmates being

-7-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

investigated by ICE, despite the fact that the Sheriff's Department was willing to voluntarily provide this information. *Id.*, at ¶9. By preventing this voluntary information sharing, the California laws at issue are clearly standing "as an obstacle to" Congressional immigration law, and must be preempted. *Arizona*, 567 U.S. at 406.

## III. CONCLUSION

For the foregoing reasons Amici Curiae COUNTY OF ORANGE and SANDRA HUTCHENS, Sheriff-Coroner for the County of Orange request that this Court, as to the causes of action concerning S.B. 54 and A.B. 103, grant the Motion for Preliminary Injunction filed by Plaintiff UNITED STATES OF AMERICA and deny the Motion to Dismiss filed by the California Defendants.

DATED:   June 12, 2018            Respectfully submitted,

LEON J. PAGE, COUNTY COUNSEL
JOHN (JACK) W. GOLDEN, Senior Assistant
WENDY J. PHILLIPS, Senior Deputy
STEVEN C. MILLER, Senior Deputy
PATRICK K. BRUSO, Deputy
BENJAMIN L. BERNARD, Deputy

By:   /S/ John (Jack) W. Golden
      John (Jack) W. Golden, Senior Assistant

*Attorneys for Amici Curiae*
COUNTY OF ORANGE *and*
SANDRA HUTCHENS, Sheriff-Coroner
for the County of Orange

# **CERTIFICATE OF SERVICE**

I do hereby declare that I am a citizen of the United States employed in the County of Orange, over 18 years old and that my business address is 333 West Santa Ana Boulevard, Suite 407, Santa Ana, California 92701.  I am not a party to the within action.

I hereby certify that on **June 12, 2018**, I served the foregoing **BRIEF OF AMICI CURIAE COUNTY OF ORANGE AND SANDRA HUTCHENS, SHERIFF-CORONER FOR THE COUNTY OF ORANGE** on all other parties to this action by serving a true copy of said document in the following manner:

[**X**]   (BY CM/ECF), I filed the foregoing document with the Clerk of the Court via CM/ECF, which automatically sends notice of the filing to all counsel of record. I declare under 28 U.S.C. § 1746 that the above is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:  **June 12, 2018**  in Santa Ana, California.

                         /S/ Simon Perng
                         Simon Perng

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

G:\LITIGATION\CLIENT MATTERS\Board Of Supervisors\USA V California Anti Sanctuary Litigation\Drafts\USA V California - OC Amicus Brief - SP Redline Edits (PKB) - FINAL.Doc

CERTIFICATE OF SERVICE