1  XAVIER BECERRA
   Attorney General of California
2  THOMAS S. PATTERSON
   Senior Assistant Attorney General
3  MICHAEL NEWMAN
   SATOSHI YANAI
4  ANTHONY HAKL
   Supervising Deputy Attorneys General
5  CHRISTINE CHUANG
   CHEROKEE DM MELTON
6  LEE I. SHERMAN
   Deputy Attorneys General
7  State Bar No. 272271
     300 S. Spring Street
8    Los Angeles, CA  90013
     Telephone:  (213) 269-6404
9    Fax:  (213) 897-7605
     E-mail:  Lee.Sherman@doj.ca.gov
10 *Attorneys for Defendants*

11                     IN THE UNITED STATES DISTRICT COURT

12                    FOR THE EASTERN DISTRICT OF CALIFORNIA

13                               SACRAMENTO DIVISION

14

15

16 **THE UNITED STATES OF AMERICA,**         Case No. 2:18-cv-00490-JAM-KJN

17                              Plaintiff,   **REPLY IN SUPPORT OF
                                             DEFENDANTS' MOTION TO DISMISS**
18      v.

19                                           Hearing Date:  June 20, 2018
   **THE STATE OF CALIFORNIA; EDMUND**       Time:          10:00 a.m.
20 **GERALD BROWN JR., Governor of**         Courtroom:     6
   **California, in his official capacity; and**  Judge:    Honorable John A. Mendez
21 **XAVIER BECERRA, Attorney General of**   Trial Date:    None set
   **California, in his official capacity,** Action Filed:  March 6, 2018
22
                               Defendants.
23

24

25

26

27

28

## I.  THE UNITED STATES' SB 54 CLAIM SHOULD BE DISMISSED

In its opposition, the United States makes the remarkable assertion that California either must acquiesce to full participation in federal immigration enforcement once it "chooses" to arrest or prosecute an "alien" for violating a state criminal statute, or it must decline to arrest or prosecute such a person in the first place. *See* Opp'n at 13-14. Although the United States claims that SB 54 "forces local law enforcement to release . . . criminals," Reply at 26, that is exactly what the United States instructs California to do in order to avoid being subject to the federal government's demands. *Id.* This Hobson's Choice is unconstitutional and turns federalism on its head. It is not Congress that offers California the "opportunity" to enforce state criminal laws, Opp'n at 13, it is a right inherent in California's sovereignty. *See* U.S. Const. amend. X; *United States v. Morrison*, 529 U.S. 598, 618 (2000). Under the United States' theory, California would be left with no "legitimate choice" to decline participation in immigration enforcement. *See, e.g.*, *New York v. United States*, 505 U.S. 144, 177, 185 (1992). That simply cannot be the case.

Not once does the United States explain how it may commandeer the State's allocation of law enforcement resources. *See, e.g.*, ECF 77 at 5, 7. The United States relies on the Supreme Court's recognition that Congress may regulate the states in certain circumstances, Opp'n at 14, but its examples do not support commandeering of the State's executive or legislative processes. While Congress may preempt a state law that subjects private actors to different requirements than federal laws, *see generally Arizona v. United States*, 567 U.S. 387 (2012), here the United States seeks to impose restrictions directly on the State's law enforcement officers. *Cf. Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018) (referring to federal right for airline carriers to be subject to just federal constraints).

*Reno v. Condon*, 528 U.S. 141 (2000) is also inapposite. There, the Court upheld the Driver's Privacy Protection Act because Congress regulated states as operators of databases and sellers of information in the same manner as private entities. *Id.* at 151. Here, the United States is attempting to regulate the state *qua* state when it attempts to control how the state's law enforcement officers must act in the context of the state's criminal laws. The Tenth Amendment prohibits such directions on the "functioning of the state executive," particularly when a statute

1

regulates information that "belongs to the State and is available to them in their official capacity." *Printz v. United States*, 521 U.S. 898, 932 & n.17.

Last week a federal court rejected the same arguments the United States makes here, finding that, under *Murphy,* § 1373(a) and (b) "[o]n their face … regulate state and local governmental entities, which is fatal to their constitutionality under the Tenth Amendment." *Compare Philadelphia v. Sessions,* -- F. Supp. 3d --, 2018 WL 2725503, at 32-34 (E.D. Pa. June 6, 2018) *with* Opp'n at 15 & Reply at 17-22. These problems with § 1373 infect all of the United States' preemption claims here since the federal government is seeking to direct that the State allow the exchange of information and compliance with notification and transfer requests, which are purely state and local law enforcement functions. *See, e.g.*, *Printz*, 521 U.S. at 932.

