JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
MCGREGOR SCOTT
United States Attorney
AUGUST FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director
EREZ REUVENI
Assistant Director
DAVID SHELLEDY
Civil Chief, Assistant United States Attorney
LAUREN C. BINGHAM
Senior Litigation Counsel
FRANCESCA GENOVA
JOSHUA S. PRESS
Trial Attorneys
    United States Department of Justice
    Civil Division
    P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
    Telephone: (202) 305-0106
    Facsimile: (202) 305-7000
    e-Mail: joshua.press@usdoj.gov

*Attorneys for the United States of America*

# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES OF AMERICA**,

        Plaintiff,

v.

**STATE OF CALIFORNIA, et al.**,

        Defendants.

Case No. 2:18–CV–00490-JAM-KJN

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION OF LABOR CODE SECTION 1019.2**

Judge: Hon. John A. Mendez

NO HEARING NOTICED

**INTRODUCTION**

The United States of America hereby opposes Defendants' Motion to Dissolve the Preliminary Injunction of California Labor Code § 1019.2 (ECF No. 233) (hereinafter, "Defendants' Motion" or "Defs.' Mot."). Following this Court's Order (the "Order," ECF No. 193), preliminarily enjoining Defendants from enforcing certain sections of the "Immigrant Worker Protection Act," Assembly Bill 450 (Cal. Gov't Code § 7285.2 & Cal. Lab. Code §§ 90.2 & 1019.2) ("AB 450"), and the Ninth Circuit's decision in April 2019, California amended Labor Code Section 1019.2 late last year. These amendments are ostensibly intended to prohibit employers from engaging in "unnecessary reverification[, and thus] reduce[] the likelihood that reverification will be misused to intimidate, retaliate, or discriminate against employees who are lawfully authorized to be employed … further[ing] California's interest in promoting a diverse workforce." Senate Bill No. 112, Reg. Sess. (Cal. 2019) § 1(d). The amendments to Section 1019.2 do not change the fact that Section 1019.2 violates the Supremacy Clause, and Defendants' motion should therefore be denied.

Defendants' amendment of Section 1019.2 is superficial because they assume that simply parroting federal definitions should prevent the obstacles this Court identified in granting the preliminary injunction. This is because even though Section 1019.2 now includes superficially more verbose savings clauses, *see* Cal. Lab. Code § 1019.2(a), (c), the Statute as amended continues to interfere with Congress' "comprehensive scheme" to "combat[] the employment of illegal aliens," *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002). Defendants nevertheless insist that such cosmetic changes warrant dissolution of the injunction, attempting to change the status quo before this litigation may continue into discovery and eventually a trial. But California's changes to Section 1019.2 are not significantly "new" law. They are instead a plan to implement the same dual regulatory scheme that this Court enjoined as an obstacle to federal immigration law.

Defendants' premise that the *Plaintiff* has the burden to establish its continuing entitlement to the preliminary injunction previously ordered is also incorrect. *See* Defs.' Mot. 8. Under well-settled law, a party seeking to dissolve a preliminary injunction must show that, as a result of changed circumstances, the underlying bases for the injunction no longer exist. Far from changing any of the underlying bases for preliminary relief, Labor Code Section 1019.2 still interferes with employers re-

verifying the legality of their workforce and places employers in the same untenable position of exposing themselves to sanctions by having to choose whether to comply with controlling federal law or the State statutes restricting that law. Defendants have therefore shown no reason why maintaining the status quo—which has been in place for two years—would cause them any significant harm, or indeed any harm at all, while this litigation proceeds. Defendants' Motion should be denied.

## BACKGROUND

### I. Statutory And Regulatory Background.

*A. The Immigration Reform and Control Act*

The federal government has broad and plenary power over the subject of immigration and aliens within this country. *Arizona v. United States*, 567 U.S. 387, 394 (2012). In 1952, Congress enacted "[t]he foundation of our laws on immigration and naturalization i[n] the Immigration and Nationality Act." *Kansas v. Garcia,* 140 S. Ct. 791, 797 (2020). The Immigration and Nationality Act, 8 U.S.C. § 1101 ("INA"), did not initially prohibit employing illegal aliens, leaving to the States to regulate the issue, *see De Canas v. Bica*, 424 U.S. 351, 353 (1976). But with the Immigration Reform and Control Act ("IRCA") in 1986, Pub. L. No. 99–603, 100 Stat. 3359, Congress "made combating the employment of illegal aliens in the United States central to '[t]he policy of immigration law.'" *Hoffman*, 535 U.S. at 147 (quoting *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 194 & n.8 (1991)).