Aside from the Tenth Amendment, Congress must be "unmistakably clear" in the text of the statute to preempt the State's allocation of responsibilities among government officials. *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1992). Although the United States interprets § 1373 to include release dates and addresses,[1] two courts have found that § 1373 does not include release dates. *Philadelphia*, 2018 WL 2725503, at 35;[2] *Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1015 (N.D. Cal. 2017). For the same reasons, § 1373 does not include addresses. The United States' reliance on *Lamar, Archer & Cofrin, LLP v. Appling*, No. 16-1215, 2018 WL 2465174 (S. Ct. June 4, 2018), Opp'n at 13, is unavailing. There, the Court's decision involved an interpretation of "respecting" in the Bankruptcy Code tied to a private debt that did not, in any way, involve the structure and duties of state and local governments. Instead this Court should look to *Presley v. Etowah Cty. Comm'n*, 502 U.S. 491 (1992) where the Supreme Court refused to interpret the phrase "with respect to voting" to mean "with respect to governance," because that interpretation "fail[ed] to provide a workable standard for distinguishing between changes in rules governing voting and changes in the routine organization and functioning of government." *Id.* at

---

[1] To argue that § 1373 includes a person's "presence" or "whereabouts," Reply at 22, the United States cites to a legislative report for a *different* statute. *Compare* H.R. Conf. Rep. 104-725 *with* H.R. Conf. Rep. 104-828 (the conference report for the act that spawned § 1373). In any event, the cited report does not support its interpretation since it distinguishes between information "regarding … immigration status" and "whereabouts" information, H.R. Conf. Rep. 104-725 at 383, the latter of which does not appear in the statute.

[2] Contrary to the United States' contention, Reply at 21 n.7, the *Philadelphia* decision thoroughly considered the potential impact of other INA statutes such as 8 U.S.C. §§ 1226 and 1231 on the reading of § 1373. *Id.* at 35-40.

2

Reply in Supp. of Defs.' Mot. to Dismiss                    (18-cv-00490-JAM-KJN)

504. The Supreme Court recognized the harm such an interpretation would cause to federalism by delimiting state and local governments from "exercis[ing] power in a responsible manner within a federal system." *Id.* at 507. Interpreting release dates and addresses as "information … regarding immigration status" is similarly unworkable, ECF 74 at 11-14, and undermines the State's ability to structure its government. *See Presley*, 502 U.S. at 510. Any intent by Congress to preempt beyond § 1373 is even less clear. ECF 74 at 19-23.

    Finally, there is no support for the claim that intergovernmental immunity allows the United States to commandeer the State's allocation of *its own* resources. *Cf. United States v. Arcata*, 629 F.3d 986, 991-92 (9th Cir. 2010) (Tenth Amendment not a defense where city directly regulated federal government). In *Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), Opp'n at 12, the state <u>directly regulated</u> a federal contractor. *Id.* at 839-42. Since SB 54 is facially neutral, treats similarly situated persons the same, and deals within the scope of "proper domestic concerns," ECF 77 at 7-8, the United States' claim fails. *See USPS v. Berkeley*, 2018 WL 2188853, at *3 (N.D. Cal. May 14, 2018) (zoning law did not discriminate against USPS though it did not "lump together" all historic properties as "similarly situated constituents").

## II.   THE UNITED STATES' AB 450 CLAIM SHOULD BE DISMISSED

AB 450 is a valid exercise of the State's historic police powers to regulate the workplace and employment relationships. The United States cannot show that AB 450 "frustrate[s] the objectives" of the Immigration and Reform Control Act of 1986 (IRCA), *see Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 256-57 (1984), or that Congress's "clear and manifest purpose" is to supersede the State's powers here. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009). IRCA's purpose is to deter employers from hiring unauthorized workers, 8 U.S.C. § 1324a, and Congress chose not to criminalize engaging in unauthorized work. *Arizona*, 567 U.S. at 405-06. AB 450 is consistent with Congress's goal of combatting unlawful employment while maintaining labor protections and state processes to address unfair business practices. *See* H.R. Rep. 99-682(I) at 58 (no intent to "undermine or diminish in any way labor protections" or limit remedies of "unfair practices committed against undocumented employees"); *Wyeth*, 555 U.S. at 574 (state law did not interfere with Congress's purpose to bolster consumer protection). AB 450 does not disturb

3

Reply in Supp. of Defs.' Mot. to Dismiss                                                                                           (18-cv-00490-JAM-KJN)

IRCA's employer inspections, requires compliance with federal law, and gives immigration officials "reasonable access" to private areas with a warrant and employee records with a warrant or subpoena. *See* 8 U.S.C. § 1374a(e)(2); Cal. Gov't Code §§ 7285.1(a)(1), 7285.2(a)(1).