IRCA makes it unlawful to hire aliens knowing they are unauthorized to work in the United States. 8 U.S.C. §§ 1324a(a)(1)(A), (h)(3). IRCA thus requires employers to comply with a federal-employment verification system. 8 U.S.C. § 1324a(b). Using a federal work-authorization form ("I-9"), employers "must attest" that they have "verified" that an employee "is not an unauthorized alien" by examining approved documents such as a United States passport or alien registration card. 8 U.S.C. § 1324a(b)(1)(A); *see also* §§ 1324a(b)(1)(B)–(D); 8 C.F.R. § 274a.2(a)(2) (2019) (establishing Form I-9). This requirement applies to the hiring of any individual regardless of citizenship or nationality, 8 U.S.C. § 1324a(b)(1), and may result in civil and criminal sanctions. *See* 8 U.S.C. §§ 1324a(e)(4), (f); 8 C.F.R. § 274a.10. Employers must retain copies of employees' I-9s and other documents, verify those documents, and allows employers to make copies to show employees' continuing work authorization. *See* 8 U.S.C. §§ 1324a(b)(3)–(4); *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 588–91 (2011).

IRCA also imposes duties on all employees, regardless of their citizenship. Employees must complete an I-9, documentation, and attest that they fall into a category of persons authorized to work in the United States. 8 U.S.C. §§ 1324a(b)(1)–(2); 8 C.F.R. § 274a.2(b)(1)(i)(A). "[U]nder penalty of perjury, every employee must provide certain personal information—specifically: name, residence address, birth date, Social Security number, e-mail address, and telephone number." *Garcia*, 140 S. Ct. at 797. Multiple federal crimes are implicated whenever employees provide false information on an I-9 or to use fraudulent documents to show work authorization. *See, e.g.*, 18 U.S.C. §§ 1001 (false statements), 1028 (identity theft), 1546 (immigration document fraud), & 1621 (perjury). Several provisions provide further direction about the I-9. Section 1324a(b)(3) requires employers to retain the form and make it available to specified officials. Section 1324a(b)(4) permits employers to copy the I-9 for particular purposes. Section 1324a(b)(5), titled "Limitation on use of attestation form," states that the I-9 form and "any information contained in or appended to" the form "may not be used for purposes other than" enforcement of federal immigration law or specified federal criminal statutes. 8 U.S.C. § 1324a(b)(5). This limit is echoed by IRCA's "express pre-emption provision." *Arizona*, 567 U.S. at 406. Titled "Preemption," the provision "preempt[s] any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." 8 U.S.C. § 1324a(h)(2).

B. *California's Immigrant Worker Protection Act*

AB 450 was enacted in 2017 to regulate employers who might be the subject of "immigration worksite enforcement actions" by the federal government. AB 450, Preamble. Like other statutes here, AB 450 pushes back against "an expected increase in federal immigration enforcement actions," California Committee on the Judiciary Report (Assembly), Apr. 22, 2017, at 1, and impedes the "increase in workplace immigration enforcement," by the federal government, Committee on the Judiciary Report (Senate), July 10, 2017, at 1. AB 450 thus restricts private (and public) employers from voluntarily cooperating with federal officers in complying with obligations under federal law.

Among other things, AB 450 added provisions to the California Labor Code with new requirements that employers must satisfy before allowing U.S. Immigration and Customs Enforcement ("ICE"), a component of the United States Department of Homeland Security

("DHS"), to conduct its inspection process. The original Labor Code Section 1019.2 read:

> (a) Except as otherwise required by federal law, a public or private employer, or a person acting on behalf of a public or private employer, shall not reverify the employment eligibility of a current employee at a time or in a manner not required by Section 1324a(b) of Title 8 of the United States Code.
>
> (b) (1) Except as provided in paragraph (2), an employer who violates subdivision (a) shall be subject to a civil penalty of up to ten thousand dollars ($10,000). The penalty shall be recoverable by the Labor Commissioner.
>
> (2) The actions of an employer that violate subdivision (a) and result in a civil penalty under paragraph (1) shall not also form the basis for liability or penalty under Section 1019.1.
>
> (c) In accordance with state and federal law, nothing in this chapter shall be interpreted, construed, or applied to restrict or limit an employer's compliance with a memorandum of understanding governing the use of the federal E-Verify system.