The United States argues that any law that makes its work more "difficult" is preempted. Opp'n at 7. But that is not the law. Congress accepted that there might be tension between the states' regulation of employment and federal immigration enforcement, and any supposed difficulties do not meet the high threshold for preemption. *See Silkwood*, 464 U.S. at 256-57; *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011). Nothing in IRCA, outside of I-9 inspections, which do not require a subpoena or warrant, is "premised" on consent as the intended tool for inspections. *See* Opp'n at 5. Thus, unlike *Oregon Prescription Drug Monitoring Program v. D.E.A.*, 860 F.3d 1228 (9th Cir. 2018), where a state law requiring a court order to obtain information conflicted with federal provisions expressly allowing the use of subpoenas by the DEA without a court order, AB 450 does not conflict with IRCA's enforcement tools. The United States' reliance on *Zepeda v. I.N.S.*, 753 F.2d 719 (9th Cir. 1983), is misplaced since that case does not establish a "right" to consent, and the United States routinely obtains warrants to enter businesses. *See, e.g.*, *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 552 (9th Cir. 1983); *I.N.S. v. Delgado*, 466 U.S. 210, 212 (1984). Nor is conflict "imminent" here because two separate remedies have not been "brought to bear on the same activity." *See* Opp'n at 6 (citing to *Wisconsin Dept. of Indus., Crosby*, and *Garamendi*). These cases all involve uniquely federal areas not falling within the State's police powers and state systems conflicting with federal operation of the same activity. But AB 450 is not a scheme regulating unlawful employment, *cf. Arizona*, 567 U.S. at 406, nor one that provides sanctions for employers violating IRCA. *Cf. Wisconsin Dept. of Indus., Labor and Human Relations v. Gould*, 475 U.S. 282, 286-87 (1986). And where the State has authority to enact a law, it can impose penalties. *Whiting*, 563 U.S. at 605.

Regarding intergovernmental immunity, AB 450 applies to employers as a result of doing business in the State in response to any person or entity acting as an immigration enforcement agent—federal, state, or local. *See North Dakota v. United States*, 495 U.S. 423, 438 (1990). AB

4

Reply in Supp. of Defs.' Mot. to Dismiss                                   (18-cv-00490-JAM-KJN)

450 balances employees' inalienable privacy rights, *see* Cal. Const. art. I, § 1, with allowing immigration agents reasonable access to records, Cal. Gov't Code § 7285.2(a), like other laws requiring a warrant or court order for information. *See, e.g., id.* § 6254.18 (information of those with reproductive health facilities); Cal. Civ. Code § 56.10(b)(6) (medical information). And providing employees with notice of an inspection, which is focused on employers, is not akin to warning criminal suspects, especially where notice is contemplated as part of the process. ECF 138 at 11 (amicus brief discussing when ICE instructs employers to give notice).

### III.   THE UNITED STATES' AB 103 CLAIM SHOULD BE DISMISSED

On its face, AB 103 does not obstruct the United States' authority to "arrange" for detention, control conditions of confinement, or affect an individual's removal. *See* Opp'n at 9-10. The United States cites nothing to support the proposition that California may not evaluate detention facilities, nor does it explain how such a review obstructs federal law enforcement. Where there is no clear grant of exclusive jurisdiction, state and federal governments operate as dual sovereigns. *See generally, Murphy*, 138 S. Ct. at 1475; *see also* Melton Decl., ECF 83-2, Exs. M-S. Lastly, as the United States admits, "AB 103 does not itself require public disclosure of detainee information," Opp'n at 10, nor is "sensitive information" required to be released. State laws should not be interpreted to "create[] a conflict with federal law." *Arizona*, 567 U.S. at 415.

Intergovernmental immunity is not violated where the burden placed on non-federal entities contracting with the federal government is not solely based on their affiliation with the government. *North Dakota*, 495 U.S. at 437. Here, the State's interest in reviewing conditions in facilities under AB 103 is no different than its interest in other State detention facilities. Indeed, AB 103 is far less onerous than inspection regimes that apply elsewhere. *E.g.*, Penal Code §§ 6030-6031.2; *see also In re Nat'l Sec. Agency Telecommunications Records Litig.*, 633 F. Supp. 2d 892, 903 (N.D. Cal. 2007). An indirect burden on the United States from overlapping state and federal jurisdiction is insufficient to state a claim. *North Dakota*, 495 U.S. at 434-35.

### IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss the United States' complaint.

5

Reply in Supp. of Defs.' Mot. to Dismiss                                              (18-cv-00490-JAM-KJN)

Dated:  June 13, 2018 Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
ANTHONY HAKL
MICHAEL NEWMAN
SATOSHI YANAI
Supervising Deputy Attorneys General

*/s/ Christine Chuang*
*/s/ Cherokee DM Melton*
*/s/ Lee Sherman*

CHRISTINE CHUANG
CHEROKEE DM MELTON
LEE SHERMAN
Deputy Attorneys General
Attorneys for the State of California

6

Reply in Supp. of Defs.' Mot. to Dismiss                (18-cv-00490-JAM-KJN)

## CERTIFICATE OF SERVICE

Case Name:   **United States v. California, et al**        No.    **2:18-cv-00490-JAM-KJN**

I hereby certify that on June 13, 2018, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 13, 2018, at Los Angeles, California.

| Lee Sherman | */s/ Lee Sherman* |
|---|---|
| Declarant | Signature |