## II.     Procedural And Factual Background.

### A. Prior Proceedings

On March 6, 2018, the United States filed the instant lawsuit. The United States' motion focused on three California statutes that are invalid under the Supremacy Clause: AB450, Assembly Bill 103 ("AB 103"); and SB 54, which includes the "California Values Act." These laws were enacted to "protect[] immigrants from … federal immigration enforcement[.]" California Committee on the Judiciary Report (Assembly), Apr. 22, 2017, at 1. The United States also moved to preliminarily enjoin SB 54, AB 103, and AB 450 under the Supremacy Clause, arguing that those provisions were obstacle-preempted and violated the doctrine of intergovernmental immunity. *See* ECF No. 2. In relevant part, United States argued that AB 450's restrictions on employer consent and reverification and its notice requirement were both obstacle-preempted and violated the intergovernmental immunity doctrine by imposing penalties on those who cooperate with federal law enforcement. *See id.* at 11–23.

This Court's Order granted the motion for a preliminary injunction in part and denied it in part. Specifically, this Court denied an injunction for SB 54, AB 103, and the notice provision of AB 450, while enjoining AB 450's other provisions. *See* 314 F. Supp. 3d 1077, 1112 (E.D. Cal. 2018). It agreed that the United States was likely to succeed on the merits as to two provisions of AB 450—including AB 450's reverification provision under California Labor Code Section 1019.2(a) and (b) with respect to private employers, which it determined was likely preempted. *Id.* at 1096, 1098. The

United States appealed, and the Ninth Circuit upheld this Court's ruling except for the provision of AB 103 requiring investigation into the circumstances of apprehension. *See United States v. California*, 921 F.3d 865 (9th Cir. 2019). Defendants "d[id] not appeal the partial grant of the United States' motion." *Id.* at 877 n.4. The United States sought certiorari, which was denied it over the dissent of two justices. — S. Ct. —, 2020 WL 3146844 (mem.) (June 15, 2020). Defendants' Motion only requests dissolution of this Court's injunction against Labor Code Section 1019.2.[1]

   B.  *The Evolution of California Labor Code Section 1019.2*

On September 27, 2019, California Senate Bill 112 was signed into law. *See* 2019 Cal. Stat., ch. 364 ("SB 112"). Among other things, SB 112 amended Labor Code Section 1019.2 and adds definitions in section 1019.4. 2019 Cal. Stat., ch. 364, §§ 10, 11. Labor Code Section 1019.2 now directs that "except as otherwise required by federal law," a public or private employer "shall not reverify the employment eligibility of a current employee at a time or in a manner not required by Section 1324a(b) of Title 8[.]" Lab. Code § 1019.2(a). And violators are subject to a civil penalty of up to $10,000. *See id.* § 1019.2(b)(1). The law's definitional amendments "clarify" that the statute "is not in any way intended to interfere with any employer's obligations under federal law" or "prohibit employer actions … authorized under federal law." S.B. 112, Reg. Sess. (Cal. 2019) § 1(d). Amended Labor Code Section 1019.2's subsections (c) and (e) now read as follows:

> (c) Subdivision (a) shall be interpreted and applied consistent with federal law and regulations. This section does not prohibit an employer from doing any of the following:
>
>> (1) Reverifying an employees' employment authorization in a time and manner consistent with [8 C.F.R. § 274a.2(b)(1)(vii)].
>>
>> (2) Taking any lawful action to review the employment authorization of an employee upon knowing that the employee is, or has become, unauthorized to be employed in the United States, consistent with Section 1324a(a)(2) of Title 8 of the United States Code, including in response to specific and detailed information from any agency within the United States Department of Homeland Security indicating that an employee is not authorized to be employed in the United States.
>>
>> (3) Reminding an employee, at least 90 days before the date reverification is required, that the employee will be required to present a document identified in List

---

[1] Defendants did not move to dissolve the injunction against AB 450's "employer consent" provision.

> A or a combination of one document from List B and one document from List C, as required by the I-9 Employment Eligibility Verification Form, showing continued employment authorization on the date that their current employment authorization will expire or on the date that their current documentation will expire, whichever date is sooner.
>
> (4) Taking any lawful action to correct errors or omissions in a missing or incomplete I-9 Employment Eligibility Verification Form.
>
> ….
>
> (e) For purposes of this section, the term "knowing" is defined as set forth in [8 C.F.R. § 274a.1(l)] and as interpreted by applicable federal rules, regulations, and controlling federal case law. The term "knowing" includes not only actual knowledge, but also knowledge that may fairly be inferred through notice of certain facts and circumstances that would lead a person, through the exercise of reasonable care, to know about a certain condition. Constructive knowledge may be found under the circumstances described in [8 C.F.R. § 274a.1(l)(2).]

Cal. Lab. Code § 1019.2 (2019). The amended law also adopts the federal definition of "knowing" in 8 C.F.R. § 274a.1(l), Cal. Lab. Code § 1019.2(e), and "reverify" or "reverifying" are defined to encompass the actions described in 8 C.F.R. § 274a.2(b)(1)(vii), Cal. Lab. Code § 1019.4. Defendants moved to dissolve the preliminary injunction based on these amendments.

## STANDARD OF REVIEW

The basic function of a preliminary injunction is to preserve the status quo before trial. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981). To obtain preliminary relief, a party must show a (1) likelihood of success on the merits; (2) irreparable harm; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). District courts may "modify or … overturn an interlocutory order or decision while it remains interlocutory." *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1123 (9th Cir. 2005) (quotation marks omitted). Accordingly, courts may modify interlocutory orders "at any time" before a final judgment. *Id.* This inquiry "has two parts." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019). First, the movant must show "a significant change in facts or law[.]" *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). If that is made, the movant must show the signifcant change "warrants … dissolution of the injunction." *Id.* "This latter inquiry should be guided by the same criteria that govern the issuance of a preliminary injunction," with "the burden with respect to these criteria … on the party seeking dissolution." *Karnoski*, 926 F.3d at 1198 (citation omitted).

# ARGUMENT

The Court should deny Defendants' Motion. The amendments to Section 1019.2 are cosmetic, do nothing to end the frustration of federal law enforcement under IRCA that this Court previously addressed, and continue to place California employers in the untenable position of choosing between complying with federal or state law-enforcement priorities. *Cf.* 314 F. Supp. 3d at 1098 (issuing preliminary injunction because Section 1019.2 "complicates … the system of accountability that Congress designed"). Thus, the amendments do nothing to change the harms the federal government suffers and the preliminary injunction should not be dissolved.

## I. Cosmetic Changes To California Labor Code Section 1019.2 Are Not "Significant."

Defendants' Motion should be denied because Defendants fail to satisfy *Sharp*'s first requirement that a movant must show "a *significant* change in … [the] law." 233 F.3d at 1170 (emphasis added). Like its predecessor, the current version of Labor Code Section 1019.2 is also intended to prohibit employers from what California believes to be "unnecessary reverification[s.]" Senate Bill No. 112, Reg. Sess. (Cal. 2019) § 1(d). Defendants principally rely upon the added language to Section 1019.2, which "shall be interpreted and applied consistent with federal law and regulation" and "do[] not prohibit" employers from doing any of the following: (a) reverifying employees' employment authorization in a "time and manner consistent with" 8 C.F.R. § 274a.2(b)(1)(vii); (b) "[t]aking any lawful action to review the employment authorization of an employee upon knowing that the employee is, or has become, unauthorized to be employed in the United States, consistent with" § 1324a(a)(2); (c) "[r]eminding an employee, at least 90 days before the date reverification is required," he or she will be required to provide documentation to establish work authorization; or (d) "[t]aking any lawful action to correct errors or omissions in a missing or incomplete I-9 Employment Eligibility Verification Form." Lab. Code § 1019.2(c). Still, Defendants ignore how the prior iteration of Section 1019.2 included other such savings clauses that were likewise not enough to keep the law from "stand[ing] as an obstacle to the accomplishment of Congress's purpose in enacting IRCA" to protect lawful U.S. workers. 314 F. Supp. 3d at 1098.

Defendants resist this conclusion, arguing that "[t]he amended law … does not change the federal employee verification system," Defs.' Mot. 8, because amended Section 1019.2's savings

clauses mirror, or are "consistent with federal law and regulations," Cal. Lab. Code § 1(c). This argument reduces to the same argument that this Court already rejected in 2018: "that there is no obstacle because the state law contains an express savings clause for instances where reverification is required by federal law[.]" 314 F. Supp. 3d at 1098. Yet the dilemma this Court recognized two years ago still persists: California employers are caught in the middle as to how exactly they should comply with IRCA's verification provisions while walking an even finer line that California has superimposed upon that process. *See* 314 F. Supp. 3d at 1098 ("The law frustrates the system of accountability that Congress designed." (citing *New El Rey Sausage Co., Inc. v. INS*, 925 F.2d 1153, 1158 (9th Cir. 1991))). Defendants point to the changes they have made regarding their mirrored language to federal law and definitions to try to assuage the Court's prior concerns with what subjective knowledge California employers must have under the amended Section 1019.2 *See* Defs.' Mot. 8 (arguing that "[t]he amended law … does not change the federal employee verification system" and "permits employers to reverify if they possess actual or constructive knowledge that an employee lacks authorization"). Despite the tailoring of Section 1019.2 to deal with some of this Court's past discussion of employers' potential knowledge of their employees' work authorization, though, the problem identified by this Court in relying on the Ninth Circuit's decision in *New El Rey* remains.

In *New El Rey*, the Immigration and Naturalization Service ran a check on the immigration status of that company's employees and found that nine employees were presumed unauthorized unless they could provide their employer with valid employment authorization. 925 F.2d at 1155. Two of the nine cited employees insisted they were authorized to work but produced no documentation of valid employment authorization, and the company retained them. *Id.* In sanctioning the company, the administrative law judge found that New El Rey had constructive knowledge of its workers' unauthorized status because the INS had provided the company with specific, detailed information regarding the workers. *Id.* at 1157. But the "constructive knowledge" standard California discussed in *New El Rey* did not establish "a floor" for when an employer may have justified suspicions of his employees work authorization. *See id.* at 1158–59 ("New El Rey counters that even if it had knowledge that its employees were unauthorized, the INS failed to provide it with sufficient information about what steps it should take to comply with the statute…. [But] New

El Rey is not being fined for its failure to take specific required steps, but for its failure to take *any* steps sufficient to demonstrate a good faith attempt to comply with the statute." (emphasis added)). Defendants' Motion does nothing to address this problem and assumes that the "constructive knowledge" discussed in New El Rey is a necessary, rather than sufficient, condition to trigger employer liability under IRCA. It is thus quite a stretch to say that the added subsections (c) and (e) are truly "*significant* substantive differences" from the prior iteration that this Court preliminarily enjoined. *Karnoski*, 926, F.3d at 1199 (emphasis added). They only serve the same "savings clause" function as before—creating even more confusion regarding the same federally required paperwork.

**II. Defendants Are Unlikely To Succeed In Showing That The Amended Section 1019.2 Does Not Violate The Supremacy Clause.**

Even if amended Section 1019.2 is "a significant change in … law," however, Defendants' argument that the United States is unlikely to succeed in showing that Section 1019.2 violates the Supremacy Clause is meritless for multiple reasons. *Sharp*, 233 F.3d at 1170.

**1.** Defendants' initial error lies in how they have flipped the burden back onto the United States to maintain the status quo of the past two years. Defs.' Mot. 8 (arguing that the United States "is unlikely to succeed on its claim that Labor Code § 1019.2 violates the Supremacy Clause"). As the Ninth Circuit has explained, however, this is wrong because it is the "party seeking modification or dissolution of an injunction" who "bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp*, 233 F.3d at 1170; *see also Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1229 (1st Cir. 1994) ("[A] decision to vacate an existing preliminary injunction … [is] a substantial change in the status quo."). Accordingly, Defendants must affirmatively demonstrate a likelihood that Section 1019.2, as modified, does not violate the Supremacy Clause. *See Karnoski*, 926 F.3d at 1198.[2]

**2.** The amended Section 1019.2 is equally wanting under an implied-preemption analysis. As this Court previously recognized, California's placement of roadblocks and sowing confusion for

---

[2] Defendants are also mistaken to contend that there is no express-preemption problem with California establishing its own employment-verification architecture and civil-penalty system upon employers. Defs.' Mot. 9–10. IRCA expressly preempts "any State or local law imposing *civil* or criminal sanctions (other than through licensing and similar laws) upon those *who employ* … unauthorized aliens," 8 U.S.C. § 1324a(h)(2) (emphases added). This preempts the amended Section

California employers' ability to conduct employment "reverification[s] appears to stand as an obstacle to the accomplishment of Congress's purpose in enacting IRCA." 314 F. Supp. 3d at 1098. Defendants respond that the amendments simply mirror federal protections and selectively quote from the House Report on IRCA, arguing "that IRCA was not intended to 'undermine or diminish' state labor protections." Defs.' Mot. 10 (quoting H.R. Rep. No. 99-682, pt. 1, at 57). But this misses how IRCA's goal was to discourage illegal immigration by regulating, as here, the employers so as to decrease employment opportunities for undocumented workers. *See Torres v. Precision Indus., Inc.*, 437 F. Supp. 3d 623, 644–45 (W.D. Tenn. 2020) ("Under IRCA, the burden is on the employer to ensure its employees are authorized to work in the United States[.]"). Section 1019.2 tinkers with this structure by setting the "floor" under IRCA for reverifications as the "ceiling" under California law. If employers attempt to verify an employee's work authorization one more time than federal law requires as the minimum violates what California law sets as the maximum.

The problem in this context, as with most of AB 450, is that Section 1019.2 does not merely provide state labor protections for employees—it regulates and interferes with the process California employers use to engage the *federal* verification process. This works to directly complicate and frustrate IRCA's regulation over this same process. Congress's focus on employers, *see, e.g.*, 8 U.S.C.

---

1019.2 because it establishes a State system of civil sanctions regarding the potential employment of illegal aliens. Section 1019.2(b)(1) clarifies that the licensing penalties discussed in other sections of Section 1019 are displaced by "a civil penalty of up to ten thousand dollars ($10,000)." Cal. Lab. Code § 1019.2(b)(1) (2019). The only remaining issue is whether the fines imposed by California over federal verifications is a "sanction" under 8 U.S.C. § 1324a(h)(2). A sanction is understood to be "a restrictive measure used to punish a specific action or to prevent some future activity." *Webster's Third New International Dictionary* 2009 (1976). The obvious goal of Section 1019.2 is "to prevent some future activity" of an employer—their ability under federal law to reverify the employment eligibility of potentially unauthorized workers. *See* Senate Bill No. 112, Reg. Sess. (Cal. 2019) § 1(d). In short, Section 1019.2 is a monetary sanction against employers who use the federal government's verification system too often to California's liking. But it is not for California to police what it believes are abuses of the federal government's own verification system where the language of 8 U.S.C. § 1324a(h)(2) precludes "any State or local law" from establishing punishments for federal offenses. *See Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010) (affirming a preliminary injunction against a statute that "subject[ed] employers to cease and desist orders, reinstatement, back pay, costs, and attorneys' fees" regarding the hiring of illegal aliens, because "[s]uch impositions ... fall within the meaning of §1324a(h)(2) sanctions"); *United States v. Alabama*, 691 F.3d 1269, 1290 (11th Cir. 2012) (similar).

§ 1324a, means that IRCA directly legislates the same issue that California is now attempting to regulate: how "*employers* must verify the identity and eligibility of all new hires by examining specified documents," how "*employer*[*s*] may not hire" unauthorized workers, and how "[*e*]*mployers* that violate the IRCA are punished by civil fines and may be subject to criminal prosecution." *Bollinger Shipyards, Inc. v. Dir., Office Workers' Comp. Programs*, 604 F.3d 864, 874 (5th Cir. 2010) (citing 8 U.S.C. §§ 1324a(a)(1), 1324a(b), and 8 U.S.C. § 1324a(f)(1)).[3]

Knowing that directly regulating the same relationship California employers have with the federal government regarding verifying employees' work authorization, Defendants attempt to reiterate the argument that the amended Section 1019.2 is for "state-employee protection" and simply "tracks" IRCA by adopting federal definitions of "knowing" and various other savings clauses. *See* Defs.' Mot. 11–12. But this "mirror-image" argument has been consistently rejected in applying the Supreme Court's decision in *Arizona*. *See, e.g.*, *Alabama*, 691 F.3d at 1281–84 (following *Arizona* to reject portions of an Alabama law the state argued merely enforced federal immigration laws); *Utah Coalition of La Raza v. Herbert*, 26 F. Supp. 3d 1125, 1139 & 1145 (D. Utah 2014) (noting how "Arizona's state provision had the same aims as the federal scheme, and in many ways mirrored federal regulation" and enjoining provisions of a Utah law that "regulate[d] an area in which Congress has already extensively regulated"); *cf. also Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957, 972 (9th Cir. 2017) ( "Arizona['s] … policy regarding driver's license eligibility, … impermissibly strayed into an exclusive domain that Congress, through the INA, delegated to the executive branch" and was not a "[p]ermissible state regulation[] … [in] that [the law did not] mirror federal objectives[.]"). Specifically, *Arizona* involved similar arguments by a State claiming that its law should "survive preemption because [it] … has the same aim as federal law and adopts its substantive standards." 567 U.S. at 402. Nevertheless, the Supreme Court recognized IRCA's employer-side focus and concluded that Arizona's additions to the federal government's regulation of employers' hiring of illegal aliens interfered with the "comprehensive framework [for] combating the employment of illegal

---

[3] Defendants' argument that the Ninth Circuit's recent decision regarding the Court's preliminary injunction, Defs.' Mot. 11, does not change any of the relevant statutory backdrop where the Ninth Circuit explicitly did refused to consider this aspect of AB 450, *see* 921 F.3d at 878 n.5.

Plaintiff's Opposition to
Defendants' Motion to Dissolve Injunction            11

aliens." 567 U.S. at 404 (quotations omitted). This was because changing the balance struck by Congress created an obstacle "with respect to unauthorized employment of aliens." *Id.* at 405. As a result, the Arizona law was preempted. *See also id.* at 402 ("Permitting the State to impose its own penalties for the federal offenses … conflict[s] with the careful framework Congress adopted.").[4]

This same flawed emphasis on employees rather than employers—the focus of Section 1019.2 in this case—is also present with Defendants' reliance upon the Court's recent decision in *Garcia*. Defs.' Mot. 9–10, 13. That case involved state-law identity-theft convictions of three aliens who fraudulently used another person's Social Security number on their employment authorization forms. 140 S. Ct. at 799. The Kansas Supreme Court reversed these convictions, concluding that IRCA expressly prohibits states from using any information contained in the federal I-9 form as the basis for a state-law prosecution. *Id.* at 800 The Supreme Court reversed. Writing for the majority, Justice Alito found no conflict between state and federal law because "federal law does not create a comprehensive and unified system regarding the information that a State may require *employees* to provide." *Id.* at 806 (emphasis added). Incidental overlap regarding the regulation of employees was not enough where there was no suggestion that the Kansas prosecutions frustrated any federal interests to police employers under IRCA. *See id.* at 806–07. The problem with Defendants' reliance on *Garcia* here is that this case involves much more than incidental overlap with IRCA. California is directly regulating the same process and verification of documents that *Garcia* did *not* deal with—employers employing unauthorized workers. In short, Defendants' attempt to justify Section 1019.2 fails for the same reasons as it did two years ago: "Prohibiting employers from reverifying employment eligibility complicates …. [t]he law [and] frustrates the system of accountability that Congress designed." 314 F. Supp. 3d at 1098. Because that has not changed, Defendants are unlikely to succeed regarding amended Section 1019.2.

---

[4] Defendants' reliance on *Whiting* to counter this problem is misplaced. Defs. Mot. 9–13. That case allowed the state business-license penalty and the e-Verify enrollment mandate based on finding a congressional intent to allow for states to do so. *See Whiting*, 563 U.S. at 600 ("Arizona's procedures simply implement the sanctions that Congress expressly allowed Arizona to pursue through licensing laws."). This is borne out by how *Arizona*'s treatment of Section 2B (which the Court did not enjoin) is consistent with this same understanding because there was affirmative authorization in federal law for the police inquiries and verifications the Court permitted. *See Arizona*, 567 U.S. at 412–13.

### III. Maintaining The Status Quo Does Not Constitute An Irreparable Injury.

Like its predecessor, the amended Section 1019.2 is intended to impede the enforcement of the immigration laws, and will have this intended effect. Defendants' Motion reads as if it hopes this Court will ignore this factor, devoting only a single paragraph to the issue. But the California Attorney General's past warning to all California employers that his office would "prosecute those who violate [AB 450]" by voluntarily cooperating with federal enforcement efforts still hangs over Section 1019.2. *See* Angela Hart, *'We will prosecute' employers who help immigration sweeps, California AG says*, Sacramento Bee, Jan. 18, 2018 ("[I]f [employers] voluntarily start giving up information about their employees or access to their employees in ways that contradict our new California laws, they subject themselves to actions by my office …. We will prosecute th[em.]").[5] It is therefore still important to maintain the status quo while this case proceeds to discovery and eventually a trial.

In this regard, Section 1019.2 irreparably undermines the United States' control over regulation of immigration and immigration policy and thereby interferes with the United States' ability to achieve the purposes and objectives of federal law and to pursue its chosen enforcement priorities with IRCA. In so doing, amended Section 1019.2 undermines the strong public interest in enforcement of the immigration laws. Among other things, as explained above, these provisions impede federal immigration enforcement by hindering the United States' detection of unauthorized alien workers and employers who employ them. *See* Declaration of James Spero ("Spero Decl.") ¶ 6 (discussing how "ICE's worksite enforcement efforts related to unlawful employment and document fraud," including how ICE's Homeland Security Investigations ("HSI") "prioritizes employers who abuse and exploit their workers, aid in the smuggling or trafficking of their alien workforce into the United State"). If not enjoined, these provisions of California law would conflict with Congress's instruction that "the immigration laws of the United States should be enforced vigorously and uniformly," IRCA, Pub. L. No. 99–603, § 115(1), 100 Stat. 3359, 338, and would encourage other state or local laws throughout the United States that seek to restrict or regulate the United States' immigration enforcement efforts, creating a patchwork system of laws severely undermining the

---

[5] https://www.sacbee.com/news/politics-government/capitol-alert/article195434409.html

"'integrated scheme of regulation' created by Congress," *Arizona*, 567 U.S. at 400; *see also id.* at 395 (immigration the province of "the national sovereign, not the 50 separate States"). And disruption to Congress's "integrated scheme of regulation" is especially certain where, as here, that is one of the clear purposes behind creating Section 1019.2. *See* AB 450, Preamble; Cal. Gov't Code § 12532(b). Indeed, according to AB 450's sponsor, the purpose of AB 450 is to "protect[] workers from immigration enforcement." *See* Press Release, Assembly Member David Chiu, *Governor Brown Signs Bill to Provide Labor Protections Against ICE Worksite Raids*.[6]

And as explained in the accompanying declaration, Section 1019.2's changes to the employee-verification process will disrupt ICE's "Form I-9 inspection process," which "is an essential component of HSI's overall worksite enforcement efforts." Spero Decl. ¶ 7. This is because, as explained above, Section 1019.2 "[t]here is no requirement that an audit be based on actual or constructive knowledge that an employee is, or has become, unauthorized to be employed in the United States, as stated in Section 1019.2 of the California Labor Code." *Id.* ¶ 12. As a consequence, the confusion feared by this Court two years ago will only increase because it is even less clear when California employers can reverify or even communicate reasonable suspicions about their employees' work authorization with ICE. *See id.* (describing "employers['] … untenable situation as they must choose between complying with California law—which requires knowledge—or exercising due diligence to remain in compliance with federal law"). This chilling effect will "prevent HSI from obtaining sufficient information to determine the existence of aggravating or mitigating factors used in the process of determining any civil monetary sanctions contemplated against an employer in connection with a Form I-9 audit[.]" *Id.* ¶ 9.

Even without these immediate and concrete effects, dissolving the preliminary injunction against Section 1019.2 will cause irreparable harm to the constitutional order. As the Supreme Court and the Ninth Circuit have explained, irreparable harm results from the enforcement of a preempted state law. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 366–67 (1989) (irreparable harm can "be established ... by a showing that the challenged state statute is flagrantly

---

[6] https://a17.asmdc.org/press-releases/governor-brown-signs-bill-provide-labor-protections-against-ice-worksite-raids

Plaintiff's Opposition to
Defendants' Motion to Dissolve Injunction                    14

and patently violative of ... the Supremacy Clause"); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (finding irreparable harm where Supremacy Clause violated).

### IV. The Balance Of Harms Strongly Favors The Federal Government.

Defendants likewise pay little attention to the final two factors required for preliminary injunctive relief—balancing of the harm to the opposing party and the public interest—which merge when the federal government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435–36 (2009). Maintaining the preliminary injunction is needed because a consideration of these two factors favors enjoining the amended Section 1019.2. *See Stormans, Inc. v. Sewlecky*, 586 F.3d 1110, 1127 (9th Cir. 2009). In this action, which seeks to protect the interests of the United States as a whole, the burdens that will result without this Court's injunction are tied to the public benefits protected by the preliminary injunction—clarity for California employers' compliance with federal law. *See* 314 F. Supp. 3d at 1098. That is particularly the case given that this lawsuit seeks to vindicate the supremacy of federal law. *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 853 (9th Cir. 2009).

By contrast, maintaining the preliminary injunction will not meaningfully burden California. The amended provisions of Section 1019.2 have not yet gone into effect while this Court's preliminary injunction has been in place, so keeping the preliminary injunction in this context would have the effect of merely preserving the status quo. *See U.S. Philips Corps. v. KBC Bank*, 590 F.3d 1091, 1094 (9th Cir. 2010) ("[T]he very purpose of a preliminary injunction ... is to preserve the status quo and the rights of the parties until a final judgment issues in the cause."). Were this Court to conclude that amended Section 1019.2 does not offend the Supremacy Clause, California would then be able to implement and enforce it without having suffered any substantial burden. What is more, given that this litigation largely concerns immigration law and policy—in which, by any plausible account, the federal interest is paramount and the state interest is (at most) minimal, *see, e.g.*, *De Canas*, 424 U.S. at 355—the burden on California of maintaining the status quo of the last two years is modest. Indeed, California has no legitimate interest in the enforcement of a law that likely violates the Supremacy Clause. *See Edmondson*, 594 F.3d at 771. Consequently, these factors strongly favor the United States.

### CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dissolve.

DATED: September 22, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

MCGREGOR SCOTT
United States Attorney

AUGUST FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

DAVID SHELLEDY
Civil Chief, Asst. United States Attorney

LAUREN C. BINGHAM
Senior Litigation Counsel

FRANCESCA GENOVA
*/s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0106
joshua.press@usdoj.gov

*Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the U.S. District Court for the Eastern District of California's Electronic Document Filing System (ECF), which will serve a copy of this document upon all counsel of record.

By: _/s/ Joshua S. Press_
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